## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| NEIMAN MARCUS GROUP LTD LLC, *et al.*,[1] | ) Case No. 20-32519 (DRJ) |
|  | ) |
| Debtors. | ) (Joint Administration Requested) |
|  | ) (Emergency Hearing Requested) |

### DEBTORS' **EMERGENCY** MOTION FOR ENTRY
### OF AN ORDER (I) AUTHORIZING THE PAYMENT OF
### CERTAIN TAXES AND FEES AND (II) GRANTING RELATED RELIEF

> **EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON MAY 8, 2020, AT 1:00 P.M. (CENTRAL TIME) IN COURTROOM 400, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TEXAS 77002. IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **RELIEF IS REQUESTED NOT LATER THAN MAY 8, 2020.**
>
> **PLEASE NOTE THAT ON MARCH 24, 2020, THROUGH THE ENTRY OF GENERAL ORDER 2020-10, THE COURT INVOKED THE PROTOCOL FOR EMERGENCY PUBLIC HEALTH OR SAFETY CONDITIONS.**
>
> **IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.**
>
> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S REGULAR DIAL-IN NUMBER. THE DIAL-IN NUMBER IS +1(832) 917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. YOU WILL BE ASKED TO KEY IN THE CONFERENCE ROOM NUMBER. JUDGE JONES' CONFERENCE ROOM NUMBER IS 205691.**
>
> **PARTIES MAY PARTICIPATE IN ELECTRONIC HEARINGS BY USE OF AN INTERNET CONNECTION. THE INTERNET SITE IS WWW.JOIN.ME. PERSONS CONNECTING BY MOBILE DEVICE WILL NEED TO DOWNLOAD THE FREE JOIN.ME APPLICATION.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Neiman Marcus Group LTD LLC (9435); Bergdorf Goodman Inc. (5530); Bergdorf Graphics, Inc. (9271); BG Productions, Inc. (3650); Mariposa Borrower, Inc. (9015); Mariposa Intermediate Holdings LLC (5829); NEMA Beverage Corporation (3412); NEMA Beverage Holding Corporation (9264); NEMA Beverage Parent Corporation (9262); NM Bermuda, LLC (2943); NM Financial Services, Inc. (2446); NM Nevada Trust (3700); NMG California Salon LLC (9242); NMG Florida Salon LLC (9269); NMG Global Mobility, Inc. (0664); NMG Notes PropCo LLC (1102); NMG Salon Holdings LLC (5236); NMG Salons LLC (1570); NMG Term Loan PropCo LLC (0786); NMG Texas Salon LLC (0318); NMGP, LLC (1558); The Neiman Marcus Group LLC (9509); The NMG Subsidiary LLC (6074); and Worth Avenue Leasing Company (5996). The Debtors' service address is: One Marcus Square, 1618 Main Street, Dallas, Texas 75201.

KE 67531857

> ONCE CONNECTED TO WWW.JOIN.ME, A PARTICIPANT MUST SELECT "JOIN A MEETING". THE CODE FOR JOINING THIS HEARING BEFORE JUDGE JONES IS "JUDGEJONES". THE NEXT SCREEN WILL HAVE A PLACE FOR THE PARTICIPANT'S NAME IN THE LOWER LEFT CORNER. PLEASE COMPLETE THE NAME AND CLICK "NOTIFY".
>
> HEARING APPEARANCES SHOULD BE MADE ELECTRONICALLY AND IN ADVANCE OF THE HEARING. YOU MAY MAKE YOUR ELECTRONIC APPEARANCE BY:
>
> 1) GOING TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE;
>
> 2) SELECTING "BANKRUPTCY COURT" FROM THE TOP MENU;
>
> 3) SELECTING JUDGES' PROCEDURES AND SCHEDULES;
>
> 4) SELECTING "VIEW HOME PAGE" FOR JUDGE DAVID R. JONES;
>
> 5) UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE;"
>
> 6) SELECT NEIMAN MARCUS GROUP LTD LLC, ET AL. FROM THE LIST OF ELECTRONIC APPEARANCE LINKS, AND
>
> 7) AFTER SELECTING NEIMAN MARCUS GROUP LTD LLC, ET AL. FROM THE LIST, COMPLETE THE REQUIRED FIELDS AND HIT THE "SUBMIT" BUTTON AT THE BOTTOM OF THE PAGE.
>
> SUBMITTING YOUR APPEARANCE ELECTRONICALLY IN ADVANCE OF THE HEARING WILL NEGATE THE NEED TO MAKE AN APPEARANCE ON THE RECORD AT THE HEARING

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:[2]

## Relief Requested

1. The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"), (a) authorizing the Debtors to remit and pay (or, if applicable, use tax credits to offset) Taxes and Fees without regard to whether such obligations accrued prior to the Petition Date that will become payable during the pendency of these chapter 11 cases, including those

---

[2] The facts and circumstances supporting this motion are set forth in the *Declaration of Mark Weinsten, Chief Restructuring Officer of Neiman Marcus Group LTD LLC, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed substantially contemporaneously with the Debtors' voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on May 7, 2020 (the "Petition Date") and incorporated by reference herein. Capitalized terms used but not immediately defined in this motion shall have the meanings assigned to them elsewhere in this motion or in the First Day Declaration, as applicable.

2

obligations subsequently determined upon audit or otherwise to be owed for periods prior to the Petition Date, and (b) granting related relief.

## Jurisdiction and Venue

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 363(b), 507(a)(8), and 541 of the Bankruptcy Code, Bankruptcy Rules 6003, 6004, and 9019 and rule 9013-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "Local Rules").

## Background

5. For over 100 years, the Debtors have been the leader in retail luxury, innovation, and customer experiences. Since opening in 1907 with just one store in Dallas, Texas, the Debtors have strategically grown to 67 stores across the United States, including their marquee luxury Neiman Marcus and Bergdorf Goodman locations, Horchow e-commerce website, and off-price Last Call stores. Each Neiman Marcus and Bergdorf Goodman store offers a distinctive selection of apparel, handbags, shoes, cosmetics, and precious and designer jewelry from premier luxury and fashion designers. Horchow offers luxury home furnishings and accessories, and Last Call provides a more affordable option for price-sensitive yet fashion-minded customers. To complement its store footprint, NMG operates the largest luxury e-commerce platform in the world. More than 30 percent of NMG's total annual revenue is from online sales. The Debtors' non-Debtor affiliates own and operate a single store under the THERESA brand and an e-

commerce platform under the Mytheresa brand. As of the Petition Date, the Debtors have funded-debt obligations of approximately $5.5 billion.

6. The Debtors commenced these chapter 11 cases in the face of the unprecedented global COVID-19 pandemic with the goal of stabilizing the Debtors' business and maximizing the value of the enterprise for stakeholders. In the face of these catastrophic headwinds, the Debtors have obtained financial commitments from key stakeholders to enable the Debtors to satisfy their postpetition obligations and beyond, and support from these same key stakeholders for a pre-negotiated transaction pursuant to the Restructuring Support Agreement, filed contemporaneously herewith. The Restructuring Support Agreement includes commitments from holders of over 77% of the Debtors' Extended Term Loans, over 99% of the Debtors' Second Lien Notes, and over 69% of the Debtors' Third Lien Notes to equitize their debt and to backstop the full amount of a proposed $675 million new-money debtor-in-possession financing facility and a $750 million committed exit financing facility. Through the Debtors' diligent and timely efforts to implement the transaction, the Debtors seek to deleverage their balance sheet by approximately $4 billion and emerge from chapter 11 as a stronger, better-capitalized enterprise.

7. On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have concurrently filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

**Taxes and Fees Overview**

8. In the ordinary course of business, the Debtors collect, withhold, and incur taxes and fees related to sales and use, property, income, franchise, annual reporting fees, audits, and business and regulatory fees (collectively, the "Taxes and Fees").[3] The Debtors remit the Taxes and Fees to various federal, state, and local governments and authorities on a monthly, quarterly, or annual basis (collectively, the "Authorities"). A schedule identifying the Authorities is attached hereto as Exhibit 1 to the Order.[4] The Taxes and Fees typically are remitted and paid by the Debtors through checks and electronic transfers that are processed through their banks and other financial institutions or service providers. From time to time, the Debtors also receive tax credits for overpayments or refunds in respect of Taxes or Fees. The Debtors use these credits in the ordinary course of business to offset against future Taxes or Fees, or have such amounts refunded to the Debtors.

9. Although the Debtors believe that they are substantially current with respect to their payment of Taxes and Fees, the Debtors seek authority to make payments where: (a) Taxes and Fees have accrued or were incurred prepetition but were not paid prepetition, or were paid in an amount less than actually owed; (b) payments made prepetition by the Debtors were lost or otherwise not received in full by any of the Authorities, which may give rise to interest and other penalties; and (c) Taxes and Fees incurred for prepetition periods that may become due and payable

---

[3] The Debtors do not seek authority to pay prepetition amounts related to employment taxes and payroll withholding taxes under this Motion, but rather request such authority as part of the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses, and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief*, which has been filed concurrently herewith.

[4] Although Exhibit 1 to the Order is intended to be comprehensive, the Debtors may have inadvertently omitted Authorities from Exhibit 1. The Debtors request relief with respect to Taxes and Fees payable to all Authorities, regardless of whether such Authority is specifically identified on Exhibit 1.

after the commencement of these chapter 11 cases. In addition, for the avoidance of doubt, the Debtors seek authority to pay Taxes and Fees accrued or incurred postpetition and Taxes and Fees for so-called "straddle" periods.[5]

10.  Failure to pay the Taxes and Fees could materially disrupt the Debtors' business operations in several ways, including: (a) the Authorities may initiate audits of the Debtors, which would unnecessarily divert the Debtors' attention from the restructuring process; (b) the Authorities may attempt to suspend the Debtors' operations, file liens, seek to lift the automatic stay, and/or pursue other remedies that will harm the estates; and (c) in certain instances, the Debtors' directors and officers could be subject to claims of personal liability, which would likely distract those key individuals from their duties related to the Debtors' restructuring. Moreover, unpaid Taxes and Fees may result in fines and penalties, the accrual of interest, or both. Finally, the Debtors collect and hold certain outstanding tax liabilities in trust for the benefit of the applicable Authorities, and these funds may not constitute property of the Debtors' estates.

11.  The Debtors estimate that approximately $40 million in Taxes and Fees have accrued as of the Petition Date or may become due and owing (or arise in connection with a collateral or bond posting obligation), either in the ordinary course, in connection with audits, or in connection with resolutions or statutory "amnesty" provisions, after the Petition Date.

---

[5] Claims for so-called "straddle" Taxes and Fees may be entitled to administrative claim treatment pursuant to Section 503(b)(1)(B) of the Bankruptcy Code. Because the Debtors could be subject to late payment penalties and interest in the event they do not pay such "straddle" Taxes and Fees and a court ultimately concludes that such taxes are entitled to administrative treatment, the Debtors are seeking the authority to pay such "straddle" Taxes and Fees as they become due under applicable law. The Debtors reserve their rights with respect to the proper characterization of such "straddle" Taxes and Fees and to seek reimbursement of any portion of a payment that was made that ultimately is not entitled to administrative or priority treatment.

| Category | Description | Approximate Amount Accrued and Unpaid as of Petition Date | Approximate Amount Due During the First 21 Days |
|---|---|---|---|
| **Sales and Use Taxes** | The Debtors collect and remit sales, use, and related taxes to the Authorities in various states in connection with the sale of goods or services at store locations in those states and through shipment of products purchased through the Debtors' e-commerce website. Generally, the Debtors collect and remit sales and use taxes to the relevant Authorities on a monthly, quarterly, or annual basis. | $9,638,534 | $8,172,098 |
| **Property Taxes** | The Debtors remit property taxes directly to state and local Authorities on account of levies on real and personal property that the Debtors use in the operation of their business. To avoid the imposition of statutory liens on their real or personal property, the Debtors typically pay these taxes in the ordinary course of business on an annual basis. | $22,844,949 | $831,483 |
| **Income and Other Taxes** | The Debtors incur federal, state, and local income taxes in the ordinary course of operating their business. When due, the Debtors pay income taxes on a quarterly or annual basis. | $336,308 | $50,000 |
| **Annual Reporting and Other Fees** | The Debtors incur and remit annual (or, in some instances, biennial) reporting and other licensing fees including, but not limited to, liquor licensing fees in certain states in connection with chartering or operating in those states. | $10,844 | $407 |
| **Franchise and Privilege Taxes** | The Debtors remit certain taxes, fees, permitting charges, and related fees required to conduct business in the ordinary course pursuant to state and local laws. Most jurisdictions assess Franchise and Privilege Taxes on a quarterly or annual basis, in arrears. | $1,601,239 | $597,887 |
| **Audits** | Ongoing audit investigations in at least two state jurisdictions on account of tax returns and/or tax obligations in prior years. | $4,500,000 | N/A |
| | **Total** | $38,931,875 | $9,651,875 |

I.   **Sales and Use Taxes.**

12.   The Debtors incur, collect, and remit sales and use taxes to the Authorities in connection with the sale and purchase of goods and services (collectively, the "Sales and Use Taxes"). The Debtors sell a variety of goods and services online and at store locations in various states. Additionally, the Debtors purchase a variety of goods and services

7

necessary for the operation of their business from vendors that may not operate or be registered to collect tax in the jurisdiction where the goods are to be delivered or the services are to be performed. In these cases, applicable law generally requires the Debtors to pay use taxes on such purchases to the applicable Authorities. The Sales and Use Taxes come due in the ordinary course of business, and the Debtors generally remit Sales and Use Taxes on a monthly, quarterly, or annual basis, depending on the Authority.

13. In the 2019 fiscal year, the Debtors paid approximately $330 million in aggregate Sales and Use Taxes to the Authorities. As of the Petition Date, the Debtors estimate that they have incurred or collected approximately $9,638,534 in Sales and Use Taxes that have not been remitted to the relevant Authorities, $8,172,098 of which will become payable during the first 21 days following the Petition Date.

**II.     Property Taxes.**

14. State and local laws in the jurisdictions where the Debtors operate generally grant Authorities the power to levy property taxes against the Debtors' real and personal property (collectively, the "Property Taxes"). The Debtors pay Property Taxes on the properties that they own. In addition, the Debtors also lease the majority of properties where stores are operated. Many of these leases provide that the Debtors will remit applicable Property Taxes to the landlords, and the landlords then remit the Property Taxes to the applicable Authority.[6] In other instances, the Debtors pay the Property Taxes with respect to the applicable property directly to the applicable Authority. To avoid the imposition of statutory liens on their real and personal property and the

---

[6] In such instances, the due Property Taxes are recorded in the Debtors' books and records as payable to the particular landlord.

8

leased properties, the Debtors typically pay Property Taxes in the ordinary course of business on an annual basis.

15.     In the 2019 fiscal year, the Debtors paid approximately $35.6 million in Property Taxes to the applicable Authorities.  The Debtors estimate that they have accrued approximately $24,844,949 in Property Taxes as of the Petition Date, of which approximately $831,483 are currently payable or will become payable during the first 21 days following the Petition Date.

### III.    Income and Other Taxes.

16.     The Debtors are required to pay income, withholding, or similar taxes to federal, state, and local Authorities to operate their business in the applicable taxing jurisdictions (the "Income and Other Taxes").  The Debtors pay Income and Other Taxes on a quarterly or annual basis.[7]  In the 2019 fiscal year, the Debtors paid approximately $1.5 million in aggregate Income and Other Taxes to the Authorities.  As of the Petition Date, the Debtors estimate that they have accrued approximately $336,308 in Income and Other Taxes, of which approximately $50,000 is currently payable or will become payable during the first 21 days following the Petition Date.

### IV.    Annual Reporting and Other Fees.

17.     The Debtors incur and remit annual (or, in some instances, biennial) reporting and other licensing fees, including liquor licensing fees, in certain states in connection with chartering or operating in those states (the "Annual Reporting and Other Fees").  In the 2019 fiscal year, the Debtors paid approximately $8,000 in aggregate Annual Reporting and Other Fees to the Authorities.  As of the Petition Date, the Debtors estimate that they have accrued approximately

---

[7]   In certain jurisdictions, Franchise Taxes are included on the Debtors' state income tax return.  For the avoidance of doubt, the Debtors are seeking authority to continue remitting Franchise Taxes which are included on income tax returns in the ordinary course of business and consistent with past practices.

$10,844 in Annual Reporting and Other Fees, of which approximately $407 is currently payable or will become payable during the first 21 days following the Petition Date.

## V. Franchise and Privilege Taxes.

18. The Debtors are required to pay various state franchise taxes independent of income taxes in certain jurisdictions in order to continue conducting their business pursuant to state laws (the "Franchise Taxes"). State and local Authorities also impose taxes on the Debtors for, among other things, operating licenses and additional business privileges (together with the Franchise Taxes, the "Franchise and Privilege Taxes"). Failure to pay the Franchise and Privilege Taxes as they become due in the ordinary course could cause the Debtors to lose their ability to conduct business in the applicable jurisdictions. The Debtors typically pay the Franchise and Privilege Taxes on a quarterly or annual basis, depending on the Authority. In the 2019 fiscal year, the Debtors paid approximately $3 million in aggregate Franchise and Privilege Taxes to the Authorities. As of the Petition Date, the Debtors estimate that they have accrued approximately $1,601,239 on account of prepetition Franchise and Privilege Taxes, of which approximately $597,887 is currently payable or will become payable during the first 21 days following the Petition Date.

## VI. Audits.

19. The Debtors are currently subject to ongoing audit investigations and may be subject to further investigations on account of tax returns and/or tax obligations in prior years (collectively, the "Audits"). The Audits may result in additional prepetition Taxes and Fees being assessed against the Debtors during the pendency of these chapter 11 cases. As of the Petition Date, the Debtors estimate they owe approximately $4,500,000 in Taxes and Fees on account of 16 Audits (such additional Taxes and Fees, the "Assessments"). This figure also includes Assessments that may already exist but are being contested in appropriate judicial or administrative

proceedings, as well as amounts that may need to be posted as collateral in order to contest asserted Assessment amounts. In an abundance of caution, the Debtors seek authority, but not direction, to pay or remit tax obligations on account of the Audits as they arise in the ordinary course of the Debtors' business, including as a result of any resolutions of issues addressed in an audit, and to post collateral as required in order to contest asserted Assessment amounts. Nothing in the above table, this motion, or any related order constitutes or should be construed as an admission of liability by the Debtors with respect to any Audit or Assessment. Furthermore, the Debtors reserve the right to contest any Assessment, if any, claimed to be due as a result of the Audits.

## Basis for Relief

**I.        Certain of the Taxes and Fees May Not Be Property of the Debtors' Estates.**

20.     Section 541(d) of the Bankruptcy Code provides, in relevant part, that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtors' legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." Certain of the Taxes and Fees are collected or withheld by the Debtors on behalf of the applicable Authorities and are held in trust by the Debtors. *See, e.g.*, *Begier v. IRS*, 496 U.S. 53, 57–60 (1990) (holding that certain taxes are property held by the debtor in trust for another and, as such, do not constitute property of the estate). For example, all U.S. federal internal revenue tax withheld is considered to be held in a special fund in trust for the United States. *Id*. at 60. Because the Debtors may not have an equitable interest in funds held

on account of such "trust fund" taxes, the Debtors should be permitted to pay those funds to the Authorities as they come due.[8]

## II. Certain of the Taxes and Fees May Be Secured or Priority Claims Entitled to Priority Treatment Under the Bankruptcy Code.

21. Claims for certain of the Taxes and Fees may be priority claims entitled to payment before general unsecured claims. *See* 11 U.S.C. § 507(a)(8) (describing taxes entitled to priority treatment). Moreover, the Authorities may attempt to assess interest and penalties if such amounts are not paid. Claims entitled to priority status pursuant to section 507(a)(8) of the Bankruptcy Code must be paid in full in order to confirm a plan pursuant to section 1129(a)(9)(C) of the Bankruptcy Code. Therefore, payment of certain of the Taxes and Fees at this time only affects the timing of the payment for the amounts at issue and will not unduly prejudice the rights and recoveries of junior creditors.[9] Payment of such Taxes and Fees likely will give Authorities no more than what they otherwise would be entitled under a chapter 11 plan and will save the Debtors the potential interest expense, legal expense, and penalties that might otherwise accrue on Taxes and Fees during these chapter 11 cases.

22. It is also likely that at least some of the Taxes and Fees may be entitled to secured status with respect to the property owned by the Debtors. As secured claims, these Taxes and Fees would be entitled to priority treatment when the Debtors sell the property that these Taxes and Fees are recorded against or when the Debtors confirm a plan of reorganization. *See* 11 U.S.C. §§

---

[8] For the avoidance of doubt, the Debtors hereby request authority to pay the Taxes and Fees as provided herein regardless of whether such Taxes and Fees constitute trust fund obligations.

[9] A recent opinion of the United States Bankruptcy Court for the District of Delaware creates some uncertainty as to (1) whether prepetition Income Taxes related to the Debtors' current tax year should be entitled to administrative treatment under section 503(b)(1)(B)(i) of the Bankruptcy Code, and (2) whether prepetition Income Taxes, including those related to the Debtors' current tax year that do not receive administrative claim treatment, should be entitled to priority treatment under section 507(a)(8) of the Bankruptcy Code. *See In re Affirmative Holdings, Inc.*, No. 15-12136 (CSS) (Bankr. D. Del. Oct. 15, 2019) (classifying income tax claims arising from prepetition events as unsecured).

506(a), 1129(a)(9)(C); 1129(b)(2)(A) (requiring that any plan of reorganization "crammed down" over a class of secured creditors pay those creditors in full or allow those creditors to retain their liens). Thus, paying the Taxes and Fees only affects the timing of the payments and does not prejudice the rights of other creditors of the Debtors.

### III. Payment of the Taxes and Fees as Provided Herein Is a Sound Exercise of the Debtors' Business Judgment.

23. Section 363 of the Bankruptcy Code provides authority for the Debtors to pay Taxes and Fees as and when they come due. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." Under this section, a court may authorize the payment of certain prepetition claims where a debtor "show[s] that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

24. This standard is amply satisfied here. The Debtors' ability to pay the Taxes and Fees is critical to their continued and uninterrupted operations. If certain Taxes and Fees remain unpaid, the Authorities may seek to recover such amounts directly from the Debtors' directors, officers, or employees, thereby distracting such key personnel from the administration of these chapter 11 cases. *See*, *e.g.*, *Schmehl v. Helton*, 662 S.E.2d 697, 707 (W. Va. 2008) (noting that corporate officers may be held responsible for payment of certain corporate taxes); *In re Am. Motor Club, Inc.*, 139 B.R. 578, 581–83 (Bankr. E.D.N.Y. 1992) (stating that "[i]f the employer fails to

pay over the trust fund taxes, the IRS may collect an equivalent amount directly from officers or employees of the employer who are responsible for collecting the tax" and finding a director personally liable for unpaid taxes (citing *United States v. Energy Res. Co.*, 495 U.S. 545, 547 (1990)). Any collection action on account of such claims, and any potential ensuing liability, would distract the Debtors and their personnel to the detriment of all parties in interest. The dedicated and active participation of the Debtors' officers and employees is integral to the Debtors' continued operations and essential to the orderly administration and, ultimately, the success of these chapter 11 cases.

25. Furthermore, the Debtors' liability to pay the Taxes and Fees may ultimately result in increased tax liability for the Debtors if interest and penalties accrue on the Tax and Fee claims. Such a result would be contrary to the best interests of the Debtors' estates and all stakeholders. As noted above, many of the Taxes and Fees may be entitled to priority status pursuant to section 507(a)(8) of the Bankruptcy Code. As priority claims, these obligations must be paid in full before any general unsecured obligations of the Debtors may be satisfied. To the extent that the Debtors are not able to timely pay the prepetition Taxes and Fees, they may ultimately be required to pay those amounts with additional interest and penalties. The Debtors' failure to pay the prepetition Taxes and Fees as they come due thus may ultimately increase the amount of priority claims held by the Authorities against the Debtors' estates to the detriment of the Debtors' general unsecured creditors and other stakeholders. Accordingly, the Court should grant the Debtors authority to pay the prepetition Taxes and Fees as provided herein.

### **Processing of Checks and Electronic Fund Transfers Should Be Authorized**

26. The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral and debtor in possession financing. In addition, under the

Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Taxes and Fees. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

## Emergency Consideration

27.     Pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm," and Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this motion. The Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this motion on an emergency basis.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

28.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Reservation of Rights

29. Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## Notice

30. The Debtors will provide notice of this motion to: (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Term Loan Lender Group; (d) counsel to the

Noteholder Group; (e) the United States Attorney's Office for the Southern District of Texas; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the state attorneys general for states in which the Debtors conduct business; (i) the Authorities; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court enter an order, granting the relief requested in this motion and granting such other and further relief as is appropriate under the circumstances.

Houston, Texas
May 7, 2020

/s/ *Matthew D. Cavenaugh*

**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Jennifer F. Wertz (TX Bar No. 24072822)
Kristhy M. Peguero (TX Bar No. 24102776)
Veronica A. Polnick (TX Bar No. 24079148)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:   (713) 752-4200
Facsimile:   (713) 752-4221
Email:   mcavenaugh@jw.com
   jwertz@jw.com
   kpeguero@jw.com
   vpolnick@jw.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anup Sathy, P.C. (*pro hac vice* pending)
Chad J. Husnick, P.C. (*pro hac vice* pending)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:   anup.sathy@kirkland.com
   chad.husnick@kirkland.com

-and-

Matthew C. Fagen (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:   matthew.fagen@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**Certificate of Service**

    I certify that on May 7, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                           */s/ Matthew D. Cavenaugh*
                                           Matthew D. Cavenaugh