## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| NEIMAN MARCUS GROUP LTD LLC, *et al.,*[1] | ) Case No. 20-32519 (DRJ) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) (Emergency Hearing Requested) |

## DEBTORS' EMERGENCY
## MOTION SEEKING ENTRY OF AN ORDER
## (I) RESTATING AND ENFORCING THE WORLDWIDE
## AUTOMATIC STAY, ANTI-DISCRIMINATION PROVISIONS,
## AND *IPSO FACTO* PROTECTIONS OF THE BANKRUPTCY CODE,
## (II) PERMITTING THE DEBTORS TO MODIFY THE AUTOMATIC
## STAY IN THEIR SOLE DISCRETION TO PROCEED WITH LITIGATION
## OR CONTESTED MATTERS COMMENCED PREPETITION, (III) APPROVING
## THE FORM AND MANNER OF NOTICE, AND (IV) GRANTING RELATED RELIEF

EMERGENCY RELIEF HAS BEEN REQUESTED.  A HEARING WILL BE CONDUCTED ON THIS MATTER ON MAY 8, 2020, AT 1:00 P.M. (CENTRAL TIME) IN COURTROOM 400, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TEXAS 77002.  IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING.  OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

RELIEF IS REQUESTED NOT LATER THAN MAY 8, 2020.

PLEASE NOTE THAT ON MARCH 24, 2020, THROUGH THE ENTRY OF GENERAL ORDER 2020-10, THE COURT INVOKED THE PROTOCOL FOR EMERGENCY PUBLIC HEALTH OR SAFETY CONDITIONS.

IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Neiman Marcus Group LTD LLC (9435); Bergdorf Goodman Inc. (5530); Bergdorf Graphics, Inc. (9271); BG Productions, Inc. (3650); Mariposa Borrower, Inc. (9015); Mariposa Intermediate Holdings LLC (5829); NEMA Beverage Corporation (3412); NEMA Beverage Holding Corporation (9264); NEMA Beverage Parent Corporation (9262); NM Bermuda, LLC (2943); NM Financial Services, Inc. (2446); NM Nevada Trust (3700); NMG California Salon LLC (9242); NMG Florida Salon LLC (9269); NMG Global Mobility, Inc. (0664); NMG Notes PropCo LLC (1102); NMG Salon Holdings LLC (5236); NMG Salons LLC (1570); NMG Term Loan PropCo LLC (0786); NMG Texas Salon LLC (0318); NMGP, LLC (1558); The Neiman Marcus Group LLC (9509); The NMG Subsidiary LLC (6074); and Worth Avenue Leasing Company (5996).  The Debtors' service address is:  One Marcus Square, 1618 Main Street, Dallas, Texas 75201.

AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S REGULAR DIAL-IN NUMBER. THE DIAL-IN NUMBER IS +1(832) 917-1510.  YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGE S.  YOU WILL BE ASKED TO KEY IN THE CONFERENCE ROOM NUMBER.  JUDGE JONES' CONFERENCE ROOM NUMBER IS 205691

PARTIES MAY PARTICIPATE IN ELECTRONIC HEARINGS BY USE OF AN INTERNET CONNECTION.  THE INTERNET SITE IS WWW.JOIN.ME.  PERSONS CONNECTING BY MOBILE DEVICE WILL NEED TO DOWNLOAD THE FREE JOIN.ME APPLICATION.

ONCE CONNECTED TO WWW.JOIN.ME, A PARTICIPANT MUST SELECT "JOIN A MEETING".  THE CODE FOR JOINING THIS HEARING BEFORE JUDGE JONES IS "JUDGEJONES".  THE NEXT SCREEN WILL HAVE A PLACE FOR THE PARTICIPANT'S NAME IN THE LOWER LEFT CORNER.  PLEASE COMPLETE THE NAME AND CLICK "NOTIFY"

HEARING APPEARANCES SHOULD BE MADE ELECTRONICALLY AND IN ADVANCE OF THE HEARING.  YOU MAY MAKE YOUR ELECTRONIC APPEARANCE BY:

1) GOING TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE;

2) SELECTING "BANKRUPTCY COURT" FROM THE TOP MENU;

3) SELECTING JUDGES' PROCEDURES AND SCHEDULES;

4) SELECTING "VIEW HOME PAGE" FOR JUDGE DAVID R. JONES;

5) UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE;"

6) SELECT NEIMAN MARCUS GROUP LTD LLC, ET AL. FROM THE LIST OF ELECTRONIC APPEARANCE LINKS, AND

7) AFTER SELECTING NEIMAN MARCUS GROUP LTD LLC, ET AL. FROM THE LIST, COMPLETE THE REQUIRED FIELDS AND HIT THE "SUBMIT" BUTTON AT THE BOTTOM OF THE PAGE.

SUBMITTING YOUR APPEARANCE ELECTRONICALLY IN ADVANCE OF THE HEARING WILL NEGATE THE NEED TO MAKE AN APPEARANCE ON THE RECORD AT THE HEARING

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:[2]

## Relief Requested

1.      The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"):  (a) restating and enforcing the worldwide automatic stay, anti-discrimination

---

[2]     The facts and circumstances supporting this motion are set forth in the *Declaration of Mark Weinsten, Chief Restructuring Officer of Neiman Marcus Group LTD LLC, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed substantially contemporaneously with the Debtors' voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on May 7, 2020 (the "Petition Date") and incorporated by reference herein.  Capitalized terms used but not immediately defined in this motion shall have the meanings assigned to them elsewhere in this motion or in the First Day Declaration, as applicable.

provisions, and *ipso facto* protections of the Bankruptcy Code; (b) modifying the automatic stay, to the extent the Debtors deem appropriate in their sole discretion, to proceed with litigation or contested matters commenced before the Petition Date (as defined herein); (c) approving the form and manner of notice related thereto, substantially in the form attached as Exhibit 1 to the Order (the "Notice"); and (d) granting related relief.

2.      The Debtors further seek authority, but not direction, to translate this motion, the Order, and/or the Notice to better inform creditors, governmental units, and interested parties of the relief requested herein.

## Jurisdiction and Venue

3.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The bases for the relief requested herein are sections 105(a), 362, 365, and 525 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and rules 1075-1 and 9013-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "Local Rules").

## Background

6.      For over 100 years, the Debtors have been the leader in retail luxury, innovation, and customer experiences.  Since opening in 1907 with just one store in Dallas, Texas, the Debtors have strategically grown to 67 stores across the United States, including their marquee luxury Neiman Marcus and Bergdorf Goodman locations, Horchow e-commerce website, and off-price

3

Last Call stores.  Each Neiman Marcus and Bergdorf Goodman store offers a distinctive selection of apparel, handbags, shoes, cosmetics, and precious and designer jewelry from premier luxury and fashion designers.  Horchow offers luxury home furnishings and accessories, and Last Call provides a more affordable option for price-sensitive yet fashion-minded customers.  To complement its store footprint, NMG operates the largest luxury e-commerce platform in the world.  More than 30 percent of NMG's total annual revenue is from online sales.  The Debtors' non-Debtor affiliates own and operate a single store under the THERESA brand and an e-commerce platform under the Mytheresa brand.  As of the Petition Date, the Debtors have funded-debt obligations of approximately $5.5 billion.

7.     The Debtors commenced these chapter 11 cases in the face of the unprecedented global COVID-19 pandemic with the goal of stabilizing the Debtors' business and maximizing the value of the enterprise for stakeholders.  In the face of these catastrophic headwinds, the Debtors have obtained financial commitments from key stakeholders to enable the Debtors to satisfy their postpetition obligations and beyond, and support from these same key stakeholders for a pre-negotiated transaction pursuant to the Restructuring Support Agreement, filed contemporaneously herewith.  The Restructuring Support Agreement includes commitments from holders of over 77% of the Debtors' Extended Term Loans, over 99% of the Debtors' Second Lien Notes, and over 69% of the Debtors' Third Lien Notes to equitize their debt and to backstop the full amount of a proposed $675 million new-money debtor-in-possession financing facility and a $750 million committed exit financing facility.  Through the Debtors' diligent and timely efforts to implement the transaction, the Debtors seek to deleverage their balance sheet by approximately $4 billion and emerge from chapter 11 as a stronger, better-capitalized enterprise.

8.     On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors have concurrently filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

### The Debtors' Global Supply Network

9.     As described in the First Day Declaration, the Debtors' business operations are conducted worldwide with significant assets moving through international waters at any given time.  A substantial majority of the Debtors' merchandise is delivered to the Debtors from various designers and is manufactured in numerous locations, including Europe and the United States and, to a lesser extent, China, Mexico and South America.  As a result, the Debtors have many foreign creditors and counterparties to contracts in various ports and jurisdictions that may not be familiar with the restrictions of the Bankruptcy Code.  Many of these creditors do not transact business on a regular basis with companies that have filed for chapter 11 and therefore may be unfamiliar with the scope of a debtor in possession's authority to conduct its business.  These creditors and counterparties may also be unfamiliar with the automatic stay and other provisions of the Bankruptcy Code.

10.    Thus, various interested parties may attempt to seize assets located outside of the United States to the detriment of the Debtors, their estates, and creditors, or take other actions in contravention of the automatic stay of section 362 of the Bankruptcy Code.  Further, certain of the Debtors' merchandise requires extensive vendor specialization and a long production lead-time

because such merchandise is produced according to the Debtors' specifications.  Even a temporary

halt in production and delivery, therefore, could cause inventory to miss relevant selling seasons.

This merchandise would then have to be sold at steep discounts, negatively affecting the value of

the Debtors' estates.

11.     In addition, upon learning of the Debtors' bankruptcy, counterparties to leases and

executory contracts may attempt to terminate those leases or contracts pursuant to *ipso facto*

provisions in contravention of section 365 of the Bankruptcy Code.

12.     Accordingly, by this Motion, the Debtors seek entry of an order, pursuant to

sections 105(a), 362, and 365 of the Bankruptcy Code, enforcing and restating the worldwide

automatic stay and *ipso facto* provisions of the Bankruptcy Code.  The Debtors' intent is that a

specific and explicit order from this Court will protect the Debtors from improper actions by

foreign creditors and also from actions by unwitting parties in foreign jurisdictions who are not

familiar with the Bankruptcy Code or its protections and who might otherwise violate those

sections.

13.     The Debtors seek the relief requested herein out of an abundance of caution and to

assist them in better informing non-U.S. creditors of the broad protections offered by

the Bankruptcy Code.  For the avoidance of doubt, the Debtors do <u>not</u> seek to expand or enlarge

the rights afforded to them under the Bankruptcy Code with this motion.  Instead, the Debtors seek

to affirm those rights and believe that an order from this Court will help guard the Debtors against

improper actions taken by, and provide clarity for, non-U.S. parties in interest.

**Basis for Relief**

I. **Relief Should Be Granted Hereunder to Better Enforce the Automatic Stay, Anti-Discrimination, and *Ipso Facto* Provisions of the Bankruptcy Code.**

14. As a result of the commencement of these chapter 11 cases, and by operation of section 362 of the Bankruptcy Code, the automatic stay enjoins all persons from, among other things, taking any action to obtain possession of property of the estate or to exercise control over property of the estate. *See* 11 U.S.C. § 362(a)(3). The injunction contained in section 362 of the Bankruptcy Code is a core protection for debtors, providing them with a "breathing spell from [their] creditors" that is essential to the Debtors' ability to reorganize successfully. *Browning v. Navarro*, 743 F.2d 1069, 1083 (5th Cir. 1984) (citations omitted); *see also In re Commonwealth Oil Ref. Co., Inc.*, 805 F.2d 1175, 1182 (5th Cir. 1986) (same); *In re Timbers of Inwood Forest Assocs., Ltd.*, 793 F.2d 1380, 1409 (5th Cir. 1986), *on reh'g*, 808 F.2d 363 (5th Cir. 1987), *aff'd sub nom. United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988) (same).

15. Given its fundamental importance to a debtor's reorganization, courts broadly construe the Bankruptcy Code's automatic stay provisions. *See In re Padilla*, 379 B.R. 643, 662 (Bankr. S.D. Tex. Aug. 3, 2007); *In re Cont'l Airlines Corp.*, 50 B.R. 342, 350 (S.D. Tex. 1985), *aff'd*, 790 F.2d 35 (5th Cir. 1986). As such, the automatic stay has been held to preclude unilateral actions by non-debtor parties to terminate contracts without court order, protecting a debtor's property and contracts wherever located and by whoever held. *See, e.g.*, *Bonneville Power Admin. v. Mirant Corp. (In re Mirant)*, 440 F.3d 238 (5th Cir. 2006) (holding that automatic stay prohibited termination of debtor's contract without further relief).

16. Furthermore, section 362 of the Bankruptcy Code applies worldwide. *See In re Elcoteq, Inc.*, 521 B.R. 189, 198–99 (Bankr. N.D. Tex. Oct. 31, 2014) ("[B]y including property

of the debtor 'wherever located' in the bankruptcy estate, Congress explicitly indicated its intent for property located outside the territory of the United States to be considered property of the estate and thus protected by the automatic stay."); *Secs. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Bernard L. Madoff Inv. Secs. LLC)*, 2012 WL 1570859 (S.D.N.Y. May 4, 2012) (upholding extraterritorial enforcement of the automatic stay and injunction barring foreign creditor's lawsuit); *Nakash v. Zur (In re Nakash)*, 190 B.R. 763, 768 (Bankr. S.D.N.Y. 1996). The Court has authority to fashion appropriate remedies for violations of the automatic stay. *See, e.g.*, 11 U.S.C. §§ 105(a); 362(k); *see also In re Gen. Homes Corp.*, 181 B.R. 870, 876 (Bankr. S.D. Tex. Oct. 3, 1994) (holding that a debtor may pursue remedies regarding a stay violation by contempt motion pursuant to Bankruptcy Rules 9020); *In re All Trac Transp., Inc.*, 310 B.R. 570, 573 (Bankr. N.D. Tex. Jun. 8, 2004), aff'd, 2005 WL 5012640 (N.D. Tex. July 28, 2005), aff'd, 223 F. App'x 299 (5th Cir. 2006) (holding that violation of automatic stay may be sanctioned by civil contempt proceeding pursuant to section 362 of the Bankruptcy Code); *see also In re Repine*, 536 F.3d 512, 522 (5th Cir. 2008) (holding that a debtor could collect attorney's fees incurred in prosecuting a stay violation).

17.     In addition to the automatic stay, additional provisions of the Bankruptcy Code provide important protections to the Debtors.  Section 525 of the Bankruptcy Code prohibits governmental units from, among other things:  (a) denying, revoking, suspending, or refusing to renew any license, permit, charter, franchise, or other similar grant to the Debtors; (b) placing conditions upon such a grant to the Debtors; or (c) discriminating against the Debtors with respect to such a grant, solely because the Debtors are debtors under the Bankruptcy Code, may have been insolvent before the commencement of these chapter 11 cases, or are insolvent during the pendency of these chapter 11 cases.  *See In re Exquisito Servs., Inc.*, 823 F.2d 151, 155 (5th Cir. 1987)

("[T]he impetus behind section 525(a) is to prevent governmental units from frustrating the policies of the Bankruptcy Code by discriminating against persons seeking relief under that Code.").

18.     Additionally,   section   365(e)(1)(B)   of   the   Bankruptcy   Code   prohibits counterparties to debtor contracts from terminating or modifying such contracts, including rights or obligations thereunder, solely on account of a debtor's bankruptcy filing—invalidating such "*ipso facto*" provisions.  11 U.S.C. § 365.  Section 365 of the Bankruptcy Code also prohibits, absent court approval, third parties from enforcing the terms of a contract against the Debtors. *See N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531–32 (1984).  Third parties must thus continue to perform under executory contracts until they are assumed or rejected.  *See Lauter v. Citgo Petroleum Corp.*, 2018 WL 801601, at *14 (S.D. Tex. Feb. 8, 2018) ("Between the date a bankruptcy petition is filed and an executory contract is assumed or rejected under § 365(a), the contract continues to exist, enforceable by the debtor, but not against the debtor.")*; see also In re Gunter Hotel Associates*, 96 B.R. 696, 700 (Bankr. W.D. Tex. Dec. 22, 1988) ("[A]n executory contract under chapter 11 is not enforceable against the debtor party, but is enforceable against the nondebtor party prior to the debtor's assumption or rejection of the contract."); *In re Mirant Corp.,* 303 B.R. 319, 328 (Bankr. N.D. Tex. Dec. 23, 2003) ("[E]ven if a contract is not property of the estate until assumption, a debtor has rights under the contract which are property of the estate and so are protected by the automatic stay from actions of other parties."); *In re El Paso Refinery, L.P.*, 196 B.R. 58, 71 (Bankr. W.D. Tex. 1996) ("Pending the debtor's assumption or rejection of an assumable executory contract, the non-debtor is bound by the contract's terms.").

19.     Pursuant to section 105(a) of the Bankruptcy Code, the Court may issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11

U.S.C. § 105(a). Section 105(a) of the Bankruptcy Code therefore authorizes a bankruptcy court to issue injunctions or take other necessary steps in aid of its jurisdiction. *See, e.g.*, *United States v. Sutton*, 786 F.2d 1305, 1307 (5th Cir. 1986); *In re Roja*s, 2009 WL 2496807, at *7 (Bankr. S.D. Tex. Aug. 12, 2009). Such orders are appropriate where, as here, they are essential to the debtor's reorganization efforts and do not burden creditors. *See Matter of Jones*, 966 F.2d 169, 173 (5th Cir. 1992) (holding that, as courts of equity, bankruptcy courts are empowered to invoke equitable principles to achieve fairness and justice in the reorganization process).

20. The application of the protections afforded a debtor by sections 362, 365, and 525 of the Bankruptcy Code is automatic upon the filing of a chapter 11 petition. *See* 11 U.S.C. § 362(a)(3) ("[A] petition filed under section 301 . . . of this title . . . operates as a stay, applicable to all entities, of, [among other things,] any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."); 11 U.S.C. § 365(e)(1) ("[A]ny right or obligation under [an executory contract or unexpired lease of the debtor] may not be terminated or modified, at any time after the commencement of the case solely because" of an *ipso facto* provision); 11 U.S.C. § 525(a) ("[A governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against [. . .] a person that is or has been a debtor under this title.").

21. Despite the automatic effect of these statutes, however, non-U.S. creditors unfamiliar with the Bankruptcy Code may attempt to proceed against the Debtors' property outside the United States even after the Debtors file voluntary petitions triggering the automatic relief provided under the Bankruptcy Code. Such unilateral self-help, litigation, or collection actions could adversely impact the Debtors' ordinary course operations, thereby jeopardizing the Debtors'

reorganization and resulting in irreparable harm to the estates and interested parties.  Although the automatic stay, anti-discrimination provisions, and *ipso facto* protections are self-executing on the Petition Date, the Debtors believe that a Court order is necessary and appropriate to better enforce creditor compliance with the Bankruptcy Code.  To that end, the Debtors submit that service of the Notice in appropriate circumstances will advance the efficient administration of these chapter 11 cases.

22.     Granting the relief requested herein will better enable the Debtors to inform non-U.S. creditors and interested parties of debtor protections that may be unfamiliar to them.  It will help ensure that (a) parties to unexpired leases and executory contracts with the Debtors continue to perform their duties and obligations thereunder, (b) creditors are less likely to seize the Debtors' assets or take other actions violating the automatic stay, and (c) governmental units do not unfairly discriminate or take action against the Debtors violating the Bankruptcy Code. The relief requested herein will facilitate the Debtors' orderly transition into chapter 11 and minimize the disruption of their businesses.[3]

## II.     The Automatic Stay Should Be Modified in the Debtors' Sole Discretion to Continue Litigating Certain Contested Matters.

23.     The Debtors further seek authority, pursuant to sections 105(a), 362(a), and 362(d) of the Bankruptcy Code, to modify the automatic stay, solely to the extent the Debtors deem appropriate in their sole discretion, to proceed with litigation or contested matters commenced before the Petition Date—many of which are located in jurisdictions outside the United States and involve non-Debtors.  *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs. Ltd.*, 484 U.S. 365, 370 (1988) (holding that parties in interest may file for relief from the automatic stay);

---

[3]     As necessary, the Debtors anticipate translating this motion, the Order, and/or the Notice in order to better inform creditors, governmental units, and interested parties of the relief requested herein.

*In re Cypresswood Land Partners, I*, 409 B.R. 396, 415 (Bankr. S.D. Tex. Jan. 20, 2009) (noting

that debtors are "parties in interest" as set forth pursuant to section 1109 of the Bankruptcy Code);

*In re Buccaneer Res., LLC*, 2015 WL 8527424, at *4 (Bankr. S.D. Tex. Dec. 10, 2015) (referencing

a prior bankruptcy court order granting debtor's motion to modify the automatic stay to permit

their insurers to advance certain defense costs).

24.     Cause exists to modify the stay in these limited actions because such relief will

permit the Debtors to choose to continue defending actions and contested matters that, for instance,

have been the subject of ongoing litigation or other proceedings in venues outside the United States

that are close to final resolution.  Such relief would permit the Debtors to liquidate certain claims—

which, under the RSA, would be paid in full in most instances—more efficiently and in accordance

with applicable law.

### Emergency Consideration

25.     Pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within

the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary

to avoid immediate and irreparable harm," and Local Rule 9013-1, the Debtors respectfully request

emergency consideration of this motion.  The motion requests relief from procedural rules and

requirements that pertain to matters of immediate significance or which involve deadlines sooner

than 21 days after the Petition Date.  The relief will save costs and avoid undue administrative

burden and confusion only if granted before the applicable deadlines.  Accordingly, the Debtors

submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule

6003 and, therefore, respectfully request that the Court approve the relief requested in this motion

on an emergency basis.

## **Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

26.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## **Notice**

27.     The Debtors will provide notice of this motion to:  (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Term Loan Lender Group; (d) counsel to the Noteholder Group; (e) the United States Attorney's Office for the Southern District of Texas; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the state attorneys general for states in which the Debtors conduct business; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court enter an order, granting the relief requested in this motion and granting such other and further relief as is appropriate under the circumstances.

Houston, Texas
May 7, 2020

/s/ *Matthew D. Cavenaugh*

| | |
|---|---|
| **JACKSON WALKER L.L.P.** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Jennifer F. Wertz (TX Bar No. 24072822) | Anup Sathy, P.C. (*pro hac vice* pending) |
| Kristhy M. Peguero (TX Bar No. 24102776) | Chad J. Husnick, P.C. (*pro hac vice* pending) |
| Veronica A. Polnick (TX Bar No. 24079148) | 300 North LaSalle Street |
| 1401 McKinney Street, Suite 1900 | Chicago, Illinois 60654 |
| Houston, Texas 77010 | Telephone:    (312) 862-2000 |
| Telephone:    (713) 752-4200 | Facsimile:    (312) 862-2200 |
| Facsimile:    (713) 752-4221 | Email:    anup.sathy@kirkland.com |
| Email:    mcavenaugh@jw.com | chad.husnick@kirkland.com |
| jwertz@jw.com | |
| kpeguero@jw.com | -and- |
| vpolnick@jw.com | |
| | Matthew C. Fagen (*pro hac vice* pending) |
| *Proposed Co-Counsel to the Debtors* | 601 Lexington Avenue |
| *and Debtors in Possession* | New York, New York 10022 |
| | Telephone:    (212) 446-4800 |
| | Facsimile:    (212) 446-4900 |
| | Email:    matthew.fagen@kirkland.com |
| | |
| | *Proposed Co-Counsel to the Debtors* |
| | *and Debtors in Possession* |

**<u>Certificate of Service</u>**

I certify that on May 7, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh
