IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| NEIMAN MARCUS GROUP LTD LLC, *et al.*,[1] | ) ) ) | Case No. 20-32519 (DRJ) |
| Debtors. | ) ) ) | (Jointly Administered) |

**DEBTORS' APPLICATION TO EMPLOY AND RETAIN
PERELLA WEINBERG PARTNERS LP AS FINANCIAL ADVISOR AND INVESTMENT
BANKER TO THE DISINTERESTED MANAGERS
OF NEIMAN MARCUS GROUP LTD LLC NUNC PRO TUNC TO THE PETITION DATE**

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**TO THE HONORABLE DAVID R. JONES**:

Neiman Marcus Group LTD LLC ("NMG LTD") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") respectfully file this application (the "Application") for an order (the "Order"), in the form attached hereto as **Exhibit A**, approving the employment and retention of Perella Weinberg Partners LP ("PWP"), as financial advisor and investment banker to the disinterested managers (the "Disinterested Managers") of Neiman

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Neiman Marcus Group LTD LLC (9435); Bergdorf Goodman Inc. (5530); Bergdorf Graphics, Inc. (9271); BG Productions, Inc. (3650); Mariposa Borrower, Inc. (9015); Mariposa Intermediate Holdings LLC (5829); NEMA Beverage Corporation (3412); NEMA Beverage Holding Corporation (9264); NEMA Beverage Parent Corporation (9262); NM Bermuda, LLC (2943); NM Financial Services, Inc. (2446); NM Nevada Trust (3700); NMG California Salon LLC (9242); NMG Florida Salon LLC (9269); NMG Global Mobility, Inc. (0664); NMG Notes PropCo LLC (1102); NMG Salon Holdings LLC (5236); NMG Salons LLC (1570); NMG Term Loan PropCo LLC (0786); NMG Texas Salon LLC (0318); NMGP, LLC (1558); The Neiman Marcus Group LLC (9509); The NMG Subsidiary LLC (6074); and Worth Avenue Leasing Company (5996). The Debtors' service address is: One Marcus Square, 1618 Main Street, Dallas, Texas 75201.

Marcus Group LTD LLC ("NMG LTD"), *nunc pro tunc* to the Petition Date (as defined herein). In support of this Application, the Debtors rely upon and incorporate by reference the Declaration of Bruce Mendelsohn (the "Mendelsohn Declaration"), which is attached hereto as **Exhibit B**. In further support of this Application, the Debtors respectfully represent:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a), 327(a), 329, 330, 331, 1107, and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1, 2016, and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules").

## BACKGROUND

4. On May 7, 2020 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 23]. No chapter 11 trustee or examiner has been appointed in these cases. On May 19, 2020, the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 455].

**RELIEF REQUESTED**

5.  By this Application, the Debtors seek authority to retain and employ PWP as financial advisor and investment banker to the Disinterested Managers of the Debtors, *nunc pro tunc* to the Petition Date, in accordance with the terms and conditions set forth in that certain amended and restated engagement letter between the Disinterested Managers, the Debtors and PWP effective as of May 7, 2020 (the "Engagement Letter"), a copy of which is attached hereto as **Exhibit C** and incorporated herein by reference.

**PWP'S QUALIFICATIONS**

6.  The Disinterested Managers have determined that it is necessary to engage a financial advisor and investment banker, with knowledge of the Debtors' industry and business and with experience in the chapter 11 process, to advise the Disinterested Managers with respect to the restructuring and these chapter 11 cases. The Debtors propose to retain and employ PWP as financial advisor and investment banker to the Disinterested Managers to assist them in carrying out their duties to NMG LTD.

7.  PWP is a financial services firm providing corporate advisory and asset management services to clients around the world, with offices in Austin, Calgary, Chicago, Denver, Houston, London, Los Angeles, Munich, New York, Paris, and San Francisco. PWP's corporate advisory practice is focused on providing clients with advice related to mergers and acquisitions and financial restructurings. PWP's mergers and acquisitions practice advises both public and private companies. Its financial restructuring practice works with companies, investors, and other parties in interest in turn-around and distressed situations. In addition, an affiliate of PWP has an asset management business, which offers multiple investment vehicles focused on alternative investment products.

8. PWP and its professionals have extensive experience working with financially troubled companies across a variety of industries in complex financial restructurings, both out of court and in chapter 11 cases. Major in-court restructurings in which PWP has been involved include: *In re Bristow Group, Inc.*, Case No. 19-32713 (DRJ) (Bankr. S.D. Tex.); *In re Halcón Resources Corporation*, Case No. 19-34446 (DRJ) (Bankr. S.D. Tex.); *In re Fieldwood Energy LLC*, Case No. 18-30648 (DRJ) (Bankr. S.D. Tex.); *In re Seadrill Limited*, Case No. 17-60079 (DRJ) (Bankr. S.D. Tex.); *In re CARBO Ceramics Inc.*, Case No. 20-31973 (MI) (Bankr. S.D. Tex.); *In re Alta Mesa Resources, Inc.*, Case No. 19-35133 (MI) (Bankr. S.D. Tex.); *In re Approach Resources Inc.*, Case No. 19-36444 (MI) (Bankr. S.D. Tex.); *In re Legacy Reserves Inc.*, Case No. 19-33395 (MI) (Bankr. S.D. Tex.); *In re Hexion Holdings LLC*, Case No. 19-10684 (KG) (Bankr. D. Del.); *In re Windstream Holdings, Inc.*, Case No. 19-22312 (RDD) (Bankr. S.D.N.Y.); *In re PG&E Corporation and Pacific Gas and Electric Company*, Case No. 19-30088 (DM) (Bankr. N.D. Cal.); *In re iHeartMedia, Inc.*, Case No. 18-31274 (MI) (Bankr. S.D. Tex.); *In re Gastar Exploration Inc.*, Case No. 18-36057 (MI) (Bankr. S.D. Tex.); *In re EV Energy Partners, L.P.*, Case No. 18-10814 (CSS) (Bankr. D. Del.); *In re Memorial Production Partners LP*, Case No. 17-30262 (MI) (Bankr. S.D. Tex.); *In re Pacific Drilling S.A.*, Case No. 17-13193 (MEW) (Bankr. S.D.N.Y.); *In re Ocean Rig UDW Inc.*, Case No. 17-10736 (MG) (Bankr. S.D.N.Y.); *In re Bonanza Creek Energy, Inc.*, Case No. 17-10015 (KJC) (Bankr. D. Del); *In re Breitburn Energy Partners LP*, Case No. 16-11390 (SMB) (Bankr. S.D.N.Y.); *In re Chaparral Energy, Inc.*, Case No. 16-11144 (LSS) (Bankr. D. Del.); *In re Stone Energy Corp.*, Case No. 16-36390 (MI) (Bankr. S.D. Tex.); *In re Atlas Resource Partners, L.P.,* Case No. 16-12149 (SHL) (Bankr. S.D.N.Y); and *In re Pacific Sunwear of California, Inc.*, Case No. 16-10882 (LSS) (Bankr. D. Del.). PWP has also been involved with the Title III case, *In re The*

*Financial Oversight and Management Board for Puerto Rico*, Case No. 17-03283 (D.P.R.). In addition, PWP's professionals have provided services in connection with the out-of-court restructurings of numerous companies, including Algeco Group; Blackhawk Mining; California Resources Corporation; Danaos Corporation; International Automotive Components Group; Key Energy Services; Medical Depot Holdings; Pernix Therapeutics; ProServ; Savers; Sprint Industrial Holdings; and WeWork Companies.

9. On May 7, 2020, the Disinterested Managers employed PWP to provide financial advisory and investment banking services to the Disinterested Managers. The Disinterested Managers have been delegated broad authority to act on behalf of NMG LTD in these cases with respect to matters in which a conflict exists between NMG LTD and its shareholders and affiliates or its managers, directors and officers, including authority to investigate claims that NMG LTD may possess and bind NMG LTD with respect to such matters. As of the date hereof, the Disinterested Managers have exercised this authority by asking PWP to assist the Disinterested Managers and their counsel with an in-depth evaluation and investigation of prepetition transactions relating to the Debtors' non-debtor affiliate, MyTheresa, continue to evaluate the release provisions contained in the Debtors' Restructuring Support Agreement, and to actively monitor the Debtors' cases.

10. Because of PWP's substantial restructuring experience and expertise, and its work with the Disinterested Managers to date, the Debtors believe that PWP is well-qualified to represent the Disinterested Managers in an efficient and timely manner.

11. By this Application, the Debtors request authority to retain PWP pursuant to section 327(a) of the Bankruptcy Code to provide financial advisory and investment banking services to the Disinterested Managers with respect to Conflict Matters.

**SERVICES TO BE PROVIDED**

12.     The terms and conditions of the Engagement Letter were negotiated at arms' length between the Disinterested Managers and PWP and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement.

13.     As stated in the Engagement Letter, subject to the Court's approval, the Disinterested Managers have retained Willkie Farr & Gallagher and PWP to represent them in matters in which a conflict exists or may exist between NMG LTD and its shareholders and affiliates or its managers, directors and officers. As of the Petition Date, the Disinterested Managers have requested PWP to investigate any and all causes of action that NMG LTD and its subsidiaries may have against entities related to the Debtors, non-debtor parent, Neiman Marcus Group, Inc. and the Debtors' private equity sponsors, including potential claims related to the entities commonly referred to as MyTheresa. In addition, PWP will provide the following financial advisory and investment banking services to the Disinterested Managers, to the extent requested by the Disinterested Managers:

(i)     *General Financial Advisory and Investment Banking Services.*

  (a)   Continue to become familiar with the business, operations, properties, financial condition and prospects of the Debtors;

  (b)   review the Debtors' financial condition and outlook;

  (c)   assist in reviewing financial data and prepare presentations to the Disinterested Managers;

  (d)   attend meetings of the Debtors' board and board committees with respect to matters on which we have been engaged to advise the Disinterested Managers; and

  (e)   provide such other advisory services as are customarily provided in connection with the analysis of any of the transactions contemplated by the Engagement Letter, as requested and mutually agreed.

(ii) *Restructuring Services*.

To the extent requested by the Disinterested Managers, PWP will:

(a) analyze various Restructuring[2] scenarios and the potential impact of these scenarios on the value of the Debtors, and the recoveries of those stakeholders impacted by the Restructuring;

(b) provide the Disinterested Managers with strategic advice regarding restructuring or refinancing the Debtors' obligations;

(c) at the direction of the Disinterested Managers, assist the Debtors and/or participate in negotiations with entities or groups affected by the Restructuring;

(d) continue to evaluate the Debtors' 2017 designation of MyTheresa and 2018 transfer of MyTheresa, analyze any causes of action related thereto, and assist in any litigation or negotiation of any settlement discussions related to the transfer;

(e) assist the Disinterested Managers in the investigation and evaluation of any causes of action that may exist related to Neiman Marcus Group LTD LLC or the Debtors as a whole; and

(f) provide testimony, as necessary, with respect to matters on which we have been engaged.

14. The foregoing services are necessary to enable the Disinterested Managers to pursue and effectuate the value-maximizing restructuring transaction contemplated in these cases for the benefit of all of the Debtors' stakeholders.

**PROFESSIONAL COMPENSATION**

15. Investment Bankers such as PWP do not customarily charge for their services on an hourly basis. Instead, they charge a monthly advisory fee, plus additional fees contingent on

---

[2] "Restructuring" means any recapitalization, modification or restructuring of the Company's equity and/or debt securities and/or other indebtedness, obligations or liabilities (including partnership interests, lease obligations, trade credit facilities and/or contract or tort obligations), including pursuant to any repurchase, exchange, conversion, cancellation, forgiveness, retirement, plan, solicitation of consents, waivers, acceptances, authorizations and/or a modification or amendment to the terms, conditions or covenants thereof.

the occurrence of specified transactions or events. The Engagement Letter follows this fee structure and provides that PWP will be compensated for its services as follows:[3]

| Financial Advisory Fee | A monthly financial advisory fee of $150,000 payable in advance on each monthly anniversary of the effective date of the Engagement Letter; provided that, beginning on the seven month anniversary of the effective date of the Engagement Letter, 50% will be credited against the Restructuring Fee described below. |
|---|---|
| Restructuring Fee | A restructuring fee in the amount of $3,000,000, payable promptly upon consummation of a Restructuring.[4] |

16. The Engagement Letter also provides that, in addition to PWP's fees for professional services, the Debtors will reimburse PWP for its reasonable, out-of-pocket expenses, including the fees and expenses of its legal counsel, arising in connection with any matter referred to in the Engagement Letter. PWP expenses reimbursable by Debtors, other than any legal fees, shall not exceed $50,000 without the prior written consent of the Debtors, not to be unreasonably withheld; provided, that such limitation on expense reimbursement shall not apply to the Debtors' indemnification obligations under the Engagement Letter (discussed further below).

## PWP'S PREPETITION COMPENSATION

17. PWP did not receive any compensation from the Debtors within 90 days of the Petition Date.

## NO DUPLICATION OF SERVICES

18. The Disinterested Managers believe that the services provided by PWP will not duplicate the services that other professionals will be providing to the Debtors or Disinterested

---

[3] To the extent there is any inconsistency between the summary of the fee and expense structure set forth in this Application and the fee and expense structure described in the Engagement Letter, the terms of the Engagement Letter shall control.

[4] As described in the Mendelsohn Declaration, the Debtors, the Disinterested Managers and PWP originally agreed to a Restructuring Fee of $4,500,000. Prior to the filing of this Application, the parties agreed to a reduced Restructuring Fee of $3,000,000.

Managers in these chapter 11 cases. Specifically, PWP will carry out unique functions and will use reasonable efforts to coordinate with the Disinterested Managers, their counsel and the other professionals retained in these chapter 11 cases to avoid the unnecessary duplication of services.

### **INDEMNIFICATION PROVISIONS**

19. As a material part of the consideration for which PWP has agreed to provide the services described herein, <u>Annex A</u> to the Engagement Letter provides for certain indemnification obligations to PWP and its affiliates, and each of their respective directors, officers, members, partners, employees, agents, or controlling persons, if any, (each, including PWP, an "<u>Indemnified Person</u>") from and against any losses, claims, damages, liabilities, or expenses related to, arising out of, or in connection with PWP's engagement or any matter referred to in the Engagement Letter, and the Debtors have agreed to reimburse each Indemnified Person for all reasonable, out-of-pocket expenses (including fees, charges and disbursements of counsel) as they are incurred in connection with investigating, preparing, pursuing or defending any action, claim, proceeding, or investigation related to, arising out of or in connection with the engagement, whether or not pending or threatened and whether or not any Indemnified Person is a party; provided, however, that the Debtors and the Disinterested Managers will not be responsible for any losses, claims, damages, liabilities or expenses that are finally judicially determined to have resulted from the fraud, bad faith, gross negligence or willful misconduct of any Indemnified Person.[5]  <u>Annex A</u> to the Engagement Letter further provides that no Indemnified Person will have any liability (whether direct or indirect, in contract or tort or otherwise) to the Disinterested Managers or the Debtors, their securityholders or creditors related

---

[5] To the extent there is any inconsistency between the summary of the indemnification, contribution, or exculpation provisions set forth in this Application and the indemnification, contribution, or exculpation provisions set forth in <u>Annex A</u> to the Engagement Letter, the terms of <u>Annex A</u> to the Engagement Letter shall control.

to, arising out of, or in connection with the engagement, except to the extent that any loss, claim, damage, or liability is finally judicially determined to have resulted from the fraud, bad faith, gross negligence or willful misconduct of such Indemnified Person.  If indemnification is for any reason held unenforceable or is otherwise unavailable to an Indemnified Person (other than due to an Indemnified Person's fraud, bad faith, willful misconduct or gross negligence), then, in lieu of indemnification, the Debtors will contribute to the loss, claim, damage, liability or expense for which such indemnification is held unenforceable in such proportion as is appropriate to reflect the relative benefits received or sought to be received by the Debtors, their securityholders and creditors on the one hand and the Indemnified Person on the other hand in matters contemplated in the engagement as well as the relative fault of the Debtors, their securityholders and creditors on the one hand and the Indemnified Person on the other hand, with respect to such loss, claim, damage, liability or expense and any other relevant equitable considerations; provided, however, that in no event will an Indemnified Person's aggregate contribution exceed the aggregate fees actually received by PWP under the Engagement Letter.[6]

20.     The obligations of the Debtors set forth in <u>Annex A</u> to the Engagement Letter apply to any services provided by PWP in connection with the engagement prior to the date of the Engagement Letter.  Additionally, the terms of the indemnification, exculpation, and contribution provisions survive the completion or termination of the engagement.

21.     The indemnification, exculpation, and contribution provisions are customary and reasonable terms of consideration for financial advisors and investment bankers such as PWP for engagements both out of court and in chapter 11.

---

[6]     The Engagement Letter defines relative benefits in the proportion of (i) the fees paid or to be paid to PWP in connection with the engagement and (ii) the total value of a transaction under the Engagement Letter, whether or not any such transaction is contemplated.

**BASIS FOR RELIEF REQUESTED**

22. Section 327(a) of the Bankruptcy Code provides that a Debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

23. Bankruptcy Rule 2014(a) requires that a retention application include:

> [S]pecific facts showing the necessity for the employment, the name of the [professional] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

24. The Debtors submit that for all the reasons stated herein and in the Mendelsohn Declaration, the retention and employment of PWP as the Disinterested Managers' financial advisor and investment banker pursuant to section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a) is warranted.

**A.    PWP's Retention is Necessary and is in the Best Interests of the Debtors' Estates.**

25. The Disinterested Managers submit, in light of PWP's restructuring experience and its institutional knowledge of the Debtors' operations, PWP's immediate retention as financial advisor and investment banker to the Disinterested Managers is both necessary and in the best interests of the Debtors' estates. Indeed, if the Disinterested Managers are required to retain a different financial advisor and investment banker to replace PWP, the Disinterested Managers will need to locate, educate, and integrate a new financial advisor and investment banker and expend significant resources in doing so, rather than devoting their time and focus to

their reorganization efforts. In this respect, retaining PWP will avoid unnecessary administrative expenses and delays, result in cost efficiencies, and will assist in facilitating the Debtors' reorganization efforts.

**B.     PWP Neither Holds nor Represents any Interest Adverse to the Debtors' Estates and is a "Disinterested Person" within the Meaning of Section 101(14) of the Bankruptcy Code.**

26.     To the best of the Disinterested Managers' knowledge and except as disclosed herein and in the Mendelsohn Declaration, PWP: (a) does not represent, and does not hold, any interest adverse to the Debtors' estates; and (b) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and has no connection to the Debtors, their creditors, or other parties in interest.

27.     PWP will use reasonable efforts to see that no conflicts or other disqualifying circumstances exist or arise during the pendency of these chapter 11 cases. If any new material facts or relationships are discovered or arise, PWP will use reasonable efforts to identify them and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

28.     The Debtors submit that, for all the reasons stated above and in the Mendelsohn Declaration, the retention and employment of PWP as financial advisor and investment banker to the Disinterested Managers is necessary and in the best interests of the Debtors and their estates.

### NOTICE

29.     The Debtors will provide notice of this Application to: (a) the U.S. Trustee for the Southern District of Texas; (b) counsel to the Official Committee of Unsecured Creditors; (c) counsel to the Term Loan Lender Group; (d) counsel to the Noteholder Group; (e) the United States Attorney's Office for the Southern District of Texas; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the state attorneys general for states in which the Debtors conduct business; and (i) any party that has requested notice pursuant to

Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.  In light of the nature of the relief requested in this Application, the Debtors submit that no further notice is necessary.

## NO PRIOR REQUEST

30.     No prior motion for the relief requested herein has been made to this Court or any other court.

Dated:  June 4, 2020
         Houston, Texas

                                        Neiman Marcus Group LTD LLC,
                                        Debtor and Debtor in Possession


                                         */s/ Scott Vogel*
                                        Scott Vogel
                                        Disinterested Manager of Neiman Marcus Group LTD LLC

**CERTIFICATE OF SERVICE**

I certify that on June 4, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Jennifer J. Hardy*
Jennifer J. Hardy