**<u>EXHIBIT C</u>**
**Engagement Letter**

767 Fifth Avenue
New York, NY 10153

T  212.287.3200
F  212.287.3201
pwpartners.com

June 4, 2020

PERSONAL AND CONFIDENTIAL

Marc Beilinson and Scott Vogel
Neiman Marcus Group LTD LLC
One Marcus Square
1618 Main Street
Dallas, Texas  75201

Dear Messrs. Beilinson and Vogel:

This amended and restated letter agreement ("Agreement"), effective as of May 7, 2020 (the "Effective Date"), confirms the terms under which the above-named independent managers (the "Independent Managers" or "you") of Neiman Marcus Group LTD LLC have engaged Perella Weinberg Partners LP (together with its corporate advisory affiliates, "Perella Weinberg Partners," "we" or "us") to represent and advise them, reporting solely to them in their capacity as Independent Managers.  For purposes hereof, the term "Company" shall mean Neiman Marcus Group LTD LLC together with its subsidiaries and debtor affiliates.  The Agreement amends and restates the engagement letter among Perella Weinberg Partners and the Independent Managers dated as of May 7, 2020.

1.    Services to be Rendered.  The financial advisory services provided by Perella Weinberg Partners shall include the following:

*General Financial Advisory and Investment Banking Services.*  To the extent requested by the Independent Managers, we shall:

(a)    Familiarize ourselves with the business, operations, properties, financial condition and prospects of the Company;

(b)    Review the Company's financial condition and outlook;

(c)    Assist in the reviewing financial data and prepare presentations to the Company's Independent Managers;

(d)    Attend meetings of the Company's board and board committees with respect to matters on which we have been engaged to advise the Independent Managers; and

(e)     Provide such other advisory services as are customarily provided in connection with the analysis of any of the transactions contemplated by this Agreement, as requested and mutually agreed.

*Restructuring Services.*  To the extent requested by the Independent Managers, we shall:

(a)     Analyze various Restructuring (as defined below) scenarios and the potential impact of these scenarios on the value of the Company, and the recoveries of those stakeholders impacted by the Restructuring;

(b)     Provide the Independent Managers with strategic advice regarding restructuring or refinancing the Company's obligations;

(c)     At the direction of the Independent Managers, assist the Company and/or participate in negotiations with entities or groups affected by the Restructuring;

(d)     At the direction of the Independent Managers, evaluate the Company's 2017 designation of MyTheresa and 2018 transfer of MyTheresa, analyze any causes of action related thereto, and assist in any litigation or negotiation of any settlement discussions related to the transfer;

(e)     Assist the Independent Managers in the investigation and evaluation of any causes of action that may exist related to Neiman Marcus Group LTD LLC or the Company as a whole; and

(f)     Provide testimony, as necessary, with respect to matters on which we have been engaged.

For purposes of this Agreement, the term "Restructuring" means any recapitalization, modification or restructuring of the Company's equity and/or debt securities and/or other indebtedness, obligations or liabilities (including partnership interests, lease obligations, trade credit facilities and/or contract or tort obligations), including pursuant to any repurchase, exchange, conversion, cancellation, forgiveness, retirement, plan, solicitation of consents, waivers, acceptances, authorizations and/or a modification or amendment to the terms, conditions or covenants thereof.

*Generally.*  Notwithstanding anything contained in this Agreement (including Annex A) to the contrary, the Company, the Independent Managers and we each agree that (i) the Independent Managers, and not the Company, shall direct us and that we shall advise and report solely to the Independent Managers (including legal counsel assisting the Independent Managers) in their capacity as such; (ii) the Independent Managers, and not the Company, shall control any attorney-client privilege, attorney work product or other privilege with respect to the Engagement; and (iii) the

Company and the other managers or directors on the board of the Company shall not access the work or privileged material controlled by the Independent Managers, except as permitted by the Independent Managers.

Notwithstanding anything contained in this Agreement to the contrary, we shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management or liquidity or to provide any fairness, valuation or solvency opinions or to make any independent evaluation or appraisal of any assets or liabilities of the Company or any other party.  We make no representations or warranties about the Company's ability to (i) successfully improve its operations, (ii) maintain or secure sufficient liquidity to operate its business, or (iii) successfully complete a Restructuring. We are retained under this Agreement solely to provide advice and services regarding the transactions contemplated by this Agreement. Our Engagement does not encompass providing "crisis management."

The advisory services and compensation arrangements set forth in this Agreement do not encompass other investment banking services or transactions that may be undertaken by us at the request of the Company or the Independent Managers, or any other specific services not set forth in this Agreement.  Specifically, this Agreement does not contemplate us providing opinions or taking a primary role in the development, structuring or negotiation of any specific transaction or series of transactions.  The terms and conditions of such investment banking services, including compensation and arrangements, would be set forth in a separate written agreement between us and the Company.

2.    Compensation.  As compensation for our services, the Company agrees to pay us in cash, by wire transfer of immediately available funds when due, the following fees (individually or collectively, "Fees"):

(a)  a monthly financial advisory fee of $150,000 (the "Monthly Fee"), commencing on the Effective Date and payable in advance on each monthly anniversary of such date; provided that, beginning on the seven month anniversary of the Effective Date, we will credit 50% of the Monthly Fee against the Restructuring Fee described below; plus

(b)  a restructuring fee in the amount of $3,000,000, payable promptly upon consummation of a Restructuring (the "Restructuring Fee").

Notwithstanding the foregoing, in the event that a restructuring support agreement is not signed within 30 days of the Company becoming a debtor under chapter 11, or in the event the final confirmation hearing does not occur within six months of the petition date, and the role of the Independent Managers meaningfully deviates from their currently contemplated role, the parties shall mutually agree in good faith to an appropriate increase in our fees commensurate with such increased scope.

3.      Expenses.  In addition to our fees for professional services, the Company agrees that it will periodically, at our request, reimburse us for all of our reasonable and documented expenses ("Expenses"), (including, but not limited to, professional and legal fees, charges and disbursements of our legal counsel ("Legal Fees"), any sales, use or similar taxes (including additions to such taxes, if any) arising in connection with any matter referred to in this Agreement, travel and hotel expenses, printing costs, data processing and communication charges, research expenses and courier and postage services); provided, that such reimbursement for expenses other than Legal Fees shall not exceed $50,000 in the aggregate without the Company's prior written consent, not to be unreasonably withheld; provided that, for the avoidance of doubt such limitation shall not apply to the Company's obligations set forth in Annex A. The Company's obligation to reimburse expenses incurred by us in connection with the Engagement will survive the completion or termination of the Engagement.

4.      Indemnification.  The Company acknowledges that we have been retained hereunder solely as an independent contractor and that nothing in this Agreement or the nature of our services shall be deemed to create a fiduciary or agency relationship between us and the Company or its equity holder(s), employees or creditors.  In order to induce us to accept the Engagement, the Company agrees to the indemnity, exculpation provisions and other matters set forth in Annex A, which forms a part of and is incorporated by reference into the Agreement.  Prior to entering into any agreement or arrangement with respect to, or effecting, any proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets in one or a series of transactions or any significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Company set forth in Annex A, the Company will notify us in writing thereof (if not previously so notified) and, if requested by us, shall arrange in connection therewith alternative means of providing for the obligations of the Company set forth in Annex A, including the assumption of such obligations by another party, insurance, surety bonds or the creation of an escrow, in each case, in an amount and upon terms and conditions reasonably satisfactory to us and the Company.  The terms and provisions of this Section 4 and of Annex A shall survive the completion or termination of the Engagement.

5.      Bankruptcy Court Approval.  In the event that the Company is or becomes a debtor under Chapter 11 of the Bankruptcy Code, whether voluntarily or involuntarily, the Independent Managers and the Company shall use reasonable efforts to seek an order authorizing our employment pursuant to the terms of this Agreement, as a professional person pursuant to, and subject to the standard of review of, Section 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), the applicable Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable local rules and orders and not subject to any other standard of review under Section 330 of the Bankruptcy Code.  In so agreeing to seek our retention under Section 328(a) of the Bankruptcy Code, the Independent Managers and the Company acknowledge that they believe that our general restructuring experience and expertise, our knowledge of the capital markets and our merger and acquisition capabilities will inure to the benefit of the

Company and the Independent Managers in pursuing any Restructuring, that the value to the Company and the Independent Managers of our services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent Fees are reasonable regardless of the number of hours to be expended by our professionals in the performance of the services to be provided hereunder.  The Company shall submit, and the Independent Managers shall assist in the submission of, our employment application as soon as practicable following the Company's filing of a voluntary Chapter 11 case, or the entry of an order for relief in any involuntary case filed against the Company, and the Company shall use its reasonable efforts to cause such application to be considered on the most expedited basis.  The employment application and the proposed order authorizing our employment shall be provided to us as much in advance of any Chapter 11 filing as is practicable, and must be acceptable to us in our sole discretion.  Following entry of the order authorizing our employment, the Company shall pay all Fees and Expenses due pursuant to this Agreement, as approved by the court having jurisdiction of the bankruptcy case involving the Company (the "Bankruptcy Court"), as promptly as possible in accordance with the terms of this Agreement and the order of such Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and each of the Company and the Independent Managers will work with us to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court.  We shall have no obligation to provide services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless our retention under this Agreement is approved under Section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court which is acceptable to us and which approves this Agreement in all material respects.  If the order authorizing our employment is not obtained, or is later reversed, modified or set aside for any reason, we may terminate this Agreement, and the Company shall promptly reimburse us for all Fees and Expenses due hereunder, including any Fees due or to become due under the Tail Period (as defined below).  Prior to commencing a Chapter 11 case, the Company shall pay all amounts then due and payable to us in cash.  The terms of this Section are solely for our benefit, and may be waived, in whole or in part, only by us.

      6.     Expertise.  The Company and the Independent Managers each acknowledges and agrees that Perella Weinberg Partners' restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required by the Independent Managers or the Company during the term of our Engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit to the Company and the Independent Managers of our services hereunder could not be measured merely by reference to the number of hours to be expended by our professionals in the performance of such services.  The Company and the Independent Managers also acknowledge and agree that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of us and our professionals hereunder over the life of the Engagement, and in light of the fact that such commitment may foreclose other

opportunities for us and that the actual time and commitment required of us and our professionals to perform their services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm.  In addition, given the numerous issues which we may be required to address in the performance of our services hereunder, our commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for our services for engagements of this nature in an out-of-court context, the Company and the Independent Managers agree that all of the fee arrangements specified herein are commercially reasonable.

       7.    <u>Information; Cooperation</u>.  In connection with the Engagement, the Company will provide us with access to the Company's managers, officers, directors, employees, accountants, legal advisors, and other representatives (collectively, "<u>Representatives</u>"), and will furnish us and cause its Representatives to furnish us with such information as we believe appropriate for the Engagement (all such information so furnished being the "<u>Information</u>").  The Company and the Independent Managers recognize and confirm that we (i) will use and rely primarily on the Information and on information available from generally recognized public sources in performing its services without having independently verified the same and (ii) do not assume responsibility for the accuracy or completeness of the Information and such other information.  The information to be furnished by the Independent Managers, the Company or their respective Representatives, when delivered, will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading.  The Independent Managers and the Company will promptly notify us if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore delivered to us.

       The Company agrees to cooperate with us in the performance of its services under this Agreement and shall provide us with timely access to and use of personnel, facilities, equipment, data and information to the extent necessary to permit us to perform services under this Agreement.  In order to coordinate effectively the Company's, the Independent Managers' and our activities to effect a Restructuring, or other transaction, the Company and the Independent Managers will promptly inform us of any pending or future discussions, negotiations or inquiries regarding a possible Restructuring (including any such discussions, negotiations or inquiries that have occurred in the six-month period prior to the date of this Agreement).

       8.    <u>Work Product</u>.  All documents, materials or information of any kind created by us in connection with this engagement, including, without limitation, any written reports, memoranda, analyses, work papers or status summaries, whether or not delivered to the Independent Managers, the Company or their respective Representatives, are work product (collectively, "<u>Work Product</u>").  All Work Product shall be owned and maintained by us.  The Independent Managers and the Company agree, and shall cause their Representatives, not to use any Work Product except in connection with any transaction contemplated by this Agreement or otherwise within the scope of the

Engagement, and not for any other purpose.  Our Work Product may not be relied upon by any person other than the Independent Managers (in their capacity as such and not in any individual capacity), including, but not limited to, the Company, any security holder, or employee or creditor of the Company, and may not be used or relied upon for any other purpose.  Neither the Company nor you may publicly disclose, summarize, excerpt from or otherwise refer to any Work Product rendered by us, whether formal or informal, without our prior written consent.

        9.     <u>Confidentiality</u>.  Any written or oral advice to be provided by us is exclusively for the Independent Managers (in their capacities as such and not in any individual capacity), and accordingly may not be relied upon by any other person or entity or used for any other purpose. Neither the Independent Managers nor the Company may publicly disclose, summarize, excerpt from or otherwise refer to any advice rendered by us, whether formal or informal, without our prior written consent.  In addition, neither the Independent Managers nor the Company may refer to our name or the terms of our Engagement without our prior written consent.  The obligations under this section will survive the completion or termination of the Engagement.

        We will not be providing the Company or the Independent Managers with, and they will not look to us for, tax, legal, accounting or other similar advice and we agree that nothing in this Agreement is intended to impose any conditions of confidentiality within the meaning of Section 6111 of the Internal Revenue Code of 1986, as amended, or US Treasury Regulation Section 1.6011-4.  The Company may disclose to any and all persons, without limitation of any kind, the United States tax treatment (federal, state and local) and tax structure of any transaction and all materials of any kind relating to such tax treatment and tax structure.

        10.    <u>Termination</u>.  Our services hereunder may be terminated upon 3 days written notice with or without cause by the Independent Managers or by us at any time and without liability or continuing obligation to you or to us or to the Company.  No termination of our Engagement or this Agreement shall modify or affect (i) the Company's obligation to pay our Fees and to pay or reimburse Expenses through the effective date of termination under Sections 2 and 3 of this Agreement, respectively, and (ii) the Company's and the Independent Managers' obligations under Sections 4, 5, 8, 9, 10, 13, 14, 15, 16 and 17, all of which shall survive the termination of our Engagement; <u>provided</u>, <u>however</u>, that in the case of termination by you, we shall be entitled to be paid the full amount of our Fees if, during the term or within one year of such termination (the "<u>Tail Period</u>"), (x) any Restructuring is effected, or (y) the Company agrees to a Restructuring which is subsequently effected, at any time.

        11.    <u>Other Perella Weinberg Partners Activities</u>.  Perella Weinberg Partners is a financial services firm engaged directly and through its affiliates in investment banking, financial advisory services, investment management, asset management and other advisory services and sponsors special purpose acquisition vehicles.  The Company and the Independent Managers understand and acknowledge that in performing the Engagement we will not be under any duty to disclose to the Company

or the Independent Managers, or use for the benefit of the Company or the Independent Managers, any confidential or non-public information obtained by us or our affiliates in the course of providing services to any other person or engaging in any other transaction (including as principal) or business activities.  In the ordinary course of business activities, Perella Weinberg Partners LP or its affiliates or their respective personnel may at any time hold long or short positions, and may trade or otherwise effect transactions, for its or their own accounts or the accounts of customers, in debt or equity or other securities (or related derivative securities) or financial instruments (including bank loans or other obligations) of the Company or any other party to a transaction or any of their respective affiliates.

        12.    <u>Governing Law</u>.  All aspects of the relationship created by this Agreement (including Annex A) shall be governed by and construed in accordance with the laws of the State of New York, applicable to agreements made and to be performed entirely in such State.  All actions and proceedings arising out of or relating to this Agreement shall be heard and determined exclusively in any New York state or federal court sitting in the Borough of Manhattan of the City of New York, to whose jurisdiction the Company hereby irrevocably submits.  The Company and the Independent Managers hereby irrevocably waive any defense or objection to the New York forum designated above.  Perella Weinberg Partners, the Independent Managers and the Company (on its own behalf and, to the extent permitted by law, on behalf of its equity holders) waives all right to trial by jury in any action, suit, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the Engagement or the performance by us of the services contemplated by this Agreement.

        13.    <u>Assignment; Severability</u>.  No party hereto may assign, transfer or delegate any of its rights or obligations without the prior written consent of the other parties, such consent not to be unreasonably withheld. In the event that any term or provision of this Agreement shall be held to be invalid, void or unenforceable by a court of competent jurisdiction (not subject to further appeal), then the remainder of this Agreement shall not be affected, and each such term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

        14.    <u>Public Announcements</u>.  The Company and the Independent Managers acknowledge that we may, at our option and expense and after public announcement of a Restructuring, place announcements and advertisements or otherwise publicize such Restructuring and our role in it (which may include the reproduction of the Company's logo and a hyperlink to the Company's website) on our internet website and in such financial and other newspapers and journals as we may choose, stating that we acted as financial advisor to the Company in connection with the Restructuring.

        15.    <u>Regulation Relating to Client Identification</u>.  Federal law and regulations require financial institutions to obtain, verify and record information that identifies each person with whom they do business prior to doing such business and to provide reasonable notice to such persons that the financial institution is verifying such person's identity.  Accordingly, the Company will provide us, as necessary and upon

request, certain identifying information, including, but not limited to, a government-issued identification number (e.g., a U.S. taxpayer identification number) and certain other information or documents necessary to verify the Company's identity, such as certified corporate documentation, partnership agreement or trust instrument.

16.    Co-Advisors.  It is understood that no Indemnified Person, as defined herein in Annex A, shall have any responsibility or liability to the Independent Managers , the Company or its affiliates or any other party in connection with the advice, opinions or actions of any other advisors engaged by the Independent Managers or the Company, and further, no Indemnified Person or any such other advisor shall have any responsibility or liability to each other in connection with the advice or opinions rendered by such party in connection with the Engagement.

17.    Limitation on Actions.  No action, regardless of form, arising out of or relating to the Engagement, may be brought by you or the Company more than one year after the cause of action has accrued.

18.    Entire Agreement; Amendments.  This Agreement, including Annex A, constitutes the entire agreement between us, the Independent Managers and the Company with respect to the Engagement and supersedes all other oral and written representations, understandings or agreements relating to this Engagement.   No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each party.

Please acknowledge agreement with the terms stated herein, and that you have reviewed and agreed to be bound by the terms of this Agreement, and that you have all requisite power and authority to enter into this Agreement on behalf of the Independent Managers and the Company (as applicable), and have been duly and validly authorized to do so, as evidenced by your signature below.  Facsimile and electronic signatures shall be deemed original, binding signatures.

We are delighted to accept the Engagement and look forward to working with you on this assignment.  Please confirm your agreement to the foregoing by signing and returning to us the enclosed duplicate of this letter.

Very truly yours,

PERELLA WEINBERG PARTNERS LP

By: _____    _____
     Name:   Bruce Mendelsohn
     Title:     Partner


Agreed and accepted as of
the date set forth above:

INDEPENDENT MANAGERS OF NEIMAN MARCUS GROUP LTD LLC


By:_____
     Name:  Marc Beilinson
     Title:  Disinterested Manager


By:_____
     Name:  Scott Vogel
     Title:  Disinterested Manager


NEIMAN MARCUS GROUP LTD LLC.

By: _____    _____
     Name:   Tracy Preston
     Title:     General Counsel

10

We are delighted to accept the Engagement and look forward to working with you on this assignment.  Please confirm your agreement to the foregoing by signing and returning to us the enclosed duplicate of this letter.

Very truly yours,

PERELLA WEINBERG PARTNERS LP

By:_____
    Name:
    Title:

Agreed and accepted as of
the date set forth above:

INDEPENDENT MANAGERS OF NEIMAN MARCUS GROUP LTD LLC

By:_____
    Name:  Marc Robinson
    Title:  Disinterested Manager

By:_____
    Name:  Scott Vogel
    Title:  Disinterested Manager

NEIMAN MARCUS GROUP LTD LLC.

By:_____
    Name:
    Title:

### Annex A

The Company agrees that in the event that Perella Weinberg Partners or any of our affiliates, or any of our or their respective directors, officers, members, partners, employees, agents, or controlling persons, if any (each of the foregoing, including Perella Weinberg Partners, being an "Indemnified Person"), become involved in any capacity in any action, claim, proceeding, or investigation (an "Action") brought or threatened by or against any person, including your securityholders, in each case, related to, arising out of, or in connection with our engagement, you will promptly reimburse each such Indemnified Person for its reasonable, out-of-pocket legal and other expenses (including the reasonable, out-of-pocket cost of any investigation and preparation) promptly after receipt of invoices with reasonable descriptions thereof; provided that the Indemnified Persons shall not be entitled to any such reimbursement to the extent that any such expenses are found by a court of competent jurisdiction in a judgment which has become final (in that it is no longer subject to appeal or review) to have resulted from an Indemnified Person's fraud, bad faith, willful misconduct or gross negligence. You will indemnify and hold harmless each Indemnified Person from and against any losses, claims, damages, liabilities, or expenses to which any Indemnified Person may become subject under any applicable federal or state law, or otherwise, in each case, related to, arising out of, or in connection with our engagement, whether or not any pending or threatened Action giving rise to such losses, claims, damages, liabilities, or expenses is initiated or brought by you or on your behalf and whether or not in connection with any Action in which you or any such Indemnified Person are a party, except to the extent that any such loss, claim, damage, liability, or expense is found by a court of competent jurisdiction in a judgment which has become final (in that it is no longer subject to appeal or review) to have resulted from an Indemnified Person's fraud, bad faith, willful misconduct or gross negligence. Notwithstanding anything to the contrary in this agreement, to the extent that an Indemnified Person is found by a court of competent jurisdiction to be not entitled to indemnification in respect of a loss, claim, damage, liability or expense in accordance with the previous sentence, we or such Indemnified Person will promptly repay to you (i) any indemnification payments made by you under this agreement with respect thereto and (ii) any expenses previously reimbursed by you under this agreement that were primarily related thereto. You also agree that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort, or otherwise) to you or your securityholders or creditors related to, arising out of, or in connection with our engagement except to the extent that any loss, claim, damage, or liability is found by a court of competent jurisdiction in a judgment which has become final (in that it is no longer subject to appeal or review) to have resulted from such Indemnified Person's fraud, bad faith, willful misconduct or gross negligence.

We or an Indemnified Person shall notify the Company in writing promptly after receipt by an Indemnified Person of notice of the commencement of any Action with respect to which reimbursement or indemnification is being sought hereunder; provided that the omission so to notify Company will not relieve you from any liability which you may have, except to the extent you have been actually prejudiced  by  such  omission. The Company shall be entitled to participate in or assume the defense of, any such Action. If the Company assumes the defense of any Action, except as provided below, you thereafter shall not be responsible for any costs, fees or expenses of any separate counsel retained by such Indemnified Person in connection with such Action. Notwithstanding the foregoing, the Company may not assume the defense and we or the Indemnified Persons shall have the right to employ separate counsel in the defense of such

Action, and you shall bear the reasonable, out-of-pocket legal and other expenses of such separate counsel if (i) the use of counsel chosen by the Company to represent such Indemnified Person would present such counsel with a conflict of interest or (ii) the Company has provided prior written authorization to such Indemnified Person to employ separate counsel at Company's expense. Notwithstanding any provision herein, in no event shall the Company be responsible for any fees, costs or expenses of more than one counsel (plus one local counsel in any jurisdiction where necessary) retained by us for all Indemnified Persons in connection with any Action.

If for any reason the foregoing indemnification is held unenforceable or is otherwise unavailable (other than due to an Indemnified Person's fraud, bad faith, willful misconduct or gross negligence), then you shall contribute to the loss, claim, damage, liability, or expense for which such indemnification is held unenforceable in such proportion as is appropriate to reflect the relative benefits received, or sought to be received, by you and your securityholders and creditors on the one hand and the Indemnified Persons on the other hand in the matters contemplated by our engagement as well as the relative fault of yourselves and such persons with respect to such loss, claim, damage, liability, or expense and any other relevant equitable considerations. You agree that for the purposes hereof (other than in connection with an Indemnified Person's fraud, bad faith, willful misconduct or gross negligence), the relative benefits received, or sought to be received, by you and your securityholders and creditors and the Indemnified Persons shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid by or to you and your securityholders and creditors, as the case may be, pursuant to any transaction (whether or not consummated) for which we have been engaged to perform investment banking services bears to (ii) the fees paid or proposed to be paid to us in connection with such engagement; provided, however, that to the extent permitted by applicable law, in no event shall we or any other Indemnified Person be required to contribute an aggregate amount in excess of the aggregate fees actually paid to us for such investment banking services. Your reimbursement, indemnity, and contribution obligations under this agreement shall be joint and several, shall be in addition to any liability which you may otherwise have, shall not be limited by any rights we or any other Indemnified Person may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs, and personal representatives of yourselves, ourselves, and any other Indemnified Persons.

You agree that, without our prior written consent (which will not be unreasonably withheld), you will not settle, compromise, or consent to the entry of any judgment in any pending or threatened Action in respect of which indemnification or contribution could reasonably be sought hereunder (whether or not we or any other Indemnified Persons are an actual or potential party to such Action), unless such settlement, compromise, or consent includes an unconditional release of each Indemnified Person from all liability arising out of such Action. No Indemnified Person seeking indemnification, reimbursement or contribution under this agreement will, without the Company's prior written consent (which will not be unreasonably withheld), agree to the settlement of any Action. This agreement shall remain in effect indefinitely, notwithstanding any termination of our engagement.