IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| NEIMAN MARCUS GROUP LTD LLC, *et al.*,[1] | ) ) ) | Case No. 20-32519 (DRJ) |
| Debtors. | ) ) ) | (Jointly Administered) |

**DEBTORS' OBJECTION TO MACEOO, LLC'S MOTION FOR RELIEF
FROM AUTOMATIC STAY REGARDING MERCHANDISE HELD BY THE DEBTOR**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") file this objection ("<u>Objection</u>") to *Maceoo, LLC's Motion for Relief from Automatic Stay Regarding Merchandise Held by the Debtor* [Docket No. 851] (the "<u>Lift Stay Motion</u>"), filed by Maceoo, LLC ("<u>Maceoo</u>"). In support of the Objection, the Debtors respectfully state as follows:

**Preliminary Statement**

1. Maceoo's Lift Stay Motion should be denied. Maceoo seeks to lift the automatic stay to exercise "its state law remedies to reclaim its merchandise held by the Debtor without payment."[2] However, it has not met its heavy burden to lift the automatic stay. Maceoo's Lift Stay Motion depends on its assertion that "extraordinary circumstances" exist because its prepetition claims have not been paid, the Debtors requested Maceoo change its shipment date,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Neiman Marcus Group LTD LLC (9435); Bergdorf Goodman Inc. (5530); Bergdorf Graphics, Inc. (9271); BG Productions, Inc. (3650); Mariposa Borrower, Inc. (9015); Mariposa Intermediate Holdings LLC (5829); NEMA Beverage Corporation (3412); NEMA Beverage Holding Corporation (9264); NEMA Beverage Parent Corporation (9262); NM Bermuda, LLC (2943); NM Financial Services, Inc. (2446); NM Nevada Trust (3700); NMG California Salon LLC (9242); NMG Florida Salon LLC (9269); NMG Global Mobility, Inc. (0664); NMG Notes PropCo LLC (1102); NMG Salon Holdings LLC (5236); NMG Salons LLC (1570); NMG Term Loan PropCo LLC (0786); NMG Texas Salon LLC (0318); NMGP, LLC (1558); The Neiman Marcus Group LLC (9509); The NMG Subsidiary LLC (6074); and Worth Avenue Leasing Company (5996). The Debtors' service address is: One Marcus Square, 1618 Main Street, Dallas, Texas 75201.

[2] Lift Stay Mot. ¶ 23.

and the Debtors are selling its merchandise on sale. These are not extraordinary circumstances. To the contrary, these circumstances are typical in chapter 11 cases and are present in many of the Debtors' relationships with their hundreds of vendors. Indeed, discounting of Maceoo's goods in particular is anything but "extraordinary," as Maceoo sells its merchandise exclusively to the Debtors' off-price Last Call stores. Last Call is well known as the Debtors' off-price segment that primarily sells post-season clearance goods and other lower price-point merchandise.

2. Moreover, Maceoo points to supposed reclamation rights, but has not had such right at any time prior to or during these chapter 11 cases. Absent a valid reclamation right, Maceoo is purely an unsecured creditor seeking to collect on a prepetition claim ahead of other unsecured creditors.

3. Maceoo has not demonstrated cause to lift the stay, and cannot overcome the potential harm to the Debtors' estates if all similarly situated parties were to be granted relief from the automatic stay. And there is no reason for Maceoo to be given special treatment, as the core purpose of the automatic stay is to allow for the orderly rehabilitation of a debtor and to prevent any particular creditor from obtaining a distributive advantage over other creditors.[3]

4. Accordingly, and for the reasons set forth herein, the Lift Stay Motion should be denied.

---

[3] *See In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992) ("An unsecured claimant should not be entitled to obtain a distributive advantage over other unsecured claimants who are similarly enjoined from seeking distribution by any method other than in accordance with the distributive scheme under the Bankruptcy Code.").

**Background**

I.  **Maceoo's Demands.**

5.  On May 12, 2020, Maceoo, via a letter emailed to the Debtors' counsel (the "Initial Demand Letter"), demanded reclamation of certain goods identified by invoice number, PO #, and cost on Exhibit A to the Initial Demand Letter (the "Goods").

6.  On May 14, 2020, Maceoo served upon the Debtors' counsel and filed on the docket the *Notice of Demand for Reclamation by Maceoo, LLC* [Docket No. 416] (the "Supplemental Demand Letter," and together with the Initial Demand Letter, the "Demand Letters"), which demanded the reclamation of the Goods.

7.  On May 26, 2020, the Debtors responded to the Demand Letters via a letter to Maceoo's counsel stating that they did not intend to honor the reclamation demand because Maceoo's right of reclamation was subordinate to liens held by the Debtors' prepetition and postpetition lenders in substantially all of the Debtors' assets, including the Goods.

8.  On June 16, 2020, in response to the Debtors' refusal to lift the automatic stay to allow Maceoo to recover the Goods from the Debtors' estates, Maceoo filed the Lift Stay Motion asserting that cause existed to lift the stay to allow Maceoo to reclaim the Goods.

II.  **The Debtors' Secured Debt.**

A.  **The Debtors' Prepetition Financing.**

9.  On the May 7, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. As of the Petition Date, the Debtors had funded-debt obligations of approximately $5.5 billion. As further described in the *Declaration of Mark Weinsten, Chief Restructuring Officer of Neiman Marcus Group LTD LLC, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 86] (the "First Day

3

Declaration"),[4] the Debtors' obligations under the Asset-Based Revolving Credit Facility are secured by substantially all of the assets of Debtor Mariposa Intermediate Holdings LLC, the ABL Borrowers, and the ABL Subsidiary Guarantors (collectively, the "ABL Priority Collateral"), including a first-priority security interest in inventory and the proceeds of inventory.  Additionally, as of the Petition Date, the Debtors' Term Loan Facility, Second Lien Notes, and Third Lien Notes are secured by junior liens in the ABL Priority Collateral.  In sum, and as more fully described in the First Day Declaration, the ABL Priority Collateral secures over $4.7 billion of the Debtors' prepetition funded-debt obligations.

### B. The Debtors' Postpetition Financing.

10. On May 8, 2020, the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") authorized the Debtors to incur up to $275 million under a $675 million new-money debtor in possession financing facility (the "DIP Facility"), which is secured by, *inter alia*, a junior lien on the ABL Priority Collateral.  On June 16, 2020, the Bankruptcy Court approved the DIP Facility and the liens granted thereunder on a final basis, including a "valid, binding, enforceable, fully-perfected junior security interest in and lien upon" the ABL Priority Collateral,[5] and allowed the Debtors to incur the full $675 million principal amount under the DIP Facility.

---

[4]  Capitalized terms used but not immediately defined in this motion shall have the meanings assigned to them elsewhere in this motion or in the First Day Declaration, as applicable.

[5]  *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 850] ¶ 5(a)(3).

**Objection**

I.   **Maceoo Has Not Established Cause for Relief From the Automatic Stay.**

   A.   **Unsecured Creditors Seeking Relief From the Automatic Stay Must Demonstrate Extraordinary Circumstances.**

   11.   Section 362(d)(1) of the Bankruptcy Code provides that a court shall grant relief from the automatic stay "for cause." 11 U.S.C. § 362(d)(1).[6] "Cause to lift the stay exists when the stay harms the creditor and lifting the stay will not unjustly harm the debtor or other creditors." *In re Northtown Mall Assocs.*, No. 92-1751, 1993 WL 346867, at *4 (5th Cir. Aug. 10, 1993) (quotations omitted). Courts consider "whether lifting the stay will result in any great prejudice to the debtor or the bankruptcy estate, whether any hardship to a nondebtor of continuation of the stay outweighs any hardship to debtor, and whether the creditor has a probability of prevailing on the merits of the case." *In re MCC Humble Auto Paint, Inc.*, 2011 WL 3799764, at *3.

   12.   As explained by the bankruptcy court in *In re Leibowitz*, "[g]enerally, unsecured claims should not be granted relief from the stay because to do so would result in a violation of one of the fundamental concepts of bankruptcy law; that there should be an equality of distribution among creditors. An unsecured claimant should not be entitled to obtain a distributive advantage over other unsecured claimants who are similarly enjoined from seeking distribution by any method other than in accordance with the distributive scheme under the Bankruptcy Code." *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992). Thus, absent a showing of extraordinary

---

[6]   "Cause is not defined in the Bankruptcy Code, and must be determined on a case by case basis based on an examination of the totality of circumstances." *In re MCC Humble Auto Paint, Inc.*, No. 11-34994-H3-11, 2011 WL 3799764, at *3 (Bankr. S.D. Tex. Aug. 25, 2011) (citing *In re Reitnauer*, 152 F.3d 341, 343 n. 4 (5th Cir. 1998)). To determine whether cause exists, the Court should "balance the inherent hardships on all parties and base its decision upon the degree of hardship and the overall goals of the Bankruptcy Code." *In re Porter Dev. Partners, LLC*, No. 15-31305-H5-7, 2018 WL 1626246, at *7 (Bankr. S.D. Tex. Mar. 30, 2018). Courts in the Fifth Circuit have held that an unsecured creditor may be granted relief from the automatic stay "only when the 'balance of hardships' tips in the creditor's favor." *In re U.S. Brass Corp.*, 173 B.R. 1000, 1006 (Bankr. E.D. Tex. 1994); *see also Mooney v. Gill*, 310 B.R. 543, 543 (Bankr. N.D. Tex. 2002). However, the policies underlying the automatic stay generally weigh against lifting the stay for unsecured creditors.

circumstances, unsecured creditors are typically not entitled to relief from the automatic stay. *See, e.g., In re Sonnax Indus., Inc.*, 99 B.R. 591, 595 (D. Vt. 1989), *aff'd*, 907 F.2d 1280 (2d Cir. 1990).

13. The moving party "bears the initial burden of showing 'cause' for relief from the automatic stay." *In re Baytown Navigation, Inc.*, Nos. 11-35926, H-12-36, 2012 WL 1123047, at *3 (S.D. Tex. Apr. 3, 2012). "If the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *Sonnax Indus.*, 99 B.R. at 1285; *see also Capital Comm. Fed. Credit Union v. Boodrow (In re Boodrow)*, 126 F.3d 43, 48 (2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause."). As detailed below, Maceoo has not made an initial showing of cause, nor has it shown that the balance of harms or the circumstances rise to the level necessary to lift the stay for an unsecured creditor, and accordingly the Lift Stay Motion should be denied.

**B.    Maceoo Has Not Shown There Are Extraordinary Circumstances That Justify Lifting the Stay**

14. Maceoo asserts that "extraordinary circumstances exist that justify . . . lifting of the stay." Lift Stay Mot. ¶ 9. These extraordinary circumstances, Maceoo argues, are that the Debtors have not paid Maceoo for merchandise, that the Debtors asked Maceoo to ship certain goods early, and that the Debtors are selling Maceoo's goods at a discount on their Last Call website. Maceoo cites to no authority whatsoever that these facts qualify as "extraordinary circumstances" that warrant lifting the stay. To the contrary, all of these supposed "extraordinary circumstances" are in fact common circumstances for companies in chapter 11—and indeed, in the ordinary course of operations—and thus cannot justify lifting the stay.

15. None of Maceoo's specific complaints justify lifting the stay. First, Maceoo asserts that the Debtors failed to pay for certain goods. But an allegation of non-payment cannot constitute

cause to lift the automatic stay. The Debtors have thousands of creditors, including vendors, who all have prepetition claims that they assert are owed and have not been paid. If mere nonpayment constituted cause to lift the stay, all of the Debtors' creditors, including hundreds of vendors like Maceoo, would have cause to lift the stay. Accordingly, lifting the stay here would erode the fundamental purpose of the Bankruptcy Code—to allow for the orderly rehabilitation of the Debtors—and would invite an onslaught of motions to lift the automatic stay.

16.     Second, Maceoo claims that the automatic stay should be lifted because the Debtors are selling Maceoo's goods at a discount on their Last Call website. Lift Stay Mot. ¶¶ 16-20. Maceoo sells its merchandise exclusively to Last Call to be sold in stores and online. The Debtors have never offered Maceoo's merchandise through their full-priced Neiman Marcus and Bergdorf Goodman channels. Maceoo, however, fails to acknowledge that Last Call is, and always has been, the source for "end-of-season and post-season clearance merchandise from [the] Neiman Marcus and Bergdorf Goodman brands" and a purchaser of "other off-price merchandise directly from designers for resale," which enables the Debtors "to effectively manage [their] inventory while expanding [their] brand awareness to aspirational, price-sensitive customers." Neiman Marcus Group LTD LLC, Annual Report (Form 10-K), at 5 (Sept. 18, 2018).

17.     In short, there is nothing "extraordinary" about Last Call selling goods at a discount (as it always does). Maceoo cites *Caller-Times Publ'g Co., Inc. v. Triad Commc'ns, Inc.*, 826 S.W.2d 576 (Tex. 1992), which interprets Tex. Bus. & Com. Code Ann. § 15.05, to assert that discounting constitutes extraordinary circumstances. This case law is inapplicable to the current circumstances. Both *Caller-Times* and section 15.05 address prohibited practices under the Texas Antitrust Act in the context of monopolistic conduct. *Caller-Times*, 826 S.W.2d at 580 ("[W]e note that . . . Texas Antitrust Act cover[s] monopoly and attempted monopoly"). There can be no

argument here that the Debtors have a monopoly or are attempting to establish a monopoly on the sale of men's shirts, jackets, or shoes. Essentially, the "extraordinary circumstance" that Maceoo complains of is the Debtors' operations in the normal course in accordance with their longstanding practice.

18. Finally, Maceoo asserts that cause exists to lift the stay because the Debtor "manipulate[d]" Maceoo to ship goods early so that they were received outside the 45-day period for reclamation under Bankruptcy Code section 546(c). Lift Stay Mot. ¶ 12. But there is no evidence whatsoever that the Debtors sought to manipulate Maceoo or asked Maceoo to ship merchandise early for the purpose of denying Maceoo any rights under section 546(c). In fact, the Debtors could not have had any incentive to do so because Maceoo has *never* had a right to reclamation, even for goods received within the 45-day period. *See infra* at ¶¶ 24-26. The Debtors often ask their vendors to accelerate or delay shipment dates in the ordinary course of business in order to respond to market demand and the flow of inventory in their warehouses and stores, and there is no evidence that anything else happened here. Moreover, even assuming Maceoo's allegations were true, it does not cite any authority that missing the 45-day period for reclamation under Bankruptcy Code section 546(c)—even if somehow the Debtors' fault—is cause to lift the automatic stay.[7]

19. For the reasons described above, Maceoo has not shown that there are extraordinary circumstances to justify lifting the stay. As a result, the Lift Stay Motion should be denied.

---

[7] Maceoo also asserts that the Debtors committed fraud because they asked Maceoo to adjust its shipment dates, giving rise to a reclamation right under Texas law. The Debtors vehemently refute this accusation. Maceoo bases its argument on the case *Walsh v. Leeper Hardware Co.*, which expressly states that "[t]he proof must further show that the [debtor] did not, when such purchase was made ,have the intention of paying for the property." 50 S.W. 630 (Tex. App. 1899). Maceoo provides no evidence that the Debtors intended to mislead Maceoo or that the Debtors did not intend to pay for merchandise. To the contrary, the Debtors often ask their suppliers to adjust shipment dates in the ordinary course of their business.

### C. Lifting the Stay Would Prejudice the Debtors and Other Creditors.

20. The balance of the harms tips strongly toward the Debtors, who would be prejudiced if the Bankruptcy Court permits Maceoo to reclaim the Goods—as would other creditors. "When balancing the hardships in lifting the stay, the most important factor is the effect . . . on the administration of the estate." *U.S. Brass Corp.*, 173 B.R. at 1006. Even a "slight interference" with the administration of the estate can be enough to preclude relief. *Id.*; *see also In re Aleris Int'l, Inc.*, 456 B.R. 35, 46 (Bankr. D. Del. 2011) (finding that one of the purposes of the automatic stay is to avoid "interference with the orderly liquidation or rehabilitation of the debtor").

21. Granting Maceoo relief from the automatic stay would significantly interfere with the administration of the Debtors' estate. The Debtors do business with hundreds of vendors who are in a similar position to Maceoo. Granting Maceoo's Lift Stay Motion invites all unsecured trade claimants to seek similar relief from the stay to reclaim merchandise in the Debtors' possession. The resulting cost, needless individual hearings, and significant additional time and resources of both the Debtors and the Bankruptcy Court would threaten the timely and orderly reorganization of Debtors' estate. Courts often refuse to lift the stay when doing so might induce other creditors to request similar relief. *See, e.g., In re Advanced Med. Spa Inc.*, No. 15-27456-B-7, 2016 WL 3003203, at *4 (B.A.P. 9th. Cir. Mar. 30, 2016) (denying a motion to lift the stay where "[a]t a minimum, the debtor . . . would be forced to defend a multitude of stay relief motions which . . . would . . . cause the estate to incur significant administrative expenses for litigation costs"); *In re DBSI, Inc.*, 407 B.R. 159, 167 (Bankr. D. Del. 2009) (denying a motion for relief from the automatic stay where lifting the stay could encourage a race to the courthouse by parties seeking similar orders). Furthermore, forcing the Debtors to return any goods delivered to the Debtors that may result in a prepetition claim would significantly reduce the Debtors' inventory,

which is necessary for the Debtors' operations and their viability as a business. Thus, the potential harm to the Debtors in lifting the stay is immense.

22. Granting Maceoo relief from the automatic stay would also prejudice the Debtors' other creditors. By permitting Maceoo to reclaim merchandise, Maceoo would effectively collect its prepetition claim outside of the plan and the claims administration process and ahead of all other creditors. The Court should reject this special treatment. *See In re Fid. Mortg. Inv'rs*, 550 F.2d 47, 55 (2d Cir. 1976) (noting automatic stay's goal of "harmoniz[ing] all of the creditors' interests with one another").

23. The Debtors submit that the balance of the equities strongly favors keeping the stay in place, and that the Lift Stay Motion should be denied.

**D.   Maceoo Cannot Prevail on the Merits Because It Does Not Have An Enforceable Right To Reclamation.**

24. Maceoo seeks to lift the automatic stay to "exercise its state law remedies to reclaim its merchandise[.]" Lift Stay Mot. ¶ 23. However, Maceoo has no such right under state or federal law.

25. Courts agree that "Section 546(c) of the Bankruptcy Code provides the exclusive remedy for a seller who seeks to reclaim goods from a debtor in bankruptcy." *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, (11th Cir. 1988); *see also, e.g., In re Julien Co.*, 44 F.3d 426, 432 (6th Cir. 1995). It is "well established that a seller's right to reclaim is 'subject to' the existing interest of a secured creditor, meaning the right to reclaim is subordinate to the interest of a secured creditor[.]" *In re Phar-Mor, Inc.*, 301 B.R. 482, 495 (Bankr. N.D. Ohio 2003). Congress explicitly codified the prior lien defense in the Bankruptcy Code. 11 U.S.C. § 546(c)(1) ("Except as provided in subsection (d) . . . and *subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof . . .*") (emphasis added); *see also* Tex. Bus. & Com. Code Ann. § 2.702(c)

("The seller's right to reclaim . . . is subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor under this chapter . . . "). Thus, both the Bankruptcy Code and the Uniform Commercial Code explicitly recognize that a seller's right to reclamation is subordinate to a valid prior lien held by a lender in those same goods. Accordingly, where there is a prior security interest in goods, and the debt secured by such interest exceeds the value of the goods, the seller may not reclaim the goods.[8]

26. All of the goods delivered by Maceoo are subject to valid prior liens held by secured creditors. Specifically, the Goods are inventory, subject to prior liens held by the lenders under the Debtors' prepetition Asset-Based Revolving Credit Facility, Term Loan Facility, Second Lien Notes, and Third Lien Notes. Collectively, these liens secure over $4.7 billion in indebtedness owed to the Debtors' prepetition lenders. Furthermore, the Debtors' DIP Facility is secured by junior liens on the Debtors inventory, including the Goods. Accordingly, under well-established law and the explicit provisions of section 546(c) of the Bankruptcy Code, Maceoo has *never* had enforceable reclamation rights under state law or under the Bankruptcy Code. For this reason too, the Lift Stay Motion should be denied.

### Reservation of Rights

27. Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under chapter 11 of title 11 of the United States Code (the

---

[8] Courts in this circuit and in others have upheld the so-called "prior lien defense" under both the Bankruptcy Code and the Uniform Commercial Code, as adopted in Texas. *See, e.g., In re hhgregg, Inc.*, 949 F.3d 1039, 1041-42 (7th Cir. 2020) (affirming the bankruptcy court's summary judgment against a seller seeking to enforce its reclamation rights because the reclamation claim was "subordinate to the DIP financing lien" under section 546(c)); *In re Pester Ref. Co.*, 964 F.2d 842, 846 (8th Cir. 1992) ("the [reclamation] right is subordinate or inferior to the security interests"); *In re Samuels & Co., Inc.,* 526 F.2d 1238 (5th Cir.1976) (en banc), *cert. denied* (1976) (finding, in a bankruptcy proceeding, that under the Uniform Commercial Code as adopted in Texas, a perfected security interest "is unquestionably superior to to the interest of the seller" seeking to reclaim the same goods").

"<u>Bankruptcy Code</u>") or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

28.     The Debtors reserve all rights to supplement or add to the legal and factual arguments raised in this Objection, on any bases whatsoever, at a future date.  Additionally, the Debtors reserve all rights to seek damages for violation of the automatic stay.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court deny the Lift Stay Motion.

Houston, Texas
July 7, 2020

/s/ *Matthew D. Cavenaugh*

| | |
|---|---|
| **JACKSON WALKER L.L.P.** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Jennifer F. Wertz (TX Bar No. 24072822) | Anup Sathy, P.C. (admitted *pro hac vice*) |
| Kristhy M. Peguero (TX Bar No. 24102776) | Chad J. Husnick, P.C. (admitted *pro hac vice*) |
| Veronica A. Polnick (TX Bar No. 24079148) | 300 North LaSalle Street |
| 1401 McKinney Street, Suite 1900 | Chicago, Illinois 60654 |
| Houston, Texas 77010 | Telephone: (312) 862-2000 |
| Telephone: (713) 752-4200 | Facsimile: (312) 862-2200 |
| Facsimile: (713) 752-4221 | Email: anup.sathy@kirkland.com |
| Email: mcavenaugh@jw.com | chad.husnick@kirkland.com |
| jwertz@jw.com | |
| kpeguero@jw.com | -and- |
| vpolnick@jw.com | |
| | Matthew C. Fagen (admitted *pro hac vice*) |
| *Co-Counsel to the Debtors and Debtors in Possession* | 601 Lexington Avenue |
| | New York, New York 10022 |
| | Telephone: (212) 446-4800 |
| | Facsimile: (212) 446-4900 |
| | Email: matthew.fagen@kirkland.com |
| | |
| | *Co-Counsel to the Debtors and Debtors in Possession* |

**Certificate of Service**

      I certify that on July 7, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

      */s/ Matthew D. Cavenaugh*
      Matthew D. Cavenaugh