

PACHULSKI
STANG
ZIEHL
JONES

LAW OFFICES
LIMITED LIABILITY PARTNERSHIP

LOS ANGELES, CA
SAN FRANCISCO, CA
WILMINGTON, DE
NEW YORK, NY
COSTA MESA, CA

10100 SANTA MONICA BLVD.
13th FLOOR
LOS ANGELES
CALIFORNIA 90067

**TELEPHONE:** 310/277 6910
FACSIMILE: 310/201 0760

**SAN FRANCISCO**
150 CALIFORNIA STREET
15th FLOOR
SAN FRANCISCO
CALIFORNIA 94111-4500

**TELEPHONE:** 415/263 7000
FACSIMILE: 415/263 7010

**DELAWARE**
919 NORTH MARKET STREET
17th FLOOR
P.O. BOX 8705
WILMINGTON
DELAWARE 19899-8705

**TELEPHONE:** 302/652 4100
FACSIMILE: 302/652 4400

**NEW YORK**
780 THIRD AVENUE
34th FLOOR
NEW YORK
NEW YORK 10017-2024

**TELEPHONE:** 212/561 7700
FACSIMILE: 212/561 7777

**COSTA MESA**
650 TOWNE CENTER DRIVE
SUITE 1500
COSTA MESA
CALIFORNIA 92626

**TELEPHONE:** 714/384 4750
FACSIMILE: 714/384 4751

WEB: www.pszjlaw.com

Richard M. Pachulski

August 2, 2020

310.772.2342
rpachulski@pszjlaw.com

**VIA E-MAIL**

Hector Duran
Office of U.S. Trustee
515 Rusk Street, Suite 3516
Houston, TX 77002
Email: hector.duran.jr@usdoj.gov

Re: **Neiman Marcus – Committee Issue**

Dear Mr. Duran:

    As you know, my firm is lead counsel, and Cole Schotz, PC is co-counsel, to the Official Committee of Unsecured Creditors (the "**Committee**") in the pending chapter 11 cases of Neiman Marcus Group LTD LLC, *et al*. (together, the "**Debtors**"). We are writing to advise your office of certain background and communications (much of which Michael Warner of Cole Schotz and I communicated to you by phone yesterday, August 1, 2020), about certain events involving one of the members of the Committee, Dan Kamensky ("**Kamensky**") as the representative of Marble Ridge Capital LP ("**Marble Ridge**").

    The relevant background and communications are described below:

1.     On Wednesday, July 29, 2020, at a Committee meeting (the "**July 29 Committee Meeting**"), the Committee agreed, subject to certain conditions, to support a settlement and resolution of issues arising out of what has been referred to as the MyTheresa distribution. The proposed settlement includes the Debtors, their equity sponsors, and their lender constituents, and contemplates a proposed chapter 11 plan that will include the *pro rata* distribution of 140 million Series B preferred shares (the "**Series B Shares**") in MYT Holding Co. (the "**MyTheresa Distribution**") to the holders

DOCS_SF:103914.4 59944/002



PACHULSKI STANG ZIEHL & JONES

LAW OFFICES

Office of U.S. Trustee
August 2, 2020
Page 2

of allowed general unsecured claims in Classes 10 and 11 of the Debtors' Plan (the "**MyTheresa Settlement**"). No lender deficiency claims would be allowed to share in the MyTheresa Distribution. The terms of the MyTheresa Settlement were incorporated into the amended Plan attached to the Debtors' Disclosure Statement, which Disclosure Statement was presented to and approved by the Court on Thursday, July 30, 2020.

2. Marble Ridge was appointed as a Committee member by your Office and Kamensky was the representative of Marble Ridge on the Committee.

3. Even prior to agreeing to the MyTheresa Settlement, the Committee recognized that there could be interest by some unsecured creditors to convert the Series B Shares into cash. The Series B Shares are illiquid because they are only payable in the event of an asset disposition or other liquidation event. The Series B Shares are subordinate to at least $200 million of senior debt owed to the Debtors' second lien noteholders and $250 million of Series A preferred shares held by the Debtors' third lien noteholders. In connection with the Committee's various discussions, Kamensky advised the Committee that, at the appropriate time if a settlement were reached, Marble Ridge would be prepared to discuss with the Committee a cash-out option, funded by Marble Ridge for those unsecured creditors of the Debtors' estates who were interested in receiving cash instead of the Series B Shares. It was suggested that such a cash-out option may be selected by certain trade creditors and landlords who traditionally prefer cash over illiquid securities.

4. Immediately after the Committee approved the MyTheresa Settlement in the July 29 Committee Meeting, the Committee authorized me to enter into discussions with Marble Ridge to potentially structure a cash-out option for unsecured creditors: either they could retain their *pro rata* share of the Series B Shares or they could receive a cash payment funded by Marble Ridge to monetize the Series B Shares. The July 29 Committee Meeting included discussions regarding Marble Ridge's proposal. Marble

DOCS_SF:103914.4 59944/002



Office of U.S. Trustee
August 2, 2020
Page 3

Ridge, its representatives, and counsel were excluded from that portion of the meeting. In such discussions, the Committee addressed the requirement that if a transaction for a cash-out option proposed by Marble Ridge was supported by the Committee, Marble Ridge would have to agree to refrain from objecting to the Debtors' Plan, in order to provide what has been the Committee's consistent objective of global peace and expedited resolution and reorganization of the Debtors. The Committee further discussed Marble Ridge's offer of a cash-out option of $0.20 per Series B Share. In effect, the Marble Ridge proposal would provide a cash-out option to any unsecured creditor who preferred to liquidate its share of the MyTheresa Distribution, rather than wait on a contingent recovery of what is today an illiquid instrument but could later equal up to $1.00 per share.  The Committee and its professionals recognized that many details needed to be addressed, but the discussions were to commence immediately with Marble Ridge.

5.  From immediately following the July 29 Committee Meeting through the evening of July 30, 2020, I negotiated with Kamensky. As you are aware, mid-day on July 30, the Court heard and considered the Debtors' Disclosure Statement, which incorporated the MyTheresa Settlement reached the day before. At the Disclosure Statement Hearing, the Committee requested that the Court provide the Debtors, the Committee, and other relevant constituencies time to make changes to both the Disclosure Statement and the proposed Plan before the solicitation process commenced. The Committee requested such time so that the terms of the Disclosure Statement and the Plan could be fine-tuned. In addition, the Committee wanted time to potentially incorporate a cash-out option for unsecured creditors. The Court accommodated the request and set a further hearing, if necessary, for August 3, 2020. In recognition of the need to complete the documents quickly, so that the solicitation process was not delayed, I worked expeditiously with Kamensky. It was anticipated that, if the Committee was successful in its negotiations with Kamensky, the cash-out option might have been incorporated in the Debtors' Plan. No formal written proposal had been provided by Kamensky to the Committee as of the morning of Friday, July 31, 2020.



Office of U.S. Trustee
August 2, 2020
Page 4

6. On the morning of July 31, 2020, I intended to prepare a summary for the Committee of the status of my negotiations with Kamensky regarding the cash-out option and the remaining issues to be negotiated. Prior to my doing so, the Committee's financial advisor, Mohsin Meghji of M-III Partners L.P. ("**Meghji**"), sent me an e-mail that Jefferies LLC ("**Jefferies**") had contacted him to inquire about Jefferies providing an unsolicited bid in the range of $0.30+ per Series B Share for the purchase of the entire 140 million Series B Shares or, alternatively, a cash-out option for those unsecured creditors who wanted it. Meghji and I concluded that we should have an immediate call with Jefferies to discuss their higher cash-out option proposal.

7. At 9:15 a.m. Pacific time on July 31, 2020, Meghji and I had a telephone conference with Eric Geller ("**Geller**") and another gentleman from Jefferies. We advised Geller and his colleague that we seriously doubted there would be any interest in selling the full 140 million Series B Shares at a discount because many unsecured creditors preferred their allocation of the Series B Shares, but the Committee would be very interested in the cash-out option. Meghji and I answered many of Geller's and his colleague's questions and, at the conclusion of the call, Geller informed us that Jefferies intended to provide Meghji and me an offer by end of the day on July 31, 2020. About the time of our call with Jefferies, Kamensky had reached out to me to get an update, as we all had a goal to complete any cash-out option structure by Monday, August 3, 2020, the Plan solicitation date, if at all possible.

8. At 12:15 p.m. Pacific Time on July 31, 2020, Meghji and I spoke to Kamensky. We informed Kamensky of the Jefferies inquiry. We further informed him that we did not believe it was appropriate to complete any negotiation with Marble Ridge until we determined if Jefferies would actually make an offer and, if Jefferies did make such an offer, we would need to speak to the Committee about next steps. Kamensky responded that, based on his trading experience, he thought Jefferies was just fishing for information and would not actually make a bid.



PACHULSKI STANG ZIEHL & JONES

LAW OFFICES

Office of U.S. Trustee
August 2, 2020
Page 5

9. Just after 1:00 p.m. Pacific Time on July 31, 2020, Geller sent Meghji and me an e-mail that he wanted us to call him. I reached Geller and his colleague at approximately 2:00 p.m. Pacific Time. Geller and his colleague advised me that Jefferies would not be providing a proposal or a cash-out offer because a significant client of Jefferies had insisted that Jefferies stand down. They also advised me that Jefferies' General Counsel had advised them to be completely transparent with the Committee. I asked Geller and his colleague if the significant client of Jefferies was a member of the Committee and Geller said "yes". I then asked, if the Committee Member was Kamensky and Geller said "yes". The call then ended. I contacted Meghji to inform him of my call with Geller and his colleague. Meghji and I then set up a call with our respective professional teams to discuss next steps.

10. Meghji informed us during our professionals call that he also spoke to Geller, subsequent to my call with Geller, and that Geller confirmed that Jefferies was told by Kamensky to stand down; but Geller did add that while Jefferies was not moving forward with an offer for a cash-out option, certain parties Jefferies was intending to partner with may still be interested in making an offer.

11. At approximately 4:00 p.m. Pacific Time, on July 31, 2020, a group of the Committee's professionals contacted Ed Weisfelner ("**Weisfelner**"), Marble Ridge's counsel, to ask what he knew, if anything, about Kamensky approaching Jefferies to stand down. Weisfelner said he knew nothing about the Jefferies situation, and would call us back after he reached Kamensky. Approximately 30 minutes later, I and other Committee professionals spoke again with Weisfelner who informed us that Kamensky said he did contact Jefferies, but there was a *misunderstanding*; specifically, that Kamensky told Jefferies that they should bid if they were serious but, if not, they should back off to avoid disrupting the process.

12. On the morning of August 1, 2020, Geller and one of his colleagues contacted me to inquire whether the Committee would be interested in receiving an offer for a cash-out

DOCS_SF:103914.4 59944/002



PACHULSKI STANG ZIEHL & JONES

LAW OFFICES

Office of U.S. Trustee
August 2, 2020
Page 6

option for the unsecured creditors. I said "yes". I then asked if Geller would re-confirm the conversation that he and I had the day before with regard to Kamensky asking Jefferies to stand down. Geller re-confirmed the conversation and the statements made. At the end of the conversation, Geller said Jefferies would have an offer to the Committee for the cash-out option by mid-day Monday, August 3, 2020. I asked Geller and his colleague if Kamensky called them and told them they should move forward with their bid. Geller said the Jefferies General Counsel did not want them to discuss with me anything beyond what they conveyed the day before. I said I understood and I then requested they have the General Counsel reach out to me, which he did, and we ultimately scheduled a call among some of the Committee professionals with the Jefferies' General Counsel for the afternoon of August 1, 2020.

13. Late morning on August 1, 2020, the Committee held a meeting where the Committee was informed that Marble Ridge's counsel had already advised you that Marble Ridge resigned its position on the Committee (*see* Weisfelner's e-mail of August 1, 2020, to you, a copy of which was provided to me), and of the above developments and the intended next steps. In particular, the professionals informed the Committee that:

   a. Michael Warner and I would immediately contact you regarding these issues (our call to you August 1, 2020, in the afternoon); and

   b. We were hopeful that Jefferies would make a cash-out offer for the benefit of interested unsecured creditors by mid-day Monday, August 3, 2020 (as speed was important, both for the Plan process and the disclosures required to the Court) and, if so, that the Committee professionals would work expeditiously to finalize a potential *stalking horse* agreement with Jefferies if the offer was acceptable to the Committee and, immediately thereafter, file a motion to approve an auction procedure for the cash-out option that would, among other things, disclose the above situation. The disclosure of the issues



Office of U.S. Trustee
August 2, 2020
Page 7

        above would be included for full disclosure and avoid any tainting of the process in an effort to maximize recovery for unsecured creditors.

14. As discussed in our call with you yesterday, August 1, 2020, the expectation is that the motion regarding the cash-out option would be filed sometime during the middle of this week. We also advised you that, if no such motion were likely to be filed this week for whatever reason, we would consider a different mechanism to advise the Court of the above situation. As discussed, we fully intend to inform the Court about the relevant facts and will not let the process dictate or delay such disclosure.

15. In the afternoon on August 1, 2020, following our call with you, a group of the Committee's professionals spoke to Jefferies' General Counsel. Among other things, the General Counsel informed us that Kamensky contacted Jefferies again (following the initial call earlier in the day) on Friday evening (July 31, 2020) and that the General Counsel was not on that call, but he had been told by Jefferies' employees, that Kamensky *seemed concerned*. We were told no further information regarding the change in position. We did say that the Committee was pleased to hear that Jefferies would be making a proposal.

        Thank you again for taking the time yesterday to speak to Michael Warner and me. As we informed you, because of the sensitivity of the facts and circumstances laid out above, we have not advised anyone of this situation, except for the Committee. We are still processing the information in order to maximize, and not jeopardize, value for unsecured creditors, as well as addressing the integrity of the entire bankruptcy process. As we discussed with you, we will look to you for your input on the method and timing to bring these issues to the Court's attention.

DOCS_SF:103914.4 59944/002



Office of U.S. Trustee
August 2, 2020
Page 8

    We look forward to speaking to you after the weekend and will continue on the path I have set forth above, but will not formalize any agreement with Jefferies or file anything with the Court until we have spoken to you further. Michael Warner and I will make ourselves available at your convenience to speak to you or others in the United States Trustee's Office to discuss this matter.

    Very truly yours,

    /s/

    Richard M. Pachulski

Via E-mail

cc:    Mo Meghji
       Alan Kornfeld, Esq.
       Jeff Pomerantz, Esq.
       Michael D. Warner, Esq.
       Maxim Litvak, Esq.

DOCS_SF:103914.4 59944/002