IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NEIMAN MARCUS GROUP LTD LLC, *et al.,* | : | Case No. 20-32519 (DRJ) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

## DECLARATION OF EDWARD S. WEISFELNER

I, EDWARD S. WEISFELNER, declare under penalty of perjury:

1. I am an attorney at law admitted to practice in the State of New York. I represent Marble Ridge Capital LP and Marble Ridge Master Fund LP ("Marble Ridge") in the above-referenced matter. I am over the age of 18 (eighteen) and authorized to submit this declaration on behalf of Marble Ridge. Except as otherwise noted, all facts set forth in this Declaration are based upon (a) my personal knowledge, (b) information learned from my review of relevant documents, and (c) information I have received from Marble Ridge. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

2. Dan Kamensky, as the representative of Marble Ridge, had, until August 1, 2020, served as a member and one of the Co-chairs of the Official Committee of Unsecured Creditors

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Neiman Marcus Group LTD LLC (9435); Bergdorf Goodman Inc. (5530); Bergdorf Graphics, Inc. (9271); BG Productions, Inc. (3650); Mariposa Borrower, Inc. (9015); Mariposa Intermediate Holdings LLC (5829); NEMA Beverage Corporation (3412); NEMA Beverage Holding Corporation (9264); NEMA Beverage Parent Corporation (9262); NM Bermuda, LLC (2943); NM Financial Services, Inc. (2446); NM Nevada Trust (3700); NMG California Salon LLC (9242); NMG Florida Salon LLC (9269); NMG Global Mobility, Inc. (0664); NMG Notes PropCo LLC (1102); NMG Salon Holdings LLC (5236); NMG Salons LLC (1570); NMG Term Loan PropCo LLC (0786); NMG Texas Salon LLC (0318); NMGP, LLC (1558); The Neiman Marcus Group LLC (9509); The NMG Subsidiary LLC (6074); and Worth Avenue Leasing Company (5996). The Debtors' service address is: One Marcus Square, 1618 Main Street, Dallas, Texas 75201.

(the "Committee") in the pending chapter 11 cases of Neiman Marcus Group LTD LLC, *et al*. (together, the "Debtors"). In that capacity, Marble Ridge was made aware of settlement negotiations between the Debtors' equity sponsors and Scott Vogel, the disinterested manager of the Debtors, as such negotiations were brought to the Committee's attention. In that connection, Marble Ridge was informed that any settlement was likely to take the form of Class B shares of MyTheresa Holding Co. (the "Series B Shares" or the "Units") and some cash (the "Disinterested Manager Settlement").[2]

3. Marble Ridge also understood from Committee professionals that some unsecured creditors, both on and off the Committee, likely would prefer to receive cash rather than receiving Units of uncertain value and subject to transfer restrictions. Marble Ridge and Committee professionals held preliminary discussions while settlement negotiations proceeded about the potential outlines of this and other aspects of a settlement that could gain the support of Marble Ridge.

4. Following the July 29, 2020, determination by the requisite majority of the Committee to support the Disinterested Manager Settlement, and with the Committee's knowledge and support, Marble Ridge engaged in more intense negotiations with the Committee professionals to structure a cash-out option and allocation mechanism that would offer non-funded debt holders payment in cash in lieu of Units and would allow Marble Ridge and other similarly situated funded debt creditors to assume both the risk and potential benefit of holding the Units.

---

[2] *See Amended Disclosure Statement for the Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 1390] (the "Disclosure Statement"), Section VII. L.

5. Marble Ridge understood that, as a condition to becoming the funder of a cash out option, it would have to withdraw its opposition to the Disinterested Manager Settlement and fully support an expedited reorganization of the Debtors.

6. Marble Ridge was aware that Committee professionals were seeking an adjournment of the Disclosure Statement hearing from July 30, 2020, to the middle of the following week to enable them to finalize the cash pay-out and allocation mechanisms. It was Marble Ridge's belief that the details of its cash out and settlement proposal would have to be completed and approved by the Committee and, where relevant, other stakeholders before the approved Disclosure Statement was ready to be sent out to voters and other parties in interest. Proposals were shared among Marble Ridge and the Committee's professionals in the early afternoon of July 30, 2020.

7. After the hearing on Thursday, July 30, 2020, Marble Ridge was under the impression that a deal might have to be brokered and the details included in the Disclosure Statement as early as Monday, August 3, 2020 (rather than the middle of that week) so that the cash out option could be reflected on the ballots going to Class 10 (as defined in the Disclosure Statement). Consequently, Marble Ridge and Committee professionals believed that timing was very tight to complete their negotiations.

8. The parties worked into the evening of July 30, 2020, making significant progress toward a comprehensive settlement and agreement. Marble Ridge was finalizing its formal proposal with the aim of submitting it no later than the close of business on Friday, July 31. 2020.

9. As a consequence of the time constraints, Mr. Kamensky was particularly concerned when he was informed that Jefferies Financial Group ("JFG") had advised Committee

counsel that it intended to submit either an expression of interest or a proposal by close of business on Friday, July 31, 2020. Mr. Kamensky was concerned that JFG's last minute expression of interest might not be fully formed with financing lined up and all other conditions resolved or resolvable on an expedited time frame. In retrospect, Mr. Kamensky regrets using language which could be left for interpretation that JFG should withdraw rather than risk destroying a delicately balanced and time sensitive proposal that could lead to a fully consensual settlement. Mr. Kamensky only intended to convey that JFG only move forward if genuine in their intent and had committed financial backing in light of the time constraints.

10. JFG subsequently advised Committee counsel that, in consideration of Mr. Kamensky's communication, it was not going to be moving forward, which came as a surprise to Mr. Kamensky when subsequently informed about JFG's communication to Committee counsel.

11. At no time did Mr. Kamensky believe his conversation would impair or prevent JFG from submitting a proposal that was fully committed. Mr. Kamensky emailed Committee professionals late in the day on July 31, 2020, to inquire as to whether they had heard back JFG but did not receive a response.

12. Committee counsel then contacted me on Friday evening regarding the aforementioned developments and indicated a need to bring these facts to the full Committee in an emergency meeting for the following day. Mr. Kamensky then took an opportunity to review these developments with me at which point Mr. Kamensky determined to do four things.

13. First, Mr. Kamensky communicated to Jefferies that he was concerned there had been a significant misunderstanding between, what Mr. Kamensky communicated to Jefferies and what Jefferies reportedly related to Committee professionals.

14. Second, on the morning of August 1, 2020, Mr. Kamensky resigned from the Committee after consultation with me to avoid even the appearance of impropriety and to ensure that any further communications occur on an arm's length basis with the same communicated to Committee counsel. Attached hereto and incorporated herein as **Exhibit 1** is my August 1, 2020 email to Committee Counsel.

15. Third, as stated in Exhibit 1, Marble Ridge sought to have communicated to JFG through Committee Counsel that a bona fide bid would be welcome. Finally, Marble Ridge emphasized its willingness to work with the Committee and the other parties in interest to achieve a prompt and fair resolution of all open issues.

16. Finally, on August 1, 2020 I wrote to the United States Trustee's Office for the Southern District of Texas (the "UST"), as reflected in a copy of my email attached hereto and incorporated herein as **Exhibit 2**, advising the UST of Marble Ridge's resignation from the Committee, explaining the circumstances and offering to provide as much detail regarding the matter as the UST may desire. It is also important to note that, as was reflected in that communication, and consistent with Marble Ridge's desire, JFG has now indicated its intention to make a firm bid to purchase the Units.

17. Marble Ridge wishes to call to the Court's attention that on August 3, 2020, Marble Ridge submitted a revised proposal to the Committee that, if accepted, would provide significant value to the non-funded debt creditors and could result in a global comprehensive consensual Plan.

18. Marble Ridge remains committed to resolving these cases in a prompt, efficient and fair manner and to continuing to work with the parties, including the Committee, toward that end.

19. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated:  August 4, 2020
       New York, New York

*/s/ Edward S. Weisfelner*
Edward S. Weisfelner