UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NEIMAN MARCUS GROUP LTD, LLC, *et al.,*[1] | ) | Case No. 20-32519 (DRJ) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**KAREN KATZ'S LIMITED OBJECTION AND RESERVATION OF
RIGHTS TO CONFIRMATION OF DEBTORS' FIRST AMENDED JOINT PLAN OF
REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Karen Katz hereby submits this limited objection (the "***Limited Objection and Reservation***") and reserves all rights with respect to confirmation of the *Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [ECF No. 1388] (the "***Proposed Plan***"), and respectfully states as follows:

**INTRODUCTION**

(1)   Neiman Marcus Group LTD LLC and its affiliates (collectively the "***Debtors***") seek to confirm the Proposed Plan, pursuant to which holders of Non-Funded Debt General Unsecured Claims[2] in Class 11 are to receive a pro rata share of (i) 140,000,000 shares of MYT Series B Preferred Stock (the "***Sponsor Contribution***") and (ii) $10,000,000 in cash.  *See* Proposed Plan at Art. III. B. 11.  Pursuant to the Proposed Plan, creditors and Class 11 will

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:  Neiman Marcus Group LTD LLC (9435); Bergdorf Goodman Inc. (5530); Bergdorf Graphics, Inc. (9271); BG Productions, Inc. (3650); Mariposa Borrower, Inc. (9015); Mariposa Intermediate Holdings LLC (5829); NEMA Beverage Corporation (3412); NEMA Beverage Holding Corporation (9264); NEMA Beverage Parent Corporation (9262); NM Bermuda, LLC (2943); NM Financial Services, Inc. (2446); NM Nevada Trust (3700); NMG California Salon LLC (9242); NMG Florida Salon LLC (9269); NMG Global Mobility, Inc. (0664); NMG Notes PropCo LLC (1102); NMG Salon Holdings LLC (5236); NMG Salons LLC (1570); NMG Term Loan PropCo LLC (0786); NMG Texas Salon LLC (0318); NMGP, LLC (1558); The Neiman Marcus Group LLC (9509); The NMG Subsidiary LLC (6074); and Worth Avenue Leasing Company (5996).  The Debtors' service address is:  One Marcus Square, 1618 Main Street, Dallas, Texas 75201.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Proposed Plan.

directly receive their treatment under the Plan. *See id.* While Ms. Katz does not object to the proposed treatment for Class 11 as set forth in the Proposed Plan, upon information and belief, pursuant to last minute negotiations with certain creditor constituencies, the Debtors may seek to modify the treatment of Class 11 such that the entirety of the Sponsor Contribution will be deposited into a form of creditor trust rather than directly distributed to the holders of Non-Funded Debt General Unsecured Claims. To the extent that the Debtors propose to do so, Ms. Katz submits that such modification must comply with section of 1127(c) of the Bankruptcy Code and that holders of claims and interests should have time to review and vote on the Plan and related documents as modified.

## BACKGROUND

(2)     On May 7, 2020, (the "***Petition Date***"), each of the Debtors filed a voluntary petition for relief with this Court under Chapter 11 of the Bankruptcy Code. As part of their "first day" pleadings, the Debtors filed the *Debtors' Emergency Motion for Entry of an Order(I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses, and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief* [ECF 29] (the "***Wage Motion***") seeking to continue their employee benefits programs, including their supplemental non-qualified retirement plans, in the ordinary course of business. As described more fully in the Wage Motion, approximately 84 current employees and 269 retired employees received benefits under the Debtors' supplemental non-qualified retirement plans and approximately 80 former employees had rights to future benefits under the DB SERP (as such term is defined in the Wage Motion).[3]

(3)     On May 8, 2020, the Court entered the *Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses, and*

---

[3] The foregoing amounts do not include the participants in the Broadway SERP.

*(B) Continue Employee Benefits Programs, and (II) Granting Related Relief* [ECF 245], which, among other things, authorized the continuation of the Debtors' retirement benefits plans during the pendency of the Debtors' chapter 11 cases.

(4)     Shortly after the Petition Date, Geoffroy van Raemdonck, the Chairman and Chief Executive Officer of Neiman Marcus Group sent a letter to all retirees assuring them that the Debtors' chapter 11 cases was "not intended to impact [their] pension or other retiree benefits." *See* CEO Ltr. To NMG Retirees ¶ 2, attached hereto as **Exhibit A**.

(5)     On July 30, 2020, the Debtors filed the Proposed Plan and *the Disclosure Statement for the Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [ECF 1390].

(6)     On July 30, 2020, the Court entered the *Order (I) Approving the Adequacy of the Disclosure Statement, (ii) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Joint Plan of Reorganization, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Sales with Respect Thereto, and (V) Granting Related Relief* [ECF 1400] (the "**Disclosure Statement Approval Order**").  Pursuant to the Disclosure Statement Approval Order, the Debtors were to file a plan supplement no later than fourteen (14) days prior confirmation and at least ten (10) days prior to the August 31, 2020, plan objection and voting deadline to give holders of claims and interests sufficient time to consider the documents essential to the implementation of the Proposed Plan prior to voting.

(7)     On August 21, 2020, the Debtors filed the *Plan Supplement for the First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [ECF 1513] (the "**Plan Supplement**").

(8) Exhibit E to the Plan Supplement contains the *Schedule of Rejected Executory Contracts and Unexpired Leases*, pursuant to which the Debtors propose to reject each of their supplemental non-qualified retirement plans. *See* Plan Supplement Ex. E at 1. On August 24, 2020, the Debtors served the Notice of Plan Supplement and Exhibit E on affected retirees by first class mail. *See* ECF 1624. The Plan Supplement and a related letter posted on Stretto on August 21, 2020, were the first communications by the Debtors to retirees since the assurances provided by the CEO at the time the cases were filed. Ms. Katz is aware of the proposed rejection of the benefit programs because counsel checked court filings. Perhaps unsurprisingly given the notoriety of recent delays in mail delivery, Ms. Katz has not yet received the mailed notice of the rejection of her benefits.

(9) Exhibit G to the Plan Supplement contains a *Description of Transaction Steps*, which provides as part of step 3 for the distribution of consideration pursuant to the Proposed Plan "to the applicable Holders in exchange for their applicable Claims pursuant to the Plan." Plan Supplement Ex. G ¶ 3.

(10) Exhibit H to the Plan Supplement contains a place holder for the Form of New MyT Documents. To date, no such documents have been filed.

(11) Karen Katz is the former CEO of the Neiman Marcus Group. As a result of her 33 years of employment by the Debtors, Ms. Katz has a vested interest in certain of the Debtors' supplemental retirement plans, including the DC SERP and the DB SERP (as such terms are defined in the Wage Motion). Ms. Katz, and undoubtedly numerous other retirees, to date has received only constructive notice that the Debtors intend to reject her retiree benefit plans. Regardless of the lack of notice, Ms. Katz voted to accept the Proposed Plan, which proposes to distribute directly to her a pro rata share of cash and MYT Preferred B Stock.

(12) Contrary to the treatment described on the Proposed Plan, however, the Court has been advised in several recent status conferences that the Debtors, in conjunction with certain of their creditor constituencies, were planning to change the manner of distribution of the Sponsor Contribution to holders of Non-Funded Debt General Unsecured Claims in Class 11 (the "***Proposed Plan Modification***").  Rather than a direct distribution as currently described in the Proposed Plan and in step 3 of the Description of Transaction Steps, the Debtors would instead deposit the entirety of the Sponsor Contribution into a form of creditor trust.  To date, the Debtors have not filed with the Court or provided creditors with any information regarding what form the trust may take or how holders of claims in Class 11 will ultimately receive their share of the Sponsor Contribution from the trust.  Accordingly, Ms. Katz files this Limited Objection and Reservation to preserve her right to object to any such modification, to the extent applicable, and to assert her right to vote on the Proposed Plan as amended by the Proposed Plan Modification as required by sections 1129(a)(1) and 1127(c) of the Bankruptcy Code.

## ARGUMENT

(13) Section 1129(a)(1) of the Bankruptcy Code provides that a plan must comply with applicable provisions of the Bankruptcy Code to be confirmed.  11 U.S.C. § 1129(a)(1).  Section 1127(c) of the Bankruptcy Code requires that all proposed modifications of a plan must satisfy the adequacy of disclosure requirements in section of 1125 of the Bankruptcy Code, including the solicitation of votes on the plan as modified, if applicable.  *See* 11 U.S.C. § 1127(c); 11 U.S.C. § 1125.

(14) To the extent the Debtors seek to modify the Proposed Plan in a manner that alters the treatment to holders of Non-Funded Debt General Unsecured Claims in Class 11 by changing the form of that treatment or changing the manner of distribution of that treatment, such holders should have the opportunity to consider such modifications and change their votes on the

Proposed Plan, as modified. *See In re Young Broadcasting Inc.* Bankr. S.D.N.Y. 430 B.R. 99, 120-121 (2010) (finding a modification which proposed to alter the voting rights that management would possess pursuant to stock that management received under the plan a material modification that would require re-solicitation); *In re Concrete Designers, Inc.*, 173 B.R. 354, 358 (Bankr. S.D. Ohio 1994) (declining to confirm a plan and finding a new disclosure statement was warranted where amendments to the plan altered the distribution scheme concerning unsecured creditors in a manner where some creditors could analyze the treatment as less favorable than the original plan). Ms. Katz submits that any modification that changes the treatment she is to receive under the Plan by putting a barrier in the form of an unknown trust between Ms. Katz and the receipt of her consideration is a material adverse change to her treatment under the Proposed Plan that would cause her to reconsider her acceptance of the Plan.

**CONCLUSION**

WHEREFORE, for the foregoing reasons, Karen Katz respectfully requests that to the extent the Debtors propose to alter the form of consideration or manner of treatment for Non-Funded Debt General Unsecured Claims in Class 11, that the Court require the Debtors to provide the creditors adequate information to make an informed decision about the Proposed Modification, including at least ten (10) days actual notice to consider whether to change their cotes or object to the Proposed Plan as modified by the Proposed Modification.

Dated this 31st day of August, 2020

Dallas, Texas.

Respectfully submitted,

**Butler Snow LLP**

By:   /s/ *Martin A. Sosland*

Martin A Sosland
(TX State Bar No. 18855645)
Candice M. Carson
(TX State Bar No. 24074006)
**Butler Snow LLP**
5430 LBJ Freeway, Suite 1200
Dallas, TX 75240
Telephone: 469-680-5503
Email: Martin.Sosland@butlersnow.com
         Candice.Carson@butlersnow.com

## **CERTIFICATE OF SERVICE**

    I certify that on August 31, 2020, a true and correct copy of the foregoing document was electronically filed and served via CM/ECF on all parties requesting electronic notification in this case.

                                                                             /s/ *Martin A. Sosland*
                                                                             Martin A. Sosland

# **EXHIBIT A**

## **CEO Letter to NMG Retirees**

Dear NMG Retirees,

On May 7, 2020, Neiman Marcus Group announced that we entered into a binding agreement with a significant majority of our creditors to undergo a financial restructuring that will substantially reduce our debt load and interest payments, and provide us access to considerable financing to ensure business continuity. To implement this agreement, we commenced voluntary Chapter 11 proceedings.

To be clear, this is not a liquidation of our business and today's filing is not intended to impact your pension or other retiree benefits. By moving into voluntary Chapter 11 proceedings, we will emerge a stronger company with the ability to achieve our vision of becoming the preeminent luxury customer platform. And we will do it with the love and caring for associates, brand partners, and customers that has always been in our DNA.

Over the last few years, Neiman Marcus Group has been on a journey to drive profitable and sustainable growth. Last year we achieved over $4 billion in revenue and over $400 million in EBITDA. We were on track to meet or exceed those same results this fiscal year, but that was before the COVID-19 pandemic. The disruption from this unprecedented global crisis ultimately made it impossible to continue to service our debt and maintain operations. The Chapter 11 process protects our business and ensures NMG is here to serve you, our brand partners, and customers for years to come.

As part of the process, we have secured $675 million in financing from our creditors during the Chapter 11 proceedings. Our creditors have also committed to fulfill a $750 million exit financing package that would fully refinance the debt incurred for the bankruptcy process and provide additional liquidity for the business to complete our transformation over the long term.

We expect to emerge from the Chapter 11 proceedings in early Fall 2020. While in Chapter 11, we will continue to hear speculation about our business, and we may encounter some who could attempt to distract us from the successful future we will achieve. Rest assured, we will continue to expertly manage our business as we always have.

We have a rich history of over 100 years, and we are unrivaled in the relationships we have with our luxury customers. We are resilient and will have more available resources to get us through the pandemic and continue to serve associates and customers for a long time to come. We will continue to provide our brand partners access to the best luxury customer base in the U.S. We are uniquely differentiated in luxury retail to bring our customers personal, seamless, and magical experiences. And we are committed to be an employer of choice.

We are so grateful for your trust in us, and together we will continue to define luxury well into the future.

Best Regards,

Geoffroy van Raemdonck
*Chairman & Chief Executive Officer, Neiman Marcus Group*