IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| NEIMAN MARCUS GROUP LTD LLC, *et al.,* | § § § | Case No. 20-32519 (DJR) |
| Debtors. | § § § | (Jointly Administered) |

**RESPONSE IN OPPOSITION TO ANNALY'S LIMITED OBJECTION AND RESERVATION OF RIGHTS WITH RESPECT TO THE PROPOSED ASSUMPTION AND ASSIGNMENT OF ITS LEASE AND TO CONFIRMATION**

Party-in-interest Bicoastal Retail Ventures LLC ("Bicoastal") hereby files this response (the "Response") in opposition to *Annaly's Limited Objection and Reservation of Rights with Respect to the Proposed Assumption and Assignment of its Lease and to Confirmation* (the "Limited Objection") [Docket No. 1622], as filed by ACREG 5300 Wisconsin LLC ("Annaly"). In support of its Response, Bicoastal states the following:

**PRELIMINARY STATEMENT**

Bicoastal has been negotiating with the Debtors' agents for the assumption and assignment of two of the Debtors' leases in exchange for a $1 million payment to the Debtors' estate. With regard to one such lease—at Mazza Gallerie in Washington D.C.—Annaly filed an objection to the assignment on the basis that Bicoastal cannot cure the default under the Mazza Gallerie lease and cannot provide adequate assurance of future performance. Such objections are without merit. Even before Annaly filed the Limited Objection, Bicoastal had, *inter alia,* offered to promptly pay the full cure amount and provide adequate assurance of future performance. It remains prepared and able to cure the default and provide adequate assurance. Accordingly, the bases for the Limited Objection are negated, and Annaly's objections should be overruled. The

1

701256
81386.00003

assignment to Bicoastal would infuse a significant sum of money into the Debtors' estate, and consummating the transaction is in the best interest of the Debtors' estate and their creditors.

## RELEVANT BACKGROUND

As part of the Debtors' bankruptcy case, Bicoastal conducted negotiations with the Debtors' real estate broker and with Debtors' counsel for the assignment of two Neiman Marcus leases: one at the The Shops at the Bravern located in Bellevue, Washington (the "Bravern Lease"), and the second at the Mazza Gallerie located in Washington, D.C. (the "Mazza Gallerie Lease" and, together with the Bravern Lease, the "Leases). In exchange for assigning the Leases to Bicoastal, Bicoastal offered to pay $1,000,000.00 to the Debtors' bankruptcy estate.

No objections have been filed related to the assignment of the Bravern Lease, but Annaly—the new owner of the Mazza Gallerie—filed the Limited Objection related to the Mazza Gallerie Lease. The cure amount of the Mazza Gallerie lease is approximately $237,309.81 (the "Cure Amount").

First, the Limited Objection speculates about Bicoastal's financial ability to pay the Cure Amount and provide adequate assurance of future performance. Contrary to Annaly's baseless assertions, Bicoastal has the financial wherewithal to satisfy all requisite obligations under the Bankruptcy Code to become the assignee of the Mazza Gallerie Lease. Indeed, Bicoastal has offered and is able to pay the Cure Amount in full and escrow a security deposit equal to three months rent immediately upon the effective date of the assignment.

Additionally, the Limited Objection seeks to misdirect the Court by conflating Bicoastal with the former owner of the Mazza Gallerie—Prime Chevy Chase Assets I LLC, from which Annaly obtained the Mazza Gallerie through a foreclosure sale—and a real estate company called Ashkenazy Acquisition Corporation. Throughout the Limited Objection, Annaly

misnames Bicoastal as "the Ashkenazy Entity" when Bicoastal is, in actuality, a separate and distinct corporate entity.

## ARGUMENT AND AUTHORITIES

**A.    Bicoastal can promptly pay the full cure amount.**

In the Limited Objection, four of the five grounds on which Annaly objects relate to the Cure Amount.  Specifically, Annaly objects on the following grounds, each of which Bicoastal will address in turn: (a) to the extent "there is any waiver of the Cure Amount or cure obligations under the Lease"; (b) to the extent "the Lease is not fully cured pursuant to section 365(b)(1) of the Bankruptcy Code"; (c) Bicoastal cannot show "adequate assurance of prompt cure"; and (d) Bicoastal cannot show "adequate assurance that it will promptly compensate Annaly for actual pecuniary losses resulting from defaults under the Lease."

First, Bicoastal has withdrawn its original request to waive the Cure Amount and any other cure obligations under the Lease.  Instead, Bicoastal has offered to promptly pay the full Cure Amount as a lump sum upon the effective date of the assignment.

Second, Bicoastal's payment will fully cure all defaults under the Lease in accordance with 11 U.S.C. § 365(b)(1).

Third, Bicoastal is prepared and able to pay the Cure Amount immediately upon the effective date of the assignment.  Should the Court require proof of sufficient funds in advance, Bicoastal will gladly escrow the full Cure Amount, to be released to Annaly, as landlord, upon the effective date of the assignment.

Fourth, Bicoastal is unaware of—and Annaly has provided no evidence of—any "actual pecuniary losses resulting from defaults under the Lease" that are separate from the Cure Amount.  However, to the extent that Annaly identifies and provides evidence to support such

losses, Bicoastal is prepared and able to pay any such amounts concurrent with its payment of the Cure Amount.

Overall, Annaly's objections related to Bicoastal's ability to cure the lease default in accordance with 11 U.S.C. § 365(b)(1) are unwarranted. Accordingly, the Limited Objection should be overruled.

**B.     Bicoastal can provide adequate assurance of future performance.**

In the Limited Objection, Annaly "submits that [Bicoastal] is incapable of providing adequate assurance . . . of future performance." However, instead of conducting its analysis by citing legal authority, Annaly speculates about Ashkenazy's finances and relies upon other factors unsupported by legal precedent. Specifically, the Limited Objection states:

> 15.     Additionally, based on: (i) the failure of the Borrower, of which Ashkenazy is the majority owner/sponsor and guarantor, to adequately support the Property financially while it was in ownership; (ii) the fact that the Annaly Lender had to initiate litigation in New York State Court against Ashkenazy for non-payment of his guaranty obligations; (iii) the absence of any business plan or other information made available to Annaly with respect to the proposed use of the Property; and (iv) and the lack of any financial history and/or evidence of the financial wherewithal for the nascent Ashkenazy Entity, Annaly submits that the Ashkenazy Entity is incapable of providing adequate assurance of prompt cure or future performance.

Contrary to Annaly's claims, Bicoastal is able to establish "adequate assurance of future performance" as set forth below.

Per the Fifth Circuit, determining "adequate assurance of future performance" is "extremely fact-specific." *In re Texas Health Enterprises Inc.*, 72 Fed. Appx. 122, 126 (5th Cir. 2003). Among the non-exclusive factors considered are the presence of a security deposit, a plan to pay the landlord, and whether the unexpired lease is at, or below, the prevailing market rate.

*See Richmond Leasing Co. v. Capital Bank, N.A*., 762 F.2d 1303, 1310 (5th Cir. 1985); *In re M. Fine Lumber Co., Inc*., 383 B.R. 565, 573 (Bankr. E.D.N.Y. 2008) (citing cases).

In order to establish adequate assurance of future payment, Bicoastal is prepared and able to, *inter alia*, post a security deposit equivalent to three months rent into escrow upon the effective date of the assignment.

C.  **Assignment to Bicoastal will benefit the Debtors' bankruptcy estate and its creditors.**

Most importantly, Bicoastal has offered to pay $1,000,000 to be assigned the Leases. Should the Debtors decline to assign the Leases to Bicoastal and reject the Leases instead, the Debtors' estate and creditors would receive nothing.  One fundamental bankruptcy maxim is that the debtor has a fiduciary duty to its creditors to maximize the value of its estate.  *See, e.g., In re Texas Standard Oil Co*., 2008 Bankr. LEXIS 3576, at *4 (Bankr. S.D. Tex. Nov. 12, 2008); *In re BMW Group I, Ltd*., 168 B.R. 731, 745 (Bankr. W.D. Okla. 1994).  Permitting the assignment of the Leases to Bicoastal would serve to maximize the value of the bankruptcy estate and the return to creditors.

## CONCLUSION

WHEREFORE, Bicoastal hereby requests that the Court overrule the Limited Objection and permit the assignment of the Mazza Gallerie Lease and the Bravern Lease to Bicoastal.

DATED SEPTEMBER 3, 2020                  Respectfully submitted,

**ROSENTHAL PAUERSTEIN SANDOLOSKI AGATHER LLP**
755 East Mulberry, Suite 200
San Antonio, Texas 78212
Telephone:  (210) 225-5000
Facsimile:  (210) 354-4034

By:  */s/ Stephen K. Lecholop II*
Stephen K. Lecholop II
TX State Bar No. 24070119

701256
81386.00003

slecholop@rpsalaw.com

**ATTORNEYS FOR BICOASTAL RETAIL VENTURES LLC**

### CERTIFICATE OF SERVICE

The undersigned certifies that on this 3rd day of September 2020, a true and correct copy of the foregoing was electronically served on the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District.

*/s/ Stephen K. Lecholop II*
Stephen K. Lecholop II

701256
81386.00003