**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Neiman Marcus Group LTD LLC, *et al.*,[1] | ) | Case No. 20-32519 (DRJ) |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

**LIQUIDATING TRUSTEE'S OBJECTION TO PROOF OF
CLAIM NUMBERS 1910 AND 1952 OF SEALASKA HERITAGE INSTITUTE, INC.**

**THIS IS AN OBJECTION TO YOUR CLAIMS.  THIS OBJECTION
ASKS THE COURT TO DISALLOW THE CLAIMS THAT YOU
FILED IN THIS BANKRUPTCY CASE.  IF YOU DO NOT FILE A
RESPONSE WITHIN 30 DAYS AFTER THE OBJECTION WAS
SERVED ON YOU, YOUR CLAIMS MAY BE DISALLOWED
WITHOUT A HEARING.**

Mohsin Meghji ("Trustee") in his capacity as Trustee of the GUC Liquidating Trust (the

"Trust") of Neiman Marcus Group LTD LLC, *et al.*, the above-captioned debtors (collectively,

the "Debtors"), files this Objection (the "Objection") to claim numbers 1952 and 1910 (the

"Sealaska Claims") filed by Sealaska Heritage Institute, Inc. (the "Claimant").   A proposed

Order sustaining this Objection (the "Order") is annexed hereto as **Exhibit A**.  In support of the

Objection, the Trustee, by and through his undersigned counsel, respectfully represents:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Neiman Marcus Group LTD LLC (9435); Bergdorf Goodman Inc. (5530); Bergdorf Graphics, Inc. (9271); BG Productions, Inc. (3650); Mariposa Borrower, Inc. (9015); Mariposa Intermediate Holdings LLC (5829); NEMA Beverage Corporation (3412); NEMA Beverage Holding Corporation (9264); NEMA Beverage Parent Corporation (9262); NM Bermuda, LLC (2943); NM Financial Services, Inc. (2446); NM Nevada Trust (3700); NMG California Salon LLC (9242); NMG Florida Salon LLC (9269); NMG Global Mobility, Inc. (0664); NMG Notes PropCo LLC (1102); NMG Salon Holdings LLC (5236); NMG Salons LLC (1570); NMG Term Loan PropCo LLC (0786); NMG Texas Salon LLC (0318); NMGP, LLC (1558); The Neiman Marcus Group LLC (9509); The NMG Subsidiary LLC (6074); and Worth Avenue Leasing Company (5996). The Debtors' service address is: One Marcus Square, 1618 Main Street, Dallas, Texas 75201.

## INTRODUCTION

1.      On July 20, 2020, Sealaska filed two identical claims (i.e., the Sealaska Claims) one against Debtor Neiman Marcus Group LTD LLC ("NMG LTD") and the other against Debtor The Neiman Marcus Group LLC ("NMG LLC").  The Sealaska Claims each append a copy of a complaint (the "Complaint") filed in the United States District Court for the District of Alaska (the "Alaska District Court"), styled *Sealaska Heritage Institute, Inc. v. Neiman Marcus Group LTD, LLC, Neiman Marcus Group, LLC, Neiman Marcus Group, Inc., and MyTheresa.com, GmbH*, file-stamped April 20, 2020 [Case no. 1:20-cv-00002-SLG] (the "Lawsuit").  By reference to the Complaint, Claimant alleges the basis for the Sealaska Claims is conduct by NMG LTD, NMG LLC and certain non-debtor parties that purportedly gives rise to damages "of $1,000,000 or to be proven in court" for alleged copyright infringement, violation of the Indian Arts and Crafts Act (the "IACA"), and violation of the Lanham Act.

2.      The Trustee disputes any debt is owed to Claimant by either NMG LTD or NMG LLC.  No judgment has been rendered in the Lawsuit against either NMG LTD or NMG LLC (or any of the other defendants).

3.      While the Complaint alleges legal causes of action, it does not itself support a basis for liability.  Indeed, upon closer examination, even assuming the truth of the matters asserted, Claimant fails to establish the *prima facie* validity of the Sealaska Claims.  Claimant's failure to state a cognizable claims against these Debtors, and offering nothing more, requires that the Sealaska Claims be disallowed.

4.      As a threshold matter, NMG LTD is a holding company far removed from the alleged misconduct.  Claimant lumps NMG LTD into its group-plead Complaint without any

factual or legal basis for doing so.  The Sealaska Claims against NMG LTD should be summarily disallowed.

5.      Even if the allegations in the Complaint were true, however, the Sealaska Claims do not survive judicial scrutiny.  Claimant merely alleges an infringing *weaving* design was incorporated into a product that Debtor NMG LLC allegedly listed for sale, but which it neither designed nor manufactured.   NMG LLC reasonably believed the unaffiliated designer, manufacturer and vendor of the Coat, had lawful rights in the design of the Coat, as every vendor who sells goods to the Debtors represents and warrants it has complied with all laws applicable to manufacture and sale of its merchandise and further, specifically indemnifies and holds the Debtors harmless to the extent any vendor's product gives rise to a claim for patent, copyright or trademark infringement. [2]

6.      Claimant's allegations against the Debtors fails to survive scrutiny under the federal pleading standards and should be disallowed.  Briefly, Claimant lacks standing to assert an IACA claim and otherwise fails to establish essential statutory requirements; namely, that NMG LLC falsely advertised the Coat had Alaskan origin.  The Coat indicates it was made in Italy.  Moreover, as Claimant's own Complaint alleges the alleged infringement "commenced" before its copyright registration. Claimant cannot support its claim, much less recover for either statutory damages or attorney's fees, under the Copyright Act.  Therefore, that portion of the Sealaska Claims alleging copyright infringement should also be disallowed. And finally, Claimant does not allege ownership of any relevant trademark, either as a federal trademark registration or common law trademark right. Nor could the supposed 'Ravenstail' *weaving pattern* be trademarked.  Claimant's allegations are especially specious because Claimant does

---

[2] *See* Purchase Order Legal Terms (attached as Ex. B to Declaration) ¶¶ 12, 15.

not even allege that the weave or pattern on the subject Coat was identical, similar to, or entirely different from the weave and/or pattern of any of Claimant's unknown and unspecified products it might supposedly sell in its store.[3] Therefore, Claimants' allegations and its Lanham Act claim is legally defective.

7.      To the extent the Claimant is determined to have proven its entitlement to a claim, which it cannot, the Claimant should be limited to a single recovery.

8.      For the foregoing reasons and as more fully discussed herein, the Court should enter the Order disallowing and expunging the Sealaska Claims.

### JURISDICTION AND VENUE

9.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. § 1408.

10.      The legal predicates for the relief requested herein are Bankruptcy Code sections 105 and 502 and Rules 2002, 3001, 3007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### BACKGROUND

**A.      General Background**

11.      On May 7, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code.  During the course of the

---

[3]  As such, Claimant also fails to state a claim under AS 45.50.471(b)(32) and (b)(6), as the Complaint fails to allege the details, similarities, and "standard, quality, or grade" of both Claimant's alleged goods and the Coat. AS 45.50.471(b)(6); *see also* AS 45.50.471(b)(32) (defining a violation as an unlabeled "reproduction" of a handicraft, where "'reproduction' means a copy of an original if the copy is substantially *the same* as the original[] and not made by the person who made the original.") (emphasis added)).

bankruptcy cases, the Debtors operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner was appointed in these cases.

12.     On May 19, 2020, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code.  On September 4, 2020, the Court entered  the *Order Confirming The Third Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1795] (the "Confirmation Order").

13.     The *Debtors' Third Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (With Technical Modifications)* [Docket No. 1793] (the "Plan"), provides for, among other things, the establishment of the Trust and grants the Trust the authority to prosecute claim objections in regard to claims covered by the Trust.  *See* Confirmation Order ¶ 81.  The Plan went effective on September 25, 2020 (the "Effective Date").

**B.     The Claims Reconciliation Process and the Sealaska Claims**

14.     On June 25, 2020, the Court entered its *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Matter for Filing Proofs of Claim, Including Section 503(b)(9) Requests, (IV) Approving Notice of Bar Date, and (V) Granting Related Relief* [Docket No. 1014] (the "Bar Date Order"). On June 26, 2020, the Debtors served their *Notice of Deadlines for Filing Proofs of Claim, Including Requests for Payment Pursuant to Section 503(b)(9) of the Bankruptcy Code* [Docket

No. 1091] (the "Bar Date Notice"), which provided notice that the deadline for all entities, other than Governmental Units, to file proofs of claim was July 20, 2020  (the "General Bar Date").

15.     The official claims register, prepared and maintained by the Debtors' claims agent, reflects that over 3,300 proofs of claim were filed against the Debtors' Estates.

16.     On the Bar Date, Claimant filed two proofs of claim which are substantially identical, each using Official Form 410.  The proof of claim form describes the basis of the claim as "Pending Litigation: Copyright Infringement, Violation of the Indian Arts and Crafts Act, Violation of the Lanham Act" and included a copy of the Complaint.  The Complaint alleges NMG, LLC, NMG LTD and non-debtor co-defendants Neiman Marcus Group, Inc. and MyTheresa.com, GmbH, illegally and willfully sold a coat online from a non-affiliated, non-debtor designer and manufacturer that allegedly misappropriated a Native American design without permission of the license-holder of the design.  The amount of the allegedly recoverable claims asserted is "$1,000,000 or to be proven in court."

17.     The Complaint asserts four causes of action against the defendants:  (i) violation of the Indian Arts and Crafts Act [25 U.S.C. § 305(e)] ("IACA"); (ii) copyright infringement [17 U.S.C. § 501, *et seq*.]; (iii) false designation of origin or sponsorship [Section 43(a) of the Lanham Act, 15 U.S.C. § 1125]; and (iv) violation of the Alaska Unfair Trade Practices and Consumer Protection Act [AS 45.50.471, *et seq*.].  Claimant alleges copyright infringement of a work by deceased Tlingat artist Clarissa Rizal, titled "Discovering the Angles of An Electrified Heart" (the "Work").  Compl. ¶ 1.  Claimant alleges the four "Neiman Marcus Defendants," as a block, sold via their online websites a garment called "Ravenstail Knitted Coat" (the "Coat").  *Id*. ¶ 2.  Claimant alleges the Coat infringes the Work and that the use of "Ravenstail" in the name of the Coat falsely implies that Tlingit, Haida, and Tsimshian people of Southeast Alaska created

the Coat because "Ravenstail" is a particular style of knitting "exclusively associated" with such people. *Id.* ¶¶ 23-24. Claimant indicates it became aware of the Coat being listed for sale in late August 2019. *Id.* ¶ 25. Claimant further alleges the copyright was issued for the Work on September 6, 2019, although Claimant does not allege it is the copyright owner.

18.     On June 1, 2020, the Alaska District Court, upon being notified of the filing of the above-captioned bankruptcy cases, stayed the Lawsuit as to the Debtor defendants. Notwithstanding that Claimant had actual knowledge of the bankruptcy cases, on August 29, 2020, Claimant filed an amended Complaint (the "Amended Complaint") by adding not only additional defendants (including the Italian coat designer and manufacturer Alanui, S.r.L and its related entities ("Alanui"), but also by adding three additional individual plaintiffs (each represented by the same counsel as Claimant). *See* Lawsuit [Docket No. 23]. The Amended Complaint was filed in violation of the automatic stay because it not only continued to assert claims against the Debtors by Claimant, but also by the three new plaintiffs, who never sought or received relief from the stay from this Court to file a lawsuit against NMG LTD or NMG LLC. None of the newly-added Plaintiffs have filed proofs of claim in these bankruptcy cases.

19.     The Debtors' *Schedules of Assets and Liabilities* for each of NMG LTD and NMG LLC indicate the Claimant asserts a contingent, disputed and unliquidated "Litigation Claim" and values such claim at $0.00. *See* Case No.: 20-32519 (DRJ), Sched. E/F, at 36 [Docket No. 910]; Case No.: 20-32517, Sched. E/F, at 41 [ECF No. 926].

20.     Attached hereto as **Exhibit B** is the *Declaration of William B. Murphy in Support of the Trustee's Objection to Proofs of Claim of Sealaska Heritage Institute, Inc. (Claim Nos. 1910 and 1952)* (the "Murphy Declaration").

## RELIEF REQUESTED

21.     As more fully set forth below, the Trustee seeks disallowance of the Sealaska

Claims.

### A.     Standard of Review

22.     A filed proof of claim is deemed allowed, unless a party in interest objects.  11

U.S.C. § 502(a).  *See also* Fed. R. Bankr. P. 3001(f) ("A proof of claim executed and filed in

accordance with these rules shall constitute prima facie evidence of the validity and amount of

the claim.").  A properly executed and filed proof of claim constitutes *prima facie* evidence of

the validity and the amount of the claim under section 502(a) of the Bankruptcy Code.  Fed. R.

Bankr. P. 3001(f).  *See also Travelers Cas. and Sur. Co. of Am. v. Pacific Gas and Elec. Co.*, 549

U.S. 443, 449 (2007) ("But even where a party in interest objects [to a claim], the court 'shall

allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions

enumerated in § 502(b).").  As relevant, section 502(b) states that if a party in interest objects to

a claim, the Court:

> [A]fter notice and a hearing, shall determine the amount of such
> claim in lawful currency of the United States as of the date of the
> filing of the petition, and shall allow such claim in such amount,
> except to the extent that— (1) such claim is unenforceable against
> the debtor and property of the debtor, under any agreement or
> applicable law for a reason other than because such claim is
> contingent or unmatured[.]

11 U.S.C. § 502(b)(1).  Whether a claim is allowable "generally is determined by applicable

nonbankruptcy law."  *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).  To

receive the benefit of *prima facie* validity, a proof of claim must assert factual allegations that

would entitle the claimant to a recovery.  *Wilferth v. The Heritage Org., LLC (In re Heritage

Org., LLC)*, No. 04-35574 (BJH), 2006 WL 6508477, at *8 (Bankr. N.D. Tex. Jan. 27,

2006).  Additionally, a proof of claim is entitled to the presumption of *prima facie* validity under

Bankruptcy Rule 3001(f) only until an objecting party refutes at least one of the allegations that

is essential to the claim's legal sufficiency.  *Starnes v. U.S. (In re Starnes)*, 231 B.R. 903, 912

(N.D. Tex. 1998).  Once an allegation is refuted, "the burden shifts to the claimant to prove by a

preponderance of the evidence."  *In re 804 Congress, LLC*, 529 B.R. 213, 219 (Bankr. W.D.

Tex. 2015); *see also Cavu/Rock Props. Project I, LLC v. Gold Star Constr., Inc. (In re

Cavu/Rock Props. Project I, LLC)*, 516 B.R. 414, 422 (Bankr. W.D. Tex. 2014).  "The ultimate

burden of proof always lies with the claimant."  *In re Armstrong*, 347 B.R. 581, 583 (Bankr.

N.D. Tex. 2006).

## B.    The Sealaska Claims are Not Entitled to Prima Facie Validity

23.    Here, Claimant filed a Complaint shortly before the Petition Date.  The

allegations asserted in the Complaint are disputed and no judgment has been entered.  While the

Sealaska Claims purport to assert a $1 million amount as a placeholder, the actual amount of the

Claims is unliquidated and contingent as the Sealaska Claims indicate they are still "to be proven

in court."  The Complaint itself serves only to describe the basis for the Sealaska Claims – it is

not proof of liability.

24.    Thus, the Sealaska Claims are not entitled to a presumption of validity as to

liability or amount, because even assuming the truth of the allegations in support of the Sealaska

Claims and drawing all reasonable inferences in favor of the Claimant, the Claimant has not

alleged a claim against the Debtors, and are not able to do so for the reasons set forth below.

C.   **The Claim Against NMG LTD [Claim No. 1952] Must be Disallowed Because Debtor Has No Nexus to the Alleged Misconduct**

25.     Claimant's sole basis for the alleged liability of NMG LTD are conclusory and incomplete allegations and attempts to rely on group pleading, lumping all defendants together, rather than providing notice as to what each of NMG LTD and NMG LLC allegedly did or failed to do, and when.   For example, the Complaint alleges that "*Defendants* sold, offered for sale, advertised, distributed, and reproduced copies of the Work"   *See* Compl. ¶ 1.   (emphasis added). How ***NMG LTD*** specifically took such action is not stated anywhere in the Complaint.

26.     Instead, the record evidence before the Court establishes that NMG LTD is far removed from the alleged conduct.   NMG LTD is a holding company.   It has no direct corporate or operational relationship with non-debtor defendant MyTheresa.com, GmbH and it is a distant subsidiary of non-debtor defendant Neiman Marcus Group, Inc.   NMG LTD does not operate any Neiman Marcus department stores.   It does not operate any e-tail websites.   It does not buy or sell merchandise.   NMG LTD is the corporate parent of Debtor NMG LLC, the entity that buys merchandise and operates Neiman Marcus department stores and the neimanmarcus.com website.   As a matter of general corporate law, a holding company, such as NMG LTD. is not liable for the acts of its subsidiaries or the acts of its parent or other affiliates.

27.     Aside from Claimant's improper group allegations, Claimant offers no explanation as to why NMG LTD is a party to the Lawsuit upon which the Sealaska Claims are based.   Claimant's sole specific factual allegation against NMG LTD is that it is the corporate parent of the NMG LLC (an entity that does buy, market, and sell goods).   *Id.* ¶ 9.   This sole allegation does not support the Sealaska Claim against NMG LTD as it is a well settled principle

of corporate law that a corporate parent cannot be held liable for the acts of its subsidiaries of other affiliates.[4]

28.     Once an objection is filed to a creditor's proof of claim, the proceeding to determine the validity of the claim becomes a contested matter. *In re Gilbreath*, 395 B.R. 356, 364 (Bankr. S.D. Tex. 2008).[5]  While the Bankruptcy Code and Rules do not explicitly analogize proofs of claims to complaints in civil actions, most courts have gone so far as to apply the federal pleading standards to proofs of claim.[6]  *See, e.g.*, *In re Nortel Networks, Inc.*, 469 B.R. 478, 497 (Bankr. D. Del. 2012) (applying federal pleading standards to sustain in part and overrule in part objections to 85 proofs of claim filed against the debtor by joint administrators in English insolvency proceedings for three foreign sister companies, asserting claims for, inter alia, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, civil conspiracy, unjust enrichment and subrogation); *In re G-I Holdings, Inc.*, 443 B.R. 645, 664 (Bankr. D. N.J. 2010) (applying federal pleading standards to sustain in part and overrule in part objection to proof of claim seeking to recover on tort, indemnity and restitution theories, for property damage and abatement costs); *In re DJK Residential, LLC*, 416 B.R. 100, 106-07 (Bankr. S.D.N.Y. 2009) (applying federal pleading standards to sustain objection to proof of claim seeking recovery for

---

[4] *See U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries."); *Garza v. Citigroup Inc.*, 192 F.Supp.3d 508, 513 (D. Del. 2016) ("A parent company is not liable for the actions of a subsidiary solely because of the parent-subsidiary relationship."); *Akzona Inc. v. E.I. Du Pont De Nemours & Co.*, 607 F. Supp. 227, 240 (D. Del. 1984) (finding that since two wholly-owned subsidiaries were not the alter egos of a parent holding company, there was no basis for attributing their activities to the parent holding company).

[5] For the avoidance of doubt, contested matters under Bankruptcy Rule 9014 incorporates by reference Bankruptcy Rules 7009, 7017, 7021, 7025, 7026, 7028–7037, 7041, 7042, 7052, 7054–7056, 7064, 7069, and 7071.

[6] While Rule 9014 does not by its terms include Fed. R. Bankr. P. 7012 (and hence Rule 12(b)(6) of the Federal Rules of Civil Procedure) as rules that are automatically applicable to contested matters.  Rule 9014 provides that "[t]he court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply." Fed. R. Bankr. P. 9014(c).

claims under Racketeer Influenced and Corrupt Organizations Act (RICO), Sherman Act, Lanham Act and state law); *In re Adelphia Commc'ns Corp.*, 359 B.R. 54, 56 n.5 (Bankr. S.D.N.Y. 2006) (initiating consideration of the issues in a contested matter by 12(b)(6) motions).

29.     A proof of claim, like a complaint, should contain sufficient factual matter, accepted as true, to state a claim for relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  And "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A complaint which lumps together multiple defendants in one broad allegation fails to satisfy the requirement that a party has fair notice of not only the claims asserted against it but the detailed grounds upon which each claim rests.  *Sekerke v. City of Nat'l City*, No. 19CV1360-LAB (MSB), 2020 WL 4435416, at *5 (S.D. Cal. Aug. 3, 2020) (citing *Twombly*, 550 U.S. at 555); *see also Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015).  It is well established that a litigant cannot rely on group pleading, or other conclusory allegations, to meet the plausibility requirements articulated by the Supreme Court in *Twombly*.  *See Twombly*, 550 U.S. at 570.  Accordingly, the bare factual allegations contained in the Complaint fail to meet the heightened pleading requirements under the Federal Rules of Civil Procedure.

30.     For example, the Claimant alleges in the Complaint that "each Defendants was and is the agent, employee, partner, alter ego, and/or joint venturer of each other, and in committing the acts alleged herein, was and is acting within the course and scope of that relationship and with permission and consent of the other Defendants, and they have acted in concert with each other in connection with the allegations herein."  *Id.* ¶ 15.  However, this threadbare, conclusory allegation fails to satisfy the heightened pleading standard under Rule 9(b) in order to disregard the corporate forms of the Debtors.

31.     Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).[7] The rule is intended to "provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from 'improvident charges of wrongdoing,' and to protect a defendant against the institution of a strike suit." *Campaniello Imports, Ltd. v. Saporiti Italia S.P.A.*, 117 F.3d 655, 663 (2d Cir. 1997) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).  Where a fraud theory is alleged to disregard corporate structures Rule 9(b) applies.  *SOFI Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231 (SDNY 2006).  To "serve the purpose of Rule 9(b)," plaintiffs "[must] allege facts that give rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).  The Complaint is completely bereft of any factual allegation giving rise to any inference of fraudulent intent, much less the extraordinary facts needed to set aside corporate forms.

32.     It is a bedrock principle of law that courts respect a corporation's form, absent extraordinary facts not pleaded here.[8] *See Schoon v. Smith*, 953 A.2d 196, 204 n.22 (Del. 2008) (Under Delaware law, a corporation has an identity separate from the identities of its shareholders.); *Case Fin., Inc. v. Alden*, No. CIV.A. 1184-VCP, 2009 WL 2581873, at *4 (Del. Ch. Aug. 21, 2009) ("Delaware courts take the corporate form and corporate formalities very seriously[.]").  "To state a 'veil-piercing claim,' the plaintiff must plead facts supporting an

---

[7] Rule 9 of the Federal Rules of Civil Procedure is made applicable herein by Bankruptcy Rule 7009.

[8] Because NMG LTD is incorporated in Delaware, any attempt to pierce the corporate veil and disregard NMG LLC's corporate form is subject to the Delaware standard.  *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) ("Because [the defendant] was a Delaware corporation, Delaware law determines whether the corporate veil can be pierced").

inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors." *Doberstein v. G-P Indus., Inc.*, No. CV 9995-VCP, 2015 WL 6606484, at *4 (Del. Ch. Oct. 30, 2015) (dismissing claim under Rule 12(b)(6)). Indeed, "[i]t is only the exceptional case where a court will disregard the corporate form[.]" *Sprint Nextel Corp. v. iPCS, Inc.*, No. CIV.A. 3746-VCP, 2008 WL 2737409, at *11 (Del. Ch. Jul. 14, 2008) (quoting *Sears Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1305 (D. Del. 1990)); s*ee also Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999) ("Piercing the corporate veil under the alter ego theory requires that the corporate structure cause fraud or similar injustice. Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud.") (internal quotation omitted); *BASF Corp. v. POSM II Props. P'ship, L.P.*, No. CIV.A. 3608-VCS, 2009 WL 522721, at *8 n.50 (Del. Ch. Mar. 3, 2009) ("Delaware public policy does not lightly disregard the separate legal existence of corporations.") (citation omitted). Accordingly, "[p]ersuading a Delaware Court to disregard the corporate entity is a difficult task." *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183-84 (Del. Ch. 1999) (quoting *Harco Nat'l Ins. Co. v. Green Farms*, No. 1131, 1989 WL 110537 (Del. Ch. Sept. 19, 1989)).[9] Accordingly, without specific allegations in connection with NMG LTD's liability, which do not exist here, that the corporate form was a sham designed to defraud  investors and creditors, Claimant has not demonstrated grounds to set aside the corporate forms.

33.   As stated above, the Claimant makes only conclusory allegations that the Defendants are "alter ego[s]" of each other, unsupported by any well-pleaded facts.  This is

---

[9] The same standard is used under Delaware law for limited liability corporations like NMG LLC. *Burtch v. Opus, LLC, et al.(In re Opus E., LLC)*, 528 B.R. 30 (Bankr. D. Del. 2015), *aff'd*, 2016 WL 1298965 (D. Del. Mar. 31, 2016), *aff'd*, 698 F. App'x 711 (3d Cir. 2017).

plainly insufficient under the law to pierce the corporate veil or plead alter ego liability. *Doberstein*, 2015 WL 6606484, at *4. Thus, Claimant has not shown any basis to hold NMG LTD liable for any alleged acts of NMG LLC or any other named defendant.

34.     For these reasons, the Sealaska Claim does not assert factual allegations against NMG LTD that would entitle the Claimant to a recovery and should be disallowed.

**D.      The Sealaska Claim Against NMG LLC [Claim No. 1910] Should be Disallowed For Failure To Allege A Cognizable Claim[10]**

35.     Even if every possible inference were construed in favor of Claimant, the Complaint (and, therefore the Sealaska Claims) fails to allege facts to establish liability for a violation of (i) the IACA, (ii) the Lanham Act, (iii) the Copyright Act or (iv) Alaskan state law. In fact, upon closer examination, certain key facts asserted in the Complaint undercut the validity of the Sealaska Claims as a matter of law.

**I.      The Allegations in the Complaint Do Not Give Rise to a Claim under the IACA.**

**(i) The Claimant Does not have Standing to Assert the IACA Claims.**

36.     The First Cause of Action set out in the Complaint alleges violations of IACA. However, the Claimant does not have standing to allege violations of the IACA. A proof of claim is a sworn and signed document attesting to the validity of a claim, and implicit in that is the standing of the person asserting the claim if it is based on unresolved litigation. *See Nagel Precision Inc., v. RND Engr., LLC (In re RND Engr., LLC)*, 546 B.R. 738, 745 (Bankr. E.D. Mich. 2016) (finding that a creditor had standing upon filing a proof of claim for the value of damages relating to unresolved litigation). Standing is a threshold requirement in every federal

---

[10]   The arguments set forth below, as applicable, also apply to NMG LTD.

case, and is required for a plaintiff alleging a violation of IACA. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975). The U.S. Supreme Court has established that standing contains three elements: (i) the plaintiff must have suffered an 'injury in fact'; (ii) plaintiff must show a causal connection between the injury and the conduct complained of ; and (iii) plaintiff must establish a likelihood that the injury will be redressed by a favorable decision. *Native Am. Arts, Inc. v. Specialty Merch. Corp.*, 451 F. Supp. 2d 1080, 1082 (E.D. Cal. 2006). (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The injury in fact suffered by the plaintiff must be "a concrete and particularized, actual or imminent invasion of a legally protected interest." *Lujan*, 504 U.S. at 555.

37.     Where an IACA plaintiff cannot show a concrete injury fairly traceable to the complained-of conduct, courts routinely dismiss such IACA claims for lack of standing. *Native Am. Arts, Inc. v. Peter Stone Co., U.S.A.*, No. 08 C 3908, 2015 WL 3561439, at *14 (N.D. Ill. June 9, 2015) (determining plaintiff lacked standing when it failed to "demonstrate that it has suffered a concrete injury in fact, personal to it, and fairly traceable to the activities of the defendants."); *Native Am. Arts, Inc. v. Indio Prods., Inc.*, No. 06 C 4690, 2011 WL 13380353, at *4 (N.D. Ill. Oct. 4, 2011) (finding plaintiff lacked standing when plaintiff's alleged injuries lacked evidentiary support and parties were not direct competitors because "if [plaintiff] and [defendant] are not competitors, then [plaintiff's] injuries cannot be fairly traceable to [defendant's] allegedly wrongful acts."); *Specialty Merch. Corp.*, 451 F. Supp. 2d at 1082 (granting defendants' motion to dismiss based on plaintiff's lack of standing because plaintiff's conclusory allegations referring to "competitive injury," "advertising injury," and "other damages" did not establish injury-in-fact).

38.     Here, the Claimant fails to establish standing because it does not allege an injury in fact.  Tellingly, nowhere in the Complaint does the Claimant allege that NMG LLC makes or sells products that actually use "Ravenstail weaving and pattern[s]."  Instead, Claimant alleges it "maintains and conducts business through the Sealaska Heritage Store which primarily sells authentic American Indian and Alaska Native arts, crafts, and products through a physical location in Juneau, Alaska and online at <sealaskaheritage-store.myshopify.com>."   Compl. ¶ 20.  Nor does Claimant allege whether such weave or pattern is identical, similar to, or entirely different from the weave and/or pattern found on the Coat.[11]   At best, Claimant makes conclusory allegations about damage to Claimant's "ability to advertise and sell genuine and authentic Alaska Native products, and specifically genuine and authentic Ravenstail robes or products with Ravenstail patterns."  *Id.* ¶ 36 (alleging that Claimant "has, and will continue to suffer, injury and damages through the actions of the Defendants.").  Such general conclusions are neither concrete and particularized, nor actual or imminent, and are therefore insufficient to allege an injury in fact.  *Specialty Merch. Corp.*, 451 F. Supp. 2d at 1082 (granting motion to dismiss suit under IACA because plaintiff's "conclusory allegations that refer to 'competitive injury,' 'advertising injury,' and 'other damages'. . . do not establish the injury-in-fact requirement of standing.").

39.     None of Claimant's allegations describe "concrete and particularized harm" to a "legally protected interest" that is "fairly traceable" to NMG LLC.  *Lujan*, 504 U.S. at 560.  Rather, the Complaint only leaves the Debtors with more questions: What products does the

---

[11]   As such, Claimant also fails to state a claim under AS 45.50.471(b)(32) and (b)(6), as the Complaint fails to allege the details, similarities, and "standard, quality, or grade" of both Claimant's alleged goods and the Coat. AS 45.50.471(b)(6); *see also* AS 45.50.471(b)(32) (defining a violation as an unlabeled "reproduction" of a handicraft, where "'reproduction' means a copy of an original if the copy is substantially *the same* as the original[] and not made by the person who made the original.") (emphasis added)).

Claimant make and sell that are "within the Ravenstail tradition"? Are products "within the Ravenstail tradition" those that (a) use the Ravenstail weaving technique (b) consist of the Ravenstail pattern (c) or both?  What representations did NMG LLC make that are alleged to "falsely suggest" (25 U.S.C. § 305e(b)) Alaskan origin?  Did Claimant lose sales due to NMG LLC's alleged conduct?  If so, which of Claimant's products were allegedly affected, and how?  These gaps in Claimant's allegations are compounded by the lack of any allegation that the Claimant competes in the same market or among the same consumers as NMG LLC.  Claimant's allegations thus cannot support IACA claims against NMG LLC.  *See Indio Prods.*, 2011 WL 13380353, at *4 (finding plaintiff lacked standing when both parties sold products on the internet but were not direct competitors because "if [plaintiff] and [defendant] are not competitors, then [plaintiff's] injuries cannot be fairly traceable to [defendant's] allegedly wrongful acts.").

40.     Accordingly, the Claimant does not have standing to assert a claim under the IACA in the first instance.

### (ii)     The Facts Alleged do not Support NMG LLC's Liability Under IACA.

41.     To establish liability under the IACA, the Claimant must demonstrate that NMG LLC "directly or indirectly, offer[ed] or display[ed] for sale or sell[ing] a good . . . in a manner that falsely suggests it is Indian produced, an Indian product, or the product of a particular Indian or Indian tribe or Indian arts and crafts organization, resident within the United States." 25 U.S.C. § 305e(b).  As a truth-in-advertising law, the IACA is designed to prevent "marketing of products in a manner that falsely suggests such products are produced by Indians when the products are not[.]"  *Native Am. Arts, Inc.*, 2015 WL 3561439, at *1.

42.     Claimant alleges "Defendants" use of the Ravenstail term in connection with the sale of the "Ravenstail Knitted Coat" falsely suggest the origin of the product as being the Tlingit, Haida, and Tsimshian peoples, and is likely to cause confusion or deceive as to the affiliation, sponsorship, or approval of the Defendants´ 'Ravenstail Knitted Coat' product." Compl. ¶¶ 1, 35.  However, Claimant does not attach a copy of the product listing in question, or even describe it.   And while Claimant alleges "Defendants" used the term "Ravenstail," Claimant alleges nothing about how consumers encountered each use.  Absent such allegations, Claimant cannot plausibly allege consumer deception.  *See, e.g.*, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("The plaintiff must set forth what is false or misleading about a statement, and why it is false."); *Alaska Stock, LLC v. Pearson Educ., Inc.*, No. 3:11-CV-00162-TMB, 2012 WL 7801875, at *4 (D. Alaska Apr. 20, 2012) (same).

43.     When Claimant's allegations regarding the use of the term "Ravenstail" are considered in the context of the actual product listing for the Coat by NMG LLC, it is clear they do not support a claim that such listing "falsely suggest[s] that the [Coat] is produced by Alaska Natives."  Compl. ¶ 35.  Nothing in the listing indicates the Coat is of Native American origin and in fact, the product listing clearly indicates the Coat is manufactured by Alanui and "Made in Italy."  *See, e.g.*, *Native Am. Arts, Inc. v. Bundy-Howard, Inc.*, 168 F.Supp.2d 905, 910 (N.D. Ill. 2001) ("[I]t is true that the [IACA] requires some products to contain affirmative representations about their origin to avoid creating a "false suggestion" (goods that may appear to be "Indian products" but were actually not Indian-produced).").  Frankly, the Coat itself—bearing a tag disclosing the apparel was made in Italy—disproves this allegation entirely.

44.     Because IACA claims must be based on a false suggestion of Indian origin, such cases have only arisen in two scenarios.  The first involves a defendant making use of an *Indian*

*tribe name* to describe its non-Indian products.  *See Navajo Nation v. Urban Outfitters, Inc*., 918 F. Supp. 2d 1245, 1250 (D.N.M. 2013) (Indian-style jewelry advertised under tribe names such as "Navajo," "Crow," "Southwest Tribes," and "Zuni Bear" and sold with informational tags about the tribe and use of the "Navajo" tribe name in connection with the sale of clothing, jewelry, houseware, and footwear).

45.    The second scenario involves a defendant using the terms "Indian," "authentic," or "genuine" to describe its non-Indian products.  *See Native Am. Arts, Inc. v. Mangalick Enters.*, 633 F. Supp. 2d 591, 593 (N.D. Ill. 2009) (Indian-style goods promoted as "Indian" without any qualifying language); *see also Native Am. Arts v. J.C. Penney Co.*, 5 F. Supp. 2d 599, 600 (N.D. Ill. 1998) (Indian-style baskets, feather earrings, necklaces, pendants, and statues misrepresented as genuine or authentic).

46.    This case falls into neither category.   Here, the Claimant alleges that "Defendants" made use of the "Ravenstail *term*" and that this somehow falsely suggested that the Coat came from indigenous Southeastern Alaskan peoples.   Compl. ¶ 24.(emphasis added). Claimant concedes "Ravenstail" is not the name of an Indian tribe as they describe it as an "artform," and, more specifically, a "style of weaving and pattern."  Amd. Compl. ¶¶ 2, 34.   The Claimant never alleges that "Ravenstail" actually refers to Tlingit, Haida, and Tsimshian people of Southeast Alaska, only to a "style of weaving and pattern" that it claims is "exclusively associated" with them.

47.    Claimant's allegation that "Defendants" used the "Ravenstail" term to describe the Coat does not plausibly allege a false designation of origin or production any more than the use of the term "tartan plaid" to describe a product would suggest it originates in Scotland, or was crafted by Scots, or that the use of the term "fleur-de-lis" falsely suggests an article of

clothing was made in France.  While such terms describe styles and designs that have cultural underpinnings in specific geographic locations, the use of such terms in connection with clothing items simply would not "falsely suggest" that such clothing item came from those locations.  *See Cluett, Peabody & Co. v. Savatux Facing Co*., 277 F.2d 944, 945 n.1 (C.C.P.A. 1960) (finding that "plaid" is a "generic term in the textile industry" but recognizing that the term is defined as "any fabric with a woven or printed design imitating a tartan pattern or similarly cross-barred; as, a stock of Scottish plaids.").

48.    For this reason, courts have found that "[a] non-Indian maker of jewelry designed to look like jewelry made by Indians *is free to advertise the similarity* but if he uses the word 'Indian' he must qualify the usage so that consumers aren't confused and think they're buying not only the kind of jewelry that Indians make, but jewelry that Indians in fact made."  *Native Am. Arts, Inc. v. Waldron Corp*., 399 F.3d 871, 874 (7th Cir. 2005) (emphasis added).  While the Coat is arguably perceived as "the kind of clothing" that Southeastern Alaskan peoples make, the Claimant cannot plausibly allege that NMG LLC's listing for sale a product expressly identified as being "Made in Italy" can be perceived by consumers as clothing that Indians in fact made. *See id.*  Accordingly, the Claimant's IACA claims against NMG LLC is not supportable, and that portion of the Sealaska Claims against NMG LLC based on IACA should be disallowed.

## II.    The Allegations in the Complaint Do Not Give Rise to a Claim for Copyright Infringement.

49.    Claimant's Second Cause of Action alleges copyright infringement in regard to the design of a robe, which is a "useful article" entitled to limited protection under the Copyright Act.  *See* 17 U.S.C. § 101.  "To state a claim for copyright infringement, [the plaintiff] 'must plausibly allege two things: (1) that [it] owns a valid copyright in [the Subject Work], and (2)

that [the Defendant] copied protected aspects of [the Subject Work]'s expression." *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019); *see also Star Fabrics Inc v. Zinga, Inc.,* No. CV 17-1277-GW (GJSX), 2017 WL 10439029, at *3 (C.D. Cal. Nov. 13, 2017) (stating that in a copyright infringement claim, "[p]laintiff must also adequately allege copying of the design's protected elements."). "A certificate of registration from the U.S. Copyright Office raises the presumption of copyright validity and ownership." *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 988 (9th Cir. 2017) (citing *Micro Star v. Formgen, Inc.*, 154 F.3d 1107, 1110 (9th Cir. 1998)). Moreover, in order to demonstrate that NMG LLC copied protected aspects of the Subject Work's expression, the Claimant is "required to plead facts plausibly showing either (1) that the two works in question are strikingly similar, or (2) that [the works] are substantially similar and that [Defendants] had access to the [Subject Work]". *See Malibu Textiles*, 922 F.3d at 952; *see also Romex Textiles, Inc. v. HK Worldwide*, No. 18-6543-RSWL-AGR, 2020 WL 1078800 at *4 (C.D. Cal. Feb. 10, 2020).

50.     Here, the Complaint is devoid of any description of the Work's protected elements and allegations that "Defendants" copied the Work's protected elements. And where Claimant does generally allege copying, *see, e.g.*, Compl. ¶ 42 "the Defendants' product 'Ravenstail Knitted Coat' was copied from the Work, Defendants distributed copies of the Work, and Defendants prepared derivative works based upon the Work for use in their online sales, advertising, and promotional materials," such allegations are not sufficiently specific as to NMG LLC to state a claim. *See In re "Santa Barbara Like It Is Today" Copy. Infringement Litig.*, 94 F.R.D. 105, 108 (D. Nev. 1982) (generic allegations insufficient to satisfy Rule 8); *see also Marvullo v. Gruner & Jahr*, 105 F. Supp.2d 225, 230 (S.D.N.Y. 2000); *Hartman v. Hallmark Cards, Inc.*, 639 F. Supp. 816, 820 (W.D. Mo. 1986) ("[B]road, sweeping allegation of

infringement does not comply with Rule 8's requirement that specific mention of [the] acts which infringe are necessary in order to assert a cause of action and are required so that the defendant can adequately respond.").

51.      Furthermore, many aspects of Claimant's copyright infringement claim are suspect.  According to the Complaint, the Work was created in 1996.  Compl. ¶ 22.  Claimant indicates it is the exclusive licensee of the Work, but provides no evidence of this alleged fact. *Id.* ¶ 6.  Claimant alleges it became aware of the Coat being marketed in at least August 2019, yet at that time the Work upon which the Coat is allegedly based, was not even subject to copyright protection as the Claimant conveniently got copyright protection for the Work on September 9, 2019.  *Id.* ¶ 22.

52.      Moreover, the lowercase "u" in the copyright registration number (VAu0013808175) "indicates that the registration is for an unpublished work."  *Determined Prods., Inc. v. Koster*, No. C 92-1697 BAC, 1993 WL 120463, at *1 (N.D. Cal. Apr. 13, 1993). 17 U.S.C. § 412 prohibits an award of statutory damages or attorneys' fees for "any infringement of copyright in an unpublished work commenced before the effective date of its registration."  As Claimant's own Complaint alleges the alleged infringement "commenced" before registration, Claimant cannot support its claim for either statutory damages or attorney's fees under the Copyright Act.  Therefore, that portion of the Sealaska Claims alleging copyright infringement should be disallowed at the very least.

### III.    The Allegations in the Complaint Do Not Give Rise to a Claim Under the Lanham Act.

53.      In the Third Cause of Action, Claimant alleges NMG LLC violated the sections of the Lanham Act (15 U.S.C. § 1125) dealing with "False Designation of Origin or Sponsorship."

To support a claim under the Lanham Act for a false designation of origin claim Claimant must in the first instance "plausibly allege" Claimant owns a valid trademark.  *Pinterest Inc. v. Pintrips Inc*., 15 F. Supp. 3d 992, 997–98 (N.D. Cal. 2014); *Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1992) (To state a claim under the Lanham Act, a claimant must allege facts demonstrating this his mark is entitled to trademark protection, and that the allegedly infringing use is likely to cause consumer confusion.); *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046–47 (9th Cir. 1999); *Left Coast Wrestling, LLC v. Dearborn Int'l LLC*, No. 317 CV 00466-LAB-NLS, 2018 WL 2328471, at *5 (S.D. Cal. May 23, 2018); *Manley Toys Ltd. v. Radco Ltd. HK*, No. CV 09-3129-VBF(AJWX), 2009 WL 10674981, at *2 (C.D. Cal. Oct. 1, 2009).  A Lanham Act false designation of origin plaintiff must allege ownership of a valid mark because trademark law seeks to "prevent[] others from copying a source-identifying mark."  *Qualitex Co. v. Jacobson Prod. Co*., 514 U.S. 159, 163 (1995).  A trademark must indicate the source of a particular product; otherwise, it is not a trademark.  *See id.*  When determining ownership of a trademark, the Ninth Circuit employs a "standard test" of ownership by looking to the claimant's "priority of use" of the mark in question.  *Brookfield Commc'ns,* 174 F.3d at 1047.

54.     Claimant does not allege ownership of the RAVENSTAIL mark, either as a federal trademark registration or common law trademark right.  Rather, Claimant alleges "Ravenstail is a specific, defined, and famous style of weaving and pattern exclusively associated with the Tlingit, Haida, and Tsimshian people of Southeast Alaska and with a documented history stretching back well over 200 years."  Compl. ¶ 2.  In fact, Claimant's allegations are entirely inconsistent with ownership of trademark rights in the term "Ravenstail."  For example, Claimant alleges such term is "exclusively associated" not with Claimant or its

businesses but with the entire "Tlingit, Haida, and Tsimshian people of Southeast Alaska." *Id.*
Thus, as alleged, the term "Ravenstail" is incapable of functioning as a trademark, as Claimant's
own allegations confirm the term "Ravenstail" is associated with a style of weaving and/or
design that could come from hundreds, if not thousands of different sources, each of different
and varying quality. *See Qualitex Co.*, 514 U.S. at 163; *see also* 15 U.S.C. § 1127; J. Thomas
McCarthy, McCarthy on Trademarks and Unfair Competition § 3:1 (5th ed. 2019).
Moreover, Plaintiffs allege that "Ravenstail" has been used for over 200 years, which long
predates Claimant's existence. *See Brookfield Commc'ns, Inc.,* 174 F.3d at 1047.  In sum, since
Claimant fails to allege it owns the trademark at issue, it cannot assert Lanham Act claim and
that portion of the Sealasksa Claims based on the Lanham Act must be disallowed.

### IV.    No Viable Cause of Action Exists for Violations of Alaskan Law.

55.    To the extent applicable, Claimant's Alaska law claims under AS 45.50.471 of the
Alaska Unfair Trade Practices and Consumer Protection Act are essentially trademark claims,
and rely on the same facts as Claimant's trademark claims.  Compl. ¶ 56 (alleging Defendants'
conduct "falsely suggests the origin of the product as being the Tlingit, Haida, and Tsimshian
peoples, and is likely to cause confusion.").  For the same reasons as discussed in detail above,
that portion of the Sealaska Claims based on alleged violations of Alaska law should be
disallowed.

### E.    The Claimant Is Not Entitled to Double Recovery.

56.    Claimant has filed essentially identical claims against two Debtors.  To the extent
any portion of the Sealaska Claims are determined to be allowable, the Claimant should be
limited to a single recovery from the Estates.

## RESERVATION OF RIGHTS

57.     In the event that any of the Sealaska Claims are not disallowed and expunged on the grounds asserted herein, the Trustee hereby reserves all of his rights to object to such claims, or any amended claim, on any other grounds.  Additionally, the Trustee expressly reserves all of its rights to, *inter alia*, amend, modify, or supplement the objections asserted herein and to file addition objections to the Sealaska Claims.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(H)

58.     To the extent that a response is filed regarding the Sealaska Claims and the Trustee is unable to resolve any such response, the Sealaska Claims, and the Objection as it pertains to the Sealaska Claims, will constitute a separate contested matter as contemplated by Bankruptcy Rule 9104.

## NOTICE

59.     Notice of this Objection has been provided to the Claimant in accordance with the Bankruptcy Rules.  The Trustee submits that such notice is sufficient and proper under the circumstances and that no other further notice is requested.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Trustee respectfully requests that the Court (i) enter the Order sustaining this Objection in its entirety and disallowing and expunging the Sealaska Claims as proposed and (ii) grant such other relief as the Court deems just and proper under the circumstances.

Dated: March 26, 2021

*/s/ Michael D. Warner*

Michael D. Warner (TX Bar No. 00792304)
Benjamin L. Wallen (TX Bar No. 24102623)
**PACHULSKI STANG ZIEHL & JONES LLP**
440 Louisiana Street, Suite 900
Houston, TX 77002
Telephone:      (713) 691-9385
Facsimile:       (713) 691-9407
Email: mwarner@pszjlaw.com
            bwallen@pszjlaw.com

-and-

Justin Bernbrock (admitted *pro hac vice*)
Bryan Uelk (admitted *pro hac vice*)
Robert B. McLellarn (admitted *pro hac vice*)
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
70 West Madison Street, 48th Floor
Chicago, Illinois 60602
Telephone:      (312) 499-6300
Facsimile:       (312) 499-6301
Email: jbernbrock@sheppardmullin.com
            buelk@sheppardmullin.com
            rmclellarn@sheppardmullin.com

-and-

Jennifer Nassiri (admitted *pro hac vice*)
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071
Telephone:      (213) 617-4106
Facsimile:       (213) 443-2739
Email: jnassiri@sheppardmullin.com

-and-

Amanda Cottrell, Esq. (TX Bar No. 24064972)
Steven Gersten, Esq. (TX Bar No. 24087579)
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
2200 Ross Avenue, 24th Floor
Dallas, TX 75201
Telephone: (469) 391-7400
Facsimile: (469) 391-7577
Email: acottrell@sheppardmullin.com

*Counsel for The Liquidating Trustee GUC Trust and Mohsin*
*Meghji, in his capacity as trustee of the Liquidating GUC*
*Trust*