**<u>Exhibit C</u>**



# Document A101™ – 2007

## Standard Form of Agreement Between Owner and Contractor *where the basis of payment is a Stipulated Sum*

**AGREEMENT** made as of the 20th day of  November in the year 2017
*(In words, indicate day, month and year.)*

**BETWEEN** the Owner:
*(Name, legal status, address and other information)*

The Neiman Marcus Group LLC
1201 Elm Street, Suite 2700
Dallas, TX  75270

and the Contractor:
*(Name, legal status, address and other information)*

JRM Construction Management LLC
242 West 36th Street – 9th Floor
New York, NY  10018

for the following Project:
*(Name, location and detailed description)*

Neiman Marcus  Hudson Yards
10th Avenue at 34th Street
New York, NY  10001

The Architect:
*(Name, legal status, address and other information)*

The Owner and Contractor agree as follows.

Project #  20350    Contract # 278754

Provide all materials, labor, transportation and delivery for the construction of the Interior portion of the new Neiman Marcus Store of approximately 190,000s.f., consisting of three levels and lobby area on ground floor at the Hudson Yards Mall in New York as per JRM Construction Management's  Restack Stipulated Sum proposal dated September 19, 2017 and Cost Variation sheet dated September 28, 2017.

The Scope of the Work is as shown in the Interior Contract Documents prepared by Janson Goldstein Architects dated September 15, 2017.

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

AIA Document A201™–2007, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

**Init.**

**/**

**AIA Document A101™ – 2007.** Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:13:24 on 11/28/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                (1414415728)

1

**TABLE OF ARTICLES**

1       THE CONTRACT DOCUMENTS

2       THE WORK OF THIS CONTRACT

3       DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

4       CONTRACT SUM

5       PAYMENTS

6       DISPUTE RESOLUTION

7       TERMINATION OR SUSPENSION

8       MISCELLANEOUS PROVISIONS

9       ENUMERATION OF CONTRACT DOCUMENTS

10      INSURANCE AND BONDS

**ARTICLE 1   THE CONTRACT DOCUMENTS**
The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement, all of which form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than a Modification, appears in Article 9.

**ARTICLE 2   THE WORK OF THIS CONTRACT**
The Contractor shall fully execute the Work described in the Contract Documents, except as specifically indicated in the Contract Documents to be the responsibility of others.

**ARTICLE 3   DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION**
**§ 3.1** The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.
*(Insert the date of commencement if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*

October 23, 2017

If, prior to the commencement of the Work, the Owner requires time to file mortgages and other security interests, the Owner's time requirement shall be as follows:

**§ 3.2** The Contract Time shall be measured from the date of commencement.

**§ 3.3** The Contractor shall achieve Substantial Completion of the entire Work not later than  (  ) days from the date of commencement, or as follows:
*(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. If appropriate, insert requirements for earlier Substantial Completion of certain portions of the Work.)*

March 14, 2019

**AIA Document A101™ – 2007.** Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:13:24 on 11/28/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                        (1414415728)

Init.

/

2

| Portion of Work | Substantial Completion Date |
|---|---|

, subject to adjustments of this Contract Time as provided in the Contract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to achieve Substantial Completion on time or for bonus payments for early completion of the Work.)*

## ARTICLE 4   CONTRACT SUM
**§ 4.1** The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum shall be  Forty-Six Million,  Eight Hundred Fifty-Five Thousand, Seven Hundred Sixty-Two Dollars & 00/100 ($46,855,762.00), subject to additions and deductions as provided in the Contract Documents.

**§ 4.2** The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
*(State the numbers or other identification of accepted alternates. If the bidding or proposal documents permit the Owner to accept other alternates subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when that amount expires.)*

**§ 4.3** Unit prices, if any:
*(Identify and state the unit price; state quantity limitations, if any, to which the unit price will be applicable.)*

| Item | Units and Limitations | Price Per Unit ($0.00) |
|---|---|---|
| N/A | | |

**§ 4.4** Allowances included in the Contract Sum, if any:
*(Identify allowance and state exclusions, if any, from the allowance price.)*

| Item | Price |
|---|---|
| N/A | |

## ARTICLE 5   PAYMENTS
### § 5.1 PROGRESS PAYMENTS
**§ 5.1.1** Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

**§ 5.1.2** The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

N/A

**§ 5.1.3** Provided that an Application for Payment is received by the Architect not later than the first day of a month, the Owner shall make payment of the certified amount to the Contractor not later than the thirtieth day of the same month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than thirty ( 30 ) days after the Architect receives the Application for Payment.
*(Federal, state or local laws may require payment within a certain period of time.)*

**AIA Document A101™ – 2007.** Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:13:24 on 11/28/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                    (1414415728)

Init.

/

3

§ **5.1.4** Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Contract Sum among the various portions of the Work. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

§ **5.1.5** Applications for Payment shall show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

§ **5.1.6** Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

    **.1**    Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of ten percent ( 10%). Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 7.3.9 of AIA Document A201™–2007, General Conditions of the Contract for Construction;

    **.2**    Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing), less retainage of ten percent ( 10%);

    **.3**    Subtract the aggregate of previous payments made by the Owner; and

    **.4**    Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Section 9.5 of AIA Document A201–2007.

§ **5.1.7** The progress payment amount determined in accordance with Section 5.1.6 shall be further modified under the following circumstances:

    **.1**    Add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to the full amount of the Contract Sum, less such amounts as the Architect shall determine for incomplete Work, retainage applicable to such work and unsettled claims; and
        *(Section 9.8.5 of AIA Document A201–2007 requires release of applicable retainage upon Substantial Completion of Work with consent of surety, if any.)*

    **.2**    Add, if final completion of the Work is thereafter materially delayed through no fault of the Contractor, any additional amounts payable in accordance with Section 9.10.3 of AIA Document A201–2007.

§ **5.1.8** Reduction or limitation of retainage, if any, shall be as follows:
*(If it is intended, prior to Substantial Completion of the entire Work, to reduce or limit the retainage resulting from the percentages inserted in Sections 5.1.6.1 and 5.1.6.2 above, and this is not explained elsewhere in the Contract Documents, insert here provisions for such reduction or limitation.)*

N/A

§ **5.1.9** Except with the Owner's prior approval, the Contractor shall not make advance payments to suppliers for materials or equipment which have not been delivered and stored at the site.

## § 5.2 FINAL PAYMENT

§ **5.2.1** Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when

    **.1**    the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Section 12.2.2 of AIA Document A201–2007, and to satisfy other requirements, if any, which extend beyond final payment; and

    **.2**    a final Certificate for Payment has been issued by the Architect.

Init.

/

**AIA Document A101™ – 2007.** Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:13:24 on 11/28/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
User Notes:                                                                                                               (1414415728)

**§ 5.2.2** The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

N/A

## ARTICLE 6   DISPUTE RESOLUTION
**§ 6.1 INITIAL DECISION MAKER**
The Architect will serve as Initial Decision Maker pursuant to Section 15.2 of AIA Document A201–2007, unless the parties appoint below another individual, not a party to this Agreement, to serve as Initial Decision Maker.
*(If the parties mutually agree, insert the name, address and other contact information of the Initial Decision Maker, if other than the Architect.)*

N/A

**§ 6.2 BINDING DISPUTE RESOLUTION**
For any Claim subject to, but not resolved by, mediation pursuant to Section 15.3 of AIA Document A201–2007, the method of binding dispute resolution shall be as follows:
*(Check the appropriate box. If the Owner and Contractor do not select a method of binding dispute resolution below, or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be resolved by litigation in a court of competent jurisdiction.)*

[   ]      Arbitration pursuant to Section 15.4 of AIA Document A201–2007

[   ]      Litigation in a court of competent jurisdiction

*(Paragraphs deleted)*
## ARTICLE 7   TERMINATION OR SUSPENSION
**§ 7.1** The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document A201–2007.

**§ 7.2** The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201–2007.

## ARTICLE 8   MISCELLANEOUS PROVISIONS
**§ 8.1** Where reference is made in this Agreement to a provision of AIA Document A201–2007 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

**§ 8.2** Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

*(Paragraph deleted)*
**§ 8.3** The Owner's representative:
*(Name, address and other information)*

Richard Lopez
Neiman Marcus
1201 Elm Street, Suite 2700
Dallas, TX  75270

**§ 8.4** The Contractor's representative:
*(Name, address and other information)*

David G. McWilliams
JRM Construction Management LLC
242 West 36th Street
New York, NY  10018

**Init.**

/

**AIA Document A101™ – 2007.** Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:13:24 on 11/28/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                  (1414415728)

**§ 8.5** Neither the Owner's nor the Contractor's representative shall be changed without ten days written notice to the other party.

**§ 8.6** Other provisions:

N/A

## ARTICLE 9   ENUMERATION OF CONTRACT DOCUMENTS

**§ 9.1** The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated in the sections below.

**§ 9.1.1** The Agreement is this executed AIA Document A101–2007, Standard Form of Agreement Between Owner and Contractor.

**§ 9.1.2** The General Conditions are AIA Document A201–2007, General Conditions of the Contract for Construction.

**§ 9.1.3** The Supplementary and other Conditions of the Contract:

| Document | Title | Date | Pages |
|---|---|---|---|
| | | | |

**§ 9.1.4** The Specifications:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*

Exhibit B

| Section | Title | Date | Pages |
|---|---|---|---|
| | | | |

**§ 9.1.5** The Drawings:
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*

Exhibit B

| Number | Title | Date |
|---|---|---|
| | | |

**§ 9.1.6** The Addenda, if any:

| Number | Date | Pages |
|---|---|---|
| N/A | | |

**AIA Document A101™ – 2007.** Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:13:24 on 11/28/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
User Notes:                                                                                                          (1414415728)

Init.

/

6

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 9.

**§ 9.1.7** Additional documents, if any, forming part of the Contract Documents:

    .1    AIA Document E201™–2007, Digital Data Protocol Exhibit, if completed by the parties, or the following:

    .2    Other documents, if any, listed below:
*(List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201–2007 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)*

    Exhibit A - JRM Construction Management LLC Restack Stipulated Sum Proposal dated 9/19/17 & Cost Variation Sheet dated 9/28/17
    Exhibit B – JRM Drawing Manifest Dated 8/23/17 & Neiman Marcus 7th Floor Restack Block Plan dated 9/17/17
    Exhibit C – Waiver of Lien/Statement of Sales and/or Use Tax Form
    Exhibit D - Neiman Marcus Safety Manual and Work Procedures and Forms
    Exhibit E - AIA G702 & G703 Application and Certification for payment
    Exhibit F - Insurance Requirements for Contractor and Sub-Contractors

**ARTICLE 10   INSURANCE AND BONDS**
The Contractor shall purchase and maintain insurance and provide bonds as set forth in Article 11 of AIA Document A201–2007.
*(State bonding requirements, if any, and limits of liability for insurance required in Article 11 of AIA Document A201–2007.)*

        **Type of insurance or bond**           **Limit of liability or bond amount ($0.00)**

This Agreement entered into as of the day and year first written above.

**The Neiman Marcus Group LLC**           **JRM Construction Management LLC**

_____  12/5/2017    _____  12/4/2017
**OWNER** *(Signature)*    *Date*        **CONTRACTOR** *(Signature)*    *Date*

Brent Laffere, Senior V.P. Property Development    David G. McWilliams, Principal
*(Printed name and title)*           *(Printed name and title)*

**AIA Document A101™ – 2007.** Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:13:24 on 11/28/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
User Notes:    (1414415728)



# Document A201™ – 2007

## *General Conditions of the Contract for Construction*

**for the following PROJECT:**
*(Name and location or address)*
Neiman Marcus – Hudson Yards
10ᵗʰ Avenue at 34ᵗʰ Street
New York, NY  10018

**THE OWNER:**
*(Name and address)*
The Neiman Marcus Group LLC
1201 Elm Street  Suite 2700
Dallas, TX  75270

**THE ARCHITECT:**
*(Name and address)*
Janson Goldstein
180 Varick Street
Suite 14141
New York, NY 10014

**TABLE OF ARTICLES**

1        GENERAL PROVISIONS

2        OWNER

3        CONTRACTOR

4        ARCHITECT

5        SUBCONTRACTORS

6        CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

7        CHANGES IN THE WORK

8        TIME

9        PAYMENTS AND COMPLETION

10       PROTECTION OF PERSONS AND PROPERTY

11       INSURANCE AND BONDS

12       UNCOVERING AND CORRECTION OF WORK

13       MISCELLANEOUS PROVISIONS

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

**Init.**

**/**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties.** Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                                   (1128951649)

1

**14    TERMINATION OR SUSPENSION OF THE CONTRACT**

**15    CLAIMS AND DISPUTES**



**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                       (1128951649)

Init.

/

**2**

*(Paragraphs deleted)*

**ARTICLE 1   GENERAL PROVISIONS**

**§ 1.1 BASIC DEFINITIONS**

**§ 1.1.1 THE CONTRACT DOCUMENTS**

The Contract Documents are enumerated in the Agreement between the Owner and Contractor (hereinafter the Agreement) and consist of the Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of the Contract, other documents listed in the Agreement and Modifications issued after execution of the Contract. A Modification is (1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive or (4) a written order for a minor change in the Work issued by the Architect. Unless specifically enumerated in the Agreement, the Contract Documents do not include the advertisement or invitation to bid, Instructions to Bidders, sample forms, other information furnished by the Owner in anticipation of receiving bids or proposals, the Contractor's bid or proposal, or portions of Addenda relating to bidding requirements.

**§ 1.1.2 THE CONTRACT**

The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Contractor and the Architect or the Architect's consultants, (2) between the Owner and a Subcontractor or a Sub-subcontractor, (3) between the Owner and the Architect or the Architect's consultants or (4) between any persons or entities other than the Owner and the Contractor. The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intended to facilitate performance of the Architect's duties.

**§ 1.1.3 THE WORK**

The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.

**§ 1.1.4 THE PROJECT**

The Project is the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner and by separate contractors engaged by Owner ("Owner's Contractors").

**§ 1.1.5 THE DRAWINGS**

The Drawings are the graphic and pictorial portions of the Contract Documents as listed in Section 9.1.5 of the Agreement showing the design, location and dimensions of the Work, generally including plans, elevations, sections, details, schedules and diagrams.

**§ 1.1.6 THE SPECIFICATIONS**

The Specifications are that portion of the Contract Documents as stated in Section 9.1.4 of the Agreement consisting of the written requirements for materials, equipment, systems, standards and workmanship for the Work, and performance of related services.

**§ 1.1.7 INSTRUMENTS OF SERVICE**

Instruments of Service are representations, in any medium of expression now known or later developed, of the tangible and intangible creative work performed by the Architect and the Architect's consultants under their respective professional services agreements. Instruments of Service may include, without limitation, studies, surveys, models, sketches, drawings, specifications, and other similar materials.

*(Paragraphs deleted)*

**§ 1.1.8 KNOWLEDGE**

The terms "knowledge", "recognize" and "discovery", their respective derivatives and similar terms in the Contract Documents, as used in reference to the Contractor, shall be interpreted to mean that which the Contractor knows or should know, recognizes or should recognize, and discovers or should discover in exercising the care, skill and diligence required by the Contract Documents.  Analogously, the expression "reasonably inferable" and similar terms

**Init.**

**/**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                       (1128951649)

DocuSign Envelope ID: 461EC0A36-93F6-15C9-8D82-518CFA3A7688

in the Contract Documents shall be interpreted to mean reasonably inferable by a contractor familiar with the Project and exercising the care, skill and diligence required of the Contractor by the Contract Documents.

### § 1.1.9 CONFIDENTIALITY

1.1.9.1 The Contractor warrants and represents that the contractor shall not knowingly or negligently communicate or disclose at any time to any person or entity any information in connection with the Work or the Project, except (i) with prior written consent of the Owner, (ii) information that was in the public domain prior to the date of this Agreement, (iii) information that becomes part of the public domain by publication or otherwise not due to any unauthorized act or mission of the Contractor, or (iv) as may be required to perform the Work or by any applicable law.

§1.1.9.2 The Contractor, at any time, upon the request of the Owner, shall immediately return and surrender to the Owner all copies of any materials, records, notices, memoranda, recordings, drawings, specifications, and mock-ups and any other documents furnished by the Owner or the Architect to the Contractors.

§1.1.9.3 The Contractor shall cause all Subcontractors or any other person or entity performing any services, or furnishing any materials or equipment, for the Work to warrant and represent all items set forth in the Paragraph 1.1.9.

§1.1.9.4 The representations and warranties contained in this Paragraph 1.1.9 shall survive the complete performance of the Work or earlier termination of this Agreement.

### § 1.2 CORRELATION AND INTENT OF THE CONTRACT DOCUMENTS

§ 1.2.1 The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. The Contract Documents are complementary, and what is required by one shall be as binding as if required by all; performance by the Contractor shall be required only to the extent consistent with the Contract Documents and reasonably inferable from them as being necessary to produce the indicated results. In the event of inconsistencies within or between parts of the Contract Documents, or between the Contract Documents and applicable standards, codes and ordinances, the Contractor shall (i) provide the better quality or greater quantity of Work or (ii) comply with the more stringent requirement; either or both in accordance with the Architect and Owners' interpretation and prevailing New York City construction standards. Notwithstanding anything to the contrary herein or elsewhere in the contract documents, contractors notes and clarifications dated September 28, 2017 shall control in the event of a conflict between or among the various contract documents. The terms and conditions of this Subparagraph 1.2.1 shall not relieve the Contractor of any of the obligations set forth in Subparagraphs 3.2 and 3.7.

§ 1.2.2 Organization of the Specifications into divisions, sections and articles, and arrangement of Drawings shall not control the Contractor in dividing the Work among Subcontractors or in establishing the extent of Work to be performed by any trade.

§ 1.2.3 Unless otherwise stated in the Contract Documents, words that have well-known technical or construction industry meanings are used in the Contract Documents in accordance with such recognized meanings.

§1.2.3.1 Whenever a product is specified in accordance with a Federal Specification, an ASTM Standard, and American National Standards Institute Specification or other Association Standard, the Contractor shall, when requested by the Architect or the Owner, or required by the Specifications, present catalog cuts and other product information published by the product manufacturer. When requested by the Architect or Owner or the required Specifications, support test data shall be submitted to substantiate compliance.

§1.2.3.2 Whenever a product is specified or shown by describing proprietary items, model numbers, catalog numbers, manufacturer, trade names or similar reference, no substitutions may be made unless accepted prior to execution of the Contract or if accepted as a Change in the Work. Where two or more products are shown or specified, the Contractor has the option to use either of those shown or specified.

### § 1.3 CAPITALIZATION

Terms capitalized in these General Conditions include those that are (1) specifically defined, (2) the titles of numbered articles or (3) the titles of other documents published by the American Institute of Architects.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
User Notes: (1128951649)

Init.

/

## § 1.4 INTERPRETATION

In the interest of brevity the Contract Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.

## § 1.5 OWNERSHIP AND USE OF DRAWINGS, SPECIFICATIONS AND OTHER INSTRUMENTS OF SERVICE

**§ 1.5.1** The Architect and the Architect's consultants shall be deemed the authors and owners of their respective Instruments of Service, including the Drawings and Specifications, and will retain all common law, statutory and other reserved rights, including copyrights. The Contractor, Subcontractors, Sub-subcontractors, and material or equipment suppliers shall not own or claim a copyright in the Instruments of Service. Submittal or distribution to meet official regulatory requirements or for other purposes in connection with this Project is not to be construed as publication in derogation of the Architect's or Architect's consultants' reserved rights.

**§ 1.5.2** The Contractor, Subcontractors, Sub-subcontractors and material or equipment suppliers are authorized to use and reproduce the Instruments of Service provided to them solely and exclusively for execution of the Work. All copies made under this authorization shall bear the copyright notice, if any, shown on the Instruments of Service. The Contractor, Subcontractors, Sub-subcontractors, and material or equipment suppliers may not use the Instruments of Service on other projects or for additions to this Project outside the scope of the Work without the specific written consent of the Owner, Architect and the Architect's consultants.

## § 1.6 TRANSMISSION OF DATA IN DIGITAL FORM

If the parties intend to transmit Instruments of Service or any other information or documentation in digital form, they shall endeavor to establish necessary protocols governing such transmissions, unless otherwise already provided in the Agreement or the Contract Documents.

## ARTICLE 2   OWNER
### § 2.1 GENERAL

**§ 2.1.1** The Owner is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. Except as otherwise provided in Section 4.2.1, the Architect does not have such authority. The term "Owner" means the Owner or the Owner's authorized representative.

**§ 2.1.2** The Owner shall furnish to the Contractor within fifteen days after receipt of a written request, information necessary and relevant for the Contractor to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property on which the Project is located, usually referred to as the site, and the Owner's interest therein.

## § 2.2 INFORMATION AND SERVICES REQUIRED OF THE OWNER

*(Paragraphs deleted)*
**§ 2.2.1** The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a legal description of the site. The Contractor shall be entitled to rely on the accuracy of information furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.

**§ 2.2.2** Unless otherwise provided in the Contract Documents, the Owner shall furnish to the Contractor one copy of the Contract Documents for purposes of making reproductions pursuant to Section 1.5.2.

**§ 2.2.3** The Owner shall furnish information or services required of the Owner by the Contract Documents with reasonable promptness. The Owner shall also furnish any other information or services under Owner's control and relevant to the Contractor's performance of the Work with reasonable promptness after receiving the Contractor's written request for such information or services.

**§ 2.2.4** Except for permits and fees that are the responsibility of Contractor under the Contract Documents, Owner shall secure and pay for necessary approvals, easements, assessments and charges required for construction, use or

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                         (1128951649)

Init.
/

5

occupancy of the Project.  Owner shall pay to the New York City Department of Buildings ("NYCDOB") Permit. Contractor shall pick up the NYCDOB permit.

### § 2.3 OWNER'S RIGHT TO STOP THE WORK
If the Contractor fails to correct Work that is not in accordance with the requirements of the Contract Documents as required by Section 12.2 or repeatedly fails to carry out Work in accordance with the Contract Documents, the Owner may issue a written order to the Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity, except to the extent required by Section 6.1.3.

### § 2.4 OWNER'S RIGHT TO CARRY OUT THE WORK
If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a ten-day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may, without prejudice to other remedies the Owner may have, correct such deficiencies. In such case an appropriate Change Order shall be issued deducting from payments then or thereafter due the Contractor the reasonable cost of correcting such deficiencies, including Owner's expenses and compensation for the Architect's additional services made necessary by such default, neglect or failure. Such action by the Owner and amounts charged to the Contractor are both subject to prior approval of the Architect.  If payments then or thereafter due the Contractor are not sufficient to cover such amounts, the Contractor shall pay the difference to the Owner.

### ARTICLE 3   CONTRACTOR
### § 3.1 GENERAL
§ 3.1.1 The Contractor is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Contractor shall be lawfully licensed, if required in the jurisdiction where the Project is located. The Contractor shall designate in writing a representative who shall have express authority to bind the Contractor with respect to all matters under this Contract. The term "Contractor" means the Contractor or the Contractor's authorized representative.

§ 3.1.2 The Contractor shall perform the Work in accordance with the Contract Documents.

§ 3.1.3 The Contractor shall not be relieved of obligations to perform the Work in accordance with the Contract Documents either by activities or duties of the Architect in the Architect's administration of the Contract, or by tests, inspections or approvals required or performed by persons or entities other than the Contractor.

### § 3.2 REVIEW OF CONTRACT DOCUMENTS AND FIELD CONDITIONS BY CONTRACTOR
§ 3.2.1 Execution of the Contract by the Contractor is a representation that the Contractor has visited the site, become generally familiar with local conditions under which the Work is to be performed and correlated personal observations with requirements of the Contract Documents.  Contractor shall verify grades, dimension or locations prior to the execution of the Work, and in all cases of interconnection of its Work with existing or other work, Contractor shall verify at the site all dimensions relating to such existing or other work.  Any errors due to the Contractor's failure to so verify all such grades, elevations, dimensions or locations shall be promptly rectified by the Contractor at no additional cost to the Owner.

§ 3.2.2 Because the Contract Documents are complementary, the Contractor shall, before starting each portion of the Work, carefully study and compare the various Contract Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Section 2.2.3, shall take field measurements of any existing conditions related to that portion of the Work, and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating coordination and construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, the Contractor shall promptly report to the Architect and the Owner any errors, inconsistencies or omissions discovered by or made known to the Contractor as a request for information in such form as the Architect and the Owner may require.  It is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not a licensed design professional, unless otherwise specifically provided in the Contract Documents.

Init.

/

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.**
**User Notes:**                                                                                          (1128951649)

**§ 3.2.3** The Contractor is not required to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, but the Contractor shall promptly report to the Architect and the Owner any nonconformity discovered by or made known to the Contractor as a request for information in such form as the Architect and the Owner may require.

**§ 3.2.4** If the Contractor believes that additional cost or time is involved because of clarifications or instructions the Architect or the Owner issues in response to the Contractor's notices or requests for information pursuant to Sections 3.2.2 or 3.2.3, the Contractor shall make Claims as provided in Article 15. If the Contractor fails to perform the obligations of Sections 3.2.2 or 3.2.3, the Contractor shall pay such costs and damages to the Owner as would have been avoided if the Contractor had performed such obligations. If the Contractor performs those obligations, the Contractor shall not be liable to the Owner or Architect for damages resulting from errors, inconsistencies or omissions in the Contract Documents, for differences between field measurements or conditions and the Contract Documents, or for nonconformities of the Contract Documents to applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities.

### § 3.3 SUPERVISION AND CONSTRUCTION PROCEDURES
**§ 3.3.1** The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for, and have control over, construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless the Contract Documents give other specific instructions concerning these matters. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, the Contractor shall evaluate the jobsite safety thereof and, except as stated below, shall be fully and solely responsible for the jobsite safety of such means, methods, techniques, sequences or procedures. If the Contractor determines that such means, methods, techniques, sequences or procedures may not be safe, the Contractor shall give timely written notice to the Owner and Architect and shall not proceed with that portion of the Work without further written instructions from the Architect.

**§ 3.3.2** The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for, or on behalf of, the Contractor or any of its Subcontractors.

**§ 3.3.3** The Contractor shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work.

### § 3.4 LABOR AND MATERIALS
**§ 3.4.1** Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.

**§ 3.4.2** Except in the case of minor changes in the Work authorized by the Architect in accordance with Sections 3.12.8 or 7.4, the Contractor may make substitutions only with the consent of the Owner, after evaluation by the Architect.

**§3.4.2.1** The Contractor must submit to the Architect and the Owner (i) a full explanation of the proposed substitution and submittal of all supporting data, including technical information catalog cuts, warranties, test results, installation instructions, operating procedures, and the other like information necessary for a complete evaluation of the substitution; (ii) a written explanation of the reasons for the substitution being advantageous and necessary; (iii) the adjustment, if any, in the Contract Sum, in the event the substitution is acceptable to the Owner; (iv) the adjustment, if any, in the time of completion of the Contract and the construction schedule in the event the substitution is acceptable; and (v) a written confirmation that the Contractor accepts the warranty and correction obligations in connection with the proposed substitution as if originally specified by the Architect or the Owner.  Proposal for substitutions shall be submitted to the Architect and the Owner no less than ten (10) days before the date that the substitution should be made to comply with the completion time of the Contract.  No substitutions will be considered or allowed without the Contractor's submittal of complete substantiating data and information as stated in this subparagraph.

**§3.4.2.2** Substitutions and alternatives may be rejected by the Owner without explanation and will be considered only under one or more of the following conditions: (i) the proposal is required for compliance and interpretation of code requirements or insurance regulations then existing; (ii) specified products are unavailable through no fault of the

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                    (1128951649)

Contractor; (iii) subsequent information discloses the inability of specified products to perform properly or to fit in the designated space; (iv) the manufacturer/fabricator refuses to certify or guarantee the performance of the specified products required; and (v) when in the judgment of the Owner, a substitution would be substantially in the Owner's best interests, in terms of cost, time or other considerations.

**§ 3.4.3** The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Work. The Contractor shall not permit employment of unfit persons or persons not properly skilled in tasks assigned to them.

## § 3.5 WARRANTY

The Contractor warrants to the Owner and Architect that materials and equipment furnished under the Contract will be of good quality and new unless the Contract Documents require or permit otherwise. The Contractor further warrants that the Work will conform to the requirements of the Contract Documents and will be free from defects, except for those inherent in the quality of the Work the Contract Documents require or permit. Work, materials, or equipment not conforming to these requirements may be considered defective. The Contractor's warranty excludes remedy for damage or defect caused by abuse, alterations to the Work not executed by the Contractor, improper or insufficient maintenance, improper operation, or normal wear and tear and normal usage. If required by the Architect, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.

**§3.5.1** The Contractor agrees to assign to the Owner, at the time of final completion of the Work, any and all manufacturer's warranties relating to materials and labor used in the Work and further agrees to perform the Work in such a manner so as to preserve any and all such manufacturer's warranties.

**§3.5.2** The Contractor's express warranties contained herein shall be in addition to any warranties, indemnities, claims, rights or remedies that the Owner may have in the Contract Documents, at law or in equity for defective Work or breach of the Contract Documents.

## § 3.6 TAXES

The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor that are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect.

## § 3.7 PERMITS, FEES, NOTICES, AND COMPLIANCE WITH LAWS

*(Paragraph deleted)*
**§3.7.1** Except as set forth in Subparagraph 2.2.2, the Contractor shall secure, pay for and as soon as practicable, furnish the Owner with copies of certificates of all permits and fees, licenses and inspections necessary for the proper execution and completion of Work.  Owner shall secure and pay for the NYCDOB permit.

**§ 3.7.2** The Contractor shall comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders and all other requirements of public authorities applicable to performance of the Work.

**§ 3.7.3** If the Contractor performs Work knowing it to be contrary to applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, the Contractor shall assume appropriate responsibility for such Work and shall bear all of  the costs attributable to correction.

**§ 3.7.4 Concealed or Unknown Conditions.** If the Contractor encounters conditions at the site that are (1) subsurface or otherwise concealed physical conditions that differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, that differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, the Contractor shall promptly provide notice to the Owner and the Architect before conditions are disturbed and in no event later than  seven (7) days after first observance of the conditions. The Architect or the Owner will promptly investigate such conditions and, if the Architect or the Owner determines that they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Contract Sum or Contract Time, or both. If the Architect or the Owner determines that the conditions at the site are not materially different from those indicated in the Contract Documents

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                           (1128951649)

Init.

/

8

and that no change in the terms of the Contract is justified, the Architect shall promptly notify the Contractor in writing, stating the reasons. If either party disputes the Architect's determination or recommendation, that party may proceed as provided in Article 15.

**§ 3.7.5** If, in the course of the Work, the Contractor encounters human remains or recognizes the existence of burial markers, archaeological sites or wetlands not indicated in the Contract Documents, the Contractor shall immediately suspend any operations that would affect them and shall notify the Owner and Architect. Upon receipt of such notice, the Owner shall promptly take any action necessary to obtain governmental authorization required to resume the operations. The Contractor shall continue to suspend such operations until otherwise instructed by the Owner but shall continue with all other operations that do not affect those remains or features. Requests for adjustments in the Contract Sum and Contract Time arising from the existence of such remains or features may be made as provided in Article 15.

**§ 3.8 ALLOWANCES**
**§ 3.8.1** The Contractor shall include in the Contract Sum all allowances stated in the Contract Documents. Items covered by allowances shall be supplied for such amounts and by such persons or entities as the Owner may direct, but the Contractor shall not be required to employ persons or entities to whom the Contractor has reasonable objection.

**§ 3.8.2** Unless otherwise provided in the Contract Documents,
   **.1** allowances shall cover the cost to the Contractor of materials and equipment delivered at the site and all required taxes, less applicable trade discounts;
   **.2** Contractor's costs for unloading and handling at the site, labor, installation costs, overhead, profit and other expenses contemplated for stated allowance amounts shall be included in the Contract Sum but not in the allowances; and
   **.3** whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect (1) the difference between actual costs and the allowances under Section 3.8.2.1 and (2) changes in Contractor's costs under Section 3.8.2.2.

**§ 3.8.3** Materials and equipment under an allowance shall be selected by the Owner with reasonable promptness.

**§ 3.9 SUPERINTENDENT AND PROJECT MANAGER**
**§ 3.9.1** The Contractor shall employ a competent, full-time superintendent and necessary assistants who shall be in attendance at the Project site during performance of the Work until Store Opening. The superintendent shall be responsible for matters that occur on the site of the Work. The superintendent shall represent the Contractor, and communications given to the superintendent shall be as binding as if given to the Contractor. The Contractor shall employ a full-time, on-site project manager who shall be responsible for all matters related to the Work or the Project that occur off the site of the Work. The project manager shall represent the Contractor and communications given to the project manager shall be shall be as binding as if given to the Contractor.

**§ 3.9.2** The Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner the name and qualifications of a proposed superintendent, and the project manager; the superintendent and the project manager shall not be the same person. The Architect or the Owner may reply within 14 days to the Contractor in writing stating (1) whether the Owner or the Architect has reasonable objection to the proposed superintendent or project manager or (2) that the Architect or the Owner requires additional time to review. Failure of the Architect or the Owner to reply within the 14 day period shall constitute notice of no reasonable objection.

**§ 3.9.3** The Contractor shall not employ a proposed superintendent or project manager to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not change the superintendent or project manager without the Owner's consent.

**§ 3.10 CONTRACTOR'S CONSTRUCTION SCHEDULES**
**§ 3.10.1** The Contractor, promptly after being awarded the Contract, shall prepare and submit for the Owner's and Architect's information a Contractor's construction schedule for the Work. The schedule shall not exceed time limits current under the Contract Documents, shall be revised at appropriate intervals as required by the conditions of the Work and Project, shall be related to the entire Project to the extent required by the Contract Documents, and shall provide for expeditious and practicable execution of the Work.

Init.

/

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                    (1128951649)

**§ 3.10.2** The Contractor shall prepare a submittal schedule, promptly after being awarded the Contract and thereafter as necessary to maintain a current submittal schedule, and shall submit the schedule(s) for the Owner's approval. The Owner's approval shall not unreasonably be delayed or withheld. The submittal schedule shall (1) be coordinated with the Contractor's construction schedule, and (2) allow the Architect and the Owner reasonable time to review submittals. If the Contractor fails to submit a submittal schedule, the Contractor shall not be entitled to any increase in Contract Sum or extension of Contract Time based on the time required for review of submittals.

**§ 3.10.3** The Contractor shall perform the Work in general accordance with the most recent schedules submitted to the Owner and Architect and in such time to achieve the Substantial Completion deadlines set forth in the Contract Documents.

**§3.10.4** In the event that Contractor's performance of the Work, as of a Milestone Date, has not progressed or reached the level of completion required by the Contract Documents, the Owner shall have the right to order the Contractor to take corrective measures necessary to expedite the progress of construction, including, without limitation, (i) working additional shifts or overtime, (ii) supplying additional manpower, equipment and facilities, and (iii) other similar measure (hereinafter referred to collectively as "Extraordinary Measures"). Such Extraordinary Measures shall continue until the progress of the Work complies with the state of completion required by the Contract Documents. The Owner's right to require Extraordinary Measures is solely for the purpose of ensuring the Contractor's compliance with the construction schedule. In the event that delayed performance hereunder is as a result of an Excused Delay (as defined in section 8.3 hereof), the Contract Sum shall be equitably adjusted by Change Order to compensate Contractor for all costs incurred as a result of Owner's order to accelerate, together with Contractor's agreed upon fee, insurance and overhead.

**§3.10.4.1** Except in the event of an Excused Delay as set forth in paragraph 3.10.4 immediately above, the Contractor shall not be entitled to an adjustment in the Contract Sum in connection with Extraordinary Measures required by the Owner under or pursuant to subparagraph 3.10.4.

**§3.10.4.2** The Owner may exercise the right furnished the Owner under or pursuant to this Subparagraph 3.10.4 as frequently as the Owner deems necessary to ensure that the Contractor's performance of the Work will comply with any Milestone Date or completion date set forth in the Contract Documents.

**§3.10.5** The Owner shall have the right to direct a postponement or rescheduling of any date or time for the performance of any part of the Work that may interfere with the Operation of the Owner's premises. The Contractor shall, upon the Owner's request, reschedule any portion of the Work affecting operation of the premises during hours when the premises are not in operation. Any postponement, rescheduling or performance of the Work under this Subparagraph 3.10.5 may be grounds for an extension of the Contract Time, if permitted under Subparagraph 8.3.1 and an equitable adjustment in the Contract Sum if (i) the performance of the Work was properly scheduled by the Contractor in compliance with the requirements of the Contract Documents and (ii) such rescheduling or postponement was required for the Convenience of the Owner.

**§ 3.11 DOCUMENTS AND SAMPLES AT THE SITE**
The Contractor shall maintain at the site for the Owner one copy of the Drawings, Specifications, Addenda, Change Orders and other Modifications, in good order and marked currently to indicate field changes and selections made during construction, and one copy of approved Shop Drawings, Product Data, Samples and similar required submittals. These shall be available to the Architect and shall be delivered to the Architect and the Owner for submittal to the Owner upon completion of the Work as a record of the Work as constructed.

**§ 3.12 SHOP DRAWINGS, PRODUCT DATA AND SAMPLES**
**§ 3.12.1** Shop Drawings are drawings, diagrams, schedules and other data specially prepared for the Work by the Contractor or a Subcontractor, Sub-subcontractor, manufacturer, supplier or distributor to illustrate some portion of the Work.

**§ 3.12.2** Product Data are illustrations, standard schedules, performance charts, instructions, brochures, diagrams and other information furnished by the Contractor to illustrate materials or equipment for some portion of the Work.

**§ 3.12.3** Samples are physical examples that illustrate materials, equipment or workmanship and establish standards by which the Work will be judged.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                   (1128951649)

Init.

/

**§ 3.12.4** Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents. Their purpose is to demonstrate the way by which the Contractor proposes to conform to the information given and the design concept expressed in the Contract Documents for those portions of the Work for which the Contract Documents require submittals. Review by the Architect is subject to the limitations of Section 4.2.7. Informational submittals upon which the Architect is not expected to take responsive action may be so identified in the Contract Documents. Submittals that are not required by the Contract Documents may be returned by the Architect without action.

**§ 3.12.5** The Contractor shall review for compliance with the Contract Documents, approve and submit to the Architect Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents in accordance with the submittal schedule approved by the Architect and the Owner or, in the absence of an approved submittal schedule, with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Owner or of separate contractors.

**§ 3.12.6** By submitting Shop Drawings, Product Data, Samples and similar submittals, the Contractor represents to the Owner and Architect that the Contractor has (1) reviewed and approved them, (2) determined and verified materials, field measurements and field construction criteria related thereto, or will do so and (3) checked and coordinated the information contained within such submittals with the requirements of the Work and of the Contract Documents.

**§ 3.12.7** The Contractor shall perform no portion of the Work for which the Contract Documents require submittal and review of Shop Drawings, Product Data, Samples or similar submittals until the respective submittal has been approved by the Architect and the Owner.

**§ 3.12.8** The Work shall be in accordance with approved submittals except that the Contractor shall not be relieved of responsibility for deviations from requirements of the Contract Documents by the Architect's and the Owner's approval of Shop Drawings, Product Data, Samples or similar submittals unless the Contractor has specifically informed the Architect and the Owner in writing of such deviation at the time of submittal and (1) the Architect and the Owner have given written approval to the specific deviation as a minor change in the Work, or (2) a Change Order or Construction Change Directive has been issued authorizing the deviation. The Contractor shall not be relieved of responsibility for errors or omissions in Shop Drawings, Product Data, Samples or similar submittals by the Architect's approval thereof.

**§ 3.12.9** The Contractor shall direct specific attention, in writing or on resubmitted Shop Drawings, Product Data, Samples or similar submittals, to revisions other than those requested by the Architect and the Owner on previous submittals. In the absence of such written notice, the Architect's and Owner's approval of a resubmission shall not apply to such revisions.

**§ 3.12.10** The Contractor shall not be required to provide professional services that constitute the practice of architecture or engineering unless such services are specifically required by the Contract Documents for a portion of the Work or unless the Contractor needs to provide such services in order to carry out the Contractor's responsibilities for construction means, methods, techniques, sequences and procedures. The Contractor shall not be required to provide professional services in violation of applicable law. If professional design services or certifications by a design professional related to systems, materials or equipment are specifically required of the Contractor by the Contract Documents, the Owner and the Architect will specify all performance and design criteria that such services must satisfy. The Contractor shall cause such services or certifications to be provided by a properly licensed design professional, whose signature and seal shall appear on all drawings, calculations, specifications, certifications, Shop Drawings and other submittals prepared by such professional. Shop Drawings and other submittals related to the Work designed or certified by such professional, if prepared by others, shall bear such professional's written approval when submitted to the Architect and the Owner. The Owner and the Architect shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications and approvals performed or provided by such design professionals. Pursuant to this Section 3.12.10, the Architect and the Owner will review, approve or take other appropriate action on submittals only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Contractor shall not be responsible for the adequacy of the performance and design criteria specified in the Contract Documents.

Init.

/

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                                                   (1128951649)

## § 3.13 USE OF SITE

**§3.13.1** The Contractor shall confine operations at the site to areas permitted by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities and the Contract Documents and shall not unreasonably encumber the site with materials or equipment.

**§3.13.2** Only materials and equipment that are to be used directly in the Work shall be brought to and stored on the Project site by the Contractor. After equipment is no longer required for the Work, it shall be promptly removed from the Project site. Protection of construction materials and equipment stored at the Project site from weather, theft, damage and all other adversity is solely the responsibility of the Contractor. The Contractor shall ensure that the Work, at all times, is performed in a manner that affords reasonable access, both vehicular and pedestrian, to the site of the Work and all adjacent areas. The Work shall be performed, to the fullest extent reasonably possible, in a manner that public areas adjacent to the site of the Work shall be free from all debris, building materials, and equipment likely to cause hazardous conditions.

**§3.13.3** Without limitation of any other requirement set forth in this Contract, the Contractor shall minimize interference with the occupancy or beneficial use of any areas and buildings adjacent to the site of the Work. In the event that the site of the Work is occupied or partially occupied, the Contractor shall minimize any interference with the occupancy or beneficial use of the Work Site. The Contractor shall not permit any workers to use any facilities at the Project Site, including, without limitation, lavatories, toilets, entrances and parking areas, except those specifically designed by the Owner as available for the Contractor's use. The Contractor shall, at the Contractor's sole costs and expenses, take all measures necessary to protect persons and property in or adjacent to the Project Work Site.

**§3.13.4** To the extent that the Contractor is performing work in an occupied premises, the Contractor shall comply with all regulations and rules promulgated by the Owner or other occupier of such premises in connection with the use and occupancy of the premises.

## § 3.14 CUTTING AND PATCHING

**§ 3.14.1** The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly. All areas requiring cutting, fitting and patching shall be restored to the condition existing prior to the cutting, fitting and patching, unless otherwise required by the Contract Documents.

**§ 3.14.2** The Contractor shall not damage or endanger a portion of the Work or fully or partially completed construction of the Owner or separate contractors by cutting, patching or otherwise altering such construction, or by excavation. The Contractor shall not cut or otherwise alter such construction by the Owner or a separate contractor except with written consent of the Owner and of such separate contractor; such consent shall not be unreasonably withheld. The Contractor shall not unreasonably withhold from the Owner or a separate contractor the Contractor's consent to cutting or otherwise altering the Work.

## § 3.15 CLEANING UP

**§ 3.15.1** The Contractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Contract. At completion of the Work, the Contractor shall remove waste materials, rubbish, the Contractor's tools, construction equipment, machinery and surplus materials from and about the Project.

**§ 3.15.2** If the Contractor fails to clean up as provided in the Contract Documents, the Owner may do so and Owner shall be entitled to reimbursement from the Contractor.

## § 3.16 ACCESS TO WORK

The Contractor shall provide the Owner and Architect access to the Work in preparation and progress wherever located.

## § 3.17 ROYALTIES, PATENTS AND COPYRIGHTS

The Contractor shall pay all royalties and license fees. The Contractor shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the Contract Documents, or where the copyright violations are contained in Drawings, Specifications or other documents prepared by the Owner or Architect. However, if the Contractor has reason to

**Init.**

**/**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:** (1128951649)

**12**

believe that the required design, process or product is an infringement of a copyright or a patent, the Contractor shall be responsible for such loss unless such information is promptly furnished to the Architect and the Owner.

## § 3.18 INDEMNIFICATION

**§ 3.18.1** To the fullest extent permitted by law the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity that would otherwise exist as to a party or person described in this Section.

 **3.18.1.1** The Contractor shall be liable for and shall defend, indemnify and hold harmless the Owner, and the owner of the shopping center of which the Project is a part of and/or the owner of the building in which the Project is located and/or the owner of the property on which the Project is situated, as the case may be, and their respective officers, agents and employees, against (i) all liabilities, claims and the demands of every nature, occurring as a result of personal injury, accidental death, disease, or property damage, together with any resulting costs or legal fees, to the extent caused by any negligent act or omission of the Contractor, its Subcontractors, agents or employees;  (ii) provided that Owner has paid Contractor for the work that forms the basis of a mechanic's lien, all liens, or claims of rights to enforce liens, against the Project or improvements to be erected thereon arising out of any Work to be performed or services or materials to be furnished under this Agreement; and (iii) all other costs, damage, expense and liabilities for which the Contractor is liable to the Owner hereunder or for which the Contractor has agreed to pay or to be responsible hereunder.  Such obligation shall not be construed to negate , or reduce the other rights or obligation of indemnity which would otherwise exist as to party or person described in this section 3.18.

**§ 3.18.2** In claims against any person or entity indemnified under this Section 3.18 by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Section 3.18.1 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Contractor or a Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.  Similarly, the Contractor's obligations of indemnification under this Contract shall not be limited by any insurance obtained or maintained by the Contractor pursuant to this Contract or otherwise.

**§3.18.3** Provided that the Owner has issued payments for work that is the basis of a mechanic's lien claim (a "Lien"), if any lien claim claiming that Contractor has failed to make payment for any labor, services, trust fund contribution, materials, equipment, taxes or other items furnished or obligations incurred for, or in connection with the Work, or if after ten (10) days' written notice to Contractor of such Lien, and Contractor fails to cause the Lien to be discharged of record, then the Owner shall be entitled to retain from any payment then due or thereafter to become due under this Contract or to be reimbursed to the Contractor an amount sufficient to satisfy or discharge and defend against any such claim of Lien.  The Owner shall not pay any such amount withheld directly to any such claimant or potential claimant, so long as the Contractor (a) is not in default under the Contract Documents, (b) notifies the Owner in writing that it will dispute such claim within seven (7) days following the date of the Owner's notice to the Contractor of its intent to pay such amount, (c) promptly disputes such claim with due diligence, and (d) resolves such dispute in a manner that does not affect the Contractor's performance under the Contract Document or threaten the interest of the Owner in the Project.

**§3.18.4** Provided that the Owner has issued payments due to the Contractor on a timely basis in accordance with this agreement, should any Subcontractor, supplier, or other person or any of the make, record, or file or maintain any action or respect any claim of mechanic's lien, stop-notice, equitable lien, payment or performance bond, or a lis pendens, relating to the Work, the Contractor shall immediately, and at its expense, procure, furnish and record appropriate statutory release bond, which will extinguish or expunge such claim, lien, stop-notice or lis pendens.

Init.

/

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                                                      (1128951649)

## ARTICLE 4  ARCHITECT
### § 4.1 GENERAL
**§ 4.1.1** The Owner shall retain an architect lawfully licensed to practice architecture or an entity lawfully practicing architecture in the jurisdiction where the Project is located. That person or entity is identified as the Architect in the Agreement and is referred to throughout the Contract Documents as if singular in number.

**§ 4.1.2** Duties, responsibilities and limitations of authority of the Architect as set forth in the Contract Documents shall not be restricted, modified or extended without written consent of the Owner, Contractor and Architect. Consent shall not be unreasonably withheld.

**§ 4.1.3** If the employment of the Architect is terminated, the Owner shall employ a successor architect as to whom the Contractor has no reasonable objection and whose status under the Contract Documents shall be that of the Architect.

### § 4.2 ADMINISTRATION OF THE CONTRACT
**§ 4.2.1** The Architect will provide administration of the Contract as described in the Contract Documents and will be an Owner's representative during construction until the date the Architect issues the final Certificate For Payment. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents.

**§ 4.2.2** The Architect will visit the site at intervals appropriate to the stage of construction, or as otherwise agreed with the Owner, to become generally familiar with the progress and quality of the portion of the Work completed, and to determine in general if the Work observed is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect will not have control over, charge of, or responsibility for, the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents, except as provided in Section 3.3.1.

**§ 4.2.3** On the basis of the site visits, the Architect will keep the Owner reasonably informed about the progress and quality of the portion of the Work completed, and report to the Owner (1) known deviations from the Contract Documents and from the most recent construction schedule submitted by the Contractor, and (2) defects and deficiencies observed in the Work. The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not have control over or charge of and will not be responsible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or any other persons or entities performing portions of the Work.

### § 4.2.4 COMMUNICATIONS FACILITATING CONTRACT ADMINISTRATION
The Owner and the Contractor may communicate with each other directly or through the Architect, however, the Contractor shall keep the Architect and the Owner promptly informed of all communications that Contractor sends to either the Architect or the Owner.

**§ 4.2.5** The Architect shall report to the Owner any Work that the Architect determines should be rejected or that does not conform to the Contract Documents.

**§ 4.2.6** The Architect has authority to reject Work that does not conform to the Contract Documents. Whenever the Architect considers it necessary or advisable, the Architect will have authority to require inspection or testing of the Work in accordance with Sections 13.5.2 and 13.5.3, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees, or other persons or entities performing portions of the Work.

**§ 4.2.7** The Architect will review and approve, or take other appropriate action upon, the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. Architect shall respond to Contractor's submittals and requests for information within time frame identified in the Contract Documents, Project Manual Vol. 1. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:** (1128951649)

Init. /   **14**

The Architect's review of the Contractor's submittals shall not relieve the Contractor of the obligations under Sections 3.3, 3.5 and 3.12. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

**§ 4.2.8** The Owner will prepare Change Orders and Construction Change Directives and may authorize minor changes in the Work as provided in Section 7.4. The Architect will investigate and make determinations and recommendations regarding concealed and unknown conditions as provided in Section 3.7.4.

**§ 4.2.9** The Architect will conduct inspections to determine the date or dates of Substantial Completion and the date of final completion; issue Certificates of Substantial Completion pursuant to Section 9.8; receive and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the Contract and assembled by the Contractor pursuant to Section 9.10; and issue a final Certificate for Payment pursuant to Section 9.10.

**§ 4.2.10** If the Owner and Architect agree in writing, the Architect will provide one or more project representatives to assist in carrying out the Architect's responsibilities at the site. The duties, responsibilities and limitations of authority of such project representatives shall be as set forth in an exhibit to be incorporated in the Contract Documents which exhibit must be signed by the Owner before the exhibit can have any effect.

**§ 4.2.11** The Architect will interpret and offer advice on matters concerning performance under, and requirements of, the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness and shall not bind the Owner or the Contractor.

**§ 4.2.12** Interpretations and advice of the Architect will be consistent with the intent of, and reasonably inferable from, the Contract Documents and will be in writing or in the form of drawings.

**§ 4.2.13** Intentionally Deleted

**§ 4.2.14** The Architect will review and respond to requests for information about the Contract Documents. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness and shall not bind the Owner or the Contractor. If appropriate, the Architect will prepare and issue supplemental Drawings and Specifications in response to the requests for information.

## ARTICLE 5  SUBCONTRACTORS
### § 5.1 DEFINITIONS
**§ 5.1.1** A Subcontractor is a person or entity who has a direct contract with the Contractor to perform a portion of the Work at the site. The term "Subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Subcontractor or an authorized representative of the Subcontractor. The term "Subcontractor" does not include a separate contractor or subcontractors of a separate contractor.

**§ 5.1.2** A Sub-subcontractor is a person or entity who has a direct or indirect contract with a Subcontractor to perform a portion of the Work at the site. The term "Sub-subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Sub-subcontractor or an authorized representative of the Sub-subcontractor.

### § 5.2 AWARD OF SUBCONTRACTS AND OTHER CONTRACTS FOR PORTIONS OF THE WORK
**§ 5.2.1** Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work. The Owner or the Architect may reply within 14 days to the Contractor in writing stating (1) whether the Owner or the Architect has reasonable objection to any such proposed person or entity or (2) that the Owner or the Architect requires additional time for review. Failure of the Owner or Architect to reply within the 14 day period shall constitute notice of no reasonable objection.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:** (1128951649)

Init.

/

**15**

DocuSign Envelope ID: 481EC0A36-93F5-15C9-8D82-548CEA3A7659

**§ 5.2.2** The Contractor shall not contract with a proposed person or entity to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection.

**§ 5.2.3** If the Owner or Architect has reasonable objection to a person or entity proposed by the Contractor, the Contractor shall propose another to whom the Owner or Architect has no reasonable objection. If the proposed but rejected Subcontractor was reasonably capable of performing the Work, the Contract Sum and Contract Time shall be increased or decreased by the difference, if any, occasioned by such change, and an appropriate Change Order shall be issued before commencement of the substitute Subcontractor's Work. However, no increase in the Contract Sum or Contract Time shall be allowed for such change unless the Contractor has acted promptly and responsively in submitting names as required.

**§ 5.2.4** The Contractor shall not substitute a Subcontractor, person or entity previously selected if the Owner or Architect makes reasonable objection to such substitution.

## § 5.3 SUBCONTRACTUAL RELATIONS

**§5.3.1** By appropriate agreement, the Contractor shall require each Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner. The Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound, and, upon written request of the Subcontractor, identify to the Subcontractor terms and conditions of the proposed subcontract agreement that may be at variance with the Contract Documents. Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors.

**§5.3.2** All subcontracts shall be in writing in form and substance substantially similar to the Contractor's standard form subcontract, attached to the Agreement and made a part thereof as an exhibit, and shall specifically provide that the Owner is an intended third-party beneficiary of such subcontract.

## § 5.4 CONTINGENT ASSIGNMENT OF SUBCONTRACTS

**§ 5.4.1** Each subcontract agreement for a portion of the Work is assigned by the Contractor to the Owner, provided that

  .1  assignment is effective only after termination of the Contract by the Owner for cause pursuant to Section 14.2 and only for those subcontract agreements that the Owner accepts by notifying the Subcontractor and Contractor in writing; and

  .2  assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Contract.

When the Owner accepts the assignment of a subcontract agreement, the Owner assumes the Contractor's rights and obligations under the subcontract.

**§ 5.4.2** Each subcontract shall specifically provide that the Owner shall only be responsible to the Subcontractor for those obligations of the Contractor that accrue subsequent to the Owner's exercise of any rights under this conditional assignment and shall further provide that the Owner shall not be liable to any subcontractor for any default by the Contractor.

**§ 5.4.3** Upon such assignment to the Owner under this Section 5.4, the Owner may further assign the subcontract to a successor contractor or other entity. If the Owner assigns the subcontract to a successor contractor or other entity, the Owner shall nevertheless remain legally responsible for all of the successor contractor's obligations under the subcontract.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
User Notes:

Init.

/

(1128951649)

## ARTICLE 6   CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS
### § 6.1 OWNER'S RIGHT TO PERFORM CONSTRUCTION AND TO AWARD SEPARATE CONTRACTS
**§ 6.1.1** The Owner reserves the right to perform construction or operations related to the Project with the Owner's own forces, and to award separate contracts in connection with other portions of the Project or other construction or operations on the site under Conditions of the Contract identical or substantially similar to these including those portions related to insurance and waiver of subrogation. If the Contractor claims that delay or additional cost is involved because of such action by the Owner, the Contractor shall make such Claim as provided in Article 15.

**§ 6.1.2** When separate contracts are awarded for different portions of the Project or other construction or operations on the site, the term "Contractor" in the Contract Documents in each case shall mean the Contractor who executes each separate Owner-Contractor Agreement.

**§ 6.1.3** The Owner shall coordinate  the activities of the Owner's own forces and of each separate contractor with the Work of the Contractor, who shall cooperate with them. The Contractor shall participate with other separate contractors and the Owner in reviewing their construction schedules. Owner shall cause each of Owner's separate contractors to coordinate their work and schedule with Contractor in advance of performing such work, and that the separate contractors perform their work in accordance with Contractor's schedule, and phasing plans and other project controls references in the A101 Agreement part of the Contract Documents.  The Contractor will make all reasonable efforts to accommodate revisions and adjustments in Owner's Contractors schedules as required.

**§ 6.1.4** Unless otherwise provided in the Contract Documents, when the Owner performs construction or operations related to the Project with the Owner's own forces, the Owner shall be deemed to be subject to the same obligations and to have the same rights that apply to the Contractor under the Conditions of the Contract, including, without excluding others, those stated in Article 3, this Article 6 and Articles 10, 11 and 12.

### § 6.2 MUTUAL RESPONSIBILITY
**§ 6.2.1** The Contractor shall afford the Owner and separate contractors reasonable opportunity for introduction and storage of their materials and equipment and performance of their activities, and shall connect and coordinate the Contractor's construction and operations with theirs as required by the Contract Documents.  Owner shall cause its separate contractors to coordinate such storage space needs well in advance with Contractor.

**§ 6.2.2** If part of the Contractor's Work depends for proper execution or results upon construction or operations by the Owner or a separate contractor, the Contractor shall, prior to proceeding with that portion of the Work, promptly report to the Architect and the Owner apparent discrepancies or defects in such other construction that would render it unsuitable for such proper execution and results. Failure of the Contractor so to report shall constitute an acknowledgment that the Owner's or separate contractor's completed or partially completed construction is fit and proper to receive the Contractor's Work, except as to defects not then reasonably discoverable.

**§ 6.2.3** The Contractor shall reimburse the Owner for costs the Owner incurs that are payable to a separate contractor because of the Contractor's delays, improperly timed activities or defective construction. The Owner shall be responsible to the Contractor for costs the Contractor incurs because of a separate contractor's delays, improperly timed activities, damage to the Work or defective construction.

**§ 6.2.4** The Contractor shall promptly remedy damage the Contractor wrongfully causes to completed or partially completed construction or to property of the Owner or separate contractors as provided in Section 10.2.5.

**§ 6.2.5** The Owner and each separate contractor shall have the same responsibilities for cutting and patching as are described for the Contractor in Section 3.14.

### § 6.3 OWNER'S RIGHT TO CLEAN UP
If a dispute arises among the Contractor, separate contractors and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may clean up and will allocate the cost among those responsible.

**Init.**

**/**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                          (1128951649)

DocuSign Envelope ID: 4B1ECA36-93F5-15C9-0D82-518CEA3A76B8

## ARTICLE 7   CHANGES IN THE WORK
### § 7.1 GENERAL
**§ 7.1.1** Changes in the Work may be accomplished after execution of the Contract, and without invalidating the Contract, by Change Order, Construction Change Directive or order for a minor change in the Work, subject to the limitations stated in this Article 7 and elsewhere in the Contract Documents.

**§ 7.1.2** A Change Order shall be based upon agreement among the Owner and the Contractor; a Construction Change Directive requires agreement by the Owner and Architect and may or may not be agreed to by the Contractor; an order for a minor change in the Work may be issued by the Architect alone.

**§ 7.1.3** Changes in the Work shall be performed under applicable provisions of the Contract Documents, and the Contractor shall proceed promptly, unless otherwise provided in the Change Order, Construction Change Directive or order for a minor change in the Work.

### § 7.2 CHANGE ORDERS
**§ 7.2.1** A Change Order is a written instrument prepared by the Architect  and the Owner and signed by the Owner, Contractor and Architect stating their agreement upon all of the following:
- **.1**    The change in the Work;
- **.2**    The amount of the adjustment, if any, in the Contract Sum; and
- **.3**    The extent of the adjustment, if any, in the Contract Time.

### § 7.3 CONSTRUCTION CHANGE DIRECTIVES
Intentionally Deleted


*(Paragraphs deleted)*
### § 7.4 MINOR CHANGES IN THE WORK
The Architect has authority to order minor changes in the Work not involving adjustment in the Contract Sum or extension of the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes will be effected by written order signed by the Architect and shall be binding on the Owner and Contractor upon written approval by the Owner.

## ARTICLE 8   TIME
### § 8.1 DEFINITIONS
**§ 8.1.1** Unless otherwise provided, Contract Time is the period of time, including authorized adjustments, allotted in the Contract Documents for Substantial Completion of the Work.

**§ 8.1.2** The date of commencement of the Work is the date established in the Agreement.

**§ 8.1.3** The date of Substantial Completion is the date certified by the Architect in accordance with Section 9.8.

**§ 8.1.4** The term "day" as used in the Contract Documents shall mean calendar day unless otherwise specifically defined.

### § 8.2 PROGRESS AND COMPLETION
**§ 8.2.1** Time limits stated in the Contract Documents are of the essence of the Contract. By executing the Agreement the Contractor confirms that the Contract Time is a reasonable period for performing the Work.

**§ 8.2.2** The Contractor shall not knowingly, except by agreement or instruction of the Owner in writing, prematurely commence operations on the site or elsewhere prior to the effective date of insurance required by Article 11 to be furnished by the Contractor and Owner. The date of commencement of the Work shall not be changed by the effective date of such insurance.

**§ 8.2.3** The Contractor shall proceed expeditiously with adequate forces and shall achieve Substantial Completion within the Contract Time.

**Init.**

/

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                                 (1128951649)

**§8.2.4** The Contractor and the Owner agree that in the event the Owner and Contractor determine that the Contractor is behind the time schedule requirements of the Contract Documents to such extent that the Contractor will be unable to meet any date specified in the Agreement, if such delay is due solely to the Contractor, the Contractor shall, at a cost which shall not cause an adjustment to the Contract Sum, employ such additional forces, work such additional shifts or pay such additional overtime wages as may be required to place the progress of the Work in conformance with the Time Schedule and the latest permitted dates of Substantial Completion and Final Completion,  The Owner shall determine when the Contractor has achieved the appropriate level of progress necessary to satisfy the Contractor's obligations to meet the above-referenced dates.

## § 8.3 DELAYS AND EXTENSIONS OF TIME
**§ 8.3.1** If the Contractor is delayed at any time in the commencement or progress of the Work by an act or neglect of the Owner or Architect, or of an employee of either, or by the Owner or manager of the building in which the Project is constructed, or of a separate contractor employed by the Owner; or by changes ordered in the Work; or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties or other causes beyond the Contractor's control; or by delay authorized by the Owner pending mediation and arbitration; or by other causes that the Architect determines may justify delay (each of the above, an "Excused Delay"), then the Contract Time shall be extended by Change Order for such reasonable time as the Owner may determine.

**§ 8.3.2** Claims relating to time shall be made in accordance with applicable provisions of Article 15.

**§ 8.3.3** This Section 8.3 does not preclude recovery of damages for delay by either party under other provisions of the Contract Documents.  Notwithstanding anything herein to the contrary, if the Owner elects to provide an extension to the Contract Time under section 8.3.1 above, the extension shall be the sole remedy of the Contractor for any delay in commencement in prosecution, or completion of the Work, for any reason.  Except for any additional cost agreed to in a change order pursuant to Section 8.3.1, in the event of a time extension as a result of an Excused Delay, Owner shall pay Contractor for all reasonable extended general conditions costs incurred by Contractor as a result thereof, plus Contractor's agreed upon fee, overhead , and insurance.  In no event shall the Contractor be entitled to recovery of any damages in connection with any delays, such as consequential damages, impact damages, or other costs regardless of the extent or frequency of such delays, all of which claims are hereby expressly waived.

## ARTICLE 9   PAYMENTS AND COMPLETION
## § 9.1 CONTRACT SUM
The Contract Sum is stated in the Agreement and, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.

## § 9.2 SCHEDULE OF VALUES
Where the Contract is based on a stipulated sum or Guaranteed Maximum Price, the Contractor shall submit to the Architect and the Owner, before the first Application for Payment, a schedule of values allocating the entire Contract Sum to the various portions of the Work and prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect or the Owner, shall be used as a basis for reviewing the Contractor's Applications for Payment.

## § 9.3 APPLICATIONS FOR PAYMENT
**§ 9.3.1** At least ten days before the date established for each progress payment, the Contractor shall submit to the Architect and the Owner an itemized Application for Payment prepared in accordance with the schedule of values, if required under Section 9.2., for completed portions of the Work. Such application shall be notarized and shall include such data and information as requested by the Owner or Architect, including, (i) a current Contractor's lien waiver together with percentage lien waivers from subcontractors and suppliers as set forth more fully in paragraph 9.3.3.1 below; (ii) all information on materials required to comply with the requirements of the Contract Documents or reasonably requested by the Owner or the Architect.

**§ 9.3.1.1** Applications for Payment shall not include requests for payment for portions of the Work for which the Contractor does not intend to pay a Subcontractor or material supplier, unless such Work has been performed by others whom the Contractor intends to pay.

*(Paragraph deleted)*

**Init.**

**/**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:** (1128951649)

**§ 9.3.2** Unless otherwise provided in the Contract Documents, payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in writing, in advance by the Owner, payment may similarly be made for materials and equipment suitably stored off the site at a location agreed upon in writing. Payment for materials and equipment stored on or off the site shall be conditioned upon compliance by the Contractor with procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest, and shall include the costs of applicable insurance, storage and transportation to the site for such materials and equipment stored off the site.  The Contractor shall also comply with the following: (i) the aggregate cost of materials stored off site shall not occur at any time without the Owner's written approval; (ii) documentation vesting title in such materials shall be provided in a form satisfactory to the Owner; (iii) the Contractor shall identify each location where materials are stored off the Project site and the value of materials at each location; (iv) the Contractor shall maintain insurance for the items stored off the Project site; (v) representatives of the Owner shall have the right to inspect the storage areas for such materials at any time.  If any of the materials stored off of the Project Site shall be damaged, lost, stolen or destroyed after title to such materials has passed to the Owner, the Contractor shall repair or replace any such damaged, lost, stolen or destroyed materials at Contractor's sole cost and shall have no right to any adjustment of the Contract Sum.

**§ 9.3.3** The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment all Work for which payments received from the Owner shall, be free and clear of liens, claims, security interests or encumbrances in favor of the Contractor, Subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating to the Work.

*(Paragraphs deleted)*
**§ 9.3.3.1** The Contractor shall provide a signed partial lien waiver (in the form attached hereto as Exhibit C) with all Applications for Payment as an express condition precedent to payment.  The Contractor shall also require its Subcontractors to furnish partial lien waivers (in the form attached hereto as Exhibit C) with all Applications for Payment as an express condition precedent to payment.  The Contractor will be required to provide a signed final waiver of lien (on form provided by the Owner as part of the Contract Documents) with its final Application for Payment and require its Subcontractors to provide signed final waivers acknowledging that the subcontractor has been paid in full for its work on the Project with their final Applications for Payment.  The Contractor shall provide a Statement of Sales and/or Use Tax (on form provided by the Owner) with the Final Application for Payment.

**§ 9.3.3.2** The Contractor shall defend and indemnify the Owner against any actions, lawsuits or proceedings brought against the Owner as a result of liens or claims filed against the Work, by Contractor's subcontractor or suppliers. Notwithstanding the foregoing, in the event that Contractor fails to cause the discharge of Lien, after Owner having provided Contractor with ten (10) day's written notice thereof provided that Owner has paid Contractor for the work that forms the basis of a mechanic's lien, the Owner may cause such Lien to be discharged by bond, and Contractor shall reimburse Owner for the cost of bond premiums and all reasonable attorneys' fees incurred by Owner in causing the discharge of the lien.  Absent express written authorization by Contractor, Owner may not pay a Lien claimant directly to cause the discharge of a Lien. To the extent that the Contractor intends to dispute any such claims, the Contractor shall inform the Owner of any such disputed claim within thirty (30) days of the Contractor's notification of such claim.

**§ 9.3.4** After prior notification to the Contractor, and only in the event that Owner has obtained substantial, credible evidence that Contractor has failed to timely pay any Subcontractor, Owner may make payment requested by the Contractor on behalf of a Subcontractor by check jointly payable to the Contractor and such Subcontractor(s).  In no event shall any joint payment be construed to create any contractual relationship or obligation between the Owner and any Subcontractor of any tier, nor shall such check payment relieve the Contractor from its obligation to pay remaining funds properly due and owing Subcontractors or suppliers of any tier and to indemnify the Owner from any claims resulting from nonpayment.  Any and all sums paid by the Owner to any of the Contractor's Subcontractors or suppliers of any tier shall be offset against amounts otherwise due and owing to the Contractor by the Owner.  To the extent that the Owner makes payments to the Contractor's Subcontractors and suppliers in amounts that are in excess of any amounts due and owing under this Agreement, the Contractor shall reimburse for any such amounts paid or, at the Owner's election, the Owner may offset such amounts against amounts otherwise due and owing to the Contractor.

**Init.**

**/**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**

(1128951649)

## § 9.6 PROGRESS PAYMENTS

**§ 9.6.1** After the Contractor has issued an Application for Payment that fully complies with the provisions of the Contract Documents, the Owner shall make payment in the manner and within the time provided in the Contract Documents.

**§ 9.6.2** The Contractor shall pay each Subcontractor no later than seven days after receipt of payment from the Owner the amount to which the Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of the Subcontractor's portion of the Work. The Contractor shall, by appropriate agreement with each Subcontractor, require each Subcontractor to make payments to Sub-subcontractors in a similar manner.

**§ 9.6.3** The Architect will, on request, furnish to a Subcontractor if practicable, information regarding percentages of completion or amounts applied for by the Contractor and action taken thereon by the Architect and Owner on account of portions of the Work done by such Subcontractor.

**§ 9.6.4** The Owner has the right to request written evidence from the Contractor that the Contractor has properly paid Subcontractors and material and equipment suppliers amounts paid by the Owner to the Contractor for subcontracted Work. If the Contractor fails to furnish such evidence within seven days, the Owner shall have the right to contact Subcontractors to ascertain whether they have been properly paid. Neither the Owner nor Architect shall have an obligation to pay or to see to the payment of money to a Subcontractor, except as may otherwise be required by law.

**§ 9.6.5** Contractor payments to material and equipment suppliers shall be treated in a manner similar to that provided in Sections 9.6.2, 9.6.3 and 9.6.4.

**§ 9.6.6** A Certificate progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents.

**§ 9.6.7** Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor for Work properly performed by Subcontractors and suppliers shall be held by the Contractor for those Subcontractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor for which payment was made by the Owner.

## § 9.7 FAILURE OF PAYMENT

If after the delivery to the Owner of an Application for Payment that meets the requirements of the Contract Documents, the Owner does not pay the Contractor within seven days after the date established in the Contract Documents such amount as is owing under the Contract Documents, then the Contractor may, upon seven additional days' written notice to the Owner and Architect, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-down, delay and start-up, including any material or escalation costs incurred, plus interest as provided for in the Contract Documents.

**§ 9.7.1** If the Owner is entitled to reimbursement or payment from the Contractor under or pursuant to the Contract Documents, such payment shall be made promptly upon demand by the Owner. Notwithstanding anything contained in the Contract Documents to the contrary, if the Contractor fails to promptly make any payment due the Owner, or if the Owner incurs any costs and expenses to cure a default of the Contractor or to correct defective Work, the Owner shall have an absolute right to offset such amount against the Contract Sum and may, in the Owner's sole discretion, elect either to (i) deduct an amount equal to that which the Owner is entitled from any payment then or thereafter due the Contractor from the Owner, or (ii) issue a written notice to the Contractor reducing the Contract Sum by an amount equal to that which the Owner is entitled.

## § 9.8 SUBSTANTIAL COMPLETION

**§ 9.8.1** Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use. Substantial Completion shall mean that except for minor deficiencies or minor incomplete work, the Work has been completed. Contractor and Owner have completed a Punch List (as defined below) of such incomplete work, and that Contractor has obtained and submitted to Owner's expediter skilled trade inspection sign-offs and approvals in a form sufficient for Owners' expediter to call for a NYCDOB temporary certificate of occupancy ("TCO") inspection.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:** (1128951649)

Init. / 21

**§ 9.8.2** When the Contractor considers that the Work, or a portion thereof which the Owner agrees to accept separately, is substantially complete, the Contractor shall prepare and submit to the Architect and the Owner a comprehensive list of items to be completed or corrected prior to final payment (the "Punch List") . Failure to include an item on the Punch List does not alter the responsibility of the Contractor to complete all Work in accordance with the Contract Documents.

**§ 9.8.3** Upon receipt of the Contractor's Punch List, the Architect and the Owner will make an inspection to determine whether the Work or designated portion thereof is substantially complete. If the Architect's or the Owner's inspection discloses any item, whether or not included on the Punch List, which is not sufficiently complete in accordance with the Contract Documents so that the Owner can obtain either a temporary Certificate of Occupancy or a permanent Certificate of Occupancy, the Contractor shall complete or correct such item upon notification by the Architect and the Owner.

**§ 9.8.4** When the Work or designated portion thereof is substantially complete, the Architect will prepare a Certificate of Substantial Completion that shall establish the date of Substantial Completion, shall establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, and shall fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

**§ 9.8.5** The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate. Upon such acceptance, completion of all work or items contained on the list required by Section 9.8.2, and, if necessary and consent of surety, if any, the Owner shall make payment of retainage applying to such Work or designated portion thereof. Such payment shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Contract Documents.

**§ 9.9 PARTIAL OCCUPANCY OR USE**
**§ 9.9.1** The Owner may occupy or use any completed or partially completed portion of the Work at any stage when such portion is designated by separate agreement with the Contractor, provided such occupancy or use is consented to by the insurer as required under Section 11.3.1.5 and authorized by public authorities having jurisdiction over the Project. Such partial occupancy or use may commence whether or not the portion is substantially complete, provided the Owner and Contractor have accepted in writing the responsibilities assigned to each of them for payments, retainage, if any, security, maintenance, heat, utilities, damage to the Work and insurance, and have agreed in writing concerning the period for correction of the Work and commencement of warranties required by the Contract Documents. When the Contractor considers a portion substantially complete, the Contractor shall prepare and submit a list to the Architect and the Owner as provided under Section 9.8.2. Consent of the Contractor to partial occupancy or use shall not be unreasonably withheld. The stage of the progress of the Work shall be determined by written agreement between the Owner and Contractor..

**§ 9.9.2** Immediately prior to such partial occupancy or use, the Owner, Contractor and Architect shall jointly inspect the area to be occupied or portion of the Work to be used in order to determine and record the condition of the Work.

**§ 9.9.3** Unless otherwise agreed upon, partial occupancy or use of a portion or portions of the Work shall not constitute acceptance of Work not complying with the requirements of the Contract Documents.

**§ 9.10 FINAL COMPLETION AND FINAL PAYMENT**
**§ 9.10.1** Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect and the Owner (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amounts withheld by Owner) have been paid or otherwise satisfied, (2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner, (3) a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period required by the Contract Documents, (4) consent of surety, if any, to final payment and (5) receipt by the Owner of all operation and maintenance manuals; (6) completion of all items contained on the list required by Section 9.8.2; and (7) all warranties and guarantees required of or pursuant to the Contract Documents shall be assembled and delivered by the

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:** (1128951649)

Init. /

Contractor to the Owner as part of the final Application for Payment and, if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts, releases and waivers of liens, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner. If a Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against such lien. If such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees.

**§ 9.10.2** The making of final payment shall constitute a waiver of Claims by the Owner except those arising from
  .1    liens, Claims, security interests or encumbrances arising out of the Contract and unsettled;
  .2    failure of the Work to comply with the requirements of the Contract Documents; or
  .3    terms of special warranties required by the Contract Documents.

**§ 9.10.3** Acceptance of final payment by the Contractor, a Subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

*(Paragraphs deleted)*
**§ 9.11 RETENTION OF LIEN WAIVERS** Duplicate originals of the Subcontractor and materialmen's liens, waivers and releases shall remain on file at the Contractor's office for inspection by the Owner for a period of one (1) year after final payment.

**ARTICLE 10   PROTECTION OF PERSONS AND PROPERTY**
**§ 10.1 SAFETY PRECAUTIONS AND PROGRAMS**
The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract including the Neiman Marcus Safety Manual, which is part of the Contract Documents, and which is a guide outlining minimum acceptable safety standards that must be adhered to by the Contractor.

**§ 10.2 SAFETY OF PERSONS AND PROPERTY**
**§ 10.2.1** The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to
  .1    employees on the Work and other persons who may be affected thereby;
  .2    the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of the Contractor or the Contractor's Subcontractors or Sub-subcontractors; and
  .3    other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

**§ 10.2.2** The Contractor shall comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.

**§ 10.2.3** The Contractor shall erect and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities.

**§ 10.2.4** When use or storage of explosives or other hazardous materials or equipment or unusual methods are necessary for execution of the Work, the Contractor shall exercise utmost care and carry on such activities under supervision of properly qualified personnel.

**§ 10.2.5** The Contractor shall promptly remedy damage and loss (other than damage or loss insured under property insurance required by the Contract Documents) to property referred to in Sections 10.2.1.2 and 10.2.1.3 caused in whole or in part by the Contractor, a Subcontractor, a Sub-subcontractor, or anyone directly or indirectly employed by

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                                          (1128951649)

any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under Sections 10.2.1.2 and 10.2.1.3, except damage or loss attributable to acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are in addition to the Contractor's obligations under Section 3.18.

**§ 10.2.6** The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.

**§ 10.2.7** The Contractor shall not permit any part of the construction or site to be loaded so as to cause damage or create an unsafe condition.

**§ 10.2.8 INJURY OR DAMAGE TO PERSON OR PROPERTY**
If either party suffers injury or damage to person or property because of an act or omission of the other party, or of others for whose acts such party is legally responsible, written notice of such injury or damage, whether or not insured, shall be given immediately.. The notice shall provide sufficient detail to enable the other party to investigate the matter.

**§ 10.3 HAZARDOUS MATERIALS**
**§ 10.3.1** The Contractor is responsible for compliance with any requirements included in the Contract Documents regarding hazardous materials. If the Contractor encounters a hazardous material or substance not addressed in the Contract Documents and if reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a concealed and undiscovered hazardous material or substance as defined in any applicable statute or industry standard, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing.

**§ 10.3.2** Upon receipt of the Contractor's written notice, the Owner shall obtain the services of a licensed laboratory to verify the presence or absence of the material or substance reported by the Contractor and, in the event such material or substance is found to be present, to cause it to be rendered harmless. Unless otherwise required by the Contract Documents, the Owner shall furnish in writing to the Contractor and Architect the names and qualifications of persons or entities who are to perform tests verifying the presence or absence of such material or substance or who are to perform the task of removal or safe containment of such material or substance. The Contractor and the Architect will promptly reply to the Owner in writing stating whether or not either has reasonable objection to the persons or entities proposed by the Owner. If either the Contractor or Architect has an objection to a person or entity proposed by the Owner, the Owner shall propose another to whom the Contractor and the Architect have no reasonable objection. When the material or substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Owner and Contractor. By Change Order, the Contract Time shall be extended appropriately and the Contract Sum shall be increased in the amount of the Contractor's reasonable additional costs of shut-down, delay and start-up.

**§ 10.3.3** Intentionally Deleted

**§ 10.3.4** The Owner shall be responsible for materials or substances required by the Contract Documents, except to the extent of the Contractor's fault or negligence in the use and handling of such materials or substances.

**§ 10.3.5** The Contractor shall indemnify the Owner for the cost and expense the Owner incurs (1) for remediation of a material or substance the Contractor brings to the site and negligently handles, or (2) where the Contractor fails to perform its obligations under Section 10.3.1, except to the extent that the cost and expense are due to the Owner's fault or negligence.

**§ 10.3.6** If, without negligence on the part of the Contractor, the Contractor is held liable by a government agency for the cost of remediation or any fines related to any hazardous material or substance solely by reason of performing the Work as required by the Contract Documents, and such hazardous material or substance was introduced to the site by Owner's Contractors, the Owner shall indemnify Contractor for all cost and expense thereby incurred.

Init.

/

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                          (1128951649)

## § 10.4 EMERGENCIES

In an emergency affecting safety of persons or property, the Contractor shall act, at the Contractor's discretion, to prevent threatened damage, injury or loss. Additional compensation or extension of time claimed by the Contractor on account of an emergency shall be determined as provided in Article 15 and Article 7.

## ARTICLE 11  INSURANCE
## § 11.1 CONTRACTOR'S LIABILITY INSURANCE

§ 11.1.1 The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractor's operations and completed operations under the Contract and for which the Contractor may be legally liable, whether such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:

- .1 Claims under workers' compensation, disability benefit and other similar employee benefit acts that are applicable to the Work to be performed;
- .2 Claims for damages because of bodily injury, occupational sickness or disease, or death of the Contractor's employees;
- .3 Claims for damages because of bodily injury, sickness or disease, or death of any person other than the Contractor's employees;
- .4 Claims for damages insured by usual personal injury liability coverage;
- .5 Claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom;
- .6 Claims for damages because of bodily injury, death of a person or property damage arising out of ownership, maintenance or use of a motor vehicle;
- .7 Claims for bodily injury or property damage arising out of completed operations; and
- .8 Claims involving contractual liability insurance applicable to the Contractor's obligations under Section 3.18.

§ 11.1.2 The insurance required by Section 11.1.1 shall be written for not less than limits of liability specified in the Contract Documents or required by law, whichever coverage is greater. Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from the date of commencement of the Work until the date of final payment and termination of any coverage required to be maintained after final payment, and, with respect to the Contractor's completed operations coverage for a period of three (3) years.

§ 11.1.3 Certificates of insurance acceptable to the Owner shall be filed with the Owner prior to commencement of the Work and thereafter upon renewal or replacement of each required policy of insurance. Policies shall be written as to include the requirements for notice of cancellation or non-renewal in accordance with the New York State Insurance Law. Within five (5) business days or receipt of any notice of cancellation or non-renewal of insurance, the Contractor shall provide Owner with a copy of any such notice received from an insurer together with proof of replacement coverage that complies with the insurance requirements of this Contract.  An additional certificate evidencing continuation of liability coverage, including coverage for completed operations, shall be submitted with the final Application for Payment as required by Section 9.10.2 and thereafter upon renewal or replacement of such coverage until the expiration of the time required by Section 11.1.2. Information concerning reduction of coverage on account of revised limits or claims paid under the General Aggregate, or both, shall be furnished by the Contractor with reasonable promptness.

§ 11.1.4 The Contractor shall cause the commercial liability coverage required by the Contract Documents to include (1) the Owner, the Architect and the Architect's Consultants as additional insureds for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's operations; and (2) the Owner as an additional insured for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's completed operations.

## § 11.2 OWNER'S LIABILITY INSURANCE

The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance.

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
User Notes:                                                                                                                              (1128951649)

## § 11.3 PROPERTY INSURANCE

**§ 11.3.1** Unless otherwise provided, the Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract Modifications and cost of materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Section 9.10 or until no person or entity other than the Owner has an insurable interest in the property required by this Section 11.3 to be covered, whichever is later. This insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project.

§ 11.3.1.**1** Property insurance shall be on an "all-risk" or equivalent policy form and shall include, without limitation, insurance against the perils of fire (with extended coverage) and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, earthquake, flood, windstorm, falsework, testing and startup, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's and Contractor's services and expenses required as a result of such insured loss.

**§ 11.3.1.2** If the Owner does not intend to purchase such property insurance required by the Contract and with all of the coverages in the amount described above, the Owner shall so inform the Contractor in writing prior to commencement of the Work. The Contractor may then effect insurance that will protect the interests of the Contractor, Subcontractors and Sub-subcontractors in the Work, and by appropriate Change Order the cost thereof shall be charged to the Owner. If the Contractor is damaged by the failure or neglect of the Owner to purchase or maintain insurance as described above, without so notifying the Contractor in writing, then the Owner shall bear all reasonable costs properly attributable thereto.

**§ 11.3.1.3** If the property insurance requires deductibles, the Owner shall pay costs not covered because of such deductibles.

**§ 11.3.1.4** This property insurance shall cover portions of the Work stored off the site, and also portions of the Work in transit.

**§ 11.3.1.5** Partial occupancy or use in accordance with Section 9.9 shall not commence until the insurance company or companies providing property insurance have consented to such partial occupancy or use by endorsement or otherwise. The Owner and the Contractor shall take reasonable steps to obtain consent of the insurance company or companies and shall, without mutual written consent, take no action with respect to partial occupancy or use that would cause cancellation, lapse or reduction of insurance.

## § 11.3.2 BOILER AND MACHINERY INSURANCE

The Owner shall purchase and maintain boiler and machinery insurance required by the Contract Documents or by law, which shall specifically cover such insured objects during installation and until final acceptance by the Owner; this insurance shall include interests of the Owner, Contractor, Subcontractors and Sub-subcontractors in the Work, and the Owner and Contractor shall be named insureds.

## § 11.3.3 LOSS OF USE INSURANCE

The Owner, at the Owner's option, may purchase and maintain such insurance as will insure the Owner against loss of use of the Owner's property due to fire or other hazards, however caused.   The Owner waives all rights of action against the Contractor for loss of use of the Owner's property, including consequential losses due to fire or other hazards however caused**.**

**§ 11.3.4** If the Contractor requests in writing that insurance for risks other than those described herein or other special causes of loss be included in the property insurance policy, the Owner shall, if possible, include such insurance, and the cost thereof shall be charged to the Contractor by appropriate Change Order.

**§ 11.3.5** If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                                                (1128951649)

Init.

/

26

property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Section 11.3.7 for damages caused by fire or other causes of loss covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise.

**§ 11.3.6** Before an exposure to loss may occur, the Owner shall file with the Contractor a copy of each policy that includes insurance coverages required by this Section 11.3. Each policy shall contain all generally applicable conditions, definitions, exclusions and endorsements related to this Project. Each policy shall contain a provision that the policy will not be canceled or allowed to expire, and that its limits will not be reduced, until at least 30 days' prior written notice has been given to the Contractor.

### § 11.3.7 WAIVERS OF SUBROGATION

The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Section 11.3 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged**.**

**§ 11.3.8** A loss insured under the Owner's property insurance shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause and of Section 11.3.10. The Contractor shall pay Subcontractors their just shares of insurance proceeds received by the Contractor, and by appropriate agreements, written where legally required for validity, shall require Subcontractors to make payments to their Sub-subcontractors in similar manner.

§ 11.3.**9** If required in writing by a party in interest, the Owner as fiduciary shall, upon occurrence of an insured loss, give bond for proper performance of the Owner's duties. The cost of required bonds shall be charged against proceeds received as fiduciary. The Owner shall deposit in a separate account proceeds so received, which the Owner shall distribute in accordance with such agreement as the parties in interest may reach, or as determined in accordance with the method of binding dispute resolution selected in the Agreement between the Owner and Contractor. If after such loss no other special agreement is made and unless the Owner terminates the Contract for convenience, replacement of damaged property shall be performed by the Contractor after notification of a Change in the Work in accordance with Article 7.

**§ 11.3.10** The Owner as fiduciary shall have power to adjust and settle a loss with insurers unless one of the parties in interest shall object in writing within five days after occurrence of loss to the Owner's exercise of this power; if such objection is made, the dispute shall be resolved in the manner selected by the Owner and Contractor as the method of binding dispute resolution in the Agreement. If the Owner and Contractor have selected arbitration as the method of binding dispute resolution, the Owner as fiduciary shall make settlement with insurers or, in the case of a dispute over distribution of insurance proceeds, in accordance with the directions of the arbitrators.

### § 11.4 PERFORMANCE BOND AND PAYMENT BOND (Intentionally Deleted)

*(Paragraphs deleted)*
## ARTICLE 12   UNCOVERING AND CORRECTION OF WORK
### § 12.1 UNCOVERING OF WORK

**§ 12.1.1** If a portion of the Work is covered contrary to the Architect's or the Owner's request or to requirements specifically expressed in the Contract Documents, it must, if requested in writing by the Architect or the Owner, be uncovered for the Architect's or the Owner's examination and be replaced at the Contractor's expense without change in the Contract Time.

**Init.**

**/**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                       (1128951649)

**§ 12.1.2** If a portion of the Work has been covered that the Owner has not specifically requested to examine prior to its being covered, the Owner may request to see such Work and it shall be uncovered by the Contractor. If such Work is in accordance with the Contract Documents, costs of uncovering and replacement shall, by appropriate Change Order, be at the Owner's expense. If such Work is not in accordance with the Contract Documents, such costs and the cost of correction shall be at the Contractor's expense unless the condition was caused by the Owner or a separate contractor, or Owner's subcontractor, in which event the Owner shall be responsible for payment of such costs.

**§ 12.2 CORRECTION OF WORK**
**§ 12.2.1 BEFORE OR AFTER SUBSTANTIAL COMPLETION**
The Contractor shall promptly correct Work rejected by the Architect or failing to conform to the requirements of the Contract Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and inspections, the cost of uncovering and replacement, and compensation for the Architect's services and expenses made necessary thereby, shall be at the Contractor's expense.  If prior to the date of Substantial Completion the Contractor, a Subcontractor, or anyone for whom either is responsible uses or damages any portion of the Work, including, without limitation, mechanical, electrical, plumbing or any other building systems, machinery, equipment or other mechanical device, the Contractor shall cause such item to be restored to "like new" condition at no expense to the Owner.

**§ 12.2.2 AFTER SUBSTANTIAL COMPLETION**
**§ 12.2.2.1** In addition to the Contractor's obligations under Section 3.5, if, within one(1) year after the date of Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties established under section 9.9.1, or by terms of an applicable special warranty required by the Contract Documents, any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall correct it and shall repair any other property that may have been damaged by the defective Work promptly after receipt of written notice from the Owner to do so unless the Owner has previously given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition. If the Contractor fails to correct nonconforming Work within a reasonable time during that period after receipt of notice from the Owner or Architect, the Owner may correct it in accordance with Section 2.4.

**§ 12.2.2.2** The one-year period for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual completion of that portion of the Work.

*(Paragraph deleted)*
**§ 12.2.3** The Contractor shall remove from the site portions of the Work that are not in accordance with the requirements of the Contract Documents and are neither corrected by the Contractor nor accepted by the Owner.

**§ 12.2.4** The Contractor shall bear the cost of correcting destroyed or damaged construction, whether completed or partially completed, of the Owner or separate contractors caused by the Contractor's correction or removal of Work that is not in accordance with the requirements of the Contract Documents.

**§ 12.2.5** Nothing contained in this Section 12.2 shall be construed to establish a period of limitation with respect to other obligations the Contractor has under the Contract Documents.

**§ 12.3 ACCEPTANCE OF NONCONFORMING WORK**
If the Owner prefers to accept Work that is not in accordance with the requirements of the Contract Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made.

**ARTICLE 13   MISCELLANEOUS PROVISIONS**
**§ 13.1 GOVERNING LAW**
The Contract shall be governed by the law of the State of New York without regard to the choice of law principles thereof.  Any action brought under this Agreement shall be commenced and venued in the Supreme Court of the State of New York located in New York County, or in the United Stated District Court for the Southern District of New York.

**Init.**

**/**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**

(1128951649)

## § 13.2 SUCCESSORS AND ASSIGNS

**§ 13.2.1** The Owner and Contractor respectively bind themselves, their partners, successors, assigns and legal representatives to covenants, agreements and obligations contained in the Contract Documents. Except as provided in Section 13.2.2, or as set forth elsewhere in the Contract Documents, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

**§ 13.2.2** The Owner may, without consent of the Contractor, assign the Contract to a lender or other entity  providing construction financing or credit enhancement for the Project ("Owners' Assignee"), provided that Owner's Assignee (i) has sufficient assets to pay the Owner's obligations under this Agreement and has demonstrated such credit worthiness to Contractor to Contractor's satisfaction; (ii) Assignee has agreed to assume Owner's obligations hereunder as of the effective date of the Assignment; and (iii) Owner's obligations to Contractor under this Agreement have been paid in full prior to effective date of the Assignment.  In the event Owner does not comply with this provision, Contractor may, but is not obligated to, immediately suspend performance under this Agreement.

## § 13.3 WRITTEN NOTICE
Written notice shall be deemed to have been duly served if delivered in person to the individual, to a member of the firm or entity, or to an officer of the corporation for which it was intended; or if delivered at, or sent by registered or certified mail or by courier service providing proof of delivery to, the last business address known to the party giving notice.

## § 13.4 RIGHTS AND REMEDIES
**§ 13.4.1** Except as provided in the Contract Documents, duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.

**§ 13.4.2** No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach there under, except as may be specifically agreed in writing.

## § 13.5 TESTS AND INSPECTIONS
**§ 13.5.1** Tests, inspections and approvals of portions of the Work shall be made as required by the Contract Documents and by applicable laws, statutes, ordinances, codes, rules and regulations or lawful orders of public authorities. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the Owner, or with the appropriate public authority, and shall bear all related costs of tests, inspections and approvals. The Contractor shall give the Architect and the Owner timely notice of when and where tests and inspections are to be made so that the Architect and the Owner may be present for such procedures. The Owner shall bear costs of (1) tests, inspections or approvals that do not become requirements until after bids are received or negotiations concluded, and (2) tests, inspections or approvals where building codes or applicable laws or regulations prohibit the Owner from delegating their cost to the Contractor.

**§ 13.5.2** If the Architect, Owner or public authorities having jurisdiction determine that portions of the Work require additional testing, inspection or approval not included under Section 13.5.1, the Architect will, upon written authorization from the Owner, instruct the Contractor to make arrangements for such additional testing, inspection or approval by an entity acceptable to the Owner, and the Contractor shall give timely notice to the Architect and the Owner of when and where tests and inspections are to be made so that the Architect and the Owner may be present for such procedures. Such costs, except as provided in Section 13.5.3, shall be at the Owner's expense.

**§ 13.5.3** If such procedures for testing, inspection or approval under Sections 13.5.1 and 13.5.2 reveal failure of the portions of the Work to comply with requirements established by the Contract Documents, all costs made necessary by such failure including those of repeated procedures and compensation for the Owner's and Architect's services and expenses shall be at the Contractor's expense.

**§ 13.5.4** Required certificates of testing, inspection or approval shall, unless otherwise required by the Contract Documents, be secured by the Contractor and promptly delivered to the Architect and the Owner.

**Init.**

**/**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                                                    (1128951649)

**§ 13.5.5** If the Architect or the Owner is to observe tests, inspections or approvals required by the Contract Documents, the Architect and Owner will do so promptly and, where practicable, at the normal place of testing.

**§ 13.5.6** Tests or inspections conducted pursuant to the Contract Documents shall be made promptly to avoid unreasonable delay in the Work.

**§ 13.6 INTEREST**
Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at the legal rate prevailing from time to time at the place where the Project is located.

**§ 13.7 TIME LIMITS ON CLAIMS**
The Owner and Contractor shall commence all claims and causes of action, whether in contract, tort, breach of warranty or otherwise, against the other arising out of or related to the Contract in accordance with the requirements of the final dispute resolution method selected in the Agreement within the time period specified by applicable law as extended by any period of discoverability

**§ 13.8** All personal pronouns used in this Contract, whether used in the masculine, feminine, or neuter gender shall include all other genders. The singular shall include the plural and the plural shall include the singular. Titles or articles, paragraphs and subparagraphs are for convenience only and neither limit nor amplify the provision of this Contract. The use of the word "including" when following any general statement, term or matters, shall not be construed to limit such statement, term or matter to the specific items or matters set forth immediately following such word or to similar items or matters, whether or not non-limiting language (such as "without limitation" or "but not limited to") is used with reference thereto, but rather shall be deemed to refer to all other items or matters that could reasonably fall within the broadest possible scope of such general statement, term or matter.

**§ 13.9** Any specific requirement in this Contract that the responsibilities or obligations of the Contractor also apply to a Subcontractor is deemed to include a Subcontractor of any tier. The omission of a reference to a Subcontractor in connection with any of the Contractor's responsibilities or obligations shall not be construed to diminish, abrogate or limit any responsibilities or obligations of a Subcontractor of any tier under the Contract Documents or the applicable Subcontract.

**ARTICLE 14  TERMINATION OR SUSPENSION OF THE CONTRACT**
**§ 14.1 TERMINATION BY THE CONTRACTOR**
**§ 14.1.1** The Contractor may terminate the Contract if the Work is stopped for a period of 30 consecutive days through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, for any of the following reasons:

    **.1**    Issuance of an order of a court or other public authority having jurisdiction that requires all Work to be stopped;

    **.2**    An act of government, such as a declaration of national emergency that requires all Work to be stopped;
*(Paragraph deleted)*

    **3.**    Because Owner has not made payment owed to Contractor.

**§ 14.1.2** The Contractor may terminate the Contract if, through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, repeated suspensions, delays or interruptions of the entire Work by the Owner as described in Section 14.3 constitute in the aggregate more than 100 percent of the total number of days scheduled for completion, or 120 days in any 365-day period, whichever is less.

**§ 14.1.3** If one of the reasons described in Section 14.1.1 or 14.1.2 exists, the Contractor may, upon seven days' written notice to the Owner and Architect, terminate the Contract and recover from the Owner payment for Work executed, including reasonable overhead and profit, costs incurred by reason of such termination.

**§ 14.1.4** If the Work is stopped for a period of 60 consecutive days through no act or fault of the Contractor or a Subcontractor or their agents or employees or any other persons performing portions of the Work under contract with the Contractor because the Owner has repeatedly failed to fulfill the Owner's obligations under the Contract Documents with respect to matters important to the progress of the Work, the Contractor may, upon seven additional

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:** (1128951649)

Init.

/

days' written notice to the Owner and the Architect, terminate the Contract and recover from the Owner as provided in Section 14.1.3.

### § 14.2 TERMINATION BY THE OWNER FOR CAUSE
**§ 14.2.1** The Owner may terminate the Contract if the Contractor

   **.1**    repeatedly refuses or fails to supply enough properly skilled workers or proper materials;

   **.2**    fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the Subcontractors;

   **.3**    disregards applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of a public authority; or

   **.4**    otherwise is guilty of a material breach of a provision of the Contract Documents.

   **.5**    any Subcontractor of the Contractor, (a) files a mechanic's lien and Contractor fails to cause the discharge of such lien, subject to Section 9.3.3.2 above; or (b) commences any action in any court that in names Owner (or the owner of the shopping center of which the Project is a part of and/or the owner of the building in which the Project is located and/or the owner of the property on which the Project is situated, as the case may be, and their respective officers, agents, and employees) as a defendant in such action , and Contractor fails to indemnify and immediately assume the defense of Owner.

**§ 14.2.2** When any of the above reasons exist and provided that Owner has given Contractor a reasonable opportunity to cure (or commence to cure) any alleged default, the Owner may without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven days' written notice, terminate employment of the Contractor and may, subject to any prior rights of the surety:

   **.1**    Exclude the Contractor from the site and take possession of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor;

   **.2**    Accept assignment of subcontracts pursuant to Section 5.4; and

   **.3**    Finish the Work by whatever reasonable method the Owner may deem expedient. Upon written request of the Contractor, the Owner shall furnish to the Contractor a detailed accounting of the costs incurred by the Owner in finishing the Work.

**§ 14.2.3** When the Owner terminates the Contract for one of the reasons stated in Section 14.2.1, the Contractor shall not be entitled to receive further payment until the Work is finished.

**§ 14.2.4** If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or Owner, as the case may be, shall survive termination of the Contract.

### § 14.3 SUSPENSION BY THE OWNER FOR CONVENIENCE
**§ 14.3.1** The Owner may, without cause, order the Contractor in writing to suspend, delay or interrupt the Work in whole or in part for such period of time as the Owner may determine.

**§ 14.3.2** The Contract Sum and Contract Time shall be adjusted for increases in the cost and time caused by suspension, delay or interruption as described in Section 14.3.1. Adjustment of the Contract Sum shall include profit. No adjustment shall be made to the extent

   **.1**    that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Contractor is responsible; or

   **.2**    that an equitable adjustment is made or denied under another provision of the Contract.

### § 14.4 TERMINATION BY THE OWNER FOR CONVENIENCE
**§ 14.4.1** The Owner may, at any time, terminate the Contract for the Owner's convenience and without cause.

**§ 14.4.2** Upon receipt of written notice from the Owner of such termination for the Owner's convenience, the Contractor shall

   **.1**    cease operations as directed by the Owner in the notice;

   **.2**    take actions necessary, or that the Owner may direct, for the protection and preservation of the Work including, without limitation, the assignment of such Subcontractors as are directed by the Owner; and

**Init.**

**/**

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                          (1128951649)

.3 except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts and purchase orders.

**§ 14.4.3** In case of such termination for the Owner's convenience, the Contractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, including without limitation demobilization costs, and material restocking charges, along with reasonable overhead and profit on the Work not executed. The amounts owing to the Contractor pursuant to the preceding sentence shall be as specified in the Contractor's final Application for Payment and supported by proper records. The Contractor's entitlement to receive its final termination payment under this section shall require a final Lien Waiver from the Contractor and from all Subcontractors whose Subcontracts are not being continued by the Owner, such documents to be the same form and delivered under the same conditions as Final Payment absent a termination under this section.

**ARTICLE 15   CLAIMS AND DISPUTES**
**§ 15.1 CLAIMS**
**§ 15.1.1 DEFINITION**
A Claim is a demand or assertion by one of the parties seeking, as a matter of right, payment of money, or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. The responsibility to substantiate Claims shall rest with the party making the Claim.

**§ 15.1.2 NOTICE OF CLAIMS**
Claims by either the Owner or Contractor must be initiated by written notice to the other party.   Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later.

**§ 15.1.3 CONTINUING CONTRACT PERFORMANCE**
Pending final resolution of a Claim, except as otherwise agreed in writing or as provided in Section 9.7 and Article 14, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents.

**§ 15.1.4 CLAIMS FOR ADDITIONAL COST**
If the Contractor wishes to make a Claim for an increase in the Contract Sum, written notice as provided herein shall be given before proceeding to execute the Work. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Section 10.4.

**§ 15.1.5 CLAIMS FOR ADDITIONAL TIME**
**§ 15.1.5.1** If the Contractor wishes to make a Claim for an increase in the Contract Time, written notice as provided herein shall be given. The Contractor's Claim shall include an estimate of cost and of probable effect of delay on progress of the Work. In the case of a continuing delay, only one Claim is necessary.

**§ 15.1.5.2** If adverse weather conditions are the basis for a Claim for additional time, such Claim shall be documented by data substantiating that weather conditions were abnormal for the period of time, could not have been reasonably anticipated and had an adverse effect on the scheduled construction.

**§ 15.1.6 CLAIMS FOR CONSEQUENTIAL DAMAGES**
The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes
.1 damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and
.2 damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 14.

Init.

/

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                       (1128951649)

*(Paragraphs deleted)*

**§ 15.4 ARBITRATION**
Notwithstanding any provision of the Contract Documents to the contrary, no dispute between the Owner, the Contractor, the Architect, a Subcontractor of any tier, or any combination thereof shall be subject to resolution through any arbitration hearing or proceeding of any type or nature.

*(Paragraphs deleted)*

Init.

/

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                              (1128951649)

33

DocuSign Envelope ID: 4B1EC4A6-93E5-45C9-9D82-548CEA3A76B9

# *Additions and Deletions Report for*

## *AIA® Document A201™ – 2007*

This Additions and Deletions Report, as defined on page 1 of the associated document, reproduces below all text the author has added to the standard form AIA document in order to complete it, as well as any text the author may have added to or deleted from the original AIA text. Added text is shown underlined. Deleted text is indicated with a horizontal line through the original AIA text.

Note:  This Additions and Deletions Report is provided for information purposes only and is not incorporated into or constitute any part of the associated AIA document. This Additions and Deletions Report and its associated document were generated simultaneously by AIA software at 15:48:49 on 12/04/2017.

**PAGE 1**

Neiman Marcus – Hudson Yards
10th Avenue at 34th Street
New York, NY  10018

**…**

*(Name, legal status (Name and* address)
The Neiman Marcus Group LLC
1201 Elm Street  Suite 2700
Dallas, TX  75270

**…**

*(Name, legal status and address)(Name and address)*
Janson Goldstein
180 Varick Street
Suite 14141
New York, NY 10014

**PAGE 3**

**INDEX**
(Topics and numbers in bold are section headings.)

**Acceptance of Nonconforming Work**
9.6.6, 9.9.3, **12.3**
Acceptance of Work
9.6.6, 9.8.2, 9.9.3, 9.10.1, 9.10.3, 12.3
**Access to Work**
**3.16**, 6.2.1, 12.1
Accident Prevention
10
Acts and Omissions
3.2, 3.3.2, 3.12.8, 3.18, 4.2.3, 8.3.1, 9.5.1, 10.2.5, 10.2.8, 13.4.2, 13.7, 14.1, 15.2
Addenda
1.1.1, 3.11
Additional Costs, Claims for
3.7.4, 3.7.5, 6.1.1, 7.3.7.5, 10.3, 15.1.4
**Additional Inspections and Testing**
9.4.2, 9.8.3, 12.2.1, **13.5**
Additional Insured
11.1.4

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                    (1128951649)

**Additional Time, Claims for**
3.2.4, 3.7.4, 3.7.5, 3.10.2, 8.3.2, **15.1.5**
**Administration of the Contract**
3.1.3, **4.2**, 9.4, 9.5
Advertisement or Invitation to Bid
1.1.1
Aesthetic Effect
4.2.13
**Allowances**
**3.8**, 7.3.8
All-risk Insurance
11.3.1, 11.3.1.1
**Applications for Payment**
4.2.5, 7.3.9, 9.2, **9.3**, 9.4, 9.5.1, 9.6.3, 9.7, 9.10, 11.1.3
Approvals
2.1.1, 2.2.2, 2.4, 3.1.3, 3.10.2, 3.12.8, 3.12.9, 3.12.10, 4.2.7, 9.3.2, 13.5.1
**Arbitration**
8.3.1, 11.3.10, 13.1, 15.3.2, **15.4**
**ARCHITECT**
**4**
**Architect**, Definition of
**4.1.1**
Architect, Extent of Authority
2.4, 3.12.7, 4.1, 4.2, 5.2, 6.3, 7.1.2, 7.3.7, 7.4, 9.2, 9.3.1, 9.4, 9.5, 9.6.3, 9.8, 9.10.1, 9.10.3, 12.1, 12.2.1, 13.5.1, 13.5.2, 14.2.2, 14.2.4, 15.1.3, 15.2.1
Architect, Limitations of Authority and Responsibility
2.1.1, 3.12.4, 3.12.8, 3.12.10, 4.1.2, 4.2.1, 4.2.2, 4.2.3, 4.2.6, 4.2.7, 4.2.10, 4.2.12, 4.2.13, 5.2.1, 7.4, 9.4.2, 9.5.3, 9.6.4, 15.1.3, 15.2
Architect's Additional Services and Expenses
2.4, 11.3.1.1, 12.2.1, 13.5.2, 13.5.3, 14.2.4
Architect's Administration of the Contract
3.1.3, 4.2, 3.7.4, 15.2, 9.4.1, 9.5
Architect's Approvals
2.4, 3.1.3, 3.5, 3.10.2, 4.2.7
Architect's Authority to Reject Work
3.5, 4.2.6, 12.1.2, 12.2.1
Architect's Copyright
1.1.7, 1.5
Architect's Decisions
3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.2.14, 6.3, 7.3.7, 7.3.9, 8.1.3, 8.3.1, 9.2, 9.4.1, 9.5, 9.8.4, 9.9.1, 13.5.2, 15.2, 15.3
Architect's Inspections
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 13.5
Architect's Instructions
3.2.4, 3.3.1, 4.2.6, 4.2.7, 13.5.2
Architect's Interpretations
4.2.11, 4.2.12
Architect's Project Representative
4.2.10
Architect's Relationship with Contractor
1.1.2, 1.5, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2, 3.5, 3.7.4, 3.7.5, 3.9.2, 3.9.3, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.2, 4.1.3, 4.2, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5, 9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3.7, 12, 13.4.2, 13.5, 15.2
Architect's Relationship with Subcontractors
1.1.2, 4.2.3, 4.2.4, 4.2.6, 9.6.3, 9.6.4, 11.3.7
Architect's Representations
9.4.2, 9.5.1, 9.10.1

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                (1128951649)

Architect's Site Visits
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5
Asbestos
10.3.1
Attorneys' Fees
3.18.1, 9.10.2, 10.3.3
Award of Separate Contracts
6.1.1, 6.1.2
**Award of Subcontracts and Other Contracts for Portions of the Work**
**5.2**
**Basic Definitions**
**1.1**
Bidding Requirements
1.1.1, 5.2.1, 11.4.1
Binding Dispute Resolution
9.7, 11.3.9, 11.3.10, 13.1, 15.2.5, 15.2.6.1, 15.3.1, 15.3.2, 15.4.1
**Boiler and Machinery Insurance**
**11.3.2**
Bonds, Lien
7.3.7.4, 9.10.2, 9.10.3
**Bonds, Performance, and Payment**
7.3.7.4, 9.6.7, 9.10.3, 11.3.9, **11.4**
Building Permit
3.7.1
**Capitalization**
**1.3**
Certificate of Substantial Completion
9.8.3, 9.8.4, 9.8.5
**Certificates for Payment**
4.2.1, 4.2.5, 4.2.9, 9.3.3, **9.4**, 9.5, 9.6.1, 9.6.6, 9.7, 9.10.1, 9.10.3, 14.1.1.3, 14.2.4, 15.1.3
Certificates of Inspection, Testing or Approval
13.5.4
Certificates of Insurance
9.10.2, 11.1.3
**Change Orders**
1.1.1, 2.4, 3.4.2, 3.7.4, 3.8.2.3, 3.11, 3.12.8, 4.2.8, 5.2.3, 7.1.2, 7.1.3, **7.2**, 7.3.2, 7.3.6, 7.3.9, 7.3.10, 8.3.1, 9.3.1.1, 9.10.3, 10.3.2, 11.3.1.2, 11.3.4, 11.3.9, 12.1.2, 15.1.3
**Change Orders**, Definition of
**7.2.1**
**CHANGES IN THE WORK**
2.2.1, 3.11, 4.2.8, **7**, 7.2.1, 7.3.1, 7.4, 8.3.1, 9.3.1.1, 11.3.9
**Claims**, Definition of
**15.1.1**
**CLAIMS AND DISPUTES**
3.2.4, 6.1.1, 6.3, 7.3.9, 9.3.3, 9.10.4, 10.3.3, **15**, 15.4
Claims and Timely Assertion of Claims
15.4.1
**Claims for Additional Cost**
3.2.4, 3.7.4, 6.1.1, 7.3.9, 10.3.2, **15.1.4**
**Claims for Additional Time**
3.2.4, 3.7.4, 6.1.1, 8.3.2, 10.3.2, **15.1.5**
**Concealed or Unknown Conditions, Claims for**
**3.7.4**
Claims for Damages
3.2.4, 3.18, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.1.1, 11.3.5, 11.3.7, 14.1.3, 14.2.4, 15.1.6
Claims Subject to Arbitration
15.3.1, 15.4.1

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                          (1128951649)

Cleaning Up
**3.15**, 6.3
Commencement of the Work, Conditions Relating to
2.2.1, 3.2.2, 3.4.1, 3.7.1, 3.10.1, 3.12.6, 5.2.1, 5.2.3, 6.2.2, 8.1.2, 8.2.2, 8.3.1, 11.1, 11.3.1, 11.3.6, 11.4.1, 15.1.4
**Commencement of the Work**, Definition of
**8.1.2**
**Communications Facilitating Contract Administration**
3.9.1, **4.2.4**
Completion, Conditions Relating to
3.4.1, 3.11, 3.15, 4.2.2, 4.2.9, 8.2, 9.4.2, 9.8, 9.9.1, 9.10, 12.2, 13.7, 14.1.2
**COMPLETION, PAYMENTS AND**
**9**
Completion, Substantial
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3, 12.2, 13.7
Compliance with Laws
1.6, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 9.6.4, 10.2.2, 11.1, 11.3, 13.1, 13.4, 13.5.1, 13.5.2, 13.6, 14.1.1, 14.2.1.3, 15.2.8, 15.4.2, 15.4.3
Concealed or Unknown Conditions
3.7.4, 4.2.8, 8.3.1, 10.3
Conditions of the Contract
1.1.1, 6.1.1, 6.1.4
Consent, Written
3.4.2, 3.7.4, 3.12.8, 3.14.2, 4.1.2, 9.3.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3, 11.3.1, 13.2, 13.4.2, 15.4.4.2
**Consolidation or Joinder**
**15.4.4**
**CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS**
1.1.4, **6**
**Construction Change Directive**, Definition of
**7.3.1**
**Construction Change Directives**
1.1.1, 3.4.2, 3.12.8, 4.2.8, 7.1.1, 7.1.2, 7.1.3, **7.3**, 9.3.1.1
Construction Schedules, Contractor's
3.10, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2
**Contingent Assignment of Subcontracts**
**5.4**, 14.2.2.2
**Continuing Contract Performance**
**15.1.3**
**Contract**, Definition of
**1.1.2**
**CONTRACT, TERMINATION OR SUSPENSION OF THE**
5.4.1.1, 11.3.9, **14**
Contract Administration
3.1.3, 4, 9.4, 9.5
Contract Award and Execution, Conditions Relating to
3.7.1, 3.10, 5.2, 6.1, 11.1.3, 11.3.6, 11.4.1
Contract Documents, Copies Furnished and Use of
1.5.2, 2.2.5, 5.3
**Contract Documents**, Definition of
**1.1.1**
**Contract Sum**
3.7.4, 3.8, 5.2.3, 7.2, 7.3, 7.4, **9.1**, 9.4.2, 9.5.1.4, 9.6.7, 9.7, 10.3.2, 11.3.1, 14.2.4, 14.3.2, 15.1.4, 15.2.5
**Contract Sum**, Definition of
**9.1**
Contract Time
3.7.4, 3.7.5, 3.10.2, 5.2.3, 7.2.1.3, 7.3.1, 7.3.5, 7.4, 8.1.1, 8.2.1, 8.3.1, 9.5.1, 9.7, 10.3.2, 12.1.1, 14.3.2, 15.1.5.1, 15.2.5
**Contract Time**, Definition of
**8.1.1**

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties.** Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                    (1128951649)

DocuSign Envelope ID: 481EC0A36-95E5-45C9-9D82-548CEA3A76B9

**CONTRACTOR**

**3**

~~Contractor,~~ Definition of

~~3.1, 6.1.2~~

**Contractor's Construction Schedules**

**3.10**, ~~3.12.1, 3.12.2, 6.1.3, 15.1.5.2~~

~~Contractor's Employees~~

~~3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3, 11.1.1, 11.3.7, 14.1, 14.2.1.1~~

**Contractor's Liability Insurance**

**11.1**

~~Contractor's Relationship with Separate Contractors and Owner's Forces~~

~~3.12.5, 3.14.2, 4.2.4, 6, 11.3.7, 12.1.2, 12.2.4~~

~~Contractor's Relationship with Subcontractors~~

~~1.2.2, 3.3.2, 3.18.1, 3.18.2, 5, 9.6.2, 9.6.7, 9.10.2, 11.3.1.2, 11.3.7, 11.3.8~~

~~Contractor's Relationship with the Architect~~

~~1.1.2, 1.5, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2, 3.5, 3.7.4, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.3, 4.2, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5, 9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3.7, 12, 13.5, 15.1.2, 15.2.1~~

~~Contractor's Representations~~

~~3.2.1, 3.2.2, 3.5, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.8.2~~

~~Contractor's Responsibility for Those Performing the Work~~

~~3.3.2, 3.18, 5.3, 6.1.3, 6.2, 9.5.1, 10.2.8~~

~~Contractor's Review of Contract Documents~~

~~3.2~~

~~Contractor's Right to Stop the Work~~

~~9.7~~

~~Contractor's Right to Terminate the Contract~~

~~14.1, 15.1.6~~

~~Contractor's Submittals~~

~~3.10, 3.11, 3.12.4, 4.2.7, 5.2.1, 5.2.3, 9.2, 9.3, 9.8.2, 9.8.3, 9.9.1, 9.10.2, 9.10.3, 11.1.3, 11.4.2~~

~~Contractor's Superintendent~~

~~3.9, 10.2.6~~

~~Contractor's Supervision and Construction Procedures~~

~~1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 6.1.3, 6.2.4, 7.1.3, 7.3.5, 7.3.7, 8.2, 10, 12, 14, 15.1.3~~

~~Contractual Liability Insurance~~

~~11.1.1.8, 11.2~~

~~Coordination and Correlation~~

~~1.2, 3.2.1, 3.3.1, 3.10, 3.12.6, 6.1.3, 6.2.1~~

~~Copies Furnished of Drawings and Specifications~~

~~1.5, 2.2.5, 3.11~~

~~Copyrights~~

~~1.5,~~ **3.17**

~~Correction of Work~~

~~2.3, 2.4, 3.7.3, 9.4.2, 9.8.2, 9.8.3, 9.9.1, 12.1.2,~~ **12.2**

**Correlation and Intent of the Contract Documents**

**1.2**

~~Cost,~~ Definition of

~~7.3.7~~

~~Costs~~

~~2.4, 3.2.4, 3.7.3, 3.8.2, 3.15.2, 5.4.2, 6.1.1, 6.2.3, 7.3.3.3, 7.3.7, 7.3.8, 7.3.9, 9.10.2, 10.3.2, 10.3.6, 11.3, 12.1.2, 12.2.1, 12.2.4, 13.5, 14~~

**Cutting and Patching**

**3.14**, ~~6.2.5~~

~~Damage to Construction of Owner or Separate Contractors~~

~~3.14.2, 6.2.4, 10.2.1.2, 10.2.5, 10.4, 11.1.1, 11.3, 12.2.4~~

~~Damage to the Work~~

~~3.14.2, 9.9.1, 10.2.1.2, 10.2.5, 10.4, 11.3.1, 12.2.4~~

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:** (1128951649)

Damages, Claims for
3.2.4, 3.18, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.1.1, 11.3.5, 11.3.7, 14.1.3, 14.2.4, 15.1.6
Damages for Delay
6.1.1, 8.3.3, 9.5.1.6, 9.7, 10.3.2
**Date of Commencement of the Work**, Definition of
**8.1.2**
**Date of Substantial Completion**, Definition of
**8.1.3**
**Day**, Definition of
**8.1.4**
Decisions of the Architect
3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 15.2, 6.3, 7.3.7, 7.3.9, 8.1.3, 8.3.1, 9.2, 9.4, 9.5.1, 9.8.4, 9.9.1, 13.5.2, 14.2.2, 14.2.4, 15.1, 15.2
**Decisions to Withhold Certification**
9.4.1, **9.5**, 9.7, 14.1.1.3
Defective or Nonconforming Work, Acceptance, Rejection and Correction of
2.3, 2.4, 3.5, 4.2.6, 6.2.5, 9.5.1, 9.5.2, 9.6.6, 9.8.2, 9.9.3, 9.10.4, 12.2.1
Definitions
1.1, 2.1.1, 3.1.1, 3.5, 3.12.1, 3.12.2, 3.12.3, 4.1.1, 15.1.1, 5.1, 6.1.2, 7.2.1, 7.3.1, 8.1, 9.1, 9.8.1
**Delays and Extensions of Time**
3.2, 3.7.4, 5.2.3, 7.2.1, 7.3.1, 7.4, **8.3**, 9.5.1, 9.7, 10.3.2, 10.4, 14.3.2, 15.1.5, 15.2.5
Disputes
6.3, 7.3.9, 15.1, 15.2
**Documents and Samples at the Site**
**3.11**
**Drawings**, Definition of
**1.1.5**
Drawings and Specifications, Use and Ownership of
3.11
Effective Date of Insurance
8.2.2, 11.1.2
**Emergencies**
**10.4**, 14.1.1.2, 15.1.4
Employees, Contractor's
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3.3, 11.1.1, 11.3.7, 14.1, 14.2.1.1
Equipment, Labor, Materials or
1.1.3, 1.1.6, 3.4, 3.5, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3, 9.5.1.3, 9.10.2, 10.2.1, 10.2.4, 14.2.1.1, 14.2.1.2
Execution and Progress of the Work
1.1.3, 1.2.1, 1.2.2, 2.2.3, 2.2.5, 3.1, 3.3.1, 3.4.1, 3.5, 3.7.1, 3.10.1, 3.12, 3.14, 4.2, 6.2.2, 7.1.3, 7.3.5, 8.2, 9.5.1, 9.9.1, 10.2, 10.3, 12.2, 14.2, 14.3.1, 15.1.3
Extensions of Time
3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3, 7.4, 9.5.1, 9.7, 10.3.2, 10.4, 14.3, 15.1.5, 15.2.5
**Failure of Payment**
9.5.1.3, **9.7**, 9.10.2, 13.6, 14.1.1.3, 14.2.1.2
Faulty Work
(See Defective or Nonconforming Work)
**Final Completion and Final Payment**
4.2.1, 4.2.9, 9.8.2, **9.10**, 11.1.2, 11.1.3, 11.3.1, 11.3.5, 12.3, 14.2.4, 14.4.3
Financial Arrangements, Owner's
2.2.1, 13.2.2, 14.1.1.4
Fire and Extended Coverage Insurance
11.3.1.1
**GENERAL PROVISIONS**
**1**
**Governing Law**
**13.1**

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                                (1128951649)

DocuSign Envelope ID: 461EC436-93F5-15C9-9D82-548CEA3A76B8

Guarantees (See Warranty)

**Hazardous Materials**
10.2.4, **10.3**

Identification of Subcontractors and Suppliers
5.2.1

**Indemnification**
3.17, **3.18**, 9.10.2, 10.3.3, 10.3.5, 10.3.6, 11.3.1.2, 11.3.7

**Information and Services Required of the Owner**
2.1.2, **2.2**, 3.2.2, 3.12.4, 3.12.10, 6.1.3, 6.1.4, 6.2.5, 9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2, 11.4, 13.5.1, 13.5.2, 14.1.1.4, 14.1.4, 15.1.3

**Initial Decision**
**15.2**

**Initial Decision Maker, Definition of**
1.1.8

Initial Decision Maker, Decisions
14.2.2, 14.2.4, 15.2.1, 15.2.2, 15.2.3, 15.2.4, 15.2.5

Initial Decision Maker, Extent of Authority
14.2.2, 14.2.4, 15.1.3, 15.2.1, 15.2.2, 15.2.3, 15.2.4, 15.2.5

**Injury or Damage to Person or Property**
**10.2.8**, 10.4

Inspections
3.1.3, 3.3.3, 3.7.1, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 12.2.1, 13.5

Instructions to Bidders
1.1.1

Instructions to the Contractor
3.2.4, 3.3.1, 3.8.1, 5.2.1, 7, 8.2.2, 12, 13.5.2

**Instruments of Service**, Definition of
**1.1.7**

Insurance
3.18.1, 6.1.1, 7.3.7, 9.3.2, 9.8.4, 9.9.1, 10.2, **11**

**Insurance, Boiler and Machinery**
**11.3.2**

**Insurance, Contractor's Liability**
**11.1**

Insurance, Effective Date of
8.2.2, 11.1.2

**Insurance, Loss of Use**
**11.3.3**

**Insurance, Owner's Liability**
**11.2**

**Insurance, Property**
10.2.5, **11.3**

Insurance, Stored Materials
9.3.2

**INSURANCE AND BONDS**
**11**

Insurance Companies, Consent to Partial Occupancy
9.9.1

Intent of the Contract Documents
1.2.1, 4.2.7, 4.2.12, 4.2.13, 7.4

**Interest**
**13.6**

**Interpretation**
1.2.3, **1.4**, 4.1.1, 5.1, 6.1.2, 15.1.1

Interpretations, Written
4.2.11, 4.2.12, 15.1.4

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                (1128951649)

7

Judgment on Final Award
15.4.2
**Labor and Materials, Equipment**
1.1.3, 1.1.6, **3.4**, 3.5, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3, 9.5.1.3, 9.10.2, 10.2.1, 10.2.4, 14.2.1.1, 14.2.1.2
Labor Disputes
8.3.1
Laws and Regulations
1.5, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 9.6.4, 9.9.1, 10.2.2, 11.1.1, 11.3, 13.1, 13.4, 13.5.1, 13.5.2, 13.6, 14, 15.2.8, 15.4
Liens
2.1.2, 9.3.3, 9.10.2, 9.10.4, 15.2.8
Limitations, Statutes of
12.2.5, 13.7, 15.4.1.1
Limitations of Liability
2.3, 3.2.2, 3.5, 3.12.10, 3.17, 3.18.1, 4.2.6, 4.2.7, 4.2.12, 6.2.2, 9.4.2, 9.6.4, 9.6.7, 10.2.5, 10.3.3, 11.1.2, 11.2, 11.3.7, 12.2.5, 13.4.2
Limitations of Time
2.1.2, 2.2, 2.4, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2.7, 5.2, 5.3, 5.4.1, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 11.1.3, 11.3.1.5, 11.3.6, 11.3.10, 12.2, 13.5, 13.7, 14, 15
**Loss of Use Insurance**
**11.3.3**
Material Suppliers
1.5, 3.12.1, 4.2.4, 4.2.6, 5.2.1, 9.3, 9.4.2, 9.6, 9.10.5
**Materials, Hazardous**
10.2.4, **10.3**
Materials, Labor, Equipment and
1.1.3, 1.1.6, 1.5.1, 3.4.1, 3.5, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3, 9.5.1.3, 9.10.2, 10.2.1.2, 10.2.4, 14.2.1.1, 14.2.1.2
Means, Methods, Techniques, Sequences and Procedures of Construction
3.3.1, 3.12.10, 4.2.2, 4.2.7, 9.4.2
Mechanic's Lien
2.1.2, 15.2.8
**Mediation**
8.3.1, 10.3.5, 10.3.6, 15.2.1, 15.2.5, 15.2.6, **15.3**, 15.4.1
**Minor Changes in the Work**
1.1.1, 3.12.8, 4.2.8, 7.1, **7.4**
**MISCELLANEOUS PROVISIONS**
**13**
**Modifications**, Definition of
**1.1.1**
Modifications to the Contract
1.1.1, 1.1.2, 3.11, 4.1.2, 4.2.1, 5.2.3, 7, 8.3.1, 9.7, 10.3.2, 11.3.1
**Mutual Responsibility**
**6.2**
**Nonconforming Work, Acceptance of**
9.6.6, 9.9.3, **12.3**
Nonconforming Work, Rejection and Correction of
2.3, 2.4, 3.5, 4.2.6, 6.2.4, 9.5.1, 9.8.2, 9.9.3, 9.10.4, 12.2.1
Notice
2.2.1, 2.3, 2.4, 3.2.4, 3.3.1, 3.7.2, 3.12.9, 5.2.1, 9.7, 9.10, 10.2.2, 11.1.3, 12.2.2.1, 13.3, 13.5.1, 13.5.2, 14.1, 14.2, 15.2.8, 15.4.1
**Notice, Written**
2.3, 2.4, 3.3.1, 3.9.2, 3.12.9, 3.12.10, 5.2.1, 9.7, 9.10, 10.2.2, 10.3, 11.1.3, 11.3.6, 12.2.2.1, **13.3**, 14, 15.2.8, 15.4.1
**Notice of Claims**
3.7.4, 10.2.8, **15.1.2**, 15.4

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
User Notes:                                                                                          (1128951649)

8

Notice of Testing and Inspections
13.5.1, 13.5.2
Observations, Contractor's
3.2, 3.7.4
Occupancy
2.2.2, 9.6.6, 9.8, 11.3.1.5
Orders, Written
1.1.1, 2.3, 3.9.2, 7, 8.2.2, 11.3.9, 12.1, 12.2.2.1, 13.5.2, 14.3.1
**OWNER**
**2**
Owner, Definition of
**2.1.1**
**Owner, Information and Services Required of the**
2.1.2, **2.2**, 3.2.2, 3.12.10, 6.1.3, 6.1.4, 6.2.5, 9.3.2, 9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2, 11.3, 13.5.1, 13.5.2, 14.1.1.4, 14.1.4, 15.1.3
Owner's Authority
1.5, 2.1.1, 2.3, 2.4, 3.4.2, 3.8.1, 3.12.10, 3.14.2, 4.1.2, 4.1.3, 4.2.4, 4.2.9, 5.2.1, 5.2.4, 5.4.1, 6.1, 6.3, 7.2.1, 7.3.1, 8.2.2, 8.3.1, 9.3.1, 9.3.2, 9.5.1, 9.6.4, 9.9.1, 9.10.2, 10.3.2, 11.1.3, 11.3.3, 11.3.10, 12.2.2, 12.3, 13.2.2, 14.3, 14.4, 15.2.7
Owner's Financial Capability
2.2.1, 13.2.2, 14.1.1.4
**Owner's Liability Insurance**
**11.2**
Owner's Relationship with Subcontractors
1.1.2, 5.2, 5.3, 5.4, 9.6.4, 9.10.2, 14.2.2
**Owner's Right to Carry Out the Work**
**2.4**, 14.2.2
**Owner's Right to Clean Up**
**6.3**
**Owner's Right to Perform Construction and to Award Separate Contracts**
**6.1**
**Owner's Right to Stop the Work**
**2.3**
Owner's Right to Suspend the Work
14.3
Owner's Right to Terminate the Contract
14.2
**Ownership and Use of Drawings, Specifications and Other Instruments of Service**
1.1.1, 1.1.6, 1.1.7, **1.5**, 2.2.5, 3.2.2, 3.11, 3.17, 4.2.12, 5.3
**Partial Occupancy or Use**
9.6.6, **9.9**, 11.3.1.5
**Patching, Cutting and**
**3.14**, 6.2.5
Patents
3.17
**Payment, Applications for**
4.2.5, 7.3.9, 9.2, **9.3**, 9.4, 9.5, 9.6.3, 9.7, 9.8.5, 9.10.1, 14.2.3, 14.2.4, 14.4.3
**Payment, Certificates for**
4.2.5, 4.2.9, 9.3.3, **9.4**, 9.5, 9.6.1, 9.6.6, 9.7, 9.10.1, 9.10.3, 13.7, 14.1.1.3, 14.2.4
**Payment, Failure of**
9.5.1.3, **9.7**, 9.10.2, 13.6, 14.1.1.3, 14.2.1.2
Payment, Final
4.2.1, 4.2.9, 9.8.2, 9.10, 11.1.2, 11.1.3, 11.4.1, 12.3, 13.7, 14.2.4, 14.4.3
**Payment Bond, Performance Bond and**
7.3.7.4, 9.6.7, 9.10.3, **11.4**
**Payments, Progress**
9.3, **9.6**, 9.8.5, 9.10.3, 13.6, 14.2.3, 15.1.3

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties.** Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                              (1128951649)

**PAYMENTS AND COMPLETION**
**9**
Payments to Subcontractors
5.4.2, 9.5.1.3, 9.6.2, 9.6.3, 9.6.4, 9.6.7, 14.2.1.2
PCB
10.3.1
**Performance Bond and Payment Bond**
7.3.7.4, 9.6.7, 9.10.3, **11.4**
**Permits, Fees, Notices and Compliance with Laws**
2.2.2, **3.7**, 3.13, 7.3.7.4, 10.2.2
**PERSONS AND PROPERTY, PROTECTION OF**
**10**
Polychlorinated Biphenyl
10.3.1
**Product Data**, Definition of
**3.12.2**
**Product Data and Samples, Shop Drawings**
3.11, **3.12**, 4.2.7
**Progress and Completion**
4.2.2, **8.2**, 9.8, 9.9.1, 14.1.4, 15.1.3
**Progress Payments**
9.3, **9.6**, 9.8.5, 9.10.3, 13.6, 14.2.3, 15.1.3
**Project**, Definition of
**1.1.4**
Project Representatives
4.2.10
**Property Insurance**
10.2.5, **11.3**
**PROTECTION OF PERSONS AND PROPERTY**
**10**
Regulations and Laws
1.5, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 9.6.4, 9.9.1, 10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1, 13.5.2, 13.6, 14, 15.2.8, 15.4
Rejection of Work
3.5, 4.2.6, 12.2.1
Releases and Waivers of Liens
9.10.2
Representations
3.2.1, 3.5, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.4.2, 9.5.1, 9.8.2, 9.10.1
Representatives
2.1.1, 3.1.1, 3.9, 4.1.1, 4.2.1, 4.2.2, 4.2.10, 5.1.1, 5.1.2, 13.2.1
Responsibility for Those Performing the Work
3.3.2, 3.18, 4.2.3, 5.3, 6.1.3, 6.2, 6.3, 9.5.1, 10
Retainage
9.3.1, 9.6.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3
**Review of Contract Documents and Field Conditions by Contractor**
**3.2**, 3.12.7, 6.1.3
Review of Contractor's Submittals by Owner and Architect
3.10.1, 3.10.2, 3.11, 3.12, 4.2, 5.2, 6.1.3, 9.2, 9.8.2
Review of Shop Drawings, Product Data and Samples by Contractor
3.12
**Rights and Remedies**
1.1.2, 2.3, 2.4, 3.5, 3.7.4, 3.15.2, 4.2.6, 5.3, 5.4, 6.1, 6.3, 7.3.1, 8.3, 9.5.1, 9.7, 10.2.5, 10.3, 12.2.2, 12.2.4, **13.4**, 14, 15.4
**Royalties, Patents and Copyrights**
**3.17**
Rules and Notices for Arbitration
15.4.1

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                        (1128951649)

**Safety of Persons and Property**
**10.2**, 10.4
**Safety Precautions and Programs**
3.3.1, 4.2.2, 4.2.7, 5.3, **10.1**, 10.2, 10.4
**Samples**, Definition of
**3.12.3**
**Samples, Shop Drawings, Product Data and**
3.11, **3.12**, 4.2.7
**Samples at the Site, Documents and**
**3.11**
**Schedule of Values**
**9.2**, 9.3.1
Schedules, Construction
3.10, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2
Separate Contracts and Contractors
1.1.4, 3.12.5, 3.14.2, 4.2.4, 4.2.7, 6, 8.3.1, 12.1.2
**Shop Drawings**, Definition of
**3.12.1**
**Shop Drawings, Product Data and Samples**
3.11, **3.12**, 4.2.7
**Site, Use of**
**3.13**, 6.1.1, 6.2.1
Site Inspections
3.2.2, 3.3.3, 3.7.1, 3.7.4, 4.2, 9.4.2, 9.10.1, 13.5
Site Visits, Architect's
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5
Special Inspections and Testing
4.2.6, 12.2.1, 13.5
**Specifications**, Definition of
**1.1.6**
**Specifications**
1.1.1, **1.1.6**, 1.2.2, 1.5, 3.11, 3.12.10, 3.17, 4.2.14
Statute of Limitations
13.7, 15.4.1.1
Stopping the Work
2.3, 9.7, 10.3, 14.1
Stored Materials
6.2.1, 9.3.2, 10.2.1.2, 10.2.4
**Subcontractor**, Definition of
**5.1.1**
**SUBCONTRACTORS**
**5**
Subcontractors, Work by
1.2.2, 3.3.2, 3.12.1, 4.2.3, 5.2.3, 5.3, 5.4, 9.3.1.2, 9.6.7
**Subcontractual Relations**
**5.3**, 5.4, 9.3.1.2, 9.6, 9.10, 10.2.1, 14.1, 14.2.1
Submittals
3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 7.3.7, 9.2, 9.3, 9.8, 9.9.1, 9.10.2, 9.10.3, 11.1.3
Submittal Schedule
3.10.2, 3.12.5, 4.2.7
**Subrogation, Waivers of**
6.1.1, **11.3.7**
**Substantial Completion**
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, **9.8**, 9.9.1, 9.10.3, 12.2, 13.7
**Substantial Completion**, Definition of
**9.8.1**

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:** (1128951649)

Substitution of Subcontractors
5.2.3, 5.2.4
Substitution of Architect
4.1.3
Substitutions of Materials
3.4.2, 3.5, 7.3.8
**Sub-subcontractor**, Definition of
**5.1.2**
Subsurface Conditions
3.7.4
**Successors and Assigns**
**13.2**
**Superintendent**
**3.9**, 10.2.6
**Supervision and Construction Procedures**
1.2.2, **3.3**, 3.4, 3.12.10, 4.2.2, 4.2.7, 6.1.3, 6.2.4, 7.1.3, 7.3.7, 8.2, 8.3.1, 9.4.2, 10, 12, 14, 15.1.3
Surety
5.4.1.2, 9.8.5, 9.10.2, 9.10.3, 14.2.2, 15.2.7
Surety, Consent of
9.10.2, 9.10.3
Surveys
2.2.3
**Suspension by the Owner for Convenience**
**14.3**
Suspension of the Work
5.4.2, 14.3
Suspension or Termination of the Contract
5.4.1.1, 14
**Taxes**
3.6, 3.8.2.1, 7.3.7.4
**Termination by the Contractor**
**14.1**, 15.1.6
**Termination by the Owner for Cause**
5.4.1.1, **14.2**, 15.1.6
**Termination by the Owner for Convenience**
**14.4**
Termination of the Architect
4.1.3
Termination of the Contractor
14.2.2
**TERMINATION OR SUSPENSION OF THE CONTRACT**
**14**
**Tests and Inspections**
3.1.3, 3.3.3, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 10.3.2, 11.4.1, 12.2.1, **13.5**
**TIME**
**8**
**Time, Delays and Extensions of**
3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3.1, 7.4, **8.3**, 9.5.1, 9.7, 10.3.2, 10.4, 14.3.2, 15.1.5, 15.2.5
Time Limits
2.1.2, 2.2, 2.4, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2, 5.2, 5.3, 5.4, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 11.1.3, 12.2, 13.5, 13.7, 14, 15.1.2, 15.4
**Time Limits on Claims**
3.7.4, 10.2.8, **13.7**, 15.1.2
Title to Work
9.3.2, 9.3.3
**Transmission of Data in Digital Form**
**1.6**

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                                    (1128951649)

DocuSign Envelope ID: 461FCA36-93F5-45C9-9D82-548CFA3A7689

**UNCOVERING AND CORRECTION OF WORK**
**12**
**Uncovering of Work**
**12.1**
Unforeseen Conditions, Concealed or Unknown
3.7.4, 8.3.1, 10.3
Unit Prices
7.3.3.2, 7.3.4
Use of Documents
1.1.1, 1.5, 2.2.5, 3.12.6, 5.3
**Use of Site**
**3.13**, 6.1.1, 6.2.1
**Values, Schedule of**
**9.2**, 9.3.1
Waiver of Claims by the Architect
13.4.2
Waiver of Claims by the Contractor
9.10.5, 13.4.2, 15.1.6
Waiver of Claims by the Owner
9.9.3, 9.10.3, 9.10.4, 12.2.2.1, 13.4.2, 14.2.4, 15.1.6
Waiver of Consequential Damages
14.2.4, 15.1.6
Waiver of Liens
9.10.2, 9.10.4
**Waivers of Subrogation**
6.1.1, **11.3.7**
**Warranty**
3.5, 4.2.9, 9.3.3, 9.8.4, 9.9.1, 9.10.4, 12.2.2, 13.7
Weather Delays
15.1.5.2
**Work**, Definition of
**1.1.3**
Written Consent
1.5.2, 3.4.2, 3.7.4, 3.12.8, 3.14.2, 4.1.2, 9.3.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3, 11.4.1, 13.2, 13.4.2, 15.4.4.2
Written Interpretations
4.2.11, 4.2.12
Written Notice
2.3, 2.4, 3.3.1, 3.9, 3.12.9, 3.12.10, 5.2.1, 8.2.2, 9.7, 9.10, 10.2.2, 10.3, 11.1.3, 12.2.2, 12.2.4, **13.3**, 14, 15.4.1
Written Orders
1.1.1, 2.3, 3.9, 7, 8.2.2, 12.1, 12.2, 13.5.2, 14.3.1, 15.1.2

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA**® **Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA**® **Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                   (1128951649)

...

The Project is the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner and by separate ~~contractors.~~contractors engaged by Owner ("Owner's Contractors").

...

The Drawings are the graphic and pictorial portions of the Contract Documents <u>as listed in Section 9.1.5 of the Agreement</u> showing the design, location and dimensions of the Work, generally including plans, elevations, sections, details, schedules and diagrams.

...

The Specifications are that portion of the Contract Documents <u>as stated in Section 9.1.4 of the Agreement</u> consisting of the written requirements for materials, equipment, systems, standards and workmanship for the Work, and performance of related services.

...

**§ 1.1.8 INITIAL DECISION MAKER**
~~The Initial Decision Maker is the person identified in the Agreement to render initial decisions on Claims in accordance with Section 15.2 and certify termination of the Agreement under Section 14.2.2.~~

**§ 1.1.8 KNOWLEDGE**
<u>The terms "knowledge", "recognize" and "discovery", their respective derivatives and similar terms in the Contract Documents, as used in reference to the Contractor, shall be interpreted to mean that which the Contractor knows or should know, recognizes or should recognize, and discovers or should discover in exercising the care, skill and diligence required by the Contract Documents.  Analogously, the expression "reasonably inferable" and similar terms in the Contract Documents shall be interpreted to mean reasonably inferable by a contractor familiar with the Project and exercising the care, skill and diligence required of the Contractor by the Contract Documents.</u>

**§ 1.1.9 CONFIDENTIALITY**
<u>1.1.9.1 The Contractor warrants and represents that the contractor shall not knowingly or negligently communicate or disclose at any time to any person or entity any information in connection with the Work or the Project, except (i) with prior written consent of the Owner, (ii) information that was in the public domain prior to the date of this Agreement, (iii) information that becomes part of the public domain by publication or otherwise not due to any unauthorized act or mission of the Contractor, or (iv) as may be required to perform the Work or by any applicable law.</u>

**§1.1.9.2** <u>The Contractor, at any time, upon the request of the Owner, shall immediately return and surrender to the Owner all copies of any materials, records, notices, memoranda, recordings, drawings, specifications, and mock-ups and any other documents furnished by the Owner or the Architect to the Contractors.</u>

**§1.1.9.3** <u>The Contractor shall cause all Subcontractors or any other person or entity performing any services, or furnishing any materials or equipment, for the Work to warrant and represent all items set forth in the Paragraph 1.1.9.</u>

**§1.1.9.4** <u>The representations and warranties contained in this Paragraph 1.1.9 shall survive the complete performance of the Work or earlier termination of this Agreement.</u>

**§ 1.2.1** The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. The Contract Documents are complementary, and what is required by one shall be as binding as if required by all; performance by the Contractor shall be required only to the extent consistent with the Contract Documents and reasonably inferable from them as being necessary to produce the indicated results.  In the

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**
(1128951649)

event of inconsistencies within or between parts of the Contract Documents, or between the Contract Documents and applicable standards, codes and ordinances, the Contractor shall (i) provide the better quality or greater quantity of Work or (ii) comply with the more stringent requirement; either or both in accordance with the Architect and Owners' interpretation and prevailing New York City construction standards. Notwithstanding anything to the contrary herein or elsewhere in the contract documents, contractors notes and clarifications dated September 28, 2017 shall control in the event of a conflict between or among the various contract documents.  The terms and conditions of this Subparagraph 1.2.1 shall not relieve the Contractor of any of the obligations set forth in Subparagraphs 3.2 and 3.7.

**PAGE 4**

**§1.2.3.1** Whenever a product is specified in accordance with a Federal Specification, an ASTM Standard, and American National Standards Institute Specification or other Association Standard, the Contractor shall, when requested by the Architect or the Owner, or required by the Specifications, present catalog cuts and other product information published by the product manufacturer.  When requested by the Architect or Owner or the required Specifications, support test data shall be submitted to substantiate compliance.

**§1.2.3.2** Whenever a product is specified or shown by describing proprietary items, model numbers, catalog numbers, manufacturer, trade names or similar reference, no substitutions may be made unless accepted prior to execution of the Contract or if accepted as a Change in the Work.  Where two or more products are shown or specified, the Contractor has the option to use either of those shown or specified.

**PAGE 5**

**§ 2.2.1** ~~Prior to commencement of the Work, the Contractor may request in writing that the Owner provide reasonable evidence that the Owner has made financial arrangements to fulfill the Owner's obligations under the Contract. Thereafter, the Contractor may only request such evidence if (1) the Owner fails to make payments to the Contractor as the Contract Documents require; (2) a change in the Work materially changes the Contract Sum; or (3) the Contractor identifies in writing a reasonable concern regarding the Owner's ability to make payment when due. The Owner shall furnish such evidence as a condition precedent to commencement or continuation of the Work or the portion of the Work affected by a material change. After the Owner furnishes the evidence, the Owner shall not materially vary such financial arrangements without prior notice to the Contractor.~~

**§ 2.2.2** ~~Except for permits and fees that are the responsibility of the Contractor under the Contract Documents, including those required under Section 3.7.1, the Owner shall secure and pay for necessary approvals, easements, assessments and charges required for construction, use or occupancy of permanent structures or for permanent changes in existing facilities.~~

**§ 2.2.3** ~~The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a legal description of the site. The Contractor shall be entitled to rely on the accuracy of information furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.~~

**§ 2.2.4** ~~The Owner shall furnish information or services required of the Owner by the Contract Documents with reasonable promptness. The Owner shall also furnish any other information or services under the Owner's control and relevant to the Contractor's performance of the Work with reasonable promptness after receiving the Contractor's written request for such information or services.~~

**§ 2.2.5** ~~Unless otherwise provided in the Contract Documents, the Owner shall furnish to the Contractor one copy of the Contract Documents for purposes of making reproductions pursuant to Section 1.5.2.~~

**§ 2.2.1** The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a legal description of the site. The Contractor shall be entitled to rely on the accuracy of information furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.

**§ 2.2.2** Unless otherwise provided in the Contract Documents, the Owner shall furnish to the Contractor one copy of the Contract Documents for purposes of making reproductions pursuant to Section 1.5.2.

---

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                               (1128951649)

15

**§ 2.2.3** The Owner shall furnish information or services required of the Owner by the Contract Documents with reasonable promptness.  The Owner shall also furnish any other information or services under Owner's control and relevant to the Contractor's performance of the Work with reasonable promptness after receiving the Contractor's written request for such information or services.

**§ 2.2.4** Except for permits and fees that are the responsibility of Contractor under the Contract Documents, Owner shall secure and pay for necessary approvals, easements, assessments and charges required for construction, use or occupancy of the Project.  Owner shall pay to the New York City Department of Buildings ("NYCDOB") Permit. Contractor shall pick up the NYCDOB permit.

**PAGE 6**

**§ 3.2.1** Execution of the Contract by the Contractor is a representation that the Contractor has visited the site, become generally familiar with local conditions under which the Work is to be performed and correlated personal observations with requirements of the Contract Documents.  Contractor shall verify grades, dimension or locations prior to the execution of the Work, and in all cases of interconnection of its Work with existing or other work, Contractor shall verify at the site all dimensions relating to such existing or other work.  Any errors due to the Contractor's failure to so verify all such grades, elevations, dimensions or locations shall be promptly rectified by the Contractor at no additional cost to the Owner.

**§ 3.2.2** Because the Contract Documents are complementary, the Contractor shall, before starting each portion of the Work, carefully study and compare the various Contract Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Section 2.2.3, shall take field measurements of any existing conditions related to that portion of the Work, and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating coordination and construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, the Contractor shall promptly report to the Architect and the Owner any errors, inconsistencies or omissions discovered by or made known to the Contractor as a request for information in such form as the Architect and the Owner may require.  It is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not ~~as~~ a licensed design professional, unless otherwise specifically provided in the Contract Documents.

**§ 3.2.3** The Contractor is not required to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, but the Contractor shall promptly report to the Architect and the Owner any nonconformity discovered by or made known to the Contractor as a request for information in such form as the Architect and the Owner may require.

**§ 3.2.4** If the Contractor believes that additional cost or time is involved because of clarifications or instructions the Architect or the Owner issues in response to the Contractor's notices or requests for information pursuant to Sections 3.2.2 or 3.2.3, the Contractor shall make Claims as provided in Article 15. If the Contractor fails to perform the obligations of Sections 3.2.2 or 3.2.3, the Contractor shall pay such costs and damages to the Owner as would have been avoided if the Contractor had performed such obligations. If the Contractor performs those obligations, the Contractor shall not be liable to the Owner or Architect for damages resulting from errors, inconsistencies or omissions in the Contract Documents, for differences between field measurements or conditions and the Contract Documents, or for nonconformities of the Contract Documents to applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities.
**PAGE 7**

**§ 3.3.1** The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for, and have control over, construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless the Contract Documents give other specific instructions concerning these matters. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, the Contractor shall evaluate the jobsite safety thereof and, except as stated below, shall be fully and solely responsible for the jobsite safety of such means, methods, techniques, sequences or procedures. If the Contractor determines that such means, methods, techniques, sequences or procedures may not be safe, the Contractor shall give timely written notice to the Owner and Architect and shall not proceed with that portion of the Work without further written instructions from the Architect. ~~If the Contractor is then instructed to proceed with the required means, methods, techniques, sequences or procedures without acceptance of~~

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                      (1128951649)

~~changes proposed by the Contractor, the Owner shall be solely responsible for any loss or damage arising solely from those Owner-required means, methods, techniques, sequences or procedures.~~

…

**§ 3.4.2** Except in the case of minor changes in the Work authorized by the Architect in accordance with Sections 3.12.8 or 7.4, the Contractor may make substitutions only with the consent of the Owner, after evaluation by the ~~Architect and in accordance with a Change Order or Construction Change Directive.~~Architect.

**§3.4.2.1** The Contractor must submit to the Architect and the Owner (i) a full explanation of the proposed substitution and submittal of all supporting data, including technical information catalog cuts, warranties, test results, installation instructions, operating procedures, and the other like information necessary for a complete evaluation of the substitution; (ii) a written explanation of the reasons for the substitution being advantageous and necessary; (iii) the adjustment, if any, in the Contract Sum, in the event the substitution is acceptable to the Owner; (iv) the adjustment, if any, in the time of completion of the Contract and the construction schedule in the event the substitution is acceptable; and (v) a written confirmation that the Contractor accepts the warranty and correction obligations in connection with the proposed substitution as if originally specified by the Architect or the Owner.  Proposal for substitutions shall be submitted to the Architect and the Owner no less than ten (10) days before the date that the substitution should be made to comply with the completion time of the Contract.  No substitutions will be considered or allowed without the Contractor's submittal of complete substantiating data and information as stated in this subparagraph.

**§3.4.2.2** Substitutions and alternatives may be rejected by the Owner without explanation and will be considered only under one or more of the following conditions: (i) the proposal is required for compliance and interpretation of code requirements or insurance regulations then existing; (ii) specified products are unavailable through no fault of the Contractor; (iii) subsequent information discloses the inability of specified products to perform properly or to fit in the designated space; (iv) the manufacturer/fabricator refuses to certify or guarantee the performance of the specified products required; and (v) when in the judgment of the Owner, a substitution would be substantially in the Owner's best interests, in terms of cost, time or other considerations.

**PAGE 8**

**§3.5.1** The Contractor agrees to assign to the Owner, at the time of final completion of the Work, any and all manufacturer's warranties relating to materials and labor used in the Work and further agrees to perform the Work in such a manner so as to preserve any and all such manufacturer's warranties.

**§3.5.2** The Contractor's express warranties contained herein shall be in addition to any warranties, indemnities, claims, rights or remedies that the Owner may have in the Contract Documents, at law or in equity for defective Work or breach of the Contract Documents.

…

**§ 3.7**
**~~PERMITS, FEES, NOTICES AND COMPLIANCE WITH LAWS~~PERMITS, FEES, NOTICES, AND COMPLIANCE WITH LAWS**
**§ 3.7.1** ~~Unless otherwise provided in the Contract Documents, the Contractor shall secure and pay for the building permit as well as for other permits, fees, licenses, and inspections by government agencies necessary for proper execution and completion of the Work that are customarily secured after execution of the Contract and legally required at the time bids are received or negotiations concluded.~~

**§3.7.1** Except as set forth in Subparagraph 2.2.2, the Contractor shall secure, pay for and as soon as practicable, furnish the Owner with copies of certificates of all permits and fees, licenses and inspections necessary for the proper execution and completion of Work.  Owner shall secure and pay for the NYCDOB permit.

**§ 3.7.2** The Contractor shall comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders and all other requirements of public authorities applicable to performance of the Work.

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**

(1128951649)

DocuSign Envelope ID: 461EC9A36-93E5-15C9-8D82-518CEA3A76B9

**§ 3.7.3** If the Contractor performs Work knowing it to be contrary to applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, the Contractor shall assume appropriate responsibility for such Work and shall bear all of  the costs attributable to correction.

**§ 3.7.4 Concealed or Unknown Conditions.** If the Contractor encounters conditions at the site that are (1) subsurface or otherwise concealed physical conditions that differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, that differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, the Contractor shall promptly provide notice to the Owner and the Architect before conditions are disturbed and in no event later than  ~~21~~ seven (7) days after first observance of the conditions. The Architect or the Owner will promptly investigate such conditions and, if the Architect or the Owner determines that they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Contract Sum or Contract Time, or both. If the Architect or the Owner determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Contract is justified, the Architect shall promptly notify the ~~Owner and~~ Contractor in writing, stating the reasons. If either party disputes the Architect's determination or recommendation, that party may proceed as provided in Article 15.
**PAGE 9**

> .1    ~~Allowances~~ allowances shall cover the cost to the Contractor of materials and equipment delivered at the site and all required taxes, less applicable trade discounts;

…

> .3    ~~Whenever~~ whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect (1) the difference between actual costs and the allowances under Section 3.8.2.1 and (2) changes in Contractor's costs under Section 3.8.2.2.

…

**§ 3.9 SUPERINTENDENT AND PROJECT MANAGER**
**§ 3.9.1** The Contractor shall employ a ~~competent~~ competent, full-time superintendent and necessary assistants who shall be in attendance at the Project site during performance of the Work until Store Opening. The superintendent shall be responsible for matters that occur on the site of the Work.  The superintendent shall represent the Contractor, and communications given to the superintendent shall be as binding as if given to the Contractor.  The Contractor shall employ a full-time, on-site project manager who shall be responsible for all matters related to the Work or the Project that occur off the site of the Work.  The project manager shall represent the Contractor and communications given to the project manager shall be shall be as binding as if given to the Contractor.

**§ 3.9.2** The Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner ~~through the Architect~~ the name and qualifications of a proposed ~~superintendent. The Architect~~ superintendent, and the project manager; the superintendent and the project manager shall not be the same person. The Architect or the Owner may reply within 14 days to the Contractor in writing stating (1) whether the Owner or the Architect has reasonable objection to the proposed superintendent or project manager or (2) that the Architect or the Owner requires additional time to review. Failure of the Architect or the Owner to reply within the 14 day period shall constitute notice of no reasonable objection.

**§ 3.9.3** The Contractor shall not employ a proposed superintendent or project manager to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not change the superintendent ~~without the Owner's consent, which shall not unreasonably be withheld or delayed.~~ or project manager without the Owner's consent.
**PAGE 10**

**§ 3.10.2** The Contractor shall prepare a submittal schedule, promptly after being awarded the Contract and thereafter as necessary to maintain a current submittal schedule, and shall submit the schedule(s) for the ~~Architect's~~ Owner's approval. The ~~Architect's~~ Owner's approval shall not unreasonably be delayed or withheld. The submittal schedule shall (1) be coordinated with the Contractor's construction schedule, and (2) allow the Architect and the Owner

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                                   (1128951649)

reasonable time to review submittals. If the Contractor fails to submit a submittal schedule, the Contractor shall not be entitled to any increase in Contract Sum or extension of Contract Time based on the time required for review of submittals.

**§ 3.10.3** The Contractor shall perform the Work in general accordance with the most recent schedules submitted to the Owner and ~~Architect.~~ Architect and in such time to achieve the Substantial Completion deadlines set forth in the Contract Documents.

_____

**§3.10.4** In the event that Contractor's performance of the Work, as of a Milestone Date, has not progressed or reached the level of completion required by the Contract Documents, the Owner shall have the right to order the Contractor to take corrective measures necessary to expedite the progress of construction, including, without limitation, (i) working additional shifts or overtime, (ii) supplying additional manpower, equipment and facilities, and (iii) other similar measure (hereinafter referred to collectively as "Extraordinary Measures"). Such Extraordinary Measures shall continue until the progress of the Work complies with the state of completion required by the Contract Documents. The Owner's right to require Extraordinary Measures is solely for the purpose of ensuring the Contractor's compliance with the construction schedule. In the event that delayed performance hereunder is as a result of an Excused Delay (as defined in section 8.3 hereof), the Contract Sum shall be equitably adjusted by Change Order to compensate Contractor for all costs incurred as a result of Owner's order to accelerate, together with Contractor's agreed upon fee, insurance and overhead.

**§3.10.4.1** Except in the event of an Excused Delay as set forth in paragraph 3.10.4 immediately above, the Contractor shall not be entitled to an adjustment in the Contract Sum in connection with Extraordinary Measures required by the Owner under or pursuant to subparagraph 3.10.4.

**§3.10.4.2** The Owner may exercise the right furnished the Owner under or pursuant to this Subparagraph 3.10.4 as frequently as the Owner deems necessary to ensure that the Contractor's performance of the Work will comply with any Milestone Date or completion date set forth in the Contract Documents.

**§3.10.5** The Owner shall have the right to direct a postponement or rescheduling of any date or time for the performance of any part of the Work that may interfere with the Operation of the Owner's premises. The Contractor shall, upon the Owner's request, reschedule any portion of the Work affecting operation of the premises during hours when the premises are not in operation. Any postponement, rescheduling or performance of the Work under this Subparagraph 3.10.5 may be grounds for an extension of the Contract Time, if permitted under Subparagraph 8.3.1 and an equitable adjustment in the Contract Sum if (i) the performance of the Work was properly scheduled by the Contractor in compliance with the requirements of the Contract Documents and (ii) such rescheduling or postponement was required for the Convenience of the Owner.

…

The Contractor shall maintain at the site for the Owner one copy of the Drawings, Specifications, Addenda, Change Orders and other Modifications, in good order and marked currently to indicate field changes and selections made during construction, and one copy of approved Shop Drawings, Product Data, Samples and similar required submittals. These shall be available to the Architect and shall be delivered to the Architect and the Owner for submittal to the Owner upon completion of the Work as a record of the Work as constructed.
**PAGE 11**

**§ 3.12.5** The Contractor shall review for compliance with the Contract Documents, approve and submit to the Architect Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents in accordance with the submittal schedule approved by the Architect and the Owner or, in the absence of an approved submittal schedule, with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Owner or of separate contractors.

…

**§ 3.12.7** The Contractor shall perform no portion of the Work for which the Contract Documents require submittal and review of Shop Drawings, Product Data, Samples or similar submittals until the respective submittal has been approved by the ~~Architect.~~ Architect and the Owner.

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                  (1128951649)

**19**

DocuSign Envelope ID: 461EC0A86-93E6-15C9-9D82-548CEA3A7689

**§ 3.12.8** The Work shall be in accordance with approved submittals except that the Contractor shall not be relieved of responsibility for deviations from requirements of the Contract Documents by the Architect's ~~and the Owner's~~ approval of Shop Drawings, Product Data, Samples or similar submittals unless the Contractor has specifically informed the Architect ~~and the Owner~~ in writing of such deviation at the time of submittal and (1) the Architect ~~has and the Owner have~~ given written approval to the specific deviation as a minor change in the Work, or (2) a Change Order or Construction Change Directive has been issued authorizing the deviation. The Contractor shall not be relieved of responsibility for errors or omissions in Shop Drawings, Product Data, Samples or similar submittals by the Architect's approval thereof.

**§ 3.12.9** The Contractor shall direct specific attention, in writing or on resubmitted Shop Drawings, Product Data, Samples or similar submittals, to revisions other than those requested by the Architect ~~and the Owner~~ on previous submittals. In the absence of such written notice, the Architect's ~~and Owner's~~ approval of a resubmission shall not apply to such revisions.

**§ 3.12.10** The Contractor shall not be required to provide professional services that constitute the practice of architecture or engineering unless such services are specifically required by the Contract Documents for a portion of the Work or unless the Contractor needs to provide such services in order to carry out the Contractor's responsibilities for construction means, methods, techniques, sequences and procedures. The Contractor shall not be required to provide professional services in violation of applicable law. If professional design services or certifications by a design professional related to systems, materials or equipment are specifically required of the Contractor by the Contract Documents, the Owner and the Architect will specify all performance and design criteria that such services must satisfy. The Contractor shall cause such services or certifications to be provided by a properly licensed design professional, whose signature and seal shall appear on all drawings, calculations, specifications, certifications, Shop Drawings and other submittals prepared by such professional. Shop Drawings and other submittals related to the Work designed or certified by such professional, if prepared by others, shall bear such professional's written approval when submitted to the ~~Architect.~~ Architect and the Owner. The Owner and the Architect shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications and approvals performed or provided by such design ~~professionals, provided the Owner and Architect have specified to the Contractor all performance and design criteria that such services must satisfy.~~ professionals. Pursuant to this Section 3.12.10, the Architect ~~and the Owner~~ will review, approve or take other appropriate action on submittals only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Contractor shall not be responsible for the adequacy of the performance and design criteria specified in the Contract Documents.
**PAGE 12**

~~The Contractor shall confine operations at the site to areas permitted by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities and the Contract Documents and shall not unreasonably encumber the site with materials or equipment.~~**§3.13.1** The Contractor shall confine operations at the site to areas permitted by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities and the Contract Documents and shall not unreasonably encumber the site with materials or equipment.

**§3.13.2** Only materials and equipment that are to be used directly in the Work shall be brought to and stored on the Project site by the Contractor.  After equipment is no longer required for the Work, it shall be promptly removed from the Project site.  Protection of construction materials and equipment stored at the Project site from weather, theft, damage and all other adversity is solely the responsibility of the Contractor.  The Contractor shall ensure that the Work, at all times, is performed in a manner that affords reasonable access, both vehicular and pedestrian, to the site of the Work and all adjacent areas.  The Work shall be performed, to the fullest extent reasonably possible, in a manner that public areas adjacent to the site of the Work shall be free from all debris, building materials, and equipment likely to cause hazardous conditions.

**§3.13.3** Without limitation of any other requirement set forth in this Contract, the Contractor shall minimize interference with the occupancy or beneficial use of any areas and buildings adjacent to the site of the Work.  In the event that the site of the Work is occupied or partially occupied, the Contractor shall minimize any interference with the occupancy or beneficial use of the Work Site.  The Contractor shall not permit any workers to use any facilities at the Project Site, including, without limitation, lavatories, toilets, entrances and parking areas, except those specifically designed by the Owner as available for the Contractor's use.  The Contractor shall, at the Contractor's sole costs and expenses, take all measures necessary to protect persons and property in or adjacent to the Project Work Site.

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.**
**User Notes:**                                                                                                                                         (1128951649)

**§3.13.4** To the extent that the Contractor is performing work in an occupied premises, the Contractor shall comply with all regulations and rules promulgated by the Owner or other occupier of such premises in connection with the use and occupancy of the premises.

...

The Contractor shall pay all royalties and license fees. The Contractor shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the Contract Documents, or where the copyright violations are contained in Drawings, Specifications or other documents prepared by the Owner or Architect. However, if the Contractor has reason to believe that the required design, process or product is an infringement of a copyright or a patent, the Contractor shall be responsible for such loss unless such information is promptly furnished to the ~~Architect.~~Architect and the Owner.
**PAGE 13**

**§ 3.18.1** To the fullest extent permitted by law the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity that would otherwise exist as to a party or person described in this ~~Section~~ Section.

**3.18.1.1** The Contractor shall be liable for and shall defend, indemnify and hold harmless the Owner, and the owner of the shopping center of which the Project is a part of and/or the owner of the building in which the Project is located and/or the owner of the property on which the Project is situated, as the case may be, and their respective officers, agents and employees, against (i) all liabilities, claims and the demands of every nature, occurring as a result of personal injury, accidental death, disease, or property damage, together with any resulting costs or legal fees, to the extent caused by any negligent act or omission of the Contractor, its Subcontractors, agents or employees; (ii) provided that Owner has paid Contractor for the work that forms the basis of a mechanic's lien, all liens, or claims of rights to enforce liens, against the Project or improvements to be erected thereon arising out of any Work to be performed or services or materials to be furnished under this Agreement; and (iii) all other costs, damage, expense and liabilities for which the Contractor is liable to the Owner hereunder or for which the Contractor has agreed to pay or to be responsible hereunder. Such obligation shall not be construed to negate , or reduce the other rights or obligation of indemnity which would otherwise exist as to party or person described in this section 3.18.

**§ 3.18.2** In claims against any person or entity indemnified under this Section 3.18 by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Section 3.18.1 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Contractor or a Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts. Similarly, the Contractor's obligations of indemnification under this Contract shall not be limited by any insurance obtained or maintained by the Contractor pursuant to this Contract or otherwise.

**§3.18.3** Provided that the Owner has issued payments for work that is the basis of a mechanic's lien claim (a "Lien"), if any lien claim claiming that Contractor has failed to make payment for any labor, services, trust fund contribution, materials, equipment, taxes or other items furnished or obligations incurred for, or in connection with the Work, or if after ten (10) days' written notice to Contractor of such Lien, and Contractor fails to cause the Lien to be discharged of record, then the Owner shall be entitled to retain from any payment then due or thereafter to become due under this Contract or to be reimbursed to the Contractor an amount sufficient to satisfy or discharge and defend against any such claim of Lien. The Owner shall not pay any such amount withheld directly to any such claimant or potential claimant, so long as the Contractor (a) is not in default under the Contract Documents, (b) notifies the Owner in writing that it will dispute such claim within seven (7) days following the date of the Owner's notice to the Contractor of its intent to pay such amount, (c) promptly disputes such claim with due diligence, and (d) resolves such dispute in a manner that

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**
(1128951649)

does not affect the Contractor's performance under the Contract Document or threaten the interest of the Owner in the Project.

**§3.18.4** Provided that the Owner has issued payments due to the Contractor on a timely basis in accordance with this agreement, should any Subcontractor, supplier, or other person or any of the make, record, or file or maintain any action on or respect any claim of mechanic's lien, stop-notice, equitable lien, payment or performance bond, or a lis pendens, relating to the Work, the Contractor shall immediately, and at its expense, procure, furnish and record appropriate statutory release bond, which will extinguish or expunge such claim, lien, stop-notice or lis pendens.
**PAGE 14**

**§ 4.2.1** The Architect will provide administration of the Contract as described in the Contract Documents and will be an Owner's representative during construction until the date the Architect issues the final Certificate ~~for~~ For Payment. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents.

**…**

~~Except as otherwise provided in the Contract Documents or when direct communications have been specially authorized, the Owner and Contractor shall endeavor to communicate with each other through the Architect about matters arising out of or relating to the Contract. Communications by and with the Architect's consultants shall be through the Architect. Communications by and with Subcontractors and material suppliers shall be through the Contractor. Communications by and with separate contractors shall be through~~ The Owner and the Contractor may communicate with each other directly or through the Architect, however, the Contractor shall keep the Architect and the Owner promptly informed of all communications that Contractor sends to either the Architect or the Owner.

**§ 4.2.5** ~~Based on the Architect's evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor and will issue Certificates for Payment in such amounts.~~The Architect shall report to the Owner any Work that the Architect determines should be rejected or that does not conform to the Contract Documents.

**…**

**§ 4.2.7** The Architect will review and approve, or take other appropriate action upon, the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. ~~The Architect's action will be taken in accordance with the submittal schedule approved by the Architect or, in the absence of an approved submittal schedule, with reasonable promptness while allowing sufficient time in the Architect's professional judgment to permit adequate review.~~ Architect shall respond to Contractor's submittals and requests for information within time frame identified in the Contract Documents, Project Manual Vol. 1. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The Architect's review of the Contractor's submittals shall not relieve the Contractor of the obligations under Sections 3.3, 3.5 and 3.12. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

**§ 4.2.8** The ~~Architect~~ Owner will prepare Change Orders and Construction Change ~~Directives,~~ Directives and may authorize minor changes in the Work as provided in Section 7.4. The Architect will investigate and make determinations and recommendations regarding concealed and unknown conditions as provided in Section 3.7.4.
**PAGE 15**

**§ 4.2.10** If the Owner and Architect ~~agree,~~ agree in writing, the Architect will provide one or more project representatives to assist in carrying out the Architect's responsibilities at the site. The duties, responsibilities and limitations of authority of such project representatives shall be as set forth in an exhibit to be incorporated in the Contract ~~Documents.~~Documents which exhibit must be signed by the Owner before the exhibit can have any effect.

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                          (1128951649)

**22**

**§ 4.2.11** The Architect will interpret and ~~decide~~ offer advice on matters concerning performance under, and requirements of, the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable ~~promptness.~~ promptness and shall not bind the Owner or the Contractor.

**§ 4.2.12** Interpretations and ~~decisions~~ advice of the Architect will be consistent with the intent of, and reasonably inferable from, the Contract Documents and will be in writing or in the form of drawings. ~~When making such interpretations and decisions, the Architect will endeavor to secure faithful performance by both Owner and Contractor, will not show partiality to either and will not be liable for results of interpretations or decisions rendered in good faith.~~

**§ 4.2.13** ~~The Architect's decisions on matters relating to aesthetic effect will be final if consistent with the intent expressed in the Contract Documents.~~Intentionally Deleted

**§ 4.2.14** The Architect will review and respond to requests for information about the Contract Documents. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable ~~promptness.~~ promptness and shall not bind the Owner or the Contractor. If appropriate, the Architect will prepare and issue supplemental Drawings and Specifications in response to the requests for information.

…

**§ 5.2.1** Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner ~~through the Architect~~ the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work. The Owner or the Architect may reply within 14 days to the Contractor in writing stating (1) whether the Owner or the Architect has reasonable objection to any such proposed person or entity or (2) that the Owner or the Architect requires additional time for review. Failure of the Owner or Architect to reply within the ~~14-day~~ 14 day period shall constitute notice of no reasonable objection.
**PAGE 16**

~~By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner. Where appropriate, the Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound, and, upon written request of the Subcontractor, identify to the Subcontractor terms and conditions of the proposed subcontract agreement that may be at variance with the Contract Documents. Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors.~~§5.3.1 By appropriate agreement, the Contractor shall require each Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner. The Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound, and, upon written request of the Subcontractor, identify to the Subcontractor terms and conditions of the proposed subcontract agreement that may be at variance with the Contract Documents.

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**

23

(1128951649)

Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors.

**§5.3.2** All subcontracts shall be in writing in form and substance substantially similar to the Contractor's standard form subcontract, attached to the Agreement and made a part thereof as an exhibit, and shall specifically provide that the Owner is an intended third-party beneficiary of such subcontract.

…

**§ 5.4.2** ~~Upon such assignment, if the Work has been suspended for more than 30 days, the Subcontractor's compensation shall be equitably adjusted for increases in cost resulting from the suspension.~~Each subcontract shall specifically provide that the Owner shall only be responsible to the Subcontractor for those obligations of the Contractor that accrue subsequent to the Owner's exercise of any rights under this conditional assignment and shall further provide that the Owner shall not be liable to any subcontractor for any default by the Contractor.
**PAGE 17**

**§ 6.1.3** The Owner shall ~~provide for coordination of~~ coordinate  the activities of the Owner's own forces and of each separate contractor with the Work of the Contractor, who shall cooperate with them. The Contractor shall participate with other separate contractors and the Owner in reviewing their construction schedules. ~~The Contractor shall make any revisions to the construction schedule deemed necessary after a joint review and mutual agreement. The construction schedules shall then constitute the schedules to be used by the Contractor, separate contractors and the Owner until subsequently revised.~~Owner shall cause each of Owner's separate contractors to coordinate their work and schedule with Contractor in advance of performing such work, and that the separate contractors perform their work in accordance with Contractor's schedule, and phasing plans and other project controls references in the A101 Agreement part of the Contract Documents.  The Contractor will make all reasonable efforts to accommodate revisions and adjustments in Owner's Contractors schedules as required.

…

**§ 6.2.1** The Contractor shall afford the Owner and separate contractors reasonable opportunity for introduction and storage of their materials and equipment and performance of their activities, and shall connect and coordinate the Contractor's construction and operations with theirs as required by the Contract Documents.  Owner shall cause its separate contractors to coordinate such storage space needs well in advance with Contractor.

**§ 6.2.2** If part of the Contractor's Work depends for proper execution or results upon construction or operations by the Owner or a separate contractor, the Contractor shall, prior to proceeding with that portion of the Work, promptly report to the Architect and the Owner apparent discrepancies or defects in such other construction that would render it unsuitable for such proper execution and results. Failure of the Contractor so to report shall constitute an acknowledgment that the Owner's or separate contractor's completed or partially completed construction is fit and proper to receive the Contractor's Work, except as to defects not then reasonably discoverable.

…

If a dispute arises among the Contractor, separate contractors and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may clean up and ~~the Architect~~ will allocate the cost among those responsible.
**PAGE 18**

**§ 7.1.2** A Change Order shall be based upon agreement among the ~~Owner, Contractor and Architect;~~ Owner and the Contractor; a Construction Change Directive requires agreement by the Owner and Architect and may or may not be agreed to by the Contractor; an order for a minor change in the Work may be issued by the Architect alone.

…

**§ 7.2.1** A Change Order is a written instrument prepared by the Architect  and the Owner and signed by the Owner, Contractor and Architect stating their agreement upon all of the following:

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties.** Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                          (1128951649)

**24**

...

Intentionally Deleted

**§ 7.3.1** A Construction Change Directive is a written order prepared by the Architect and signed by the Owner and Architect, directing a change in the Work prior to agreement on adjustment, if any, in the Contract Sum or Contract Time, or both. The Owner may by Construction Change Directive, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly.

**§ 7.3.2** A Construction Change Directive shall be used in the absence of total agreement on the terms of a Change Order.

**§ 7.3.3** If the Construction Change Directive provides for an adjustment to the Contract Sum, the adjustment shall be based on one of the following methods:

.1 Mutual acceptance of a lump sum properly itemized and supported by sufficient substantiating data to permit evaluation;

.2 Unit prices stated in the Contract Documents or subsequently agreed upon;

.3 Cost to be determined in a manner agreed upon by the parties and a mutually acceptable fixed or percentage fee; or

.4 As provided in Section 7.3.7.

**§ 7.3.4** If unit prices are stated in the Contract Documents or subsequently agreed upon, and if quantities originally contemplated are materially changed in a proposed Change Order or Construction Change Directive so that application of such unit prices to quantities of Work proposed will cause substantial inequity to the Owner or Contractor, the applicable unit prices shall be equitably adjusted.

**§ 7.3.5** Upon receipt of a Construction Change Directive, the Contractor shall promptly proceed with the change in the Work involved and advise the Architect of the Contractor's agreement or disagreement with the method, if any, provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or Contract Time.

**§ 7.3.6** A Construction Change Directive signed by the Contractor indicates the Contractor's agreement therewith, including adjustment in Contract Sum and Contract Time or the method for determining them. Such agreement shall be effective immediately and shall be recorded as a Change Order.

**§ 7.3.7** If the Contractor does not respond promptly or disagrees with the method for adjustment in the Contract Sum, the Architect shall determine the method and the adjustment on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, an amount for overhead and profit as set forth in the Agreement, or if no such amount is set forth in the Agreement, a reasonable amount. In such case, and also under Section 7.3.3.3, the Contractor shall keep and present, in such form as the Architect may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the Contract Documents, costs for the purposes of this Section 7.3.7 shall be limited to the following:

.1 Costs of labor, including social security, old age and unemployment insurance, fringe benefits required by agreement or custom, and workers' compensation insurance;

.2 Costs of materials, supplies and equipment, including cost of transportation, whether incorporated or consumed;

.3 Rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Contractor or others;

.4 Costs of premiums for all bonds and insurance, permit fees, and sales, use or similar taxes related to the Work; and

.5 Additional costs of supervision and field office personnel directly attributable to the change.

**§ 7.3.8** The amount of credit to be allowed by the Contractor to the Owner for a deletion or change that results in a net decrease in the Contract Sum shall be actual net cost as confirmed by the Architect. When both additions and credits

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**
(1128951649)

covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change.

**§ 7.3.9** Pending final determination of the total cost of a Construction Change Directive to the Owner, the Contractor may request payment for Work completed under the Construction Change Directive in Applications for Payment. The Architect will make an interim determination for purposes of monthly certification for payment for those costs and certify for payment the amount that the Architect determines, in the Architect's professional judgment, to be reasonably justified. The Architect's interim determination of cost shall adjust the Contract Sum on the same basis as a Change Order, subject to the right of either party to disagree and assert a Claim in accordance with Article 15.

**§ 7.3.10** When the Owner and Contractor agree with a determination made by the Architect concerning the adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and the Architect will prepare a Change Order. Change Orders may be issued for all or any part of a Construction Change Directive.

The Architect has authority to order minor changes in the Work not involving adjustment in the Contract Sum or extension of the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes will be effected by written order signed by the Architect and shall be binding on the Owner and ~~Contractor.~~ Contractor upon written approval by the Owner.
**PAGE 19**

**§8.2.4** The Contractor and the Owner agree that in the event the Owner and Contractor determine that the Contractor is behind the time schedule requirements of the Contract Documents to such extent that the Contractor will be unable to meet any date specified in the Agreement, if such delay is due solely to the Contractor, the Contractor shall, at a cost which shall not cause an adjustment to the Contract Sum, employ such additional forces, work such additional shifts or pay such additional overtime wages as may be required to place the progress of the Work in conformance with the Time Schedule and the latest permitted dates of Substantial Completion and Final Completion,  The Owner shall determine when the Contractor has achieved the appropriate level of progress necessary to satisfy the Contractor's obligations to meet the above-referenced dates.

**§ 8.3.1** If the Contractor is delayed at any time in the commencement or progress of the Work by an act or neglect of the Owner or Architect, or of an employee of either, or by the Owner or manager of the building in which the Project is constructed, or of a separate contractor employed by the Owner; or by changes ordered in the Work; or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties or other causes beyond the Contractor's control; or by delay authorized by the Owner pending mediation and arbitration; or by other causes that the Architect determines may justify ~~delay,~~ delay (each of the above, an "Excused Delay"), then the Contract Time shall be extended by Change Order for such reasonable time as the ~~Architect~~ Owner may determine.

…

**§ 8.3.3** This Section 8.3 does not preclude recovery of damages for delay by either party under other provisions of the Contract Documents.  Notwithstanding anything herein to the contrary, if the Owner elects to provide an extension to the Contract Time under section 8.3.1 above, the extension shall be the sole remedy of the Contractor for any delay in commencement in prosecution, or completion of the Work, for any reason.  Except for any additional cost agreed to in a change order pursuant to Section 8.3.1, in the event of a time extension as a result of an Excused Delay, Owner shall pay Contractor for all reasonable extended general conditions costs incurred by Contractor as a result thereof, plus Contractor's agreed upon fee, overhead , and insurance.  In no event shall the Contractor be entitled to recovery of any damages in connection with any delays, such as consequential damages, impact damages, or other costs regardless of the extent or frequency of such delays, all of which claims are hereby expressly waived.

…

Where the Contract is based on a stipulated sum or Guaranteed Maximum Price, the Contractor shall submit to the ~~Architect,~~ Architect and the Owner, before the first Application for Payment, a schedule of values allocating the entire Contract Sum to the various portions of the Work and prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the ~~Architect,~~ Architect or the Owner, shall be used as a basis for reviewing the Contractor's Applications for Payment.

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                         (1128951649)

...

**§ 9.3.1** At least ten days before the date established for each progress payment, the Contractor shall submit to the Architect <u>and the Owner</u> an itemized Application for Payment prepared in accordance with the schedule of values, if required under Section ~~9.2,~~ 9.2., for completed portions of the Work. Such application shall be ~~notarized, if required, and supported by such data substantiating the Contractor's right to payment as the Owner or Architect may require, such as copies of requisitions from Subcontractors and material suppliers, and shall reflect retainage if provided for in the Contract Documents.~~<u>notarized and shall include such data and information as requested by the Owner or Architect, including, (i) a current Contractor's lien waiver together with percentage lien waivers from subcontractors and suppliers as set forth more fully in paragraph 9.3.3.1 below; (ii) all information on materials required to comply with the requirements of the Contract Documents or reasonably requested by the Owner or the Architect.</u>

**§ 9.3.1.1** ~~As provided in Section 7.3.9, such applications may include requests for payment on account of changes in the Work that have been properly authorized by Construction Change Directives, or by interim determinations of the Architect, but not yet included in Change Orders.~~<u>Applications for Payment shall not include requests for payment for portions of the Work for which the Contractor does not intend to pay a Subcontractor or material supplier, unless such Work has been performed by others whom the Contractor intends to pay.</u>

**§ 9.3.1.2** ~~Applications for Payment shall not include requests for payment for portions of the Work for which the Contractor does not intend to pay a Subcontractor or material supplier, unless such Work has been performed by others whom the Contractor intends to pay.~~

**§ 9.3.2** Unless otherwise provided in the Contract Documents, payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in <u>writing, in</u> advance by the Owner, payment may similarly be made for materials and equipment suitably stored off the site at a location agreed upon in writing. Payment for materials and equipment stored on or off the site shall be conditioned upon compliance by the Contractor with procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest, and shall include the costs of applicable insurance, storage and transportation to the site for such materials and equipment stored off the site.  <u>The Contractor shall also comply with the following: (i) the aggregate cost of materials stored off site shall not occur at any time without the Owner's written approval; (ii) documentation vesting title in such materials shall be provided in a form satisfactory to the Owner; (iii) the Contractor shall identify each location where materials are stored off the Project site and the value of materials at each location; (iv) the Contractor shall maintain insurance for the items stored off the Project site; (v) representatives of the Owner shall have the right to inspect the storage areas for such materials at any time.  If any of the materials stored off of the Project Site shall be damaged, lost, stolen or destroyed after title to such materials has passed to the Owner, the Contractor shall repair or replace any such damaged, lost, stolen or destroyed materials at Contractor's sole cost and shall have no right to any adjustment of the Contract Sum.</u>

**§ 9.3.3** The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment all Work for which ~~Certificates for Payment have been previously issued and~~ payments received from the Owner shall, ~~to the best of the Contractor's knowledge, information and belief,~~ be free and clear of liens, claims, security interests or encumbrances in favor of the Contractor, Subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating to the Work.

**§ 9.4 CERTIFICATES FOR PAYMENT**
**§ 9.4.1** ~~The Architect will, within seven days after receipt of the Contractor's Application for Payment, either issue to the Owner a Certificate for Payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part as provided in Section 9.5.1.~~

**§ 9.4.2** ~~The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluation of the Work and the data comprising the Application for Payment, that, to the best of the Architect's knowledge, information and belief, the Work has progressed to the point indicated and that the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests~~

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                                                (1128951649)

~~and inspections, to correction of minor deviations from the Contract Documents prior to completion and to specific qualifications expressed by the Architect. The issuance of a Certificate for Payment will further constitute a representation that the Contractor is entitled to payment in the amount certified. However, the issuance of a Certificate for Payment will not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.~~

~~**§ 9.5 DECISIONS TO WITHHOLD CERTIFICATION**~~
~~**§ 9.5.1** The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Section 9.4.2 cannot be made. If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and Owner as provided in Section 9.4.1. If the Contractor and Architect cannot agree on a revised amount, the Architect will promptly issue a Certificate for Payment for the amount for which the Architect is able to make such representations to the Owner. The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Section 3.3.2, because of~~

> ~~.1 defective Work not remedied;~~
> ~~.2 third party claims filed or reasonable evidence indicating probable filing of such claims unless security acceptable to the Owner is provided by the Contractor;~~
> ~~.3 failure of the Contractor to make payments properly to Subcontractors or for labor, materials or equipment;~~
> ~~.4 reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum;~~
> ~~.5 damage to the Owner or a separate contractor;~~
> ~~.6 reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; or~~
> ~~.7 repeated failure to carry out the Work in accordance with the Contract Documents.~~

~~**§ 9.5.2** When the above reasons for withholding certification are removed, certification will be made for amounts previously withheld.~~

~~**§ 9.5.3** If the Architect withholds certification for payment under Section 9.5.1.3, the Owner may, at its sole option, issue joint checks to the Contractor and to any Subcontractor or material or equipment suppliers to whom the Contractor failed to make payment for Work properly performed or material or equipment suitably delivered. If the Owner makes payments by joint check, the Owner shall notify the Architect and the Architect will reflect such payment on the next Certificate for Payment.~~

**§ 9.3.3.1** The Contractor shall provide a signed partial lien waiver (in the form attached hereto as Exhibit C) with all Applications for Payment as an express condition precedent to payment.  The Contractor shall also require its Subcontractors to furnish partial lien waivers (in the form attached hereto as Exhibit C) with all Applications for Payment as an express condition precedent to payment.  The Contractor will be required to provide a signed final waiver of lien (on form provided by the Owner as part of the Contract Documents) with its final Application for Payment and require its Subcontractors to provide signed final waivers acknowledging that the subcontractor has been paid in full for its work on the Project with their final Applications for Payment.  The Contractor shall provide a Statement of Sales and/or Use Tax (on form provided by the Owner) with the Final Application for Payment.

**§ 9.3.3.2** The Contractor shall defend and indemnify the Owner against any actions, lawsuits or proceedings brought against the Owner as a result of liens or claims filed against the Work, by Contractor's subcontractor or suppliers. Notwithstanding the foregoing, in the event that Contractor fails to cause the discharge of Lien, after Owner having provided Contractor with ten (10) day's written notice thereof provided that Owner has paid Contractor for the work that forms the basis of a mechanic's lien, the Owner may cause such Lien to be discharged by bond, and Contractor shall reimburse Owner for the cost of bond premiums and all reasonable attorneys' fees incurred by Owner in causing the discharge of the lien.  Absent express written authorization by Contractor, Owner may not pay a Lien claimant directly to cause the discharge of a Lien. To the extent that the Contractor intends to dispute any such claims, the

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
User Notes:                                                                                                                                                (1128951649)

Contractor shall inform the Owner of any such disputed claim within thirty (30) days of the Contractor's notification of such claim.

§ 9.3.4 After prior notification to the Contractor, and only in the event that Owner has obtained substantial, credible evidence that Contractor has failed to timely pay any Subcontractor, Owner may make payment requested by the Contractor on behalf of a Subcontractor by check jointly payable to the Contractor and such Subcontractor(s).  In no event shall any joint payment be construed to create any contractual relationship or obligation between the Owner and any Subcontractor of any tier, nor shall such check payment relieve the Contractor from its obligation to pay remaining funds properly due and owing Subcontractors or suppliers of any tier and to indemnify the Owner from any claims resulting from nonpayment.  Any and all sums paid by the Owner to any of the Contractor's Subcontractors or suppliers of any tier shall be offset against amounts otherwise due and owing to the Contractor by the Owner.  To the extent that the Owner makes payments to the Contractor's Subcontractors and suppliers in amounts that are in excess of any amounts due and owing under this Agreement, the Contractor shall reimburse for any such amounts paid or, at the Owner's election, the Owner may offset such amounts against amounts otherwise due and owing to the Contractor.

§ 9.6.1 After the ~~Architect has issued a Certificate for Payment,~~ Contractor has issued an Application for Payment that fully complies with the provisions of the Contract Documents, the Owner shall make payment in the manner and within the time provided in the Contract ~~Documents, and shall so notify the Architect.~~Documents.
**PAGE 21**

§ 9.6.3 The Architect will, on request, furnish to a ~~Subcontractor,~~ Subcontractor if practicable, information regarding percentages of completion or amounts applied for by the Contractor and action taken thereon by the Architect and Owner on account of portions of the Work done by such Subcontractor.

…

§ 9.6.6 A Certificate ~~for Payment, a~~ progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents.

§ 9.6.7 Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor for Work properly performed by Subcontractors and suppliers shall be held by the Contractor for those Subcontractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor for which payment was made by the Owner. ~~Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor, shall create any fiduciary liability or tort liability on the part of the Contractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor for breach of the requirements of this provision.~~

…

If ~~the Architect does not issue a Certificate for Payment, through no fault of the Contractor, within seven days after receipt of the Contractor's Application for Payment, or if~~ after the delivery to the Owner of an Application for Payment that meets the requirements of the Contract Documents, the Owner does not pay the Contractor within seven days after the date established in the Contract Documents ~~the amount certified by the Architect or awarded by binding dispute resolution,~~ such amount as is owing under the Contract Documents, then the Contractor may, upon seven additional days' written notice to the Owner and Architect, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-down, delay and start-up, including any material or escalation costs incurred, plus interest as provided for in the Contract Documents.

§ 9.7.1 If the Owner is entitled to reimbursement or payment from the Contractor under or pursuant to the Contract Documents, such payment shall be made promptly upon demand by the Contractor.  Notwithstanding anything contained in the Contract Documents to the contrary, if the Contractor fails to promptly make any payment due the Owner, or if the Owner incurs any costs and expenses to cure a default of the Contractor or to correct defective Work, the Owner shall have an absolute right to offset such amount against the Contract Sum and may, in the Owner's sole discretion, elect either to (i) deduct an amount equal to that which the Owner is entitled from any payment then or thereafter due

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
User Notes:                                                                                                      (1128951649)

the Contractor from the Owner, or (ii) issue a written notice to the Contractor reducing the Contract Sum by an amount equal to that which the Owner is entitled.

…

**§ 9.8.1** Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use. Substantial Completion shall mean that except for minor deficiencies or minor incomplete work, the Work has been completed.  Contractor and Owner have completed a Punch List (as defined below) of such incomplete work, and that Contractor has obtained and submitted to Owner's expediter skilled trade inspection sign-offs and approvals in a form sufficient for Owners' expediter to call for a NYCDOB temporary certificate of occupancy ("TCO") inspection.

**§ 9.8.2** When the Contractor considers that the Work, or a portion thereof which the Owner agrees to accept separately, is substantially complete, the Contractor shall prepare and submit to the Architect and the Owner a comprehensive list of items to be completed or corrected prior to final payment. payment (the "Punch List") . Failure to include an item on such list the Punch List does not alter the responsibility of the Contractor to complete all Work in accordance with the Contract Documents.

**§ 9.8.3** Upon receipt of the Contractor's list, the Architect Punch List, the Architect and the Owner will make an inspection to determine whether the Work or designated portion thereof is substantially complete. If the Architect's or the Owner's inspection discloses any item, whether or not included on the Contractor's list, Punch List, which is not sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work or designated portion thereof for its intended use, the Contractor shall, before issuance of the Certificate of Substantial Completion, obtain either a temporary Certificate of Occupancy or a permanent Certificate of Occupancy, the Contractor shall complete or correct such item upon notification by the Architect. In such case, the Contractor shall then submit a request for another inspection by the Architect to determine Substantial Completion.Architect and the Owner.
**PAGE 22**

**§ 9.8.5** The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate. Upon such acceptance acceptance, completion of all work or items contained on the list required by Section 9.8.2 and, if necessary and consent of surety, if any, the Owner shall make payment of retainage applying to such Work or designated portion thereof. Such payment shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Contract Documents.

…

**§ 9.9.1** The Owner may occupy or use any completed or partially completed portion of the Work at any stage when such portion is designated by separate agreement with the Contractor, provided such occupancy or use is consented to by the insurer as required under Section 11.3.1.5 and authorized by public authorities having jurisdiction over the Project. Such partial occupancy or use may commence whether or not the portion is substantially complete, provided the Owner and Contractor have accepted in writing the responsibilities assigned to each of them for payments, retainage, if any, security, maintenance, heat, utilities, damage to the Work and insurance, and have agreed in writing concerning the period for correction of the Work and commencement of warranties required by the Contract Documents. When the Contractor considers a portion substantially complete, the Contractor shall prepare and submit a list to the Architect and the Owner as provided under Section 9.8.2. Consent of the Contractor to partial occupancy or use shall not be unreasonably withheld. The stage of the progress of the Work shall be determined by written agreement between the Owner and Contractor or, if no agreement is reached, by decision of the Architect.Contractor..

…

**§ 9.10.1** Upon receipt of the Contractor's written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection and, when the Architect finds the Work acceptable under the Contract Documents and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment stating that to the best of the Architect's knowledge, information and belief, and on the basis of the Architect's on-site visits and inspections, the Work has been completed in

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                                      (1128951649)

accordance with terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor and noted in the final Certificate is due and payable. The Architect's final Certificate for Payment will constitute a further representation that conditions listed in Section 9.10.2 as precedent to the Contractor's being entitled to final payment have been fulfilled.Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect and the Owner  (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amounts withheld by Owner) have been paid or otherwise satisfied, (2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner, (3) a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period required by the Contract Documents, (4) consent of surety, if any, to final payment and (5) receipt by the Owner of all operation and maintenance manuals; (6) completion of all items contained on the list required by Section 9.8.2; and (7) all warranties and guarantees required or pursuant to the Contract Documents shall be assembled and delivered by the Contractor to the Owner as part of the final Application for Payment and, if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts, releases and waivers of liens, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner. If a Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against such lien. If such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees.

**§ 9.10.2** Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amounts withheld by Owner) have been paid or otherwise satisfied, (2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner, (3) a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period required by the Contract Documents, (4) consent of surety, if any, to final payment and (5), if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts, releases and waivers of liens, claims, The making of final payment shall constitute a waiver of Claims by the Owner except those arising from

    **.1**    liens, Claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner. If a Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against such lien. If such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees.Contract and unsettled;

    **.2**    failure of the Work to comply with the requirements of the Contract Documents; or

    **.3**    terms of special warranties required by the Contract Documents.

**§ 9.10.3** If, after Substantial Completion of the Work, final completion thereof is materially delayed through no fault of the Contractor or by issuance of Change Orders affecting final completion, and the Architect so confirms, the Owner shall, upon application by the Contractor and certification by the Architect, and without terminating the Contract, make payment of the balance due for that portion of the Work fully completed and accepted. If the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the Contract Documents, and if bonds have been furnished, the written consent of surety to payment of the balance due for that portion of the Work fully completed and accepted shall be submitted by the Contractor to the Architect prior to certification of such payment. Such payment shall be made under terms and conditions governing final payment, except that it shall not constitute a waiver of claims.Acceptance of final payment by the Contractor, a Subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

**§ 9.10.4** The making of final payment shall constitute a waiver of Claims by the Owner except those arising from

    **.1**    liens, Claims, security interests or encumbrances arising out of the Contract and unsettled;

    **.2**    failure of the Work to comply with the requirements of the Contract Documents; or

    **.3**    terms of special warranties required by the Contract Documents.

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                                                    (1128951649)

**§ 9.10.5** ~~Acceptance of final payment by the Contractor, a Subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.~~

**§ 9.11 RETENTION OF LIEN WAIVERS** Duplicate originals of the Subcontractor and materialmen's liens, waivers and releases shall remain on file at the Contractor's office for inspection by the Owner for a period of one (1) year after final payment.

**PAGE 23**

The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the ~~Contract.~~ Contract including the Neiman Marcus Safety Manual, which is part of the Contract Documents, and which is a guide outlining minimum acceptable safety standards that must be adhered to by the Contractor.

**PAGE 24**

If either party suffers injury or damage to person or property because of an act or omission of the other party, or of others for whose acts such party is legally responsible, written notice of such injury or damage, whether or not insured, shall be given ~~to the other party within a reasonable time not exceeding 21 days after discovery.~~ immediately.. The notice shall provide sufficient detail to enable the other party to investigate the matter.

…

**§ 10.3.1** The Contractor is responsible for compliance with any requirements included in the Contract Documents regarding hazardous materials. If the Contractor encounters a hazardous material or substance not addressed in the Contract Documents and if reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a ~~material or substance,~~ concealed and undiscovered hazardous material or substance as defined in any applicable statute or industry standard, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing.

…

**§ 10.3.3** ~~To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Subcontractors, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Section 10.3.1 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), except to the extent that such damage, loss or expense is due to the fault or negligence of the party seeking indemnity.~~Intentionally Deleted

**§ 10.3.4** The Owner shall ~~not be responsible under this Section 10.3 for materials or substances the Contractor brings to the site unless such materials or substances are required by the Contract Documents. The Owner shall~~ be responsible for materials or substances required by the Contract Documents, except to the extent of the Contractor's fault or negligence in the use and handling of such materials or substances.

…

**§ 10.3.6** If, without negligence on the part of the Contractor, the Contractor is held liable by a government agency for the cost of remediation ~~of a~~ or any fines related to any hazardous material or substance solely by reason of performing the Work as required by the Contract Documents, ~~the Owner shall indemnify the~~ and such hazardous material or substance was introduced to the site by Owner's Contractors, the Owner shall indemnify Contractor for all cost and expense thereby incurred.

**PAGE 25**

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:** (1128951649)

DocuSign Envelope ID: 461FCA36-93F5-45C9-8D82-518CEA3A769A

**ARTICLE 11   INSURANCE AND BONDS**
**ARTICLE 11   INSURANCE**

…

**§ 11.1.2** The insurance required by Section 11.1.1 shall be written for not less than limits of liability specified in the Contract Documents or required by law, whichever coverage is greater. Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from the date of commencement of the Work until the date of final payment and termination of any coverage required to be maintained after final payment, and, with respect to the Contractor's completed operations ~~coverage, until the expiration of the period for correction of Work or for such other period for maintenance of completed operations coverage as specified in the Contract Documents.~~coverage for a period of three (3) years.

**§ 11.1.3** Certificates of insurance acceptable to the Owner shall be filed with the Owner prior to commencement of the Work and thereafter upon renewal or replacement of each required policy of insurance. ~~These certificates and the insurance policies required by this Section 11.1 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner.~~ Policies shall be written as to include the requirements for notice of cancellation or non-renewal in accordance with the New York State Insurance Law. Within five (5) business days or receipt of any notice of cancellation or non-renewal of insurance, the Contractor shall provide Owner with a copy of any such notice received from an insurer together with proof of replacement coverage that complies with the insurance requirements of this Contract.  An additional certificate evidencing continuation of liability coverage, including coverage for completed operations, shall be submitted with the final Application for Payment as required by Section 9.10.2 and thereafter upon renewal or replacement of such coverage until the expiration of the time required by Section 11.1.2. Information concerning reduction of coverage on account of revised limits or claims paid under the General Aggregate, or both, shall be furnished by the Contractor with reasonable promptness.

**§ 11.1.4** The Contractor shall cause the commercial liability coverage required by the Contract Documents to include (1) the Owner, the Architect and the Architect's ~~consultants~~ Consultants as additional insureds for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's operations; and (2) the Owner as an additional insured for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's completed operations.
**PAGE 27**

**§ 11.4 PERFORMANCE BOND AND PAYMENT BOND (Intentionally Deleted)**

~~**§ 11.4.1** The Owner shall have the right to require the Contractor to furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder as stipulated in bidding requirements or specifically required in the Contract Documents on the date of execution of the Contract.~~

~~**§ 11.4.2** Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract, the Contractor shall promptly furnish a copy of the bonds or shall authorize a copy to be furnished.~~

…

**§ 12.1.1** If a portion of the Work is covered contrary to the Architect's or the Owner's request or to requirements specifically expressed in the Contract Documents, it must, if requested in writing by ~~the Architect,~~ the Architect or the Owner, be uncovered for the Architect's or the Owner's examination and be replaced at the Contractor's expense without change in the Contract Time.

**§ 12.1.2** If a portion of the Work has been covered that the ~~Architect~~ Owner has not specifically requested to examine prior to its being covered, the ~~Architect~~ Owner may request to see such Work and it shall be uncovered by the Contractor. If such Work is in accordance with the Contract Documents, costs of uncovering and replacement shall, by appropriate Change Order, be at the Owner's expense. If such Work is not in accordance with the Contract

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                                              (1128951649)

Documents, such costs and the cost of correction shall be at the Contractor's expense unless the condition was caused by the Owner or a separate ~~contractor~~ contractor, or Owner's subcontractor, in which event the Owner shall be responsible for payment of such costs.

**PAGE 28**

The Contractor shall promptly correct Work rejected by the Architect or failing to conform to the requirements of the Contract Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and inspections, the cost of uncovering and replacement, and compensation for the Architect's services and expenses made necessary thereby, shall be at the Contractor's expense. If prior to the date of Substantial Completion the Contractor, a Subcontractor, or anyone for whom either is responsible uses or damages any portion of the Work, including, without limitation, mechanical, electrical, plumbing or any other building systems, machinery, equipment or other mechanical device, the Contractor shall cause such item to be restored to "like new" condition at no expense to the Owner.

…

**§ 12.2.2.1** In addition to the Contractor's obligations under Section 3.5, if, within ~~one~~ one(1) year after the date of Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties established under ~~Section~~ section 9.9.1, or by terms of an applicable special warranty required by the Contract Documents, any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall correct it and shall repair any other property that may have been damaged by the defective Work promptly after receipt of written notice from the Owner to do so unless the Owner has previously given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition. ~~During the one-year period for correction of Work, if the Owner fails to notify the Contractor and give the Contractor an opportunity to make the correction, the Owner waives the rights to require correction by the Contractor and to make a claim for breach of warranty.~~ If the Contractor fails to correct nonconforming Work within a reasonable time during that period after receipt of notice from the Owner or Architect, the Owner may correct it in accordance with Section 2.4.

…

~~**§ 12.2.2.3** The one-year period for correction of Work shall not be extended by corrective Work performed by the Contractor pursuant to this Section 12.2.~~

…

**§ 12.2.5** Nothing contained in this Section 12.2 shall be construed to establish a period of limitation with respect to other obligations the Contractor has under the Contract Documents. ~~Establishment of the one-year period for correction of Work as described in Section 12.2.2 relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the obligation to comply with the Contract Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.~~

…

The Contract shall be governed by the law of the ~~place where the Project is located except that, if the parties have selected arbitration as the method of binding dispute resolution, the Federal Arbitration Act shall govern Section 15.4.~~State of New York without regard to the choice of law principles thereof. Any action brought under this Agreement shall be commenced and venued in the Supreme Court of the State of New York located in New York County, or in the United Stated District Court for the Southern District of New York.

**PAGE 29**

**§ 13.2.1** The Owner and Contractor respectively bind themselves, their partners, successors, assigns and legal representatives to covenants, agreements and obligations contained in the Contract Documents. Except as provided in Section 13.2.2, or as set forth elsewhere in the Contract Documents, neither party to the Contract shall assign the

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                                          (1128951649)

Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

§ **13.2.2** The Owner may, without consent of the Contractor, assign the Contract to a lender ~~providing construction financing for the Project, if the lender assumes the Owner's rights and obligations under the Contract Documents. The Contractor shall execute all consents reasonably required to facilitate such assignment.~~or other entity  providing construction financing or credit enhancement for the Project ("Owners' Assignee"), provided that Owner's Assignee (i) has sufficient assets to pay the Owner's obligations under this Agreement and has demonstrated such credit worthiness to Contractor to Contractor's satisfaction; (ii) Assignee has agreed to assume Owner's obligations hereunder as of the effective date of the Assignment; and (iii) Owner's obligations to Contractor under this Agreement have been paid in full prior to effective date of the Assignment.  In the event Owner does not comply with this provision, Contractor may, but is not obligated to, immediately suspend performance under this Agreement.

…

§ **13.4.1** ~~Duties~~ Except as provided in the Contract Documents, duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.

…

§ **13.5.1** Tests, inspections and approvals of portions of the Work shall be made as required by the Contract Documents and by applicable laws, statutes, ordinances, codes, rules and regulations or lawful orders of public authorities. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the Owner, or with the appropriate public authority, and shall bear all related costs of tests, inspections and approvals. The Contractor shall give the Architect and the Owner timely notice of when and where tests and inspections are to be made so that the Architect and the Owner may be present for such procedures. The Owner shall bear costs of (1) tests, inspections or approvals that do not become requirements until after bids are received or negotiations concluded, and (2) tests, inspections or approvals where building codes or applicable laws or regulations prohibit the Owner from delegating their cost to the Contractor.

§ **13.5.2** If the Architect, Owner or public authorities having jurisdiction determine that portions of the Work require additional testing, inspection or approval not included under Section 13.5.1, the Architect will, upon written authorization from the Owner, instruct the Contractor to make arrangements for such additional testing, inspection or approval by an entity acceptable to the Owner, and the Contractor shall give timely notice to the Architect and the Owner of when and where tests and inspections are to be made so that the Architect and the Owner may be present for such procedures. Such costs, except as provided in Section 13.5.3, shall be at the Owner's expense.

§ **13.5.3** If such procedures for testing, inspection or approval under Sections 13.5.1 and 13.5.2 reveal failure of the portions of the Work to comply with requirements established by the Contract Documents, all costs made necessary by such failure including those of repeated procedures and compensation for the Owner's and Architect's services and expenses shall be at the Contractor's expense.

§ **13.5.4** Required certificates of testing, inspection or approval shall, unless otherwise required by the Contract Documents, be secured by the Contractor and promptly delivered to the ~~Architect.~~Architect and the Owner.

§ **13.5.5** If the Architect or the Owner is to observe tests, inspections or approvals required by the Contract Documents, the Architect and Owner will do so promptly and, where practicable, at the normal place of testing.
**PAGE 30**

Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at ~~such rate as the parties may agree upon in writing or, in the absence thereof, at~~ the legal rate prevailing from time to time at the place where the Project is located.

…

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                            (1128951649)

The Owner and Contractor shall commence all claims and causes of action, whether in contract, tort, breach of warranty or otherwise, against the other arising out of or related to the Contract in accordance with the requirements of the final dispute resolution method selected in the Agreement within the time period specified by applicable ~~law, but in any case not more than 10 years after the date of Substantial Completion of the Work. The Owner and Contractor waive all claims and causes of action not commenced in accordance with this Section 13.7.~~law as extended by any period of discoverability

**§ 13.8** All personal pronouns used in this Contract, whether used in the masculine, feminine, or neuter gender shall include all other genders.  The singular shall include the plural and the plural shall include the singular.  Titles or articles, paragraphs and subparagraphs are for convenience only and neither limit nor amplify the provision of this Contract.  The use of the word "including" when following any general statement, term or matters, shall not be construed to limit such statement, term or matter to the specific items or matters set forth immediately following such word or to similar items or matters, whether or not non-limiting language (such as "without limitation" or "but not limited to") is used with reference thereto, but rather shall be deemed to refer to all other items or matters that could reasonably fall within the broadest possible scope of such general statement, term or matter.

**§ 13.9** Any specific requirement in this Contract that the responsibilities or obligations of the Contractor also apply to a Subcontractor is deemed to include a Subcontractor of any tier.  The omission of a reference to a Subcontractor in connection with any of the Contractor's responsibilities or obligations shall not be construed to diminish, abrogate or limit any responsibilities or obligations of a Subcontractor of any tier under the Contract Documents or the applicable Subcontract.

…

    **.3**   ~~Because the Architect has not issued a Certificate for Payment and has not notified the Contractor of the reason for withholding certification as provided in Section 9.4.1, or because the Owner has not made payment on a Certificate for Payment within the time stated in the Contract Documents; or~~
  **.4**  ~~The Owner has failed to furnish to the Contractor promptly, upon the Contractor's request, reasonable evidence as required by Section 2.2.1.~~**3.**    Because Owner has not made payment owed to Contractor.

…

**§ 14.1.3** If one of the reasons described in Section 14.1.1 or 14.1.2 exists, the Contractor may, upon seven days' written notice to the Owner and Architect, terminate the Contract and recover from the Owner payment for Work executed, including reasonable overhead and profit, costs incurred by reason of such ~~termination, and damages.~~ termination.
**PAGE 31**

    **.3**  ~~repeatedly~~ disregards applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of a public authority; or
    **.4**  otherwise is guilty of ~~substantial~~ a material breach of a provision of the Contract Documents.
    **.5**  any Subcontractor of the Contractor, (a) files a mechanic's lien and Contractor fails to cause the discharge of such lien, subject to Section 9.3.3.2 above; or (b) commences any action in any court that in names Owner (or the owner of the shopping center of which the Project is a part of and/or the owner of the building in which the Project is located and/or the owner of the property on which the Project is situated, as the case may be, and their respective officers, agents, and employees) as a defendant in such action , and Contractor fails to indemnify and immediately assume the defense of Owner.

**§ 14.2.2** When any of the above reasons ~~exist, the Owner, upon certification by the Initial Decision Maker that sufficient cause exists to justify such action,~~ exist and provided that Owner has given Contractor a reasonable opportunity to cure (or commence to cure) any alleged default, the Owner may without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven days' written notice, terminate employment of the Contractor and may, subject to any prior rights of the surety:

…

**§ 14.2.4** If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, and other damages incurred by the Owner and not

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:** (1128951649)

expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or Owner, as the case may be, shall ~~be certified by the Initial Decision Maker, upon application, and this obligation for payment shall~~ survive termination of the Contract.

…

    **.2**    take actions necessary, or that the Owner may direct, for the protection and preservation of the ~~Work;~~ Work including, without limitation, the assignment of such Subcontractors as are directed by the Owner; and

**PAGE 32**

**§ 14.4.3** In case of such termination for the Owner's convenience, the Contractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, <u>including without limitation demobilization costs, and material restocking charges,</u> along with reasonable overhead and profit on the Work not executed.  <u>The amounts owing to the Contractor pursuant to the preceding sentence shall be as specified in the Contractor's final Application for Payment and supported by proper records.  The Contractor's entitlement to receive its final termination payment under this section shall require a final Lien Waiver from the Contractor and from all Subcontractors whose Subcontracts are not being continued by the Owner, such documents to be the same form and delivered under the same conditions as Final Payment absent a termination under this section.</u>

…

Claims by either the Owner or Contractor must be initiated by written notice to the other ~~party and to the Initial Decision Maker with a copy sent to the Architect, if the Architect is not serving as the Initial Decision Maker.~~ party. Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later.

…

Pending final resolution of a Claim, except as otherwise agreed in writing or as provided in Section 9.7 and Article 14, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents. ~~The Architect will prepare Change Orders and issue Certificates for Payment in accordance with the decisions of the Initial Decision Maker.~~

…

    **.2**    damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of ~~profit except anticipated profit arising directly from the Work.~~profit.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 14. ~~Nothing contained in this Section 15.1.6 shall be deemed to preclude an award of liquidated damages, when applicable, in accordance with the requirements of the Contract Documents.~~

**§ ~~15.2 INITIAL DECISION~~**
**§ ~~15.2.1 Claims, excluding those arising under Sections 10.3, 10.4, 11.3.9, and 11.3.10, shall be referred to the Initial Decision Maker for initial decision. The Architect will serve as the Initial Decision Maker, unless otherwise indicated in the Agreement. Except for those Claims excluded by this Section 15.2.1, an initial decision shall be required as a condition precedent to mediation of any Claim arising prior to the date final payment is due, unless 30 days have passed after the Claim has been referred to the Initial Decision Maker with no decision having been rendered. Unless the Initial Decision Maker and all affected parties agree, the Initial Decision Maker will not decide disputes between the Contractor and persons or entities other than the Owner.~~**

**§ ~~15.2.2 The Initial Decision Maker will review Claims and within ten days of the receipt of a Claim take one or more of the following actions: (1) request additional supporting data from the claimant or a response with supporting data from the other party, (2) reject the Claim in whole or in part, (3) approve the Claim, (4) suggest a compromise, or (5)~~**

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                 (1128951649)

DocuSign Envelope ID: 461ECA36-93F5-45C9-9D82-548CEA3A7689

advise the parties that the Initial Decision Maker is unable to resolve the Claim if the Initial Decision Maker lacks sufficient information to evaluate the merits of the Claim or if the Initial Decision Maker concludes that, in the Initial Decision Maker's sole discretion, it would be inappropriate for the Initial Decision Maker to resolve the Claim.

**§ 15.2.3** In evaluating Claims, the Initial Decision Maker may, but shall not be obligated to, consult with or seek information from either party or from persons with special knowledge or expertise who may assist the Initial Decision Maker in rendering a decision. The Initial Decision Maker may request the Owner to authorize retention of such persons at the Owner's expense.

**§ 15.2.4** If the Initial Decision Maker requests a party to provide a response to a Claim or to furnish additional supporting data, such party shall respond, within ten days after receipt of such request, and shall either (1) provide a response on the requested supporting data, (2) advise the Initial Decision Maker when the response or supporting data will be furnished or (3) advise the Initial Decision Maker that no supporting data will be furnished. Upon receipt of the response or supporting data, if any, the Initial Decision Maker will either reject or approve the Claim in whole or in part.

**§ 15.2.5** The Initial Decision Maker will render an initial decision approving or rejecting the Claim, or indicating that the Initial Decision Maker is unable to resolve the Claim. This initial decision shall (1) be in writing; (2) state the reasons therefor; and (3) notify the parties and the Architect, if the Architect is not serving as the Initial Decision Maker, of any change in the Contract Sum or Contract Time or both. The initial decision shall be final and binding on the parties but subject to mediation and, if the parties fail to resolve their dispute through mediation, to binding dispute resolution.

**§ 15.2.6** Either party may file for mediation of an initial decision at any time, subject to the terms of Section 15.2.6.1.

**§ 15.2.6.1** Either party may, within 30 days from the date of an initial decision, demand in writing that the other party file for mediation within 60 days of the initial decision. If such a demand is made and the party receiving the demand fails to file for mediation within the time required, then both parties waive their rights to mediate or pursue binding dispute resolution proceedings with respect to the initial decision.

**§ 15.2.7** In the event of a Claim against the Contractor, the Owner may, but is not obligated to, notify the surety, if any, of the nature and amount of the Claim. If the Claim relates to a possibility of a Contractor's default, the Owner may, but is not obligated to, notify the surety and request the surety's assistance in resolving the controversy.

**§ 15.2.8** If a Claim relates to or is the subject of a mechanic's lien, the party asserting such Claim may proceed in accordance with applicable law to comply with the lien notice or filing deadlines.

**§ 15.3 MEDIATION**
**§ 15.3.1** Claims, disputes, or other matters in controversy arising out of or related to the Contract except those waived as provided for in Sections 9.10.4, 9.10.5, and 15.1.6 shall be subject to mediation as a condition precedent to binding dispute resolution.

**§ 15.3.2** The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Mediation Procedures in effect on the date of the Agreement. A request for mediation shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the mediation. The request may be made concurrently with the filing of binding dispute resolution proceedings but, in such event, mediation shall proceed in advance of binding dispute resolution proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order. If an arbitration is stayed pursuant to this Section 15.3.2, the parties may nonetheless proceed to the selection of the arbitrator(s) and agree upon a schedule for later proceedings.

**§ 15.3.3** The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

**Additions and Deletions Report for AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                          (1128951649)

# *Certification of Document's Authenticity*

## *AIA® Document D401™ – 2003*

I,   , hereby certify, to the best of my knowledge, information and belief, that I created the attached final document simultaneously with its associated Additions and Deletions Report and this certification at 15:48:49 on 12/04/2017 under Order No. 7177100892 from AIA Contract Documents software and that in preparing the attached final document I made no changes to the original text of AIA® Document A201™ – 2007, General Conditions of the Contract for Construction , as published by the AIA in its software, other than those additions and deletions shown in the associated Additions and Deletions Report.


_____
*(Signed)*


_____
*(Title)*


_____
*(Dated)*

**AIA Document D401™ – 2003.** Copyright © 1992 and 2003 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:48:49 on 12/04/2017 under Order No.7177100892 which expires on 09/18/2018, and is not for resale.
**User Notes:**                                                                                                       (1128951649)

1

Neiman Marcus - AIA Breakouts

| Cost Code | Trade Description | Material | Labor | Trade Value Minus Expenses |
|---|---|---|---|---|
| 0211000000 | Survey | $0.00 | $34,133.00 | $34,133.00 |
| 01530 | Scaffolding - Safway Atlantic | $0.00 | $614,389.00 | $614,389.00 |
| 01580 | Interior Demolition - Liberty | $0.00 | $346,203.00 | $346,203.00 |
| 03300 | Concrete - Tangent | $94,275.07 | $377,100.28 | $471,375.35 |
| 05120 | Steel - Burgess | $84,508.60 | $1,605,663.40 | $1,690,172.00 |
| 07100 | Roofing | $17,553.90 | $40,959.10 | $58,513.00 |
| 07250 | Fireproofing - Tangent | $22,391.00 | $89,564.00 | $111,955.00 |
| 08115 | HM & HW - Park Avenue | $301,406.53 | | $301,406.53 |
| 08500 | Arch. M&G - Lafayette | $1,598,460.00 | $1,065,640.00 | $2,664,100.00 |
| 09210 | Drywall - Interstate | $1,374,880.71 | $5,172,170.29 | $6,547,051.00 |
| 09630 | Stone & Tile - Jantile | $1,203,777.60 | $2,808,814.40 | $4,012,592.00 |
| 09640 | Wood Floor - Platinum Wood Floors | $33,940.76 | $44,991.24 | $78,932.00 |
| 09670 | RF-100 Flooring - Stonhard | $103,046.86 | $252,287.14 | $355,334.00 |
| 09680 | Carpet/VCT/Base - Consolidated | $135,222.98 | $405,668.93 | $540,891.91 |
| 09720 | Wallcovering - JTC | $217,846.86 | $139,279.14 | $357,126.00 |
| 09925 | Paint - JTC | $171,438.75 | $514,316.25 | $685,755.00 |
| 10150 | Signage - Signs & Decal Corp. | $55,119.60 | $21,435.40 | $76,555.00 |
| 10270 | Toilet Accessories - DTS | $57,667.08 | $0.00 | $57,667.08 |
| 10520 | Fire Extinguishers - DTS | $22,644.00 | $0.00 | $22,644.00 |
| 11400 | FSE - Singer Equipment | $498,872.88 | $184,514.63 | $683,387.51 |
| 12210 | Window Treatment - International Blinds | $19,842.30 | $2,204.70 | $22,047.00 |
| 14210 | Elevators - Thyssenkrupp | $101,087.28 | $139,596.72 | $240,684.00 |
| 32200 | Sprinklers - Rael | $443,177.19 | $1,329,531.56 | $1,772,708.75 |
| 34140 | Plumbing - Lab | $321,078.87 | $1,207,868.13 | $1,528,947.00 |
| 35600 | HVAC - PJ Mechanical | $551,408.16 | $6,341,193.84 | $6,892,602.00 |
| 36150 | Electric - RB Samuels | $1,276,764.00 | $7,234,996.00 | $8,511,760.00 |
| | **Sub-Totals:** | **$8,706,410.98** | **$29,972,520.15** | **$38,678,931.13** |
| 00750 | Project Management Team | | | $1,396,400.00 |
| 00750 | Site Supervision/Staffing/Permit Coordination Fee | | | $1,515,364.96 |
| 00750 | Site Safety & PILOST Accounting | | | $225,000.00 |
| 00750 | Field Office Expenses | | | $122,700.00 |
| 00750 | Roosevelt Field Tour | | | $18,264.00 |
| 00750 | Gala Opening | | | $25,541.00 |
| 01520 | Temporary Facilities & Field Offices | | | $124,987.00 |
| 01530 | Progressive Clean-Up | | | $1,600,044.96 |
| 01530 | Final Cleaning | | | $99,507.00 |
| 01530 | Dumpster Allowance | | | $179,071.20 |
| 01550 | Temporary Construction/Protection | | | $900,192.00 |
| | **Sub-Totals:** | | | **$44,886,003.25** |
| 00760 | Interior General Contractor Fee | | | **$1,146,875.66** |
| 00770 | Interior GC Insurance | | | **$822,883.09** |
| | **LUMP SUM GENERAL CONSTRUCTION BID** | | | **$46,855,762.00** |

## Neiman Marcus Cost Variation Sheet

9/28/2017

**JRM Stipulated Sum Proposal (9/19/2017)**   **$47,369,973.61**

| | | | |
|---|---|---|---|
| **Ancillary Costs** | | | |
| Furniture Vendor Coordination | ($75,000.00) | Removed | |
| Patching after move-in | ($75,000.00) | Removed | |
| Paint Touch-Up | ($30,600.00) | Removed | |
| **Sub-Total Ancillary Costs:** | | | ($180,600.00) |
| **Mock-Ups** | | | |
| Arch. Metal & Glass | ($135,561.00) | Removed | |
| Structural Steel | ($54,935.00) | Removed | |
| **Sub-Total Mock-Ups:** | | | ($190,496.00) |
| **SoW Items Removed** | | | |
| **Arch. Metal & Glass** | | | |
| Include an additional 3 Team Days per floor to come back and adjust / touch up all finish work post client move in. | ($50,000.00) | Removed | |
| Include an additional 3 Team Days on a Saturday per floor for out of phase work. | ($50,000.00) | Removed | |
| Include additional (1) man for (3) weeks per floor for protection / maintenance of protection at the start & end of every day. | ($30,000.00) | Reduced to 15 man days. | |
| **Wood Flooring** | | | |
| Subcontractor to include two (2) team days on a Saturday to expedite installation before client move-in. | ($4,800.00) | Removed | |
| **Carpet** | | | |
| Subcontractor to include eight (8) team days per floor with material for re-stretching after other trades before client move-in. This is above and beyond the phasing required for each floors installation. | ($50,400.00) | Removed | |
| **Painting** | | | |
| Subcontractor to include additional touch-ups / grand opening (5) five team days per floor on overtime. | ($39,900.00) | Removed | |
| **Scaffolding** | | | |
| Provide 2 additional months of each rental to be used at JRM discretion. | ($40,000.00) | Removed | |
| Provide (6) crew days of comebacks to modify platform/planks and scaffold as required by JRM to undertake other trades' work. | ($80,000.00) | Removed | |
| **Sub-Total SoW Items:** | | | ($345,100.00) |
| **Accepted Alternate to Specify HVAC Contractor** | | | |
| PJ Mechanical to be utilized as the HVAC Subcontractor. | $420,900.00 | | |
| | | | $420,900.00 |
| **Restack Scope Removed** | | | |
| Deduct for rated enclosures outside of Neiman Marcus space on 7th Floor | ($157,000.00) | | |
| Deduct for additional ductwork for extended exhaust systems - Pantry Exhaust (employee lounge) & Employee restrooms | ($54,000.00) | | |
| Deduct for reduced fire smoke dampers due to removal of exhaust duct runs (Quantity of 2) | ($2,992.00) | | |
| | | | ($213,992.00) |
| **Fee / Insurance Mark Up Variation** | | | |
| **Fee Variation** | ($2,867.00) | | |
| **Insurance Variation** | ($2,057.00) | | |
| | | | ($4,924.00) |

## JRM Stipulated Sum Proposal (9/28/2017)

**$46,855,762.00**

Check One                                              Contract Number:
Partial: __  Final: ___                                Project Number:

# WAIVER OF LIEN

Owner:  The Neiman Marcus Group LLC          Contractor:
Contract Date:                                         Requisition #:
Project Title:                                         Date of Requisition:

The undersigned contractor in consideration of the payment of the sum of **$_____** and  other  good and valuable consideration received by it, hereby waives and releases all liens or rights of lien, claim, or demand of every kind whatsoever now and existing for work, labor or materials furnished to The Neiman Marcus Group LLC, up to the date of this requisition, with respect to the above designated project.  The undersigned further covenants and agrees that it shall not in any way claim or file a mechanic's or other lien against the premises of the above designed project, or any part thereof, or against any fund applicable thereto for any of the work, labor or materials heretofore furnished by the in connection with the improvement of the said premises.

This Lien waiver is executed and delivered conditionally upon receipt of payment for the labor performed and materials furnished to the date of the above requisition.

IN WITNESS WHEROF, we have hereto set our hand this ___ day of _____, _____.

_____
        (Corporate Name)

By:_____
        (Authorized Signature & Title)

---

### STATEMENT OF STATE SALES AND/OR USE TAX
#### Paid to contractor/Vendor by Neiman Marcus
*(To be completed with __Final__ Waiver of Lien Only)*

1. Not Taxable: capital improvement (supported by state regulation).     $ _____

2. Taxable: TPP and/or services performed.                              $ _____

3. State Sales and/or use tax paid.                                     $ _____

4. Total Amount (ties into all requisitions and final payment).         $ _____

State of _____(tax paid in)        Tax Rate: _____%

County of _____        State Sales Tax ID# _____

---

This instrument was acknowledged before me on _____ by _____ ,

_____ of _____ ,
   (Title of Officer)                (Name of Corporation Acknowledging)

on behalf of said corporation.        _____
                                                   Notary Public

Check One                                              Contract Number:
Partial: __  Final: __                                 Project Number:

# WAIVER OF LIEN

Owner:  The Neiman Marcus Group LLC          Contractor:
Contract Date:                                         Requisition #:
Project Title:                                         Date of Requisition:

The undersigned contractor in consideration of the payment of the sum of **$** **_____** and other good and valuable consideration received by it, hereby waives and releases all liens or rights of lien, claim, or demand of every kind whatsoever now and existing for work, labor or materials furnished to The Neiman Marcus Group LLC, up to the date of this requisition, with respect to the above designated project.  The undersigned further covenants and agrees that it shall not in any way claim or file a mechanic's or other lien against the premises of the above designed project, or any part thereof, or against any fund applicable thereto for any of the work, labor or materials heretofore furnished by the in connection with the improvement of the said premises.

This Lien waiver is executed and delivered unconditionally.

IN WITNESS WHEROF, we have hereto set our hand this ___ day of _____, _____.

_____
(Corporate Name)

By:_____
(Authorized Signature & Title)

---

| STATEMENT OF STATE SALES AND/OR USE TAX |
| --- |
| Paid to contractor/Vendor by Neiman Marcus |
| *(To be completed with Final Waiver of Lien Only)* |

1. Not Taxable: capital improvement (supported by state regulation).          $ _____

2. Taxable: TPP and/or services performed.                                    $ _____

3. State Sales and/or use tax paid.                                           $ _____

4. Total Amount (ties into all requisitions and final payment).              $ _____

   State of _____(tax paid in)          Tax Rate: _____%

   County of _____          State Sales Tax ID# _____

---

This instrument was acknowledged before me on _____ by _____ ,

_____ of _____ ,
(Title of Officer)                       (Name of Corporation Acknowledging)

on behalf of said corporation.          _____
                                               Notary Public

# NEIMAN MARCUS PROJECT SAFETY MANUAL

# AND WORK PROCEDURES AND RULES

## ACCIDENT PREVENTION PLAN FOR

## CONSTRUCTION OPERATIONS

## OF

## THE NEIMAN MARCUS GROUP LLC

# COMPANY ACCIDENT PREVENTION POLICY

This Safety Manual is to be regarded as THE NEIMAN MARCUS GROUP LLC accident prevention policy; its provisions shall be made an integral part of construction and construction related activities on every project.

The administration of its provisions is the direct responsibility of the individual Project Manager.

# TABLE OF CONTENTS

|              |                                                       | Page   |
|--------------|-------------------------------------------------------|--------|
| Section I    | Organization and Responsibilities                     | 4-5    |
| Section II   | Accident Investigation, Reporting, and Recordkeeping  | 6      |
| Section III  | NEIMAN MARCUS Employee Training                       | 7      |
| Section IV   | Contractor Employee Training                          | 8      |
| Section V    | Job-site Safety Briefings                             | 9      |
| Section VI   | First Aid                                             | 10     |
| Section VII  | Job-site Inspections                                  | 11     |
| Section VIII | Job-site Safety Folder                                | 12     |
| Section IX   | Fire Protection Provisions                            | 13     |
| Section X    | Miscellaneous Provisions                              | 14     |
| Section XII  | Job Site Safety Check                                 | 16-17  |
| Section XIII | Neiman Marcus Public Accident Report                  | 18-19  |
| Section XIV  | Neiman Marcus Safety Meeting Report                   | 20     |
| Section XV   | Neiman Marcus Emergency Telephone Numbers             | 21     |

# SECTION I

# ORGANIZATION AND RESPONSIBILITIES

## NEIMAN MARCUS PROJECT MANAGER WILL:

1.    Have the overall responsibility for the enforcement of all requirements noted in this Safety Manual.

2.    Obtain agreement and compliance from store managers and personnel as well as contractors and sub-contractors with all requirements encompassed in this Safety Manual.

3.    Conduct safety and fire inspections and file reports of such inspections in a log book kept for that purpose.

4.    Investigate or cause to be investigated the circumstances of all accidents.  Notify and file full reports on each accident with Corporate Loss Prevention Risk Manager.

5.    Establish procedure for treatment of injuries.

6.    Ensure that only authorized persons are, at any time, within the confines of a construction area.

7.    Meet with NMG insurance carrier representative, tour site with him as required and comply with his directives insofar as possible.

## PRIME CONTRACTORS WILL:

1.    Comply with all requirements of this NEIMAN MARCUS Safety Manual as it relates to their own work forces, as well as those of their sub-contractors.

2.    Be completely responsible for on-site safety within all areas in which their forces and/or those of their sub-contractors are working.  Should any contractor have forces responsible to him or to any of his sub-contractors working in an area not under his control and should he note an existing condition in violation of this Safety Manual, he should immediately notify the Project Manager, or his representative, so as to allow them to arrange for the correction of those conditions.

3.    See to it that all necessary personal protective equipment, job safety materials and first aid equipment is made available to his own work forces and those of his sub-contractors.

DocuSign Envelope ID: 461EC9A36-99F5-45C9-9D82-548CEA3A76B9

4.    Instruct Job Superintendents and Foremen that safe practices are to be followed and safe conditions maintained throughout the job.

5.    Require all sub-contractors to adhere to all safety regulations.

6.    Ensure that workmen use all safety devices provided for their protection.

7.    Make certain that all workmen work according to good safety practices.  These practices shall be posted on the job.

8.    See to it that all workmen are instructed in good safety practices as noted above.

9.    Have available copies of Federal and other applicable regulations at job-site office.

10.   Have a Hazard Communication Program in place that includes a written program, copies of Material Safety Data Sheets for all hazardous materials brought on site including flammable and combustible liquids, and an employee training program.

11.   Immediately report all accidents and give his report of such accidents to the NEIMAN MARCUS Project Manager or his authorized representative.

12.   Make available to NEIMAN MARCUS for questioning all victims and/or witnesses to any and all accidents.

13.   Designate a responsible supervisor for safety coordination on the job-site.

14.   Obtain permits and waste numbers as required for potentially hazardous activities.

# SECTION II

# ACCIDENT - INVESTIGATION, REPORTING AND RECORDKEEPING

Each Neiman Marcus Project Manager will be responsible to investigate (or have investigated) the causes and circumstances of every accident that occurs on the job-site, as well as those accidents occurring off the site which are project related.  An accounting of the accident shall be entered on the NEIMAN MARCUS Public Accident Report as included in this manual.  One copy of this report shall be entered in the Job Activities log kept by the Neiman Marcus Field Representative and one copy in the Safety Log also kept by the NEIMAN MARCUS Field Representative.  An additional copy shall be immediately sent (via FAX) to the Neiman Marcus Risk Manager. The Risk Manager shall be notified by telephone, (214) 761-2543, concerning the accident at the same time the Accident Report is being transmitted.

The Neiman Marcus Project Manager will ensure that the required OSHA log is maintained at the job-site.

The Contractor's representative shall ensure that all personnel under his control and those of his sub-contractors comply with all requirements having to do with making themselves available for questioning by the NEIMAN MARCUS Loss Prevention Manager and/or the representative of the NEIMAN MARCUS insurance carrier.

The Contractor's representative shall ensure that all personnel under his control and those of his sub-contractors comply with all requirements having to do with making themselves available for questioning by the Neiman Marcus Risk Manager and/or the representative of the Neiman Marcus insurance carrier.

The contractor(s) involved or whose personnel, or sub-contractors are involved, are to complete their own investigation of the accident and complete their own reports in conformance with their own company policy.  Copies of their reports are to be filed by the Neiman Marcus Field Representative in the same manner as the Neiman Marcus reports are filed.

All copies of the Job Activities and Safety Logs are to be, upon completion of the project, sent to Dallas for safekeeping, and kept in the permanent Project records.

# SECTION III

# NEIMAN MARCUS EMPLOYEE TRAINING

The Neiman Marcus Project Manager will advise the Store Management to instruct all store employees concerning the hazards associated with construction activities.  It is required that storewide meetings be held prior to the start of construction.

The Neiman Marcus Project Manager, or his representative, should personally inform NEIMAN MARCUS employees of the course and extent of construction and the dangers associated with those activities.  He will also inform all NEIMAN MARCUS employees of the regulations regarding their not entering construction areas except under specifically controlled conditions at specifically pre-authorized times.

DocuSign Envelope ID: 461ECA36-93F6-45C9-9D82-548CEA3A7689

# SECTION IV

# CONTRACTOR EMPLOYEE TRAINING

Each new employee of each contractor will be given a basic safety briefing by his immediate supervisor prior to starting work. It will be the responsibility of the superintendent to insure that all employees receive this briefing at the job-site. The safety briefing must include (but is not limited to) the following items:

1.      The safety policy of NEIMAN MARCUS and of his company.

2.      The requirement for wearing personal protective equipment.

3.      What to do when an injury occurs.

4.      All supervisor's instructions concerning safety procedures will be complied with by the employee.

5.      Only standard tools and work procedures will be allowed. "Jury-rigged" tools, equipment, ladders, scaffolding will not be permitted.

6.      A copy of the general safety standards will be given to each employee. (A copy is attached to this plan under Section XI). This is not intended to be all inclusive. It is for guidance only. The contractor must follow all Federal and other applicable regulations as well as good judgment. This plan should also be used in conjunction with the AGC "Manual of Accident Prevention in Construction".

DocuSign Envelope ID: 461E0A36-93E6-45C9-8D82-548CEA3A7689

# SECTION V

# JOB-SITE SAFETY BRIEFINGS

In order to impress all employees of each contractor at the job-site with the importance of correct work practices, each contractor will be responsible for conducting a short (5 to 10 minute) safety briefing at least once every two weeks. (One briefing each week is more desirable).

The safety briefing will be made to all employees that are available including sub-contractor's workers. If sub-contractor employees do not attend the safety briefings, a supervisor from each sub-contractor should attend the safety briefing and provide the safety information to his own employees.

The safety briefing should cover standard safe work practices related to the type work being done at the job-site. Maximum use of AGC "Toolbox Topics" should be made. The AGC Safety Director should be contacted for use of the "Tailgate Theater" programs at the job-site.

A record of safety briefings should be kept at the job-site to document safety training provided to employees and sub-contractor workers.

All construction workers, upon starting work on the project, or upon returning to the project after a prolonged absence shall be given a copy of the "General Safety Standards For Construction Workers". The list of these standards is included in this Safety Manual.

# SECTION VI

# FIRST AID

Each contractor will have available the necessary first aid equipment to meet the needs of the number of workers normally present at the job-site.  It will be the responsibility of the contractor to inspect the first aid supplies weekly to determine if the supplies and equipment meets minimum standards.

The AGC First Aid list of equipment will be the standard equipment for a first aid kit.

When a job-site is established and prior to start of work, the contractor will make arrangements with the nearest suitable medical facility to accept and treat personnel who are injured or need medical attention beyond the requirements of the first aid kit.  The telephone number of this medical facility will be listed on the emergency telephone list to be posted near the telephone in the job-site office.

It is the policy of NEIMAN MARCUS that each contractor have, at all times, at least one person on-site who is qualified in first aid treatment and have a current first aid card in their possession.

## <u>RECOMMENDED - FIRST AID KIT</u>

Recommend the amount for each item shown below to be available for every 20 workers on the job-site.

## <u>BASIC MEDICAL SUPPLIES</u>
| | |
|---|---|
| 1 | pair small scissors (to cut gauze, tape, etc.) |
| 1 | pair small tweezers (to remove splinters, etc.) |
| 2 | rolls adhesive tape (½") |
| 2 | packages absorbent cotton |
| 4 | packages adhesive bandages (2 Band-Aids;  1 - 2"x2" bandages;  1 - butterfly bandages) |
| 2 | Tubes of burn ointment or a bottled burn ointment substitute |
| 12 | Compress bandages  (6 - 2' and 6 - 4') |
| 2 | Eye wash kits (sealed single use plastic bottles) |
| 1 | package finger tip bandages |
| 2 | rolls gauze bandage - 2" |
| 1 | box (approximately 20 square gauze bandages - 4"x4" |
| 1 | bottle Merthiolate or suitable spray disinfectant |
| 2 | triangular bandages |

Recommended you do <u>not</u> stock for general consumption:
Aspirin or Tylenol
Cough Tablets
Antihistamine
Antacids
Salt tablets

These items may aggravate an unknown existing medical conditions and render the contractor liable.

DocuSign Envelope ID: 461ECA36-93E6-45C9-8D82-548CFA3A768B

# SECTION VII

# JOB-SITE INSPECTIONS

Each contractor will conduct a thorough safety inspection of the entire job-site at least weekly.  The checklist to be used for this inspection is included in Section XII of this Safety Manual.

Copies of each checklist with notes on the conditions found will be kept on file in the safety folder of the contractor on the job-site.  A copy will also be provided after each inspection to the Neiman Marcus Project Manager, or his authorized representative.

The Neiman Marcus Project Manager, or his authorized representative will also conduct a weekly safety inspection of the job-site.  The checklist to be used is included in Section X of this Safety Manual.  Copies of the Neiman Marcus checklist and the contractors' checklists will be kept on file at the job-site.  These reports, after the conclusion of the project, will be sent to Dallas for safekeeping and kept in the permanent Project records.

# SECTION VIII

# JOB-SITE SAFETY FOLDER

Each contractor will maintain a job-site safety folder.  This folder will be kept available at the job-site office and will be used for reference and instructions concerning safety procedures.  The safety folder will contain:

1.    This safety plan.

2.    Copies of all safety inspection reports.

3.    Safety Bulletins and Toolbox Topics provided by AGC.

4.    OSHA records for the project.

5.    A copy of OSHA safety standards for construction.

6.    All other materials related to job-site safety.

# SECTION IX

# FIRE PROTECTION PROVISIONS

1.  Provide one portable fire extinguisher rated at not less than 2-A for every 3,000 sq. ft. of area under remodel/construction. The travel distance to a fire extinguisher cannot exceed 100'.

2.  Sprinkler system shall be maintained in service for as long as possible. Liberty Mutual's Water Supply and Sprinkler System Control Valve Inspection Record should be utilized whenever sprinkler valves are closed.

3.  Debris should be promptly and safely disposed of. Debris should be removed as often as necessary, but at least at the end of each work shift.

4.  Utilize a welding permit program as described in Liberty Mutual's Preventing Welding and Cutting Fires brochures.

5.  Ensure stairways, stairway access doors, and corridors are kept clear of debris and obstructions.

6.  Penetrations made between rated fire barriers should be sealed as soon as possible.

7.  Emergency lighting systems in construction area should be tested monthly.

8.  Alarm and P. A. Systems (where provided) should be audible in all areas. Test monthly.

9.  Smoking allowed in designated areas only.

10. Keep all gas cylinders secured in an upright position. Excess cylinders should be in a safe, secure area. Oxygen, fuel and gas cylinders should be separated by at least 20'.

11. Flammable and combustible liquids shall be stored in a flammable liquid storage cabinet.

# SECTION X

## MISCELLANEOUS PROVISIONS

1.      Neiman Marcus requires strict adherence to the policy of <u>only</u> construction, maintenance or repair personnel being in a construction, maintenance or repair area.  No store employee is to be in any construction site unless specific, proper safeguards are taken (e.g. barricaded paths through a construction area).  Store managers under the pressure of expanding or maintaining selling areas may not intrude selling activities into a construction area.

2.      All construction areas are to be barricaded from customer areas.  There are <u>no</u> circumstances when customers are allowed within a construction area.

3.      First aid equipment must be immediately available at all times construction activities are in progress.

4.      Fire extinguishers must be immediately available during times construction activities are being   carried on that present a fire hazard.  Fire extinguishers with personnel trained and ready to use them are to be placed in <u>all</u> areas vulnerable to fire.

5.      Should access to a required exit be located within a construction area, proper barricaded paths through the construction area shall be provided.  Proper directional signage shall also be maintained.

# SECTION XI

# GENERAL SAFETY STANDARDS FOR CONSTRUCTION WORKERS

THE GENERAL SAFETY STANDARDS LISTED BELOW ARE <u>FOR YOUR PROTECTION</u>. YOU WILL BE REQUIRED TO FOLLOW THESE BASIC RULES AND OTHER INSTRUCTIONS YOUR SUPERVISOR MAY GIVE YOU.  THESE INSTRUCTIONS ARE TO HELP YOU WORK SAFELY WITHOUT INJURY.

1.   Hard hats, in good condition, will be required on the job.  (The supervisor may designate areas where hats are not required).

2.   Heavy-soled shoes or boots will be worn on the job.  (The supervisor may allow special shoes on work such as roofing).

3.   Do not use any defective tool or equipment.  If you are in doubt - check with your supervisor.

4.   Fire fighting equipment is for fighting fires.  <u>DO NOT</u> use this equipment for any other purpose.

5.   Power - actuated tools will be used only by persons trained for their use.

6.   Do not use defective ladders such as ones with split rails or rungs missing.  All ladders must be tied off and the nailed or blocked.

7.   Keep your work area clean.  Remove trash as you work.

8.   Safety glasses or face shields will be worn when chipping or grinding concrete or at any time the supervisor designates.

9.   All safety devices, guard rails, floor hole covers, and  machine guards are not to be removed except with the knowledge and approval of the supervisor.

10.  Horseplay or practical jokes on the job-site is dangerous and will not be permitted in any form.

11.  All nails remaining in used lumber will be removed or bent over.

12.  Help your own safety and the safety of others, - when you see a safety hazard - correct it immediately or call it to the attention of your supervisor.

**SAFETY IS A <u>SKILL</u> THAT MUST BE PRACTICED LIKE YOUR TRADE !!!**

# SECTION XII

# JOB SITE SAFETY CHECK

COPIES TO:

_____          JOB NAME_____

_____          DATE_____

MARK  Ö  FOR  NO  CORRECTION  NEEDED;  0  FOR  NOT  APPLICABLE;  AND  C  FOR CORRECTION NEEDED.

_____   1.   ARE WALKWAYS AND JOB SECURITY ADEQUATE?

_____   2.   ARE LADDERS PROPERLY CONSTRUCTED AND SECURED?

_____   3.   IS HOUSEKEEPING GOOD, ALL UNNECESSARY DEBRIS CLEANED-UP?

_____   4.   ARE GUARD RAILS ERECTED AROUND FLOOR OPENINGS AND OTHER CRITICAL AREAS?  PERIMETER PROTECTION IN PLACE?

_____   5.   IS ILLUMINATION ADEQUATE?

_____   6.   ARE HARD HATS AND OTHER PERSONAL PROTECTIVE EQUIPMENT WORN  BY WORKERS?

_____   7.   ARE   CRANES   AND   HOISTS   PROPERLY   MAINTAINED   AND SAFEGUARDED?

_____   8.   ARE TRENCHES AND EXCAVATIONS PROPERLY SHORED?

_____   9.   ARE ALL ELECTRICAL TOOLS GUARDED AND GROUNDED?

_____   10.   IS JOB TRAFFIC PLAN WORKING?

_____   11.   ARE FIRST AID SUPPLIES ADEQUATE?   ARE FIRST AID GIVERS AVAILABLE?

_____   12.   ARE FIRE EXTINGUISHERS PRESENT AS REQUIRED?

_____   13.   SAFETY BULLETIN BOARD POSTED?

_____  14.   ARE PROTRUDING NAILS IN LUMBER REMOVED?

_____  15.   ARE SCAFFOLDS PROPERLY CONSTRUCTED?

_____  16.   ARE WORKERS PROTECTED FROM FALLING OBJECTS?

_____  17.   ARE FORMS, LUMBER, PLYWOOD AND OTHER MATERIALS BEING SAFELY HANDLED?

_____  18.   ARE JOB SAFETY RULES BEING CARRIED OUT?

_____  19.   ARE CONSTRUCTION AREAS PROPERLY BARRICADED FROM ACTIVE CUSTOMER AND EMPLOYEE AREAS (REMODEL ONLY)?

OTHER UNSAFE ACTS/CONDITIONS NOTED?_____

_____


NUMBER, DATE AND TO WHOM CORRECTIVE ACTION ASSIGNED:_____

_____


SUPERINTENDENT/SUPERVISOR_____

17

# SECTION XIII

# NEIMAN MARCUS
# PUBLIC ACCIDENT REPORT

Report Date_____ Store Name_____ Store #_ Store Address_____ Telephone_____

Time of Occurrence_____ Time Arrived at Scene_____

## PERSONAL INFORMATION

Name_____ Date of Birth_____

Address_____ Wear Glasses_____ Contacts_____

City,_____State____Zip_____ Use Cane_____ Other Aids_____

Phone  Res. (_____)_____ Work (____)_____ Carrying Parcels_____

Employed By_____ Type of Shoes: Soles_____Heels_____

Business Address_____ Other Circumstances_____

City,_____State_____Zip_____

If accompanied, name of companion_____

Address_____ Phone Number (____)_____

## FACTS OF INCIDENT

Date_____ Time_____ Exact Location_____

Describe the accident scene, sequence of events, including any foreign substances - structural, mechanical or any type equipment involved  (attach Photographs)

_____
_____

Customer's description of how the accident occurred_____
_____
_____

Customer's  statements or attitude_____
_____
_____

Weather Conditions_____Lighting_____
Other Pertinent Facts_____
Injury   Type_____

## ACTION TAKEN
(          ) No treatment given
(          ) First Aid only
(          ) Paramedics called at

Transportation to hospital_____ Address/Phone_____
(          ) Physician called_____ Name_____
 Address/Phone_____

**WITNESS INFORMATION**:

**Associate Witnesses:**   (Attach Associate statements to this report)

| Name | Dept. | Home Address | Home Phone |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

**Customer Witnesses:**   (Attach Customer statements to this report)

Name _____    Address:
_____    Home_____
_____    Business_____
_____    Home_____
_____    Business_____
_____    Home_____
_____    Business_____

Photographs/Physical Evidence: (Attach photographs to this report - use Evidence Label)
Number of Photographs_____
Other Evidence_____
_____

Maintenance Report: (Completed by person responsible for maintaining location)
Name_____    Home Address_____
Home Phone _____
Date and Time Scene last inspected and maintained    _____
Condition _____
Describe lighting, cleanliness and other conditions _____
_____
Other facts _____
_____
_____

Insurance Company Notification:
Reported to (Name)_____
Liberty Mutual Office  (Address) _____
Date_____    Time_____    By_____
    or mailed to Liberty Mutual office on (Date)_____

Report Completed by_____    Home Phone _____
Home Address_____    Dept _____
Reviewed by (Operations Manager)_____

# SECTION XIV

## SAFETY MEETING REPORT

COPIES TO:

_____     SUPERVISOR_____

_____     TOOL BOX_____

JOB NAME_____     JOB #_____

MEETING DATE_____     NEXT MEETING DATE_____

TIME STARTED_____     TIME COMPLETED_____

MEETING CONDUCTED BY_____

NUMBER OF COMPANY EMPLOYEES IN ATTENDANCE_____

MES OF SUB-CONTRACTORS IN ATTENDANCE_____

_____

OTHERS IN ATTENDANCE_____

TOPICS DISCUSSED_____

_____

_____

ACCIDENTS REVIEWED_____

_____

SUGGESTIONS MADE_____

_____

_____

COMMENTS_____

_____

REPORT PREPARED BY_____     DATE_____

# SECTION XV

## EMERGENCY TELEPHONE NUMBERS

**MEDICAL FACILITY**_____

**FIRE DEPARTMENT**_____

**POLICE**_____

**AMBULANCE**_____

**ON-SITE FIRST AID PERSONNEL**_____

**LOSS PREVENTION**_____ **DALLAS**_____ **Main Number**_____ **(214) 761-2488**_____

**RISK MANAGEMENT**_____ **DALLAS**_____ **Marni Cott**_____ **(214) 761-2509**_____

**PROJECT MANAGER**_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

## NEIMAN MARCUS POLICIES AND PROCEDURES

The following are policies and procedures for all vendors, visitors and construction personnel.

You must be in compliance with these policies and procedures at all times when on Neiman Marcus premises.

1.    The Employee entrance is the only means of entrance or exit to be used.

2.    Upon entering the premises each workman will sign in at the Guard Desk with name, time in, work location and be given a Neiman Marcus ID badge.

3.    The freight elevator will be the only means of moving from floor to floor.

4.    All workmen will proceed directly to work area.  Do not pass through sales areas unless required.

5.    Confine all activities to aforementioned routes while on duty.

6.    Large equipment and pallets of materials will be transported on freight elevator.

7.    To use loading dock, notify security desk of arrival and departure.

8.    No workman will use the loading dock for an entrance or exit.

9.    Upon completion of the workday, return all Neiman Marcus ID badges and sign out at employee entrance.  Also, all containers will be opened and inspected by security.

10.    ID badges will be worn by construction personnel at all times.

11.    Lost ID badges - any Neiman Marcus badge not returned, a $100 replacement fee will be charged to the contractor.

12.    All workers are required to open lunch boxes, toolboxes, etc., for Neiman  Marcus security personnel, upon request.  Failure to do so will require removal from the property.

13.    Work carried on after store hours will be carefully supervised.  Workmen shall confine activities to the work areas only.

14.     No smoking will be allowed on the selling floor.  Smoking is allowed in designated areas, only.

15.     No food and drinks will be allowed on the selling floor.

16.     No radios will be allowed on the selling floor.

17.     Workmen's vehicles will be restricted to designated parking areas.

18.     Workmen shall refrain from fraternization with store employees.

19.     Workmen's use of the store's employee cafeteria and toilets shall be as directed by the store manager.

20.     No alcohol on the premises.

21.     Access to sensitive areas (Precious Jewelry, Cash Office, Furs) can only be made with a member of Loss Prevention present.

22.     Anyone detained for theft of Neiman Marcus merchandise or properties will be referred to the proper authorities for disposition.

## GENERAL SAFETY STANDARDS FOR CONSTRUCTION WORKERS

**THE GENERAL SAFETY STANDARDS LISTED BELOW ARE <u>FOR YOUR PROTECTION.</u>  YOU WILL BE REQUIRED TO FOLLOW THESE BASIC RULES AND OTHER INSTRUCTIONS YOUR SUPERVISOR MAY GIVE YOU. THESE INSTRUCTIONS ARE TO HELP YOU WORK SAFELY WITHOUT INJURY.**

1. Hard hats in good condition will be required on the job.  (The supervisor may designate where hard hats are not required).

2. Heavy soled shoes or boots will be worn on the job.  (The supervisor may allow special shoes for work such as roofing).

3. Do not use any defective tool or equipment.  If you are in doubt, check with your supervisor.

4. Fire fighting equipment is for fighting fires.  <u>DO NOT</u> use this equipment for any other purpose.

5. Power actuated tools will be used only by persons trained for their use.

6. Do not use defective ladders such as ones with split rails or rungs missing.  All ladders must be tied off and the base nailed or blocked.

7. Keep your work area clean.  Remove trash as you work.

8. Safety glasses or face shields will be worn when chipping off, grinding concrete, or at any time the supervisor designates.

9. All safety devices, guard rails, floor hole covers, and machine guards are not to be removed except with the knowledge and approval of the supervisor.

10. Horseplay or practical jokes on the job-site are dangerous and will not be permitted in any form.

11. All nails remaining in used lumber will be removed or bent over.

12. Help your own safety and the safety of others, when you see a safety hazard, correct it immediately or call it to the attention of your supervisor.

**SAFETY IS A <u>SKILL</u> THAT MUST BE PRACTICED LIKE YOUR TRADE!!!**

DocuSign Envelope ID: 461ECA26-93F6-4FC9-8D82-518CEA3A76B6

# APPLICATION AND CERTIFICATION FOR PAYMENT

**AIA DOCUMENT G702**   **PAGE ONE OF**   **PAGES**

TO OWNER:
Neiman Marcus Property
Development
Attn: Accounting
ATTN: ANGELA SNAVELY          MS527
1201 Elm Street, Suite 2700
Dallas,TX 75270

PROJECT:
Neiman Marcus
1112.HY.2015.Hudson Yards
New York,NY 10001

APPLICATION NO.:

DISTRIBUTE TO:
- OWNER
- ARCHITECT
- CONTRACTOR

PERIOD TO:

FROM: CONTRACTOR:
JRM CONSTRUCTION MANAGEMENT
LLC
242 W 36TH STREET
9TH FLOOR
NEW YORK,NY 10018

VIA ARCHITECT:
JANSON GOLDSTEIN

PROJECT NO:   20350

CONTRACT NO:   278754

CONTRACT   22-NOV-17
DATE:

CONTRACTOR'S APPLICATION FOR PAYMENT
Application is made for payment, as shown below, in connection
with the Contract.
Continuation Sheet, AIA Document G703, is attached.

The undersigned Contractor certifies that to the best of the Contractor's knowledge,
information and belief the Work covered by this Application for Payment has been
completed in accordance with the Contract Documents, that all amounts have been paid by
the Contractor for Work for which previous Certificates for Payment were issued and
payments received from the Owner, and that current payment shown herein is now due.

1. ORIGINAL CONTRACT SUM ........................................ $46,855,762.00

CONTRACTOR:

2. Net change by Change Orders

By:

3. CONTRACT SUM TO DATE (LINE 1+2)

State Of: _____            County of: _____

4. TOTAL COMPLETED & STORED TO DATE (COL.G ON G703)

Date: _____

Subscribed and sworn to before me this
Notary Public:
My Commission expires:

5. RETAINAGE:

  A. _____ % OF COMPLETED WORK (COL.D+E ON G703)

  B. _____ % OF STORED MATERIAL (COL.F ON G703)

     TOTAL RETAINAGE (LINES 5A+5B OR TOTAL
     RETAINAGE
     (LINES 5A+5B IN COL.I OF G703)

6. TOTAL EARNED LESS RETAINAGE (LINE 4 LESS LINE 5
  TOTAL

7. LESS PREVIOUS CERTIFICATES FOR PAYMENT ( LINE 6 FROM
  PRIOR CERTIFICATES

8. CURRENT PAYMENT DUE

9. BALANCE TO FINISH, INCLUDING RETAINAGE (LINE 3 LESS
  LINE 6)

ARCHITECT'S CERTIFICATE FOR PAYMENT
In accordance with the Contract Documents, based on on-site
observations and the data
comprising the application, the Architect certifies to the Owner
that to the best of the
Architect's knowledge, information and belief the Work has
progressed as indicated,
the quality of the Work is in accordance with the Contract
Documents, and the Contractor
is entitled to payment of the AMOUNT CERTIFIED.

AMOUNT CERTIFIED . . . . . . . . . . . . . . . .
$
(Attach explanation if amount certified differs from the amount applied. Initial
all figures on this
Application and on the Continuation Sheet that are changed to conform with the
amount certified.)
ARCHITECT:

By:                                              Date:

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the
Contractor named herein. Issuance, payment and acceptance of payment are without
prejudice to any rights of the Owner or Contractor under this Contract.

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | | |
| Total approved this month | | |
| TOTALS | | |
| NET CHANGES by Change Order | | |

Users may obtain validation of this document by requesting a completed AIA Document D401 · Certification of Document's Authenticity from the Licensee.
AIA DOCUMENT G702 · APPLICATION AND CERTIFICATION FOR PAYMENT · 1992 EDITION · AIA · ©1992
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, DC 20006-5292

DocuSign Envelope ID: 461EcA26-93F6-4FC9-8D82-518CEA3A76B6

**AIA DOCUMENT G703**

**CONTINUATION SHEET**

PAGE ____ OF ____ PAGES

AIA Document G702, APPLICATION AND CERTIFICATION FOR
PAYMENT, containing
Contractor's signed certification is attached.
In tabulations below, amounts are stated to the nearest
dollar.
Use Column I on Contracts where variable retainage for
line items may apply.

APPLICATION NO: ____
APPLICATION DATE: ____
PERIOD TO: ____
ARCHITECT'S PROJECT NO: ____

PROJECT #: ____
PROJECT NAME: ____        20350
CONTRACT #:   278754      1112.HY.2015.Hudson

REV: ____1____

| A | B | C | | D | E | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LINE NO. | ITEM NO. | DESCRIPTION OF WORK | LINE TYPE | SCHEDULED VALUE | WORK COMPLETED FROM PREVIOUS APPLICATI ON(D + E) | THIS PERIOD | MATERIAL S PRESENTLI Y STORED (NOT IN D OR E) | TOTAL COMPLET E AND STORED TO DATE (D+E+F) | % (G ÷ C) | BALANCE TO FINISH (C - G) | RETAIN AGE (IF VARI- ABLE RATE) | RETAIN -AGE RELEASE D THIS PERIOD |
| 1 | 02110 | Survey | SOV LABOR | $34,133.00 | | | | | | | | |
| 2 | 01530 | Scaffolding | SOV LABOR | $614,389.00 | | | | | | | | |
| 3 | 01580 | Interior Demolition | SOV LABOR | $346,203.00 | | | | | | | | |
| 4 | 40.03300 | Concrete-Materials | SOV MATERIALS | $94,275.07 | | | | | | | | |
| 5 | 03300 | Concrete-Labor | SOV LABOR | $377,100.28 | | | | | | | | |
| 6 | 40.05120 | Steel-Materials | SOV MATERIALS | $84,508.60 | | | | | | | | |
| 7 | 05120 | Steel-Labor | SOV LABOR | $1,605,663.40 | | | | | | | | |
| 8 | 40.07100 | Roofing-Materials | SOV MATERIALS | $17,553.90 | | | | | | | | |
| 9 | 07100 | Roofing-Labor | SOV LABOR | $40,959.10 | | | | | | | | |
| 10 | 40.07250 | Fireproofing-Materials | SOV MATERIALS | $22,391.00 | | | | | | | | |
| 11 | 07250 | Fireproofing-Labor | SOV LABOR | $89,564.00 | | | | | | | | |

DocuSign Envelope ID: 461ECA26-93F6-4FC9-8D82-518CEA3A76B6

CONTINUATION SHEET

AIA DOCUMENT G703

PAGE     OF     PAGES

AIA Document G702, APPLICATION AND CERTIFICATION FOR
PAYMENT, containing
Contractor's signed certification is attached.
In tabulations below, amounts are stated to the nearest
dollar.
Use Column I on Contracts where variable retainage for
line items may apply.

APPLICATION NO:
APPLICATION DATE:
PERIOD TO:
ARCHITECT'S PROJECT NO:

PROJECT #: _____ 20350
PROJECT NAME: _____ 1112.HY.2015.Hudson
CONTRACT #: _____ 278754     REV: _____ 1

| A LINE NO. | B ITEM NO. | C DESCRIPTION OF WORK | LINE TYPE | D SCHEDULED VALUE | E WORK COMPLETED FROM PREVIOUS APPLICATI ON (D + E) | F THIS PERIOD | G MATERIAL S PRESENTL Y STORED (NOT IN D OR E) | H TOTAL COMPLET ED AND STORED TO DATE (D+E+F) | I % ( G ÷ C ) | J BALANCE TO FINISH (C - G) | K RETAIN AGE (IF VARI- ABLE RATE) | L RETAIN -AGE RELEASE D THIS PERIOD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12 | 40.08115 | HM & HW Doors-Materials | SOV MATERIALS | $301,406.53 | | | | | | | | |
| 13 | 40.08500 | Arch Metal & Glass-Materials | SOV MATERIALS | $1,598,460.00 | | | | | | | | |
| 14 | 08500 | Arch Metal & Glass-Labor | SOV LABOR | $1,065,640.00 | | | | | | | | |
| 15 | 40.09210 | Drwyall-Materials | SOV MATERIALS | $1,374,880.71 | | | | | | | | |
| 16 | 09210 | Drwyall-Labor | SOV LABOR | $5,172,170.29 | | | | | | | | |
| 17 | 40.09630 | Stone & Tile-Materials | SOV MATERIALS | $1,203,777.60 | | | | | | | | |
| 18 | 09630 | Stone & Tile-Labor | SOV LABOR | $2,808,814.40 | | | | | | | | |
| 19 | 40.09640 | Wood Flooring-Materials | SOV MATERIALS | $33,940.76 | | | | | | | | |
| 20 | 09640 | Wood Flooring-Labor | SOV LABOR | $44,991.24 | | | | | | | | |
| 21 | 40.09650 | RF-100 Flooring-Materials | SOV MATERIALS | $103,046.86 | | | | | | | | |
| 22 | 09650 | RF-100 Flooring-Labor | SOV LABOR | $252,287.14 | | | | | | | | |

DocuSign Envelope ID: 461EC026-93F6-4FC9-8D82-518CEA3A7686

**CONTINUATION SHEET**

AIA Document G702, APPLICATION AND CERTIFICATION FOR PAYMENT, containing Contractor's signed certification is attached. In tabulations below, amounts are stated to the nearest dollar. Use Column I on Contracts where variable retainage for line items may apply.

**AIA DOCUMENT G703**

| | APPLICATION NO: | |
|---|---|---|
| | APPLICATION DATE: | |
| | PERIOD TO: | |
| | ARCHITECT'S PROJECT NO: | |
| | PROJECT #: | 20350 |
| | PROJECT NAME: | 1112.HY.2015.Hudson |
| | CONTRACT #: | 278754 |
| | | REV: 1 |

PAGE    OF    PAGES

| A LINE NO. | B ITEM NO. | C DESCRIPTION OF WORK | LINE TYPE | D SCHEDULED VALUE | E WORK COMPLETED FROM PREVIOUS APPLICATION (D + E) | F THIS PERIOD | G MATERIALS PRESENTLY STORED (NOT IN D OR E) | H TOTAL COMPLETED AND STORED TO DATE (D+E+F) | I % (C + G) | J BALANCE TO FINISH (C - G) | K RETAINAGE (IF VARIABLE RATE) | L RETAINAGE THIS PERIOD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 23 | 40.09680 | Carpet-Materials | SOV MATERIALS | $135,222.98 | | | | | | | | |
| 24 | 09680 | Carpet-Labor | SOV LABOR | $405,668.93 | | | | | | | | |
| 25 | 40.09720 | Wallcovering-Materials | SOV MATERIALS | $217,846.86 | | | | | | | | |
| 26 | 09720 | Wallcovering-Labor | SOV LABOR | $139,279.14 | | | | | | | | |
| 27 | 40.09925 | Painting-Materials | SOV MATERIALS | $171,438.75 | | | | | | | | |
| 28 | 09925 | Painting-Labor | SOV LABOR | $514,316.25 | | | | | | | | |
| 29 | 40.10150 | Signage-Materials | SOV MATERIALS | $55,119.60 | | | | | | | | |
| 30 | 10150 | Signage-Labor | SOV LABOR | $21,435.40 | | | | | | | | |
| 31 | 40.10270 | Toilet Accessories-Materials | SOV MATERIALS | $57,667.08 | | | | | | | | |
| 32 | 40.10520 | Fire Extinguishers-Materials | SOV MATERIALS | $22,644.00 | | | | | | | | |
| 33 | 40.11400 | Food Services Equipment-Materials | SOV MATERIALS | $498,872.88 | | | | | | | | |

DocuSign Envelope ID: 461ECA26-93F6-4FC9-8D82-518CEA3A76B6

**CONTINUATION SHEET**

**AIA DOCUMENT G703**

AIA Document G702, APPLICATION AND CERTIFICATION FOR
PAYMENT, containing
Contractor's signed certification is attached.
In tabulations below, amounts are stated to the nearest
dollar.
Use Column I on Contracts where variable retainage for
line items may apply.

APPLICATION NO:
APPLICATION DATE:
PERIOD TO:
ARCHITECT'S PROJECT NO:

PROJECT #:
PROJECT NAME: 20350
CONTRACT #: 1112.HY.2015.Hudson
278754

REV: 1

PAGE        OF        PAGES

| A LINE NO. | B ITEM NO. | C DESCRIPTION OF WORK | LINE TYPE | D SCHEDULED VALUE | E WORK COMPLETED FROM PREVIOUS APPLICATI ON (D + E) | F THIS PERIOD | G MATERIALS PRESENTLY STORED (NOT IN D OR E) | H TOTAL COMPLET E AND STORED TO DATE (D+E+F) | I % (G ÷ C) | J BALANCE TO FINISH (C - G) | K RETAIN AGE (IF VARI- ABLE RATE) | L RETAIN AGE RELEASE THIS PERIOD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 34 | 11400 | Food Services Equipment-Labor | SOV LABOR | $184,514.63 | | | | | | | | |
| 35 | 40.12210 | Window Treatments-Materials | SOV MATERIALS | $19,842.30 | | | | | | | | |
| 36 | 12210 | Window Treatments-Labor | SOV LABOR | $2,204.70 | | | | | | | | |
| 37 | 40.14210 | Elevators-Materials | SOV MATERIALS | $101,087.28 | | | | | | | | |
| 38 | 14210 | Elevators-Labor | SOV LABOR | $139,596.72 | | | | | | | | |
| 39 | 40.32200 | Sprinkler-Materials | SOV MATERIALS | $443,177.19 | | | | | | | | |
| 40 | 32200 | Sprinkler-Labor | SOV LABOR | $1,329,531.56 | | | | | | | | |
| 41 | 40.34140 | Plumbing-Materials | SOV MATERIALS | $321,078.87 | | | | | | | | |
| 42 | 34140 | Plumbing-Labor | SOV LABOR | $1,207,868.13 | | | | | | | | |
| 43 | 40.35600 | HVAC-Materials | SOV MATERIALS | $551,408.16 | | | | | | | | |
| 44 | 35600 | HVAC-Labor | SOV LABOR | $6,341,193.84 | | | | | | | | |

CONTINUATION SHEET

AIA DOCUMENT G703

PAGE          OF          PAGES

AIA Document G702, APPLICATION AND CERTIFICATION FOR
PAYMENT, containing
Contractor's signed certification is attached.
In tabulations below, amounts are stated to the nearest
dollar.
Use Column I on Contracts where variable retainage for
line items may apply.

APPLICATION NO:
APPLICATION DATE:
PERIOD TO:
ARCHITECT'S PROJECT NO:

PROJECT #:
PROJECT NAME:                20350
CONTRACT #:    278754        1112.HY.2015.Hudson

REV:    1

| A LINE NO. | B ITEM NO. | C DESCRIPTION OF WORK | LINE TYPE | D SCHEDULED VALUE | E WORK COMPLETED FROM PREVIOUS APPLICATI ON(D + E) | F THIS PERIOD | G MATERIALS PRESENTLY STORED (NOT IN D OR E) | H TOTAL COMPLET E AND STORED TO DATE (D+E+F) | I % (G ÷ C) | J BALANCE TO FINISH (C - G) | K RETAIN AGE (IF VARI- ABLE RATE) | L RETAIN AGE - AGE RELEASE D THIS PERIOD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 45 | 40.36150 | Electric-Materials | SOV MATERIALS | $1,276,764.00 | | | | | | | | |
| 46 | 36150 | Electric-Labor | SOV LABOR | $7,234,996.00 | | | | | | | | |
| 47 | 00750 | Project Management Team | SOV LABOR | $1,396,400.00 | | | | | | | | |
| 48 | 00750 | Site Supervision | SOV LABOR | $1,515,364.96 | | | | | | | | |
| 49 | 00750 | Site Safety | SOV LABOR | $225,000.00 | | | | | | | | |
| 50 | 01530 | Field Office Expenses | SOV LABOR | $122,700.00 | | | | | | | | |
| 51 | 01530 | Rooselvelt Field Tour | SOV LABOR | $18,264.00 | | | | | | | | |
| 52 | 01530 | Gala Opening | SOV LABOR | $25,541.00 | | | | | | | | |
| 53 | 40.01520 | Temporary Facilities & Field Offices | SOV LABOR | $124,987.00 | | | | | | | | |
| 54 | 01530 | Progressice Clean-Up | SOV LABOR | $1,600,044.96 | | | | | | | | |
| 55 | 01530 | Final Cleaning | SOV LABOR | $99,507.00 | | | | | | | | |

**CONTINUATION SHEET**

**AIA DOCUMENT G703**

PAGE  OF  PAGES

AIA Document G702, APPLICATION AND CERTIFICATION FOR
PAYMENT, containing
Contractor's signed certification is attached.
In tabulations below, amounts are stated to the nearest
dollar.
Use Column I on Contracts where variable retainage for
line items may apply.

APPLICATION NO:
APPLICATION DATE:
PERIOD TO:
ARCHITECT'S PROJECT NO:

PROJECT #:
PROJECT NAME:  20350
CONTRACT #:  278754  1112.HY.2015.Hudson

REV:  1

| A LINE NO. | B ITEM NO. | C DESCRIPTION OF WORK | LINE TYPE | D SCHEDULED VALUE | E WORK COMPLETED FROM PREVIOUS APPLICATION (D + E) | F THIS PERIOD | G MATERIALS PRESENTLY STORED (NOT IN D OR E) | H TOTAL COMPLETED AND STORED TO DATE (D+E+F) | I (%) (G ÷ C) | J BALANCE TO FINISH (C - G) | K RETAINAGE (IF VARIABLE RATE) | L RETAINAGE RELEASE THIS PERIOD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 56 | 01530 | Dumpster Allowance | SOV LABOR | $179,071.20 | | | | | | | | |
| 57 | 40.01530 | Temporary Construction/Protection | SOV LABOR | $900,192.00 | | | | | | | | |
| 58 | 00760 | Interior General Contractor Fee | SOV LABOR | $1,146,875.66 | | | | | | | | |
| 59 | 00770 | Interior GC Insurance | SOV LABOR | $822,883.09 | | | | | | | | |
| Total | | | | $46,855,762.00 | | | | | | | | |

## EXHIBIT " F "

### INDEMNITEES AND ADDITIONAL INSUREDS

ERY Tenant LLC

ERY Developer LLC

Hudson Yards Construction LLC

Hudson Yards Holdings LLC

Hudson Yards Construction Special Projects LLC

Related Safety and Wellness, LLC

Hudson Yards Security LLC

Hudson Yards Gen-Par, LLC

Related Hudson Yards, LLC

Oxford Hudson Yards LLC

The Related Companies, L.P.

The Related Companies, Inc.

The Related Realty Group, Inc.

OMERS Administration Corporation

OP Olympic Capital Corp (US), Inc.

OP USA Debt Holdings Limited Partnership

OP USA Debt GP Inc.

Oxford Properties Group Inc.

Metropolitan Transportation Authority, its Subsidiaries and Affiliates

Triborough Bridge and Tunnel Authority

The Long Island Rail Road Company

National Railroad Passenger Corp. (Amtrak)

New Jersey Transit Rail Operations, Inc./New Jersey Transit Corporation

Consolidated Rail Corporation

CSX Transportation Inc.

Hudson Yards Development Corporation and their respective officials, members, directors, officers and employees

Hudson Yards Infrastructure Corporation and their respective officials, members, directors, officers and employees

The City of New York, and their respective officials, members, directors, officers and employees

The State of New York

Economic Development Corporation and their respective officials, members, directors, officers and employees

The Department of Environmental Protection

Tutor Perini Building Corp.

Tutor Perini Corporation

Tishman Construction Corporation

Legacy Yards LLC

Legacy Yards Junior Mezz 1 GP LLC

Legacy Yards Junior Mezz 2 GP LLC

Legacy Yards Junior Mezz 3 GP LLC

Legacy Yards Junior Mezzanine 1 LP

Legacy Yards Junior Mezzanine 2 LP

Legacy Yards Junior Mezzanine 3 LP

Legacy Yards Mezzanine LLC

Legacy Yards Senior Mezz GP LLC

Legacy Yards Senior Mezzanine LP

Legacy Yards Tenant GP LLC

Legacy Yards Tenant LP

Podium Fund MM LLC

Podium Fund Investments LLC

Podium Fund REIT LP

Podium Fund HY REIT Owner LP

Podium Fund REIT GP LLC

Podium-K Partnership LP

Podium Fund Tower C SPV LLC

Podium Fund Capital LLC

Podium Fund Tower C Corp.

Kuwait Investment Authority

Podium-K Investors LLC

Oxford Podium Fund Investor LLC

HY Acquisition Company LLC

Commingled Pension Trust Fund (Strategic Property) of JPMorgan Chase Bank, N.A. (NY Trust comprised of pension fund investors)

Allianz HY Investor LP

AZ HY Investor GP LLC

APK US Investment LP

Allianz US Private REIT LP

Allianz Presse US REIT LP

APKV US Private REIT LP

AZ Vers US Private REIT LP

Coach, Inc.

Coach Legacy Yards LLC

New York City Industrial Development Agency, a New York public benefit corporation

ERY CS Parcel LLC

Hudson Yards North Tower Tenant LLC

Hudson Yards North Tower Holdings LLC

ERY North Tower Member LLC

ERY North Tower Ob Deck Member LLC

ERY North Tower Related LLC

TW NY Properties LLC

Time Warner Inc. and all subsidiaries, successors and assigns existing now or hereafter formed, and their respective lenders, directors, officers and employees

KKR HY LLC

KKR Fund Holdings L.P.

KKR Management Holdings L.P.

KKR International Holdings L.P.

EVEREN Capital Corporation, its affiliates and their respective directors, officers, employees and agents, and their respective successors and assigns.

Oxford North Tower Member LLC

Deutsche Bank AG New York Branch, as Administrative Agent

ERY Art Vessel LLC

ERY HYPIS LLC

HY Manhattan Tower LLC

ERY Retail Podium Holdings LLC

ERY Retail Podium LLC

HY Manhattan Tower A-1 LLC

HY Manhattan Tower A-2 LLC

HY Manhattan Tower A-3 LLC

HY Manhattan Tower A-4 LLC

HY Manhattan Tower A-5 LLC

HY Manhattan Tower A-6 LLC

HY Manhattan Tower A-7 LLC

HY Manhattan Tower A-8 LLC

HY Manhattan Tower A-9 LLC

HY Manhattan Tower A-10 LLC

HY Manhattan Tower A-11 LLC

ERY Retail Pavilion LLC

ERY HYMCO LLC

Hudson Yards Sponsorship LLC

Podium Fund Investments II LLC

Podium Fund Residential Holdings LLC

ERY South Residential Tower LLC

35 Hudson Yards Member LLC

35HY CG Fund Member LLC

Hudson Yards Phase 3 LLC

ERY North Tower RHC Holdings LLC

ERY North Tower RHC Tenant LLC

Talos Capital Designated Activity Company, as administrative agent

Bank of America, N.A., as administrative agent

Citibank, N.A.

New York State Housing Finance Agency

OMF Holdings II, LLC

ERY Facility Airspace Parcel Owners' Association LLC

Related Hudson Yards Manager LLC

Deutsche Bank AG, New York Branch, as lender

Goldman Sachs Mortgage Company, as lender

The Board of Managers of 15 Hudson Yards Condominium

DocuSign Envelope ID: 461E6A29-93F6-4FC9-8D82-518CF5A3A78B6

The Board of Managers of 20-30 Hudson Yards Condominium

The Tower Section Board of Managers of 20-30 Hudson Yards Condominium

## EXHIBIT "F"

## INTERIOR CONSTRUCTION AND INTERIOR FIXTURE WORK
## NEIMAN MARCUS AT
## HUDSON YARDS, NEW YORK

### INSURANCE GUIDELINES FOR GENERAL CONTRACTOR AND SUBCONTRACTOR WORK

1.  Workers' compensation insurance in statutory limits and employer's liability coverage in an amount not less that One Million Dollars ($1,000,000) covering all persons employed in connection with such work

2.  Broad-form commercial general liability insurance, with a completed operations endorsement and contractual liability insurance endorsement, covering any occurrence in or about the Premises or the Shopping Center in connection with such Alterations, with limits of not less than One Million Dollars ($1,000,000) for injury or death arising out of any one occurrence with an annual aggregate limit of not less than Two Million Dollars ($2,000,000) and One Million Dollars ($1,000,000) for damage to property in respect of any one occurrence with an annual aggregate limit of not less than Two Million Dollars ($2,000,000)

3.  Comprehensive automobile liability insurance covering the use of all owned, non-owned and hired vehicles with a bodily injury and property damage liability limit of not less than One Million Dollars ($1,000,000)

4.  Umbrella liability per occurrence and in the aggregate with mininum limits as set below:
   General Contractors:

            $50,000,000 for Alterations involving plumbing

            $25,000,000 for Alterations not involving plumbing

     The following trades: $25,000,000

            Masonry

            Drywall

            Concrete

            Hoisting (including elevators)

            Plumbing

            Electrical

            HVAC

     All other trades:  $5,000,000

5.  Contractor, subcontractor or any other party performing work or rendering services on behalf of owner must maintain and provide evidence of coverage as stated herein and shall include owner, ERY Tenant LLC (Landlord) and attached additional parties as named insured.

6.  Contractors and/or subcontractors shall provide endorsement form CG 20 10 11/85 (Form B) or its

DocuSign Envelope ID: 461E6A20-99E6-4FC9-8D82-518CEA3A79B6

equivalent and must provide such coverage within the Products and Completed Operations coverage section.



# Neiman Marcus

Hudson Yards
New York, NY
Floor: 5th, 6th, 7th
Proposal #17-1257

## NOTES AND CLARIFICATIONS

| | |
|---|---|
| 1 | Building utility, drain downs, shutdowns, tie-ins are to be paid by others, including Building Engineer's time, site opening costs, elevator costs, drain down standby time, etc. |
| 2 | All Building Department fees and filing charges are by others.  Permit pick up fees are included. |
| 3 | Furniture (MBO's, ABO's, P-'s, WT-'s, LF-'s etc), including delivery, handling, installation or clean-up are excluded.   Connection of electrical components is included per plans and specifications. Delivery except "MBO"s as included in Drywall level sheet 96. |
| 4 | Furnishing, installing and setting of various Neiman Supplied items are not included.  These items are specifically represented by MBO's, ABO's, NMP's, P's, WT's, S-'s, LF's, LM's, CW's, SC's. |
| 5 | Photoluminescent path markings, if any, are by others. |
| 6 | Overtime, except for demolition and building rules/regulations, is not included.  Overtime deliveries are included. JRM representative has been included for all client millwork deliveries. |
| 7 | Final paint for base building stairwell is not included. |
| 8 | Temporary sprinkler loop, and/or daily activation of the system is not included. We inlcuded & assume an operational sprinkler system at TCO. |
| 9 | All work and associated costs for Local #1, #14, #32BJ, and hoisting, master mechanic / operator charges are not included. It is assumed that Neiman Marcus will reimburse the base building. JRM to verffy usage only. |
| 10 | Work related to the base building BMS/Control System is not included.  Work related to incorporating the NM system into the buidling BMS/Control System is not included. |
| 11 | All RFI Allowances are estimated values which can go up or down upon scope clarifiation (true allowances).  All such allowances are included in the RFI log. |
| 12 | Phasing has been incorporated as shown on the JRM construction schedules dated 7/16/2017. Phasing includes the Addendum #1 Neiman Marcus Millwork Phasing document. An updated Phasing Plan for the 7th Floor Restack has not been provided at the time of stipulated sum contract. |
| 13 | Removal and or relocation of existing piping, duct work, conduits, etc. in the way of new work is not included unless explicitly shown on the drawings as work by Contractor. |
| 14 | We reserve the right to request deposits on proposals for certain manufactured product items which are time sensitive to the schedule.  Deposits are on Materials stored only. |
| 15 | Final payment shall not be withheld due to a Fire Alarm inspection(s) and sign-off, or due to BEC sign off which is beyond JRM's control. |
| 16 | Leveling of the floor is not included, however normal flashpatching is included.  Allowance for 1/4" stone setting bed (in lieu of 1/8" per spec) has been included. |
| 17 | Master keying has been excluded.  This includes changing out the construction cores to final cores. |
| 18 | This proposal is tax-exempt based on the PILOST program.  No other taxes have been included. JRM to provide accounting for JRM subcontractors only. |
| 19 | NYC Fire Department inspections are to be paid by tenant. |
| 20 | Builders Risk Insurance is not included in this proposal. |
| 21 | Demolition means and methods drawings if required for the execution of this work are not included. Shoring / supports have not been included. |
| 22 | As per 2008 New York City Building Code, all special/controlled inspections must be contracted directly by the client/owner. Therefore, we have not included any costs to complete special/controlled inspections in this proposal (this is specifically the payment of the third party inspector). |
| 23 | Note # 6 on Dwg 0-0 A - Hoist Beams Per Response from JG - JRM RFI # 22 is not included.  An allowance value has been included on the Neiman Marcus RFI Log. |
| 24 | Note # 22 on Dwg 0-0 A Light weight concrete fill at perimeter slab depression - Per Response from JG - JRM RFI # 23 is not included. |
| 25 | All floor tiles are figured as Thinset Installation (1/4" is factored in). |

9/28/2017



# Neiman Marcus

Hudson Yards
New York, NY
Floor: 5th, 6th, 7th
Proposal #17-1257

| | |
|---|---|
| 26 | Mirrors are not included per Neiman Marcus clarification during bid interviews.  All work including backing and trim to be provided and installed by the Fixture Contractor.  Mirrors in restrooms are not included. |
| 27 | All work in Project Manual Volume III perimeter Fixtures, Volume IV Loose Fixtures, Volumn V Showcase is not included. Electrical connections as required have been included. |
| 28 | Spray Paint HM Doors is not included, Doors will be painted with Brush Finish Coats. |
| 29 | Work on Holidays / Building closing days is not included. |
| 30 | Any work associated with wood doors, jambs, and associated hardware is not included.  Blocking and trimmed openings have been included per drawings, specs, and responsibility schedule. |
| 31 | Any work to replace Base Building provided doors and hardware is not included unless explicitly shown on the drawings. |
| 32 | Assembly or internal wiring for fixture work, modifications to or extensions of, LED Fixture wiring is not included.  This includes  MBO's, ABO's, NMP's, P's, WT's, S-'s, LF's, LM's, CW's, SC's. |
| 33 | Flooring is included per the drawings.  Where flooring is not shown in vendor shops, such flooring has not been included. |
| 34 | SM-101 Corner Guards, Acrovyn wainscoting & Plywood BA-2 are not included. |
| 35 | Fitting Room Accessories, Mirrors & Woodwork is not included. |
| 36 | Detail - 16 / Dwg - Sheet - 01 - D Hidden Vertical Supports is not Included. |
| 37 | DWG 7-10 - Elev 3, Touch Screen Directory is not included. |
| 38 | ELEV - 1 - Recessed Directory at Elevator Wall outside is not included. |
| 39 | Elev 6 / 5 - 16, Touch Screen Directory at Concierge is not included. |
| 40 | Elev 3 / 7 - 10, Touch Screen Directory at Fine Apparel is not included. |
| 41 | Elev - 3 / 6 - 11, Detail 2 / 6 - 11A GL - 5 on Wall P 1450 is not included. |
| 42 | Electrical wiring and whips to be pre-installed by Furniture vendor for his Furniture. |
| 43 | The procurement, furnishing, warehousing, and delivery to site of light fixtures has not been included.  The JRM and JRM Electrician will coordinate the required shipments in reasonable quanitites (both to the receiving electrician and to the light fixture supplier).  Light fixtures have been assumed as delivered by type and by floor, palletized as such.  All deliveries by light fixture provider to include proper supervision in order to corroborate the inventory performed by the JRM Electrician receiving the shipment. JRM electrician will inventory products once on site and will maintain such inventory.  Deliveries not reported as numerically deficent at the time of the delivery will be the burden of the JRM.  Replacement / Correction of lights delivered with faulty components will be for the account of others.  JRM to provide notification of deffective fixtures at time of installation / energization. |
| 44 | All lighting controls (materials) are to be owner provided and have not been included.  We have included for only installation of the fixtures and controls. |
| 45 | Lighting controls installation is limited to that which is shown on the electrical drawings.  A BOM (Bill of Materials) has not been provided to JRM and therefore any additional devices and / or wiring required following the full design and/or shop drawings by Wattstopper are not included. |
| 46 | All light fixtures will be assumed to be pre-whipped in the factory allowing for a minumum of a six foot tail exterior to the light housing. |
| 47 | Platforms, plywood underlayment, rails, etc. for mobile shelving areas have not been included. Underside of slab structural reinforcement for mobile shelving is also not included. |
| 48 | "Invisible" taped-in speakers have not been included.  Specifically, ceiling preparation for invisible speakers has not been included. |
| 49 | Prime Painting Only has been included in Telephone, Electrical, Communication, IDF, Stock Rooms as noted in the scope meeting with Neiman Marcus. |

9/28/2017



# Neiman Marcus

Hudson Yards
New York, NY
Floor: 5th, 6th, 7th
Proposal #17-1257

| | |
|---|---|
| 50 | Painting of open area ceilngs marked (No. Hung. Ceiling. [NHC] per plans) and other open areas with open slab as the ceiling has not been included.  Painting of duct work, piping, etc in areas with exposed slab and no ceiling has not been included.  Painting of the sprinkler pipe as required by code only has been requried. |
| 51 | ~~Signage has been included as an allowance only.  The only signage scope included was depicted on the MF- series of drawings.~~ |
| 52 | Access doors not shown on the Partition & RCP drawings were not included.  This scope was removed per Neiman Marcus comment during bid interview sessions. |
| 53 | F/I Temp Wall between the 5th and 6th floor at the store entrance was not included.  See Alternate #2 on Drywall/Ceilings level sheets for optional pricing.  F/I of temporary floor protection of existing floor at the 5th floor store entrances has not been included.  See Alternate #3 on Drywall/Ceiling level sheets for optional pricing. |
| 54 | Painted steel railings at the mechanical rooms ramps have only been included per plans and specs.  Scope was removed during the updated addendum drawings. |
| 55 | Temporay plastic protection and HEPA filters to protect completed areas have only been included for the bar and restaurant areas per Neiman Marcus clarification on 08-Sep-2017.  No other plastic protection and HEPA filters have been included in the base price. A unit cost for plastic protection and HEPA filters at B-Shops has been included as an option. |
| 56 | Deep leg track for top partitions were included.  Slotted or Fire Tracks at the top of partitions has not been included.  See Alternate #4 on Drywall/Ceilings level sheets for optional pricing. |
| 57 | All ceilings to be hung with 1/4" pencil rod shot to the slab with pins and clips and black iron support for ceilings per NYC Code.  1" x 3/16" flat steel with nut and bolt handing system for Drywall & ACT Ceilings were not included.  See Alternate #5 on Drywall/Ceiling level sheet for optional pricing. |
| 58 | We have not included comeback for removal of duct caps installed for future use. |
| 59 | Low voltage interlock and local control wiring has not been included.  It is assumed that such scope will be purchased and managed by the owner.  JRM will help coordinate as required. |
| 60 | TAB (testing, Adjusting, & Balacing) is owner direct and not included. |
| 61 | We have not included cost for manufacturer's warranty and startup of owner provided HVAC equipment. We include stand by & assistance from our Mechanical Trades only. |
| 62 | Local thermostats for Transfer fans have been assumed to be line voltage. |
| 63 | ON-Off switch(s) for fans as scheduled have been assumed to be line voltage. |
| 64 | Removal, reinstallation, and replacement of existing FSD(s) where new duct(s) with pathways through existing opening(s) at the roof has not been included. No corrective / modification work at FSD(s) or Damper(s) has been included. Said FSD(s) are existing to remain on the drawings. |
| 65 | Price for flex head installation in sheet rock ceilings has been included as independently supported to the slab.  If support to the ceiling structure is deemed acceptable by the EOR, third party inspector, and Authority Having Jurisdiction, a deduct alternate price has been provided for support to the ceiling framing. |
| 66 | Attic stock has only been included where indicated. |
| 67 | Moisture remediation and or repairs including for mold has not been included. |
| 68 | Installation has been included per the contract documents.  The basis of this proposal is that contract documents comply with FM Global Insurance standards where required. |
| 69 | JRM have not included provision for certifying that base building services meet the requirements of the Neiman Marcus design.  JRM have not included provision to bring any deficient services up to standard if required. |
| 70 | JRM have not included for sourcing or the installation Gas Meter to be provided by others in the Gas Metering room.  JRM have included for coordination with Con-Ed for the F/I of the gas meter by others. Testing of the Gas Riser is assumed to be completed by the Base Building. |
| 71 | Costs for early works have not been included in our Stipulated Sum proposal. |



# Neiman Marcus

Hudson Yards
New York, NY
Floor: 5th, 6th, 7th
Proposal #17-1257

| | |
|---|---|
| 72 | All work for scope associated with the 10th Avenue lobby has not been included. Work associated with the A&B Shops not depicted on the drawings has not been included. |
| 73 | Any standby claims by any Base Building provided sub contractors has not been included. JRM will track building provided sub contractors time to confirm work completed. |
| 74 | Patching and repairing due to base building relocates within Neiman Marcus space has not been included. |
| 75 | All cables, conduits, materials, ducts, piping, light fixtures, etc. will be supported by ceiling structure as allowed per code. No Structural Engineer's review is included. |
| 76 | All base building provided doors with security hardware provided by JRM are assumed to be pre-cut / prepped for said hardware. |
| 77 | All work associated with elevator threshold / sills has been assumed to be provide by the base building. We include for topping slab and floor finishes as per the contract drawings. |
| 78 | Project documents have been filed under one application. Provision for required over time due to delays in updating of permit applications for changes to the drawings as required to make schedule has not been included. Changes to permit set documents will be limited to allow for the review process in front of required inspections. All final PAA drawings must be submitted three (3) months prior to TCO date for DOB approval process, construction schedule notwithstanding. |
| 79 | Schedule and duration of the project is contingent on the Architect and Consultants reviewing and returning all samples, shop drawings, submittals, etc. within 12 calendar days of submittal. |
| 80 | Partition plans "1/4" enlarged drywall plans" have been assumed to govern where partition type discrepancies appear in the documents. |
| 81 | Bonding and/or Sub Default Insurance is not included. |
| 82 | Codes & Standards will be included as specified and provided in the documents. Adherence to the latest design codes and standards has been included only as explicitly called out on the documents. |
| 83 | Contingency has not been included. |
| 84 | Site Security after deliveries is not included. |
| 85 | Partition type "S" has not been included, this partition is to be provide as part of the vendor shop build out per plans and specifications. |
| 86 | Finish ceilings have not been included in Vendor Areas where the provision of ceilings has been noted by others. |
| 87 | Claims by owner provided subcontractors, building related contractors, etc for lost time due to site waiting times, break downs, job closures, accidental cause, homeland security, DEP, MTA, NYPD, FDNY, DOB, Best Squad, Wind Regulatory Agency, Catastrophic, and any event out of JRM's control will no be accepted and have not been included. |
| 88 | Any work outside of Neiman Marcus space has been priced on straight time. Over time, shift work, etc has not been included, unless specified by the building rules and regulations. |
| 89 | The tel-data scope has been included per the schematic drawings / RFP transmitted by Neiman Marcus to JRM which were marked up Architectural drawings. |
| 90 | Acoustic underlayment for any stone/tile flooring per Spec Section 093000 - 2.4 - N has not been included. Sound mat is only included for wood flooring. |
| 91 | Routing of stone base for the 1/4" x 1/4" reveal shown in details is to be performed by the factory and delivered to subcontractor as such. Any additional labor to provide this reveal has not been included. Adjacent finsh shall be scribed to the base. |
| 92 | JRM have not included the relocation of existing basebuilding valves that are rendered inaccessible based on the final tenant and base building fit outs. See add alternate pricing to include scope. |

9/28/2017



# Neiman Marcus

Hudson Yards
New York, NY
Floor: 5th, 6th, 7th
Proposal #17-1257

| | |
|---|---|
| 93 | The following items have been listed as being either by Owner, Vendor, or Spare Parts numbers on the food service equipment schedule and are not included:  2.105; 2.203; 2.204; 2.205; 2.206; 2.207; 2.212; 2.214; 2.302; 2.305; 2.401; 2.402; 2.404; 2.405; 2.503; 2.507; 2.508; 2.509; 2.510; 2.514; and 2.516; 3.101; 3.102; 3.110; 3.118; 3.204; 3.205; 3.209; 3.213; 3.214; 3.306; 3.307; 3.315; 3.413; 3.415; 3.417; 3.421; 3.504; 3.505; 3.604; 3.605; 3.606; 3.608; 3.612; 3.613; 3.614; 3.615; 3.616; 3.617; 3.619; 3.621; 3.704; 3.705; 3.707; 3.708; 3.712; 3.803; 3.807; 3.808; 3.809; 3.813; and 3.814. |
| 94 | Cleaning of domestic water piping is to be included as a flush only per code.  No chemical treatment has been included.  Cleaning per tenant rules & regulations and applicable code. |
| 95 | Heat tracing of plumbing piping is limited to grease waste piping reflected on plumbing drawings. No provisions for heat tracing have been included at any other piping. |
| 96 | Chrome plated plumbing piping and accessories is limited to that which is customer facing.  All piping in the back of house areas are figured as copper. Copper piping is limited to non-customer facing kitchen areas. |
| 97 | The 10-year tank warranty called for on Note #1 on P-001 is limited to the Turbomax hot water heaters.  All other hot water heaters are included as a 3-year warranty. |
| 98 | Dry layout at the factory overseas with pictures sent for approval by architect/NM has been included for the feature wall at the Monumental Stair and Mall Front only.  Dry layout for other applications is not included.  Floor stone will be blended a couple crates at a time on site.  Anything obviously not within the approval range uncovered at site will be brought to owners attention as soon as it is noticed, where Owner's onsite representative will give an immediate judgement on usability of said stone.  Owner is responsible that owner provided stone meets approved range. |
| 99 | ST-5 stone panels at the platform for Sunglasses shown on 6,7,8/5-10 and 5,6/5-10A are not included.  These are to be furnished and installed by Neiman's fixture contractor per interviews on 8/15/17. |
| 100 | ST-4 panels at platform w/ 18" base at Men's Shoes and Men's Leather as shown on 6-11 and 6-11A are not included.  These are to be furnished and installed by Neiman's fixture contractor per interviews on 8/15/17. |
| 101 | We assume the new gas piping is to tie into an existing valve provided on the 7th floor by landlord. JRM installed gas piping is assumed to be threaded pipe.  Any welding of gas piping and/or subsequent x-raying of welds has not been included. Testing of the Gas Riser is assumed to be completed by the Base Building. |
| 102 | Furnishing and/or installation of the rear service door per Item #7.01.3, Page #23 on TC Rules and Regulations is assumed to be by landlord and has not been included. |
| 103 | The furnishing and/or installation of solid surface and/or stone countertops are assumed to be by Neiman Marcus' fixture contractor.  We assume all cut-outs for plumbing fixtures, plywood subtop, and/or outriggers are to be provided turn-key by fixture contractor.  Paper templates from the manufacturer if available will be sent to Neiman Marcus' millworker as soon as they are available. |
| 104 | JRM have not provided provision to demo, modify, remove, reinstall existing building fit-out conditions to allow for the installation underside of slab plumbing that traverses the space of other tenants, common interiors, or the base building.  Specifically JRM have not included for removal, reinstall of the common interiors ceiling for plumbing work on the 5th and 4th floors. As per Neiman Marcus direction, allowance has been removed form the JRM scope of work. See note #13 for clarificaiton. |
| 105 | Beam and slab cuts / penetrations are not include unless specifically shown on the drawings. |
| 106 | Temporary heating and temporary cooling or any type of conditioning has not been included except for Neiman Marcus temporary field office where local wall type AC units and local electric heaters have been included. Additionally, union jursidictional stand by is not included for temporary heating or cooling within our contract. |

DocuSign Envelope ID: 461E5A20-99E6-4FC9-8D82-518CEA3A70B6



**Neiman Marcus**

Hudson Yards
New York, NY
Floor: 5th, 6th, 7th
Proposal #17-1257

| | |
|---|---|
| 107 | JRM has provided no provision for costs associated with temporary utility services, such as but not limited to Gas, Electrical Power, HVAC, etc. |
| 108 | HVAC system control scope not explicitly noted on Trane's proposal as by "Mechanical Conctractor" has not been included. |
| 109 | JRM have assumed that work executed by Owner (HVAC controls, millwork, etc.) shall be executed so as to allow for the time necessary for follow-up work by Contractor and the submission of reports (Approved Balancing Report, TRs, etc) to achieve TCO. |
| 110 | Any overtime permits / over time variances are not included. See RFI Allowance sheet for estimated costs. |
| 111 | BIM coordination has not been included per Neiman Marcus. |
| 112 | See Note #138. |
| 113 | JRM assume that JRM will have use of uninterrupted, dedicated interior freight car and two passenger cars throughout the duration of the project. Downtime for non-functioning base building vertical transportation has not been included. |
| 114 | Escalator maintenance and work at existing escalators not already contracted has not been included. |
| 115 | Alterations room(s) scope has been included per the associated drawings, specs, and clarifications. Specfically, alterations room equipment including the steam generator is to be furnished and installed by others. Per clarifications, JRM will assist in the receipt of the steam generators and setting of that equipment. JRM have included for receipt of the Receiving and Marking Room steam generator equipment (per dwgs) as well as re-assembly under manufacturer direction and installation of the same. |
| 116 | JRM have included the Bid Set (06-July-2017), Addendum #1 (17-July-2017), Addendum #2 (03-Aug-2017), and Addendum #3 (11-Aug-2017). Any later Addenda or Bulletins are not included. |
| 117 | Mock Ups have been included only per the mock up list included in the RFI log, as well as the clarifications to the Architectural Metal & Glass Mock Ups per the J.G. E-mail dated (28-June-2017) and the bid interviews with Neiman Marcus. |
| 118 | All associated costs indicated on the JRM / Neiman Marcus RFI log dated 08/25/2017 are not included in the stip sum. The overall value is indicated below the line and to be reviewed collectively prior to including in the stipulated sum. All qualifications / allowances shown are for any and all clarified consultant responses and qualifications in conjuction with the stipulated sum |
| 119 | Allowances for base building charges as well as hours outside of 7:00AM to 3:30 PM MTWTFS have not been included. JRM require that the elevator / vertical transportation promptly commence transporting men and/or materials at 7:00 AM MTWTFS. Any costs associated with start-up and making vertical transportation ready for use at the stipulated time are not included nor are costs associated with maintenace after hours to ensure operation. |
| 120 | Niether LEED certification nor Tracking LEED requirements has been included. |
| 121 | Travel expenses for JRM and Client, Client's reps, Consultants, etc. have not been included with the exception of JRM travel expenses for the Roosevelt Field Site visit. |
| 122 | JRM has included for Saturday deliveries and OT garbage. Costs for elevator operators, maintenance, building costs, site maintenance, etc is not included. |
| 123 | In consideration of services contemplated, JRM Construction Management and its subsidiaries  has agreed to provide Neiman Marcus  and any other party reasonably requested by Neiman Marcus  additional insured status under its commercial general liability policy including completed operations on a primary and non-contributory basis. Coverage applies as respects the subject matter of such services. |
| 124 | Utility company fees or charges and Advisory Board submissions have not been included. |

9/28/2017



# Neiman Marcus

Hudson Yards
New York, NY
Floor: 5th, 6th, 7th
Proposal #17-1257

| | |
|---|---|
| 125 | Stub-ups and backboxes for IT, security, and/or audio visual devices are limited to those that are indicated on the electrical drawings and architectural contract drawings.  Specifically the "power and signal" and "ceiling services" plan. Security and audio-visual drawings were not made available at the time of bid. |
| 126 | Speaker and subwoofer quantities have been taken from A-112, A-133, and A-157 per drawing manifest dated 08/23/2017.  One home run cable per quad back to the 7th floor ER has been figured, and each speaker within that quad will be looped to the home run cable.  No wiring diagram was provided. |
| 127 | WAPs (Wireless Access Points) are assumed to be provided, warehoused, and delivered by owner. Installation of WAPs is included as per the marked up architectural drawings that formed part of the low voltage RFP transmitted to JRM by Neiman Marcus. |
| 128 | Speakers and camera devices are to be furnished and installed by third party vendor. |
| 129 | IDF room equipment provision by JRM has been included only as specified in attachment C in the low voltage RFP e-mail to JRM on 24-July-2017.  JRM have not included for the furnishing of any other equipment, including PDUs. |
| 130 | Relocation of sanitary tie-in to riser at locations to allow for required sloping of sanitary runs has not been included per scope review meeting with Neiman Marcus and engineer.  Please see alternates sheet should this be required. |
| 131 | Installation of decorative chandeliers and any associated supports have not been included as information on the decorative chandeliers is not available.  We have included an allowance in the RFI Log for this scope. |
| 132 | We have included RF-100 as a Stonhard proprietary product equal to the Novagard Novalac WP65. |
| 133 | Pricing is based on low leveled subcontractor. Owner selected preferred vendors to be reviewed with the client. |
| 134 | Any work associated with the DAS system has not been included. It is assumed this will be installed in conjunction with the JRM build out Phase to not conflict with the closing of ceilings. |
| 135 | We have not included for any removal, reinstallation, and/or modifications to existing base building installations at the Neiman Marcus 5th floor façade as the scope is unquantifiable. |
| 136 | JRM have not included for confirming benchmarks for other trades including owner provide trades. |
| 137 | JRM have not included for metal conduits for syrup lines as required by the Responsibility Schedule line item 587 and drawings.  This scope was removed per NM clarification. |
| 138 | The following Ancillary Costs and/or Scope of Work Items have been removed from JRM's contract per Neiman Marcus direction and will be treated as change orders should the scope be required:<br>    1) **Ancillary Costs:**  Neiman Marcus furniture vendor coordination<br>    2) **Ancillary Costs:**  Patching after Neiman Marcus move in<br>    3) **Ancillary Costs:**  Paint Touch-Ups<br>    4) **Ancillary Costs:**  Base Building Relocates<br>    5) **Ancillary Costs:**  BIM Coordination (As required to coordinate with LL outside of NM Space)<br>    6) **Arch. Metal & Glass:**  Include an additional 3 Team Days per floor to come back and adjust / touch up all finish work post client move in.<br>    7) **Arch. Metal & Glass:**  Include an additional 3 Team Days on a Saturday per floor for out of phase work.<br>    8) **Arch. Metal & Glass:**  Include additional (1) man for (3) weeks per floor for protection / maintenance of protection at the start & end of every day.  *- Scope was reduced in half.*<br>    9) **Wood Flooring:**  Subcontractor to include two (2) team days on a Saturday to expedite installation before client move-in.<br>    10) **Wood Flooring:**  Furnish and Install plywood substrate as shown on the drawing. Include required ramping as required to match the finish floor levels as shown on the drawings. |



# Neiman Marcus

Hudson Yards
New York, NY
Floor: 5th, 6th, 7th
Proposal #17-1257

11) **Carpet:**  Subcontractor to include eight (8) team days per floor with material for re-stretching after other trades before client move-in. This is above and beyond the phasing required for each floors installation.

12) **Painting:**  Subcontractor to include additional touch-ups / grand opening (5) five team days per floor on overtime.

13) **Scaffolding:**  Provide 2 additional months of each rental to be used at JRM discretion.

14) **Scaffolding:**  Provide (6) crew days of comebacks to modify platform/planks and scaffold as required by JRM to undertake other trades' work.

15) **Hollow Metal & HW:**  Include Quick Ship for all hollow metal frames.  Frames to be onsite within two weeks of approved shop drawings.

16) **Drywall:**  Include zip walls with installation of (2) two doors and frames per floor, per phase. Temporary partition between phases will go slab to slab.

17) **Drywall:**  Include zip poles & plastic with hepa vacuum filters for Fine Dining and Restaurant Areas. Vendor shops will be handled in subsequent jobs.

18) **Drywall:**  Include additional three (3) man days per floor for elevations, benchmarks and layout for other trades per floor.

19) **Drywall:**  Rated duct enclosures at spaces outside of Neiman Marcus space on the 7th floor that were included per restack drawings.

20) **Elevator Cabs:**  Finish Cab Installations to be completed in double shifts / Weekends to mitigate time passenger cars are out of service

21) **Plumbing:**  Include premium time for all noisy work, chopping, core drilling, Tie ins, work in other tenant's spaces at underside of 5th floor.  All brazing and soldering is to be included as premium time.

22) **HVAC:**  Provide additional removals and relocations of existing piping and or ductwork as shown in accordance with contract documents, allow for (4) relocates per floor.

139 All mock-ups for architectural metal and glass (including any associated structural steel for these mock-ups) have been removed from the scope per Neiman Marcus direction.  Please see alternates should these mock-ups be required.

140 JRM has included for PJ Mechanical's leveled bid to be the accepted value for the HVAC trade in the stipulated sum.  JRM will guarantee PJ Mechanical as a subcontractor to complete work on this project.  All other subcontractors have been included through the bid process.

141 The additional exhaust duct runs, and associated fire smoke dampers, for the relocated employee lounge and employee restrooms for the 7th floor restack plan have not been included per Neiman Marcus direction and will be treated as a change order.

142 The Revised Rothschild Downes Hudson Yards Tenant Contractor Rules and Regulations V13 dated 7/17/17 has not been included.  JRM has only included for Rules & Regulations dated 3/17/17.

143 JRM reserve the right to negotiation price and scope of work with each of our subcontractors and suppliers, but no such negotiation or resulting modification will change or modify our agreement with respect to the price, scope, or quality other than to ensure the full scope of the contract documents and the highest quality for your project.

**Neiman Marcus Restack Notes & Clarifications**

144 The Restack Cost assumes relocating the floor boxes and conduits prior to the topping slab being poured. Any chopping / patching is not included in this value.

145 Credit for topping slab at Related Space is not accounted for in the Restack Value.



# Neiman Marcus

Hudson Yards
New York, NY
Floor: 5th, 6th, 7th
Proposal #17-1257

146  In consideration for conversion of the contract from a CM/GMP to a general contractor stipulated sum JRM guarantees the project schedule and price as presented through the 7th Floor Restack drawings issued by Janson Goldstein. JRM has incorporated allowances within our stipulated sum value which include all architectural and MEPS changes as indicated on the jointly developed drawings and per our review on September 13, 2017, (however if square footages increase or decrease an appropriate CO will be issued for such change in scope).  Those drawings were developed based on assumptions incorporated by JRM, Janson Goldstein, Neiman Marcus, and AVCON.

We include contingencies for ambiguities which may be contained within the ultimate construction documents which will be based on the layouts defined on the Neiman Marcus restack documents. JRMs assumptions for these contingencies is based upon design shown on the original and bid documents.  JRM does not perform any engineering services nor do we make any assumption as to correctness of MEPS design. We do include each MEPS infrastructure consistent with the  device and quantities as shown on the drawings to be operational as intended with all power, ventilation, accessibility, etc... as required.

## INDEMNIFICATION

To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless to Owner, Architect, Architect's consultants, and agents, Building owners and Building Management agents, and employees of any of them from and against claims, damages, losses and expenses, included but not limited to attorneys' fees arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom, but only to the extent caused in whole or in part by negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.  Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph.

## DRAWING MANIFEST

See attached drawing manifest dated 08/23/2017.
Neiman Marcus 7th Floor Restack Block Plan dated 09/17/2017

9/28/2017