IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| NEIMAN MARCUS GROUP LTD LLC, *et al.*,[1] | ) Case No. 20-32519 (MI) |
| | ) |
| Reorganized Debtors. | ) (Jointly Administered) |
| | ) |

### STATUS REPORT OF THE LIQUIDATING TRUSTEE OF THE LIQUIDATING GUC TRUST

The trustee (the "Liquidating Trustee") for the Liquidating GUC Trust[2] (herein, the "Trust"), hereby files this status report (this "Status Report") to provide the Court and parties in interest with an update on the progress that the Liquidating Trustee has made since the Effective Date of the Plan and to preview the likely distribution to creditors and winding down of the Trust, as follows:

1. On July 30, 2020, the Court approved the adequacy of the *Disclosure Statement for the Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1390] (the "Disclosure Statement"). *See* Docket No. 1400.

2. On September 4, 2020, the Court confirmed the Debtors' Third Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 1795] (the "Plan"),

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, are: NMG Holding Company, Inc. (5916); Bergdorf Goodman LLC (5530); Bergdorf Graphics, Inc. (9271); Mariposa Intermediate Holdings LLC (5829); NEMA Beverage Corporation (3412); NEMA Beverage Holding Corporation (9264); NEMA Beverage Parent Corporation (9262); NM Bermuda, LLC (2943); NM Financial Services, Inc. (2446); NM Nevada Trust (3700); NMG California Salon LLC (9242); NMG Florida Salon LLC (9269); NMG Global Mobility, Inc. (0664); NMG Notes PropCo LLC (1102); NMG Salon Holdings LLC (5236); NMG Salons LLC (1570); NMG Term Loan PropCo LLC (0786); NMG Texas Salon LLC (0318); NMGP, LLC (1558); and The Neiman Marcus Group LLC (9509). The Reorganized Debtors' service address is: One Marcus Square, 1618 Main Street, Dallas, Texas 75201.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings assigned to them in the Plan (defined below).

-1-

as set forth in that certain Order Confirming the Debtors' Third Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 1795] (the "Confirmation Order"). The Effective Date of the Plan occurred on September 25, 2020. See Docket No. 1906.

3. In accordance with the Plan and the Confirmation Order, on the Effective Date, the Trust was created and funded with the Liquidating Trust Assets. The Liquidating Trustee was duly appointed to reconcile all General Unsecured Claims and distribute the Liquidating GUC Trust Assets to holders of Allowed General Unsecured Claims. See Plan art. IV § D(6). According to the Disclosure Statement, Holders of Allowed General Unsecured Claims were projected to recover 1.7% to 34.4%.

4. Concurrently, while monitoring market interest, the Liquidating Trustee reconciled the general unsecured claims pool and ultimately reduced the asserted pool from approximately $3.1 billion to approximately $418 million. Thereafter, the Liquidating Trustee facilitated the transfer of the shares subject to a certain direct hold election made by a beneficiary of the Trust. As a result of that transfer, (i) the number of shares held by the Trust was reduced from 140 million to approximately 128 million and (ii) the total claims held by beneficiaries in the Trust was reduced from approximately $418 million to approximately $383 million.

5. Since his appointment, the Liquidating Trustee evaluated the Liquidating GUC Trust Assets to maximize their value for the beneficiaries of the Trust, and in particular the 140,000,000 shares of MYT Holding Co. ("HoldCo") Series B Preferred Stock ("Series B Preferred") vested in the Trust in accordance with the Plan and Disinterested Manager Settlement reflected therein. MYT NETHERLANDS PARENT B.V. ("OpCo") went public in early 2021

listing on the New York Stock Exchange under the ticker MYTE[3] and was priced at $26 per share. Following the IPO, the share price ran up to approximately $35 before falling to approximately $3 by August 2023 and languishing in the $3 - $5 range through summer 2024.

6.  Following the IPO in 2021, the initial strategy by the Liquidating Trustee and his advisors was to wait until after the 180-day restricted trading period for the ADS shares (the "Lock-Up Period") in hopes that HoldCo might sell a second block of shares and have the liquidity to redeem the Series A and Series B Preferred. Following the Lock-Up Period, HoldCo did not pursue a second sale of shares. Given market conditions, the Liquidating Trustee recognized the reduced likelihood of redemption for the Series A and Series B Preferred and began evaluating opportunities to sell the Trust's position in the Series B Preferred. To that end, an investment bank was engaged in late 2022 to advise the Liquidating Trustee, conduct a comprehensive marketing process, and sell the Trust's 140 million units of the Series B Preferred. This process did not result in any meaningful bids or indications of interest due to challenging market conditions. As noted in the Status Report filed on December 29, 2022 [Docket No. 3154], "based on, inter alia, this diligence, as well as the evaluation and experience of the Liquidating Trustee, the Liquidating Trustee has determined that an immediate sale of the MYT Series B Preferred Units held by the Trust may not capture all the value reasonably available with respect thereto."

7.  The market price of the OpCo shares was the primary measure of when there may be renewed interest in the Series B Preferred. The Liquidating Trustee and his advisors monitored the OpCo share price on a regular basis throughout 2023 and 2024, reviewed the quarterly earnings releases, attended the quarterly earnings calls, reviewed periodic analyst reports and assessed whether there was any interest in the Series B Preferred.

---

[3] Beginning May 1, 2025, the brands Mytheresa, NET-A-PORTER, MR PORTER, YOOX and THE OUTNET began trading on the NYSE under the umbrella of LuxExperience B.V. under the ticker LUXE.

8. The Liquidating Trustee continued to monitor the quarterly earnings, share price movements, and other Company news through the first nine months of 2024. In October 2024 the Liquidating Trustee noted that OpCo announced its intent and agreement with Richemont to acquire YOOX Net-a-Porter ("YNAP"), driving a sustained increase in the share price to the $6 - $8 range. In April 2025 the YNAP acquisition was successfully closed and in May 2025, OpCo released positive earnings, causing the share price to steadily rise to and remain in the $9 - $10 range.

9. Between October 2024 and April 2025, the Liquidating Trustee continued to monitor the market interest for the Series B Preferred, held discussions with brokers and interested parties regarding alternatives to sell the Series B Preferred, and ultimately engaged a broker-dealer to pursue a potential interested buyer. The result of the effort was an offer to purchase the Series B Preferred at $0.43 per share. The Liquidating Trustee, after consulting with the broker-dealer and performing diligence regarding alternatives, concluded that accepting the offer at this time is in the best interest of the beneficiaries of the Trust, and sold the Series B Preferred at $0.43 per share for $55.1 million in gross proceeds, a value high enough to make a meaningful distribution to Trust beneficiaries. After adjusting for cash on hand, trustee fees and estimated wind down

costs, $52.4 million of net funds are estimated to be available for distribution. A summary regarding the estimated net funds available and distributions by claimant type are provided below:

| Calculation of Net Funds Available for Distribution | Amount |
|---|---|
| Shares Sold by Trust | 128,110,860 |
| (x) Price Per Share | $0.43 |
| **Gross Proceeds from Sale** | **$55,087,670** |
| (+) Cash On Hand | 1,324,160 |
| (-) Trustee Fee (3% of Gross Proceeds from Sale)[1] | (1,652,630) |
| (-) Estimated Wind Down Costs[2] | (2,348,078) |
| **Net Funds Available for Distribution** | **$52,411,122** |

| Distribution by Claimant Type | Total Distribution | Total GUC Amount | Recovery Before Charging Lien Allocation |
|---|---|---|---|
| Convenience General Unsecured Claims | 481,743 | 3,277,162 | 14.7% |
| Funded-Debt General Unsecured Claims[3] | 14,303,484 | 107,893,816 | 13.5% |
| Charging Lien Agent | 966,739 | 5,912,362 | N/A |
| Non-Funded Debt General Unsecured Claims | 36,659,157 | 266,345,499 | 13.8% |
| **Total** | **$ 52,411,122** | **$ 383,428,839** | **13.7%** |

*Notes:*
*(1) This fee is pursuant to the Liquidating Trust Agreement (defined below)*
*(2) Wind down costs are estimates and subject to revision*
*(3) Per the Confirmation Order, [Docket No. 1795], the Unsecured Notes Trustee maintained its right to payment of its charging lien against distributions on account of the noteholders' claims. As a result, certain noteholders who did not contribute to the costs covered by the charging lien will have their share deducted pro rata from the final distribution, resulting in a recovery of approximately 10.2% after adjustments*

10. The Liquidating Trustee expects to be able to make final distributions to the Trust beneficiaries by the end of July 2025. The Liquidating Trustee estimates the Trust beneficiaries will receive a distribution of approximately 13.7%. The summary above shows the recovery will differ across the different classes of beneficiaries including noteholders, SERP claims, convenience class[4], and other general unsecured claimants. A notice or motion will be served accordingly on such holders as soon as reasonably practicable.

11. The Trust is governed by the terms of the Liquidating Trust Agreement [Docket No. 1955 Ex. 1] (the "Trust Agreement"). As set forth in the Trust Agreement, the Trust terminates on the 5th anniversary of the Plan's Effective Date, i.e., September 25, 2025.

---

[4] This class is comprised of general unsecured claims allowed in an amount of $50,000 or less as well as those allowed in an amount more than $50,000 for which the holder elected to reduce to $50,000 as per the terms of the Plan.

12. As soon as practicable after the closing of the sale of the Series B Preferred and the distribution(s) to creditors, the Trust will be wound down. The wind down process will involve executing the distribution(s), filing a final 2025 Tax Return, issuing the final Grantor Statements, facilitating payment of professionals, and closing the Trust bank accounts.

13. In connection with the termination of the Trust, notwithstanding other provisions in the Trust Agreement, Section 11.2 provides that any remaining Trust Assets that are of inconsequential value or otherwise insufficient to support the cost of a distribution may be transferred by the Liquidating Trustee to a non-profit charitable organization qualifying under section 501(c)(3) of the IRC.

14. After the termination of the Trust and for the purposes of liquidating and winding down the affairs of the Trust, the Liquidating Trustee shall continue to act as such until his duties have been fully performed, including such post-distribution tasks as necessary to wind down the affairs of the Trust. Subject to the provisions of Section 10.1 hereof, after the termination of the Trust, the Liquidating Trustee, for a time, shall retain or cause to be retained certain books, records, Beneficiary lists, certificates, and other documents and files that shall have been delivered to or created by the Liquidating Trustee. Except as otherwise specifically provided herein, upon the discharge of all liabilities of the Trust and final distribution of the Trust, the Liquidating Trustee shall have no further duties or obligations hereunder.

[*Remainder of page intentionally left blank.*]

| | |
|---|---|
| Dated: June 20, 2025 | */s/ Michael D. Warner* |

Michael D. Warner (TX Bar No. 00792304)
Benjamin L. Wallen (TX Bar No. 24102623)
**PACHULSKI STANG ZIEHL & JONES LLP**
700 Louisiana St., Suite 4500
Houston, TX 77002
Telephone:      (713) 691-9385
Facsimile:       (713) 691-9407
Email:  mwarner@pszjlaw.com
            bwallen@pszjlaw.com

-and-

Justin Bernbrock (admitted *pro hac vice*)
Catherine Jun (admitted *pro hac vice*)
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
321 N. Clark Street
Chicago, Illinois 60654
Telephone:     (312) 499-6300
Email: jbernbrock@sheppardmullin.com
            cjun@sheppardmullin.com

-and-

Jennifer Nassiri (admitted *pro hac vice*)
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
1901 Avenue of the Stars, Suite 1600
Los Angeles,  CA 90067-6017
Telephone:     (310) 228-3700
Email: jnassiri@sheppardmullin.com

-and-

Amanda Cottrell, Esq. (TX Bar No. 24064972)
Steven Gersten**,** Esq. (TX Bar No.  24087579)
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
2200 Ross Avenue, 24th Floor
Dallas, TX 75201
Telephone:  (469) 391-7400
Email: acottrell@sheppardmullin.com
            sgersten@sheppardmullin.com

*Counsel for the Liquidating GUC Trust and Mohsin Meghji, in his capacity as trustee of the Liquidating GUC Trust*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of June, 2025, a true and correct copy of the above and foregoing was caused to be served on all parties that are registered to receive electronic transmission through this Court's CM/ECF filing system in these cases.

*/s/ Michael D. Warner*
Michael D. Warner
